# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| DANIEL REASE, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>  Defendant. | Case No. 3:20-cv-00150-RNC<br><br>Hon. Robert N. Chatigny |

## DEFENDANT CHARTER COMMUNICATION, INC.'S MOTION TO STAY CASE AND BRIEF IN SUPPORT

**KABAT CHAPMAN & OZMER LLP**

Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
Adamson B. Starr (*pro hac vice*)
astarr@kcozlaw.com

171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300
404-400-7333 (fax)

*Counsel for Defendant Charter Communications, Inc.*

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    RELEVANT PROCEDURAL HISTORY ............................................................ 3

     A.     Plaintiff Alleges One Claim Based on the TCPA's Automated Call Ban. ............. 3

     B.     The U.S. Supreme Court Grants *Certiorari* in *AAPC* to Decide the Constitutionality of the TCPA's Automated Call Ban. .......................................... 3

     C.     The Second Circuit Will Imminently Issue a Ruling Defining the Scope of an ATDS. ................................................................................................................. 5

III.   ARGUMENT AND CITATATION TO AUTHORITY ...................................... 7

     A.     Legal Standard on a Motion to Stay. ..................................................................... 7

     B.     All Relevant Considerations in this Case Favor Granting a Stay Pending the Outcomes in *AAPC*, *Kloth-Zanard*, and *La Boom*. ........................................... 8

       1.     *Factor One: A Stay Poses No Harm to Plaintiff, Especially Because it Will Be Short in Duration.* ................................................................................................... 8

       2.     *Factor Two: Charter Will Suffer Harm and an Undue Burden If This Action Proceeds Before AAPC is Decided.* ...................................................................... 10

       3.     *Factor Three: A Stay Will Promote the Interests of the Court.* ........................... 11

       4.     *Factors Four and Five: A Stay Will Further the Public Interest, and Interests of Persons Not Parties to this Action.* ....................................................................... 12

IV.   CONCLUSION ................................................................................................... 14

## I.      INTRODUCTION

Plaintiff's putative Telephone Consumer Protection Act ("TCPA") class action is premised entirely on the allegation that Defendant Charter Communications, Inc. ("Charter") violated the TCPA's "automated call ban" by using an automatic telephone dialing system ("ATDS") to send him text messages.  That ban, though, is an unconstitutional content-based restriction on speech that does not withstand strict scrutiny and cannot be enforced against Charter.  In fact, that very issue is currently being reviewed by the U.S. Supreme Court in *Barr v. Am. Ass'n. of Political Consultants*, No. 19-631 (U.S. Jan. 10, 2020), which will be decided this term.

The Second Circuit is also set to clarify the proper definition of ATDS in *Kloth-Zanard v. Bank of America*, No. 19-2043 and *La Boom Disco, Inc. v. Duran*, No. 19-600—a definition upon which Plaintiff's entire TCPA claim hinges.  And while Second Circuit's holding in those cases is undetermined, it will likely affirm the lower courts' grant of summary judgment by joining the emerging majority of courts across the country in ruling that the TCPA means what it says: that equipment must have the capacity to generate and dial random or sequential numbers to qualify as an ATDS.  Such a ruling would end this case.  Therefore, the Court should stay this action pending the Supreme Court's resolution of *AAPC*, or, alternatively, a decision from Second Circuit—either of which could be outcome-determinative in this nationwide class action.  Indeed, all the relevant factors support a stay.

First, a stay would not harm Plaintiff, who seeks only statutory, not actual damages.  It would instead benefit Plaintiff by: (a) preventing him from incurring significant time and expense in discovery and motion practice, all of which could be for naught following the forthcoming decisions referenced above, which could end this litigation; or (b) streamlining the legal issues in this case by clarifying the definition of an ATDS.

Second, if this action is not stayed, Charter would be prejudiced by incurring substantial costs that will be wholly unnecessary.  That prejudice is compounded by the fact there are two other related cases premised on the same automated call ban (including another case filed by Plaintiff's counsel) currently pending in this District, all of which Charter is moving to stay.[1]

Third, a stay is in the Court's interest because rulings in *AAPC*, *Kloth-Zanard*, and *La Boom* will determine whether and to what extent Plaintiff's claim against Charter can proceed. For instance, if the Supreme Court determines that the TCPA's automated call ban is unconstitutional and cannot be severed—which is the general rule in the case of a constitutional violation—that would eliminate Charter's liability entirely.  And if the Second Circuit determines that an ATDS must be able to generate and dial random or sequential numbers, as it should, Charter's system would not qualify as an ATDS.  If forced to proceed without the clarity of the Supreme Court's and the Second Circuit's decisions, therefore, the parties will have to engage in (and the Court will have to police) significant discovery and motion practice related to the merits of this case and the propriety of class certification, all of which may be rendered moot.  That is particularly true given the two related matters pending in this District.

Fourth, a stay would promote the public interest and the interests of non-parties.  Indeed, the public has an interest in the efficient and fair administration of the judicial system.  The public, moreover, would not reap any benefit from the unnecessary expenditure of judicial resources or the enforcement of an unconstitutional (and vague) statute in violation of the First Amendment. Similarly, a stay would prevent discovery that will unnecessarily burden and invade the privacy

---

[1] Charter marked all three cases as related in accordance with Local Rule 40.  *See* L.R. 40(b)(1)(a) ("In the event . . . there is pending in this District a related case assigned to a different Judge, the later-filed case should normally be transferred to the Judge having the earliest filed case that remains pending."); *see also Carlier v. Charter Communications, Inc.*, 3:20-cv-00266-CSH, Dkt. 16 (D. Conn Mar. 3, 2020).

interests of non-parties.  Those concerns are particularly acute in TCPA class actions where plaintiffs routinely serve subpoenas on cellular carriers that result in wide-ranging discovery disputes, statutory privacy implications, and other significant legal costs.

For these reasons, the Court should grant Charter's Motion and order a brief stay pending the Supreme Court's decision in *AAPC*, or, alternatively, the Second Circuit's decisions in *Kloth-Zanard v. Bank of America*, No. 19-2043 and *La Boom Disco, Inc. v. Duran*, No. 19-600.

## II.    RELEVANT PROCEDURAL HISTORY

### A.    Plaintiff Alleges One Claim Based on the TCPA's Automated Call Ban.

On February 3, 2020, Plaintiff filed this putative class action, alleging that he received text messages with a system that "qualified as an ATDS within the meaning of the TCPA."  ECF No. 1, at ¶ 37.  Plaintiff says that he never provided prior "express consent" to receive the messages at issue.  *Id.* at ¶¶ 38–39.  As such, Plaintiff makes one claim under 47 U.S.C. § 227(b)(1)(A) (the "automated-call ban") and, based on that alone, asks the Court to certify a nationwide class of persons who he alleges were called "using the same or substantially the same dialing technology."  *Id.* at ¶ 21.

### B.    The U.S. Supreme Court Grants *Certiorari* in *AAPC* to Decide the Constitutionality of the TCPA's Automated Call Ban.

In 2016, the American Association of Political Consultants ("AAPC"), along with several other stakeholders in various industries, sued the Attorney General and the FCC in the Eastern District of North Carolina, alleging that the TCPA's automated-call ban violates the First Amendment.  *See Am. Ass'n of Political Consultants v. Sessions*, 323 F. Supp. 3d 737 (E.D.N.C. 2018).  Specifically, the AAPC contends that the ban: (1) prohibits speech; and (2) contains content-based statutory exceptions that favor certain speech in violation of the First Amendment. This includes the "government debt exception," which exempts calls "made solely to collect a

debt owed to or guaranteed by the United States." *Id*. at 741. The district court ruled for the government, holding that the ban was a content-based restriction subject to strict scrutiny, but that the statute withstood such scrutiny. *Id*. at 744-45.

The Fourth Circuit reversed. *Am. Ass'n. of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 166 (4th Cir. 2019). It concluded that the government debt exception did ***not*** survive strict scrutiny because it rendered the automated-call ban fatally underinclusive by authorizing many of the calls that Congress intended to prohibit by enacting the ban. *Id*. at 167-68. The Fourth Circuit then concluded that the proper remedy was to sever the government debt exception from the statute.[2] *Id*. at 171.

Both parties sought Supreme Court review. The government argues that the government debt exception is content neutral and thus the automated-call ban does not transform the statute into a content-based speech restriction. *See* Petition for Writ of Certiorari at 6, *Barr v. Am. Ass'n of Political Consultants, Inc*., No. 19-631 (U.S. Nov. 14, 2019). On the other hand, AAPC argues that the automated-call ban *itself* is a content-based restriction that cannot survive strict scrutiny; therefore, the Supreme Court must strike it down in its entirety (rather than sever it). *See* Br. of Respondents Am. Ass'n of Political Consultants, Inc. at 13-19, *Barr v. Am. Ass'n of Political Consultants*, *Inc*., No. 19-631 (U.S. Dec. 4, 2019).

In January, the Supreme Court granted *certiorari* in *AAPC*. *See Barr v. Am. Ass'n. of*

---

[2] Similarly, the Ninth Circuit has twice held that the automated-call ban is unconstitutional, and twice applied severance as the remedy. *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1151 (9th Cir. 2019); *Gallion v. United States*, 772 F. App'x 60, 605 (9th Cir. Jul. 8, 2019) (same). Now that the Government has filed its opening brief in *AAPC*, multiple merits-based amicus briefs have also been filed, explaining that invalidating the automated-call ban will not increase intrusive and unwanted calls. *See* Br. Of Amicus Curiae Retail Litigation Center, Inc. and National Retail Federation, *Barr v. Am. Ass'n. of Political Consultants, Inc*., No. 19-641 (Jan. 10, 2020). The foregoing demonstrates *AAPC*'s import and highlights the propriety of waiting for that decision here.

*Political Consultants*, No. 19-631 (U.S. Jan. 10, 2020).  Thus, the Court is set to examine whether: (1) the government debt exception to the automated-call ban violates the First Amendment; and (2) the proper remedy for a violation is to sever the exception (rather than invalidating the automated call ban altogether).  *See* Question Presented Report, *Barr v. Am. Ass'n of Political Consultants, Inc.*, No. 19-631 (U.S. Jan. 10, 2020).  The Court is scheduled to hear argument on April 22, 2020 and will decide the case by the end of June.  *See* Supreme Court Calendar for the Session Beginning April 20, 2020*; see also McGregory v. 21st Century Ins. & Fin. Serv., Inc.*, No. 1:15-CV-00098, 2016 WL 11643678, at *3 (N.D. Miss. Feb. 2, 2016) (the Court's custom is to "issue all decisions in argued cases before the start of its summer recess in June.").

### C.    The Second Circuit Will Imminently Issue a Ruling Defining the Scope of an ATDS.

There are also two imminent Second Circuit decisions that will define the scope of an ATDS in this Circuit.  By way of relevant background, the TCPA prohibits calling a cellular telephone with an ATDS without the called party's consent. 47 U.S.C. § 227.  An ATDS is defined as "equipment which has the capacity—to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1).  The FCC purported to interpret this statutory definition in various Orders.[3]  But in March 2018, the D.C. Circuit vacated the FCC's interpretations of what constitutes an ATDS as arbitrary, capricious, and overbroad.  *See ACA Int'l v. FCC*, 885 F.3d 687, 701 (D.C. Cir. 2018).  This left a vacuum of authority on what qualifies as an ATDS and called into question pre-2018 cases addressing that issue, given that most of those cases were decided based on the now-vacated

---

[3] *See, e.g., In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, et al.*, Declaratory Ruling and Order, 30 FCC Rcd. 7961, 7972-73 (2015) ("2015 Order").

FCC guidance.[4]

However, any uncertainty regarding the definition of an ATDS in this Circuit will be resolved in short order, as the Second Circuit is imminently set to rule on the definition of an ATDS in at least two cases: *Kloth-Zanard* and *La Boom*, TCPA cases that both turn on the definition of ATDS. In *Kloth-Zanard*, the Second Circuit is set to determine whether the district court correctly held that the plaintiff failed to establish she was "called from a device with the capacity 'to store or produce telephone numbers . . . using a random or sequential number generator,' as the statute requires." *Kloth-Zanard v. Bank of Am.*, No. 3:15-CV-1208-MPS, 2019 WL 1922070, at *10 (D. Conn. Apr. 30, 2019), *review granted in Kloth-Zanard v. Bank of Am.*, Case No. 19-2043 (2d Cir. Sept. 20, 2019). Similarly, the Second Circuit in *La Boom* is set to determine whether: (a) the systems at issue in that case "operate with too much human involvement to meet the definition of an autodialer"; and (b) the D.C. Circuit in *ACA International* invalidated the FCC's 2003 Order, which held "that equipment can meet the definition of an autodialer if it pulls from a list of numbers, so long as the equipment also has the capacity to dial those numbers without human intervention." *See Duran v. La Boom Disco, Inc.*, 369 F. Supp. 3d 476, 488–90, 492 (E.D.N.Y. 2019), *review granted in La Boom Disco, Inc. v. Duran*, No. 19-600 (2d Cir. Dec. 13, 2019) (submitted for review).

Charter now moves to briefly stay this case pending the Supreme Court's and the Second Circuit's imminent decisions.

---

[4] *Compare Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 460 (7th Cir. 2020) (holding that equipment must employ a random or sequential number generator to qualify as an ATDS), *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1304–05 (11th Cir. 2020) (same), *and Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) (same), *with Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051 (9th Cir. 2018) (holding that equipment need only have the capacity to dial automatically from a list of stored numbers to be an ATDS).

III.    **ARGUMENT AND CITATATION TO AUTHORITY**

A.    **Legal Standard on a Motion to Stay.**

Courts have broad discretion to manage their docket and stay proceedings, as the "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In this Circuit, the "decision whether to stay an action calls on a district court's 'studied judgment,' requiring the court to examine 'the particular facts before it' and determine 'the extent to which . . . a stay would work a hardship, inequity, or injustice to a party, the public or the court.'" *Range v. 480-486 Broadway, LLC*, 810 F.3d 108, 113 (2d Cir. 2015) (quoting *Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83, 99 (2d Cir. 2012)).

In exercising their discretion, courts in this Circuit consider five factors:

(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (cits. omitted). Applying these "*Landis*" factors, courts within this Circuit and outside of it routinely stay proceedings "when a higher court is close to settling an important issue of law bearing on the action." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012); *Ruggieri v. Boehringer Ingelheim Pharm., Inc.*, No. 06-CV-1985, 2012 WL 1521850, at *1 (D. Conn. Feb. 24, 2012) (staying proceeding pending Supreme Court ruling in another case). Thus, it is unsurprising that courts across the country have stayed TCPA cases pending the forthcoming Supreme Court and Circuit Court decisions discussed herein. *See, e.g., Lindenbaum v. Realgy, LLC*, No. 1:19-cv-2862, Dkt. 16 (N.D. Ohio Mar. 19, 2020) (granting motion to stay pending *AAPC*); *Seefeldt v. Entm't Consulting*

*Int'l, LLC*, No. 4:19-CV-00188, 2020 WL 905844, at *1 (E.D. Mo. Feb. 25, 2020) (same); *Wright*

*v. EXP Realty, LLC*, No. 6:18-CV-01851, Dkt. 99, p.2 (M.D. Fla. Feb. 7, 2020) (same); *Perrong*

*v.Liberty Power Corp, LLC*, 1:18-cv-00712-MN (D. Del. Mar. 6, 2020) (same); *see also DiStasio*

*v. Edible Arrangements, LLC*, 3:16-cv-00538-DJS, Dkt. 106 (D. Conn. Jan. 24, 2020) (staying

case pending *La Boom* and other decisions).[5]

**B.    All Relevant Considerations in this Case Favor Granting a Stay Pending the Outcomes in *AAPC*, *Kloth-Zanard*, and *La Boom*.**

All five of the relevant factors identified above weigh in favor of granting a stay.[6]

*1.    Factor One: A Stay Poses No Harm to Plaintiff, Especially Because it Will Be Short in Duration.*

First, the requested stay poses no risk of harm to Plaintiff.  Notably, there is no likelihood

of damage or harm under this factor merely because the stay may delay the plaintiff's recovery of

money damages.  *See, e.g., Rovi Guides, Inc. v. Comcast Corp.*, No. 1:16-CV-9278, 2017 WL

4876305, at *5 (S.D.N.Y. Oct. 27, 2017) ("[The Plaintiff] will not be unduly prejudiced by a stay,

nor will [the Defendant] be unfairly advantaged" because a stay would only delay recovery of

monetary damages); *Leinster Inter S.A. v. Botley Ltd.*, No. 1:09-CV-3874, 2009 WL 5246211, at

---

[5] *See also, e.g., Acton v. Intellectual Capital Mgmt., Inc*., No. 15-CV-4004, 2015 WL 9462110, at *2 (E.D.N.Y. Dec. 28, 2015) (staying TCPA case pending outcome of Supreme Court and D.C. Circuit appeals); *Eric B. Fromer Chiropractic, Inc. v. N.Y. Life Ins. and Annuity Corp*., No. 15-CV-4767, 2015 WL 6579779, at *2 (C.D. Cal. Oct. 19, 2015) (collecting cases from district courts of California, Florida, and Virginia staying TCPA cases pending *Spokeo, Inc. v. Robins*, 136 S. Ct 1540 (2016)).

[6] In moving for a stay pending decisions from the Second Circuit, Charter does not waive its right to later argue that Connecticut is not the appropriate forum or that the substantive law of this Circuit does not apply, as Plaintiff resides in Florida (within the Eleventh Circuit) and allegedly received the messages at issue there.  *See* Dkt. 1 at ¶ 4.  Indeed, Plaintiff appears to have filed in Connecticut solely to take advantage of the lack of clarity about what constitutes an ATDS in this Circuit.  However, it would be inefficient to decide these forum-shopping and choice of law issues until after the Supreme Court's and Second Circuit's rulings.

*1 (S.D.N.Y. Dec. 30, 2009) ("[The plaintiff] also has not shown that it will suffer irreparable injury absent a stay, since the only loss it alleges will be monetary."). This is particularly relevant here because Plaintiff does not even request actual damages, only statutory damages, which are purely monetary. *See* 47 U.S.C. § 227(b)(3) ($500 for negligent violation; up to $1,500 for willful violation); *see* ECF No. 1, at ¶ 40 (seeking statutory damages).

The preliminary posture of this action also weighs against a finding of harm to Plaintiff. *See Perricone v. Unimed Nutritional Services, Inc.*, 3:01-cv-1512-CFD, 2002 WL 31075868, at *3 (D. Conn. July 18, 2002) ("Where a case is in the early stages of litigation, however, a court may avoid duplicative efforts by granting a motion to stay."); *Tovar v. Hospital Housekeeping Sys.*, No. 09-03487, 2009 WL 10672526, at *4 (C.D. Cal. Nov. 2, 2009) (early procedural posture of a case "weighs against a finding of prejudice"). If anything, Plaintiff would be harmed if a stay is ***not*** issued because he could incur significant expense in discovery only to later find out that his claim is barred, or that he focused discovery on the wrong definition of ATDS. *See, e.g., Reynolds v. Time Warner Cable, Inc.*, No. 6:16-CV-6165W, 2017 WL 362025, at *2 (W.D.N.Y. Jan. 25, 2017) (stay of TCPA putative class action would not harm Plaintiff, but would rather "save the parties from needless expenditures and promote judicial economy."); *Fontes v. Time Warner Cable, Inc.*, No. 2:14-cv-02060, 2015 WL 9272790, at *5 (C.D. Cal. Dec. 17, 2015) (stay of TCPA class action did not harm plaintiffs; rather it "could save substantial efforts by the parties").

Moreover, the Supreme Court has already granted certiorari in *AAPC* and set a briefing schedule with oral argument occurring on April 22, 2020. *See* Supreme Court Calendar for the Session Beginning April 20, 2020. In accordance with the Supreme Court's customary practice, its decision should be published by no later than the end of its term in June 2020. *See McGregory*, 2016 WL 11643678, at *3. The Second Circuit is also poised to imminently clarify the definition

9

of ATDS.  *See La Boom Disco*, No. 19-600, Dkt. 56 (submitted for review).  Given this timeline, Charter's requested stay may result in just a three-month delay.  A stay of this short duration necessarily limits any potential risk of damage to Plaintiff.  *See Mejia v. Time Warner Cable Inc.*, No. 1:15-CV-6445, 2017 WL 5513638, at *5 (S.D.N.Y. Nov. 17, 2017) ("given that [a Circuit court decision] will likely be decided soon, any prejudice to Plaintiffs from a stay will be minimal and short-lived"); *Ramirez v. Trans Union, LLC*, No. 12-cv-00632, 2015 WL 6159942, at *2 (N.D. Cal. Jun. 22, 2015) ("The possible prejudice to Plaintiff that will result from a stay is minimal, as [the] decision will likely be issued within a year per the Supreme Court's customary practice.").

For these reasons, the first factor weighs heavily in favor of a stay.

>   2.    *Factor Two: Charter Will Suffer Harm and an Undue Burden If This Action Proceeds Before AAPC is Decided.*

The second factor—Charter's interest and burden if the Court does not grant the stay—also heavily favors a stay.  If the case is not stayed pending a decision in *AAPC* or from the Second Circuit, Charter will have to invest substantial resources litigating this nationwide putative class action, despite the very real possibility that the Supreme Court or the Second Circuit will render that investment unnecessary.  *See Stone v. Sterling Infosystems, Inc.*, No. 2:15-cv-00711, 2015 WL 4602968, at *2 (E.D. Cal. Jul. 29, 2015) ("The Court sees no reason why Plaintiff should be allowed to conduct discovery on this large class thereby forcing Defendant to incur unnecessary expenses, until it can be established that this case will be proceeding forward."); *see also Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, No. CIV.A. 12-2132-FLM, 2014 WL 413534. At *4 (D.N.J. Feb. 4, 2014) ("class actions involve the potential 'for hefty litigation expenses and an extensive use of judicial resources in the resolution of these claims[.]' . . . It is also generally understood that the costs can be particularly 'enormous' for defendants.") (cits. omitted).  And Charter's prejudice (and legal expense) is only compounded

by the fact there are two other putative class actions premised on similar ATDS and automated call ban allegations currently pending in this District. *See Carlier*, 3:20-cv-00266-CSH (filed by the same Plaintiff's counsel); *Darby v. Charter Communications, Inc., d/b/a Spectrum*, No. 3:20-cv-00249.

For these reasons, proceeding with this case before a decision in *AAPC* or from the Second Circuit would substantially and unnecessarily prejudice Charter, and the second factor strongly supports a stay.

> 3.    *Factor Three: A Stay Will Promote the Interests of the Court.*

The third factor—judicial economy—also strongly militates in favor of a stay. This is especially true because the Supreme Court's decision in *AAPC* and the Second Circuit's imminent decisions may be outcome-determinative, and because this case is a putative class action that will involve significant discovery and motion practice regarding the merits and class certification—all of which the Court will have to police and decide in this case <u>and</u> in the related *Carlier* and *Darby* matters . *See Seefeldt*, 2020 WL 905844, at *3 ("a stay is appropriate [pending *AAPC*], to avoid exhausting judicial resources to decide things like . . . plaintiff's pending motion for class certification, and any possible discovery-related matters or summary judgment motions to follow which may prove fruitless."); *Wright*, No. 6:18-CV-01851, Dkt. 99, p.2 ("The Court believes that any proceedings before the Supreme Court issues guidance in the upcoming *Barr v. Am. Ass'n* will be—among other things—a waste of judicial resources and a waste of the parties' time and energy."); *see also Lindenbaum*, No. 1:19-cv-02862, Dkt. 16 (granting stay given *AAPC* because "judicial economy will be saved as this case [is] in its early stages").

Further, even if the Supreme Court determines that the automated-call ban is constitutional, allowing the Supreme Court to decide *AAPC* and the Second Circuit to clarify the

definition of an ATDS before proceeding in this case would promote judicial efficiency and ensure a uniform, national interpretation of the TCPA and the defenses discussed herein.[7] *In re Literary Works in Elec. Databases Copyright Litig.*, No. M-21-90, 2001 WL 204212 (S.D.N.Y. Mar. 1, 2001) (granting a stay of proceedings pending a decision by the Supreme Court and holding that it would be an unnecessary waste of the court and the parties' resources to proceed with the litigation "before the Supreme Court more precisely defines the claims at issue."); *see also Coulter v. Ascent Mortg. Res. Grp., LLC*, No. 2:16-cv-02237, 2017 WL 2219040, at *4 (E.D. Cal. May 18, 2017) (stay warranted in TCPA class action pending D.C. Circuit opinion as a "stay will conserve judicial resources, clarify the law, and aid the court in making a decision"); *Reynolds* 2017 WL 362025, at *2 ("[a] stay [pending a forthcoming D.C. Circuit opinion] will conserve judicial resources, will help clarify the law, and will enable this Court to render a sound decision") (citing *Coatney v. Synchrony Bank*, 2016 WL 4506315, *2 (M.D. Fla. 2016)).

Accordingly, this factor also heavily favors a stay.

> 4.      *Factors Four and Five: A Stay Will Further the Public Interest, and Interests of Persons Not Parties to this Action.*

A stay would also promote the public interest because the efficient, fair, and uniform administration of the judicial system serves that interest. For instance, continuing without guidance from the Second Circuit on what an ATDS is would sow even further confusion on how to comply with that section of the TCPA. *See supra* note 3. Likewise, the public has a strong interest in avoiding the enforcement of a statute that, as here, may violate the First Amendment.

---

[7] For instance, Charter maintains the TCPA's automated-call ban is an unconstitutional content-based restriction on speech. This exact defense—which would result in a complete finding of no liability if decided in Charter's favor—will be addressed in *AAPC*. This Court cannot address that defense without the risk that any decision will be overturned by the Supreme Court's decision in *AAPC*, and any interim decision rejecting the defense would prejudice Charter.

*See Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (there exists a "significant public interest" in upholding free speech principles); *see also G & V Lounge, Inc. v. Mich. Liquor Control Com'n*, 23 F.3d 1071, 1079 (6th Cir.1994) ("it is always in the public interest to prevent the violation of a party's constitutional rights"). In turn, the "ongoing enforcement of the potentially unconstitutional regulations . . . would infringe not only the free expression interests of [the parties], but also the interests of other people subjected to the same restrictions." *Klein*, 584 F.3d at 1208. Because the TCPA provision at issue here is inarguably a regulation—*i.e.*, a "ban"—on certain speech, allowing a party to rely on that regulation on an interim basis in litigation, just to have it later overturned, would significantly undercut the public interest.

A stay would similarly promote the interests of non-parties that could be impacted by this litigation because it will (a) prevent discovery that would unnecessarily burden such parties and (b) ensure a uniform interpretation of the law. *See, e.g.*, *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 17-CV-5916-AJN, 2018 WL 3849840, at *3 (S.D.N.Y. Aug. 10, 2018) (staying action pending resolution of related case because "the public is also not served by any wasting of judicial resources"); *Nuccio v. Duve*, No. 7:13-CV-1556, 2015 WL 1189617, at *5 (N.D.N.Y. Mar. 16, 2015) ("Staying this action [pending the outcome of another, similar action] will serve the interest of the courts, non-parties, and the public by promoting the efficient use of judicial resources and 'minimiz[ing] the possibility of conflicts between different courts'"). For example, non-parties often face heavy discovery burdens in putative class actions. And TCPA plaintiffs routinely serve subpoenas on cellular carriers that result in wide-ranging discovery disputes, statutory privacy implications (*e.g.*, the Cable Privacy Act, 47 U.S.C. § 551 *et seq.*), deposition of custodians, and other significant legal costs.

Accordingly, the public interest and the interests of non-parties both favor a stay.

## IV.    CONCLUSION

For the foregoing reasons, Charter requests that the Court grant its Motion to Stay pending the Supreme Court's forthcoming decision in *AAPC*, and, if that decision is not wholly outcome-determinative, the Second Circuit's decisions in *Kloth-Zanard v. Bank of America*, No. 19-2043 and *La Boom Disco, Inc. v. Duran*, No. 19-600.

Dated:  March 19, 2020.

**KABAT CHAPMAN & OZMER LLP**

/s/ *Ryan D. Watstein*
Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
Adamson B. Starr (*pro hac vice*)
astarr@kcozlaw.com

171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300
404-400-7333 (fax)

*Counsel for Defendant Charter Communications, Inc.*

**ROBINSON & COLE LLP**

Brian E. Moran
Connecticut Bar No. ct05058
bmoran@rc.com
Trevor L. Bradley
Connecticut Bar No. ct29993
tbradley@rc.com

1055 Washington Boulevard
Stamford, CT  06901
800-762-7826
203-462-7599 (fax)

## CERTIFICATE OF SERVICE

I certify that today I filed **DEFENDANT CHARTER COMMUNICATION, INC.'S MOTION TO STAY CASE AND BRIEF IN SUPPORT** using the Court's CM/ECF system, which will automatically send a notice of electronic filing to all counsel of record.

/s/ *Ryan D. Watstein*
Ryan D. Watstein (*pro hac vice*)