# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

DANIEL REASE, individually and on behalf
of all others similarly situated,

Plaintiff,

v.

CHARTER COMMUNICATIONS, INC.,

Defendant.

Case No. 3:20-cv-00150-RNC

Hon. Robert N. Chatigny

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY CASE

**BURSOR & FISHER, P.A**.
Joseph I. Marchese*
Philip L. Fraietta (*pro hac vice*)
888 Seventh Avenue, Third Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com
        pfraietta@bursor.com

**HEDIN HALL LLP**
Frank S. Hedin*
David W. Hall*
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058
Email: fhedin@hedinhall.com
        dhall@hedinhall.com

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 S. Main Street, 3rd Floor
West Hartford, Connecticut 06110
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

*To Be Admitted Pro Hac Vice

**TABLE OF CONTENTS**

PAGE(S)

INTRODUCTION ...........................................................................................................1

ARGUMENT ................................................................................................................3

I.     BACKGROUND ON *BARR* ...........................................................................3

II.    ALL FACTORS WEIGH AGAINST IMPOSITION OF A STAY ...................7

      A.   Legal Standard On A Motion To Stay.................................................7

      B.   Plaintiff Will Be Prejudiced If This Case Is Stayed Pending Resolution Of *Barr*......................................................................8

      C.   Defendant Will Not Suffer Hardship Or Inequity Absent The Requested Stay ................................................................11

      D.   A Stay Of The Litigation Pending A Decision In *Barr* Would Not Advance The Interests Of The Court..............................12

      E.   A Stay Will Not Promote The Interests Of Non-Parties.....................13

      F.   A Stay Will Not Further The Public Interest ......................................14

III.   DEFENDANT'S CONTRARY CASES ARE UNPERSUASIVE...................15

CONCLUSION ...........................................................................................................18

## CASES

*Alaska Airlines, Inc. v. Brock*,

    480 U.S. 678 (1987) .................................................................................... 2, 6

*American Association of Political Consultants, Inc. v. FCC*,
    923 F.3d 159 (4th Cir. 2019) ......................................................... Passim

*Barr v. American Association of Political Consultants, Inc.*,
    205 L.Ed.2d 449 (Jan. 10, 2020) .................................................. Passim

*Bakov v. Consolidated World Travel*,
    No. 1:15-cv-02980 (N.D. Ill. Feb. 27, 2020) ............................... Passim

*Clinton v. Jones*,
    520 U.S. 681 (1997) ............................................................................. 16

*Doohan v. CTB Inv'rs, LLC*,
    2019 WL 6497433 (W.D. Mo. Dec. 3, 2019) ......................................... 6

*Duguid v. Facebook, Inc.*,
    926 F.3d 1146 (9th Cir. 2019) ...................................................... Passim

*Duran v. La Boom Disco, Inc.*,
    2020 WL 1682773 (2d Cir. Apr. 7, 2020) ....................................... 1, 16

*Edwards v. Conn's, Inc.*,
    2019 WL 4731942 (D. Nev. Sept. 27, 2019) ........................................ 5

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*,
    561 U.S. 477 (2010) ............................................................................... 1

*Hand v. Beach Entm't KC, LCC*,
    2019 WL 5654351 (W.D. Mo. Oct. 31, 2019) ...................................... 6

*In re Midland Credit Mgmt., Inc. Tel. Consumer Prot. Act. Litig.*,
    2020 WL 1287732 (S.D. Cal. Mar. 18, 2020) .............................. Passim

*Kappel v. Comfort*,
    914 F. Supp. 1056 (S.D.N.Y. 1996) ..................................................... 7

*Katz v. Liberty Power Corp.*,
    2019 WL 6051442 (D. Mass. Nov. 15, 2019) ....................................... 2

*Katz v. Liberty Power Corp.*,
    2019 WL 4645524 (D. Mass. Sept. 24, 2019) ....................................... 5

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ................................................................................................... 2, 7, 11

*LaSala v. Needham & Co.*,
  399 F. Supp. 2d 421 (S.D.N.Y. 2005) .......................................................................... 7, 8

*Lockyer v. Mirant*,
  398 F.3d 1098 (9th Cir. 2005) ........................................................................................ 11

*Molnar v. NCO Fin. Sys., Inc.*,
  2015 WL 1906346 (S.D. Cal. April 20, 2015) ................................................................ 10

*Pall Corp. v. Entergris, Inc.*,
  2008 WL 11447997 (E.D.N.Y. Sept. 26, 2008) .............................................................. 10

*Parker v. Portfolio Recovery Assocs., LLC*,
  2019 WL 4149436 (C.D. Cal. July 11, 2019) ................................................................... 5

*Rosenberg v. LoanDepot.com LLC*,
  2020 WL 409634 (D. Mass. Jan. 20, 2020) ...................................................................... 8

*Ryan v. Gonzalez*,
  568 U.S. 57 (2013) ............................................................................................................ 16

*Seefeldt v. Entertainment Consulting Int'l, LLC*,
  2020 WL 905844 (E.D. Mo. Feb. 25, 2020) ............................................................... 15, 16

*Sliwa v. Bright House Networks, LLC*,
  2018 WL 1531913 (M.D. Fla. Mar. 29, 2018) .................................................................. 5

*Smith v. Truman Rd. Dev., LLC*,
  2019 WL 5654352 (W.D. Mo. Oct. 31, 2019) ................................................................... 6

*Stanley Works Israel Ltd. v. 500 Group, Inc.*,
  2018 WL 1960112 (D. Conn. Apr. 26, 2018) .................................................................... 8

*STMicroelectronics v. Credit Suisse Group*,
  775 F. Supp. 2d 525 (E.D.N.Y. 2011) .............................................................................. 10

*Sutor v. Amerigroup Corp.*,
  No. 1:19-cv-01602-LMB-JFA (E.D. Va. Mar. 10, 2020) .................................................. 8

*Taylor v. KC VIN, LLC*,
  2019 WL 6499140 (W.D. Mo. Dec. 3, 2019) ..................................................................... 6

*Texas Indep. Producers & Royalty Owners Ass'n v. EPA*,
  410 F.3d 964 (7th Cir. 2005) ............................................................................................. 7

*Tyus v. Semple*,
  2020 WL 1083603 (D. Conn. Mar. 6, 2020) ................................................................. 7, 11

*Wijensinha v. Bluegreen Vacations Unlimited, Inc.*,
  2019 WL 3409487 (S.D. Fla. Apr. 3, 2019) .......................................................................5

*Wilson v. Quest Diagnostics, Inc.*,
  2019 WL 7560932 (D.N.J. Aug. 22, 2019) ........................................................................8

*Woods v. Santander Consumer USA Inc.*,
  2017 WL 1178003 (N.D. Ala. Mar. 30, 2017) ....................................................................5

*Wright v. Exp Realty, LLC*,
  2020 WL 1149906 (M.D. Fla. Feb. 7, 2020) ............................................................... 15, 16

*Zemel v. CSC Holdings LLC*,
  2018 WL 6242484 (D.N.J. Nov. 29, 2018) ............................................................ 8, 12, 13

**STATUTES**

47 U.S.C. § 227(b)(1)(A)(iii) ................................................................................................ 4, 5

47 U.S.C. § 608 ...................................................................................................................... 1, 6

Pub. L. No. 114-74, § 301(a), 129 Stat. 584, 588 (2015) ..........................................................4

**RULES**

Fed. R. Civ. P. 23 ....................................................................................................................10

Plaintiff Daniel Rease, individually and on behalf of all others similarly situated, submits this response in opposition to Defendant Charter Communication, Inc.'s ("Charter") Motion to Stay Case, ECF No. 31 (the "Motion").

## **INTRODUCTION**

Defendant argues that this case should be stayed pending the Supreme Court decision in *Barr v. American Ass'n of Political Consultants*, No. 19-631 ("*Barr*"),[1] which concerns the constitutionality of a 2015 government debt-collector exemption to the Telephone Consumer Protection Act ("TCPA") that Congress introduced into the law in 2015 (the "2015 Exemption"). This is wrong.

<u>First</u>, even if the Supreme Court agrees that the 2015 Exemption—which is completely irrelevant to this case—is unconstitutional, the Court would likely sever that offending language and leave the balance of the TCPA intact. The Supreme Court "has recognized that severance is the preferred remedy . . . The general rule is thus 'that partial . . . invalidation [of a statute] is the require course.'" *American Association of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 171 (4th Cir. 2019) ("*AAPC*") (quoting *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010)) (insertion in original). Further, Congress explicitly directed in the text of the TCPA that if any part of the statute "is held invalid, the remainder . . . shall not be affected." 47 U.S.C. § 608. This severability provision creates "a presumption that Congress did not intend

---

[1] Defendant's Motion was also previously premised on the impending Second Circuit decisions *Kloth-Zanard v. Bank of America*, No. 19-2043 and *La Boom Disco, Inc. v. Duran*, No. 19-600. During the pendency of this motion, the Second Circuit issued a decision in *La Boom Disco*. Defendant believed the Second Circuit would "likely affirm the lower courts' grant of summary judgment by joining the emerging majority of courts across the country" in defining what constitutes an automated telephone dialing system. Def.'s Br. at 1. The Second Circuit did the opposite, joining the Ninth Circuit and holding "that an ATDS can, indeed, make calls from stored lists." *Duran v. La Boom Disco, Inc.*, 2020 WL 1682773, at *1 n.5 (2d Cir. Apr. 7, 2020).

the validity of the statute in question to depend on the validity of the constitutionally offensive provision." *AAPC*, 923 F.3d at 171. (citing *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686 (1987)); *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1156 (9th Cir. 2019) ("[T]his unambiguous language endorsing severability relieves us of a counterfactual inquiry as to congressional intent and creates a presumption of severability absent strong evidence that Congress intended otherwise.") (internal quotations omitted). That is why every single court – both at the appellate and trial level – to consider this question has determined the 2015 Exemption is severable from the rest of the statute. *See, e.g.*, *Katz v. Liberty Power Corp.*, 2019 WL 6051442, at *3 (D. Mass. Nov. 15, 2019) ("There is not a substantial ground for a difference of opinion regarding the debt-collection exception's severability."). Defendant's belief that the Supreme Court will throw out the baby with the bathwater is an extremely remote possibility and no basis for staying this case. *See, e.g.*, *Bakov v. Consolidated World Travel,* No. 1:15-cv-02980, ECF 290, at 5:15-17 (N.D. Ill. Feb. 27, 2020) (attached hereto as **Exhibit A**) ("[T]he very small likelihood of a fundamental shift in TCPA law does not outweigh everyone's interest, including the plaintiffs' and the Court's, in continuing apace.")

Second, to obtain the requested stay, Defendant bears the burden of making out a "clear case of hardship or inequity in being required to go forward" absent a stay. *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Even viewed in the light most favorable to Defendant, it is still far from "clear" that the Supreme Court will consider invalidating the entire statutory scheme when it decides *Barr*, much less that the Defendant will suffer any meaningful "hardship or inequity in being required to go forward" in this Court in the interim. The Supreme Court's strong preference in favor of severability, the passage by Congress of a severability provision governing the TCPA, the fact that the statute was "fully operative" for decades prior to the introduction of the debt-

collection exemption, the absence of any disagreement among trial and circuit courts regarding severability, and the Supreme Court's general reluctance to jettison entire statutory schemes are all substantial, nearly insurmountable obstacles to the Supreme Court issuing the sort of decision in *Barr* that the Defendant envisions in its Motion.

Third, given the foregoing arguments on severability, any decision the Supreme Court issues in *Barr* is unlikely to affect this case because this case has nothing to do with 2015 Exemption. Nor would a stay conserve judicial resources. A stay of this case pending a decision in *Barr* would only unduly prejudice Plaintiff and the proposed class because it will only become more difficult over time for Plaintiff to obtain the proof necessary to certify a class and prevail on the merits as memories fade and documents and electronically stored information becomes more difficult to obtain. Moreover, a stay would prevent Plaintiff from expeditiously obtaining the injunctive relief he seeks on behalf of himself and the proposed Class in the Complaint. All this is especially true in light of the fact that oral argument on *Barr* has been postponed due to the ongoing COVID-19 pandemic.[2]

For the following reasons, the Motion should be denied in its entirety.

**ARGUMENT**

## I.    BACKGROUND ON *BARR*

To understand why the imposition of a stay would be improper, it is important to understand the issues involved in *Barr*. In 2015, Congress introduced into the TCPA the 2015 Exemption, which "excepted from the ban [against unsolicited robocalls] all calls to cell phones 'made solely to collect a debt owed to or guaranteed by the United States.'" *AAPC*, 923 F.3d at

---

[2] APRIL 2020 SESSION ARGUMENT CALENDAR,
https://www.supremecourt.gov/oral_arguments/calendars/MonthlyArgumentCalApril2020.html
(last accessed Apr. 15, 2020) (including *Barr* under the heading "ARGUMENTS POSTPONED").

162 (quoting Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a), 129 Stat. 584, 588 (2015) (amending 47 U.S.C. § 227(b)(1)(A)(iii))).

In *AAPC,* the Fourth Circuit took up three issues related to the 2015 Exemption: (i) the appropriate level of scrutiny under which to examine the 2015 Exemption, (ii) whether the 2015 Exemption "survives the applicable level of scrutiny," and if not, (iii) "whether to strike the automated call ban in its entirety, or whether to simply sever the flawed exemption therefrom." *AAPC*, 923 F.3d at 165. Ultimately, the *AAPC* court found that strict scrutiny applied and that the 2015 Exemption was unconstitutional, but that it was severable and therefore did not mandate striking the automated call ban. *Id.* at 161 ("[W]e agree with the Plaintiffs that the debt-collection exemption contravenes the Free Speech Clause. In agreement with the Government, however, we are satisfied to sever the flawed exemption from the automated call ban."). Subsequently, the Ninth Circuit also considered the constitutionality of the 2015 Exemption in *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). The Ninth Circuit's ruling matched the Fourth Circuit's:

> [W]e join the Fourth Circuit and hold that [the 2015 Exemption] . . . is content-based and incompatible with the First Amendment. But rather than toss out the entire TCPA—a longstanding and otherwise constitutional guardian of consumer privacy—we sever the newly appended "debt-collection exception" as an unconstitutional restriction on speech.

*Duguid*, 926 F.3d at 1149. In January 2020, a petition for certiorari from *AAPC* was filed and granted. The Supreme Court described the question on certiorari as "[i] Whether the government-debt exception to the TCPA's automated-call restriction violates the First Amendment, and [ii] whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute."[3]

---

[3] *Barr* Question Presented, https://www.supremecourt.gov/qp/19-00631qp.pdf (last accessed Apr. 16, 2020).

An examination of the decisions to date regarding the 2015 Exemption makes clear that the real issue to be decided by the Supreme Court is the validity of the 2015 Exemption itself. The argument that the 2015 Exemption invalidates the entire TCPA is a throw-away argument that has never worked in any court, ever. *See, e.g., AAPC*, 923 F.3d at 161 ("[W]e are satisfied to sever the flawed exemption from the automated call ban"); *Duguid* 926 F.3d at 1157 ("We reject Facebook's challenge that the TCPA as a whole is facially unconstitutional, but we sever the debt collection exception as violative of the First Amendment."); *Edwards v. Conn's, Inc.*, 2019 WL 4731942, at *1 (D. Nev. Sept. 27, 2019) ("Moving forward, all claims in this case will continue under the pre-amendment TCPA, which the Ninth Circuit has held to be content-neutral and consistent with the First Amendment."); *Katz*, 2019 WL 4645524, at *8 ("[T]he Court concludes that the government debt-collection exception of the TCPA is severable . . . Therefore, the claims in this case are unaffected by the debt-collection exception's unconstitutionality.); *Woods v. Santander Consumer USA Inc.*, 2017 WL 1178003, at *3 n.6 (N.D. Ala. Mar. 30, 2017) ("Even if the Court were to . . . find that the government-debt exception is invalid, the Court would not deem the entire TCPA to be unconstitutional because the [government-debt] exception [is] severable from the remainder of the statute." (internal quotation marks and citation omitted; alterations in original)); *Sliwa v. Bright House Networks, LLC*, No. 2:16-cv-235, 2018 WL 1531913, at *6 (M.D. Fla. Mar. 29, 2018) ("There can be little doubt that, upon a finding that the Government–Debt Exception violates the First Amendment, the proper course would be to sever that clause from the rest of Section 227(b)(1)(A)(iii)."); *Wijensinha v. Bluegreen Vacations Unlimited, Inc.*, 2019 WL 3409487, at 6 (S.D. Fla. Apr. 3, 2019) ("[I]f the amended TCPA were deemed unconstitutional, a finding of severability would cure the constitutional defect and preclude invalidation of the entire statute."); *Parker v. Portfolio Recovery Assocs., LLC*, 2019 WL 4149436, at *2 (C.D. Cal. July 11,

2019) ("[S]pecific evidence of the legislature's preference for retaining the valid TCPA provision is provided.").[4]

There is good reason why every decision has come down on the same side. Although Defendant argues, without any support from caselaw, that inseverability "is the general rule in the case of a constitutional violation," Def.'s Br. at 2, this argument is erroneous. Congress made its intent very clear: "If any provision of this chapter [containing the TCPA] . . . is held invalid the remainder . . . shall not be affected thereby." 47 U.S.C. § 608. "While not dispositive, this unambiguous language endorsing severability relieves us of a counterfactual inquiry as to congressional intend and creates a presumption of severability absent 'strong evidence that Congress intended otherwise.'" *Duguid*, 926 F.3d at 1156 (emphasis added) (quoting *Alaska Airlines*, 480 U.S. at 686). "The newly enacted exception did not suddenly and silently become so integral to the TCPA that the statute could not function without it." *Duguid*, 926 F.3d at 1157. Severing the 2015 Exemption simply brings the TCPA back to the tried-and-true form in which it existed for the two and a half decades prior to the passage of the 2015 Exemption.

In sum, the real issue in *Barr* is the constitutionality of the 2015 Exemption – which is not at issue in this case. The constitutionality of the TCPA itself is a red herring, as it is almost a certainty that the Supreme Court will sever the 2015 Exemption if it deems the 2015 Exemption unconstitutional.

---

[4] *See also Smith v. Truman Rd. Dev., LLC*, 2019 WL 5654352, at *16 (W.D. Mo. Oct. 31, 2019) ("Given the general presumption in favor of severability, the apparent Congressional intent that the unconstitutional provision be severed, and the TCPA's demonstrated ability to be fully operative without the severed provision, the Court finds the government-debt exception is severable . . . Therefore, Defendants' motion to dismiss on the ground that the government-debt exception is unconstitutional and unseverable is denied."); *Hand v. Beach Entm't KC, LCC*, 2019 WL 5654351, at *16 (W.D. Mo. Oct. 31, 2019) (same); *Taylor v. KC VIN, LLC*, 2019 WL 6499140, at *16 (W.D. Mo. Dec. 3, 2019) (same); *Doohan v. CTB Inv'rs, LLC*, 2019 WL 6497433, at *16 (W.D. Mo. Dec. 3, 2019) (same).

## II.    ALL FACTORS WEIGH AGAINST IMPOSITION OF A STAY

### A.    Legal Standard On A Motion To Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Texas Indep. Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 980 (7th Cir. 2005) (same). "Determining whether to grant a stay 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Tyus v. Semple*, 2020 WL 1083603, at *2 (D. Conn. Mar. 6, 2020) (quoting *Landis*, 299 U.S. at 254-55). "[T]he movant bears the burden of establishing its need for such a stay, and if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else, the movant must make out a clear case of hardship or inequity in being required to go forward." *Tyus*, 2020 WL 1083603, at *2.

"In deciding whether or not to stay a case, courts in the Second Circuit balance five factors: (1) the private interests of the plaintiff in proceeding expeditiously balanced against the prejudice to him if the litigation is delayed, (2) the private interests of and burden on the defendants, (3) the interests of the courts, (4) the interests of non-parties, and (5) the public interest." *Tyus*, 2020 WL 1083603, at *2; *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996). The "basic goal" of these factors "is to avoid prejudice." *LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 428 (S.D.N.Y. 2005).

Even before the Supreme Court delayed oral argument in *Barr* due to the ongoing COVID-19 pandemic, a number of courts had already denied motions to stay pending the Supreme Court's ruling in *Barr. See*, *e.g.*, *In re Midland Credit Mgmt., Inc. Tel. Consumer Prot. Act. Litig.* (hereinafter "*Midland Credit*"), 2020 WL 1287732, at *1 (S.D. Cal. Mar. 18, 2020) (denying Defendant's motion to stay "pending resolution of *Barr*"); *Bakov v. Consolidated World Travel,*

No. 1:15-cv-02980, ECF 290 (declining to stay case pending *Barr* and noting "Congress has written its preference for severability into the statutory text and, accordingly, the likelihood the entire TCPA will be invalidated is low"); *Sutor v. Amerigroup Corp.*, No. 1:19-cv-01602-LMB-JFA, ECF No. 20, at 2 (E.D. Va. Mar. 10, 2020) (denying motion to stay based on *Barr* and noting "Staying this action for months based on this possibility [that the Supreme Court will declare the entire TCPA to be unconstitutional] is inefficient and does not promote judicial economy"); *Lundborn v. Schwan's Home Service, Inc.*, No. 3:18-cv-02187, ECF No. 77 (D. Or. Mar. 23, 2020) ("Defendants' Motion for Stay of Case pending the Supreme Court's Decision in [*Barr*] is DENIED") (emphasis in original).

Likewise, courts have previously denied motions to stay based on awaiting FCC guidance on the TCPA. *See, e.g.*, Rosenberg *v. LoanDepot.com LLC*, 2020 WL 409634, at *4 (D. Mass. Jan. 20, 2020) ("Although enlightened FCC guidance [on the TCPA] might prove useful, the Court is unwilling to stay the instant case for an underminate [sic] period."); *Zemel v. CSC Holdings LLC*, 2018 WL 6242484, at *6 (D.N.J. Nov. 29, 2018) (finding a stay pending FCC guidance on the TCPA "was not warranted and will prejudice [plaintiff] Zemel"); *Wilson v. Quest Diagnostics, Inc.*, 2019 WL 7560932, at *3 (D.N.J. Aug. 22, 2019) (declining to stay case pending FCC guidance on the TCPA).

**B.**   **Plaintiff Will Be Prejudiced If This Case Is Stayed Pending Resolution Of *Barr***

Defendant argues "the request stay poses no risk of harm to Plaintiff." Def.'s Br. at 1. This is wrong.

The cornerstone consideration of a motion to stay "is to avoid prejudice" to the non-moving party. *LaSala*, 399 F. Supp. 2d at 428. Even a slight prejudice to a plaintiff can be sufficient to deny a motion to say. *Stanley Works Israel Ltd. v. 500 Group, Inc.*, 2018 WL 1960112, at *3 (D.

Conn. Apr. 26, 2018) (Haight, Jr., J.) (denying motion to stay where "the prejudice from a stay to Plaintiff may be slight, [but] there still exists the risk of prejudice").

Here, there is no question that Plaintiff and proposed class members will be prejudiced by a stay. *Sutor*, No. 1:19-cv-01602-LMB-JFA, ECF No. 20, at 3 ("[T]here is a significant risk that if the action is stayed several months [pending *Barr*], plaintiff will be prejudiced.") First, and most important, it is unlikely that the *Barr* decision will have an impact on this case. The *Barr* decision implicates the constitutionality of the 2015 Exemption, and it is unlikely that the Supreme Court will strike down the entire TCPA rather than sever this small exemption. *Midland Credit*, 2020 WL 1287732, at *4 ("[I]t appears unlikely that the Supreme Court would invalidate the entire automated-call restriction."); *Bakov* 1:15-cv-02980, ECF 290, at 4:18-20, ("Congress has written its preference for severability into the statutory text and, accordingly, the likelihood the entire TCPA will be invalidated is low"); *Sutor*, No. 1:19-cv-01602-LMB-JFA, ECF No. 20, at 2 (noting that for the Supreme Court to strike down the entire TCPA, it would have to decide "contrary to the holdings of the two courts of appeals to consider this issue"). Because this case does not concern the 2015 Exemption, the motion to stay would only create delay for delay's sake, and unnecessarily prejudice Plaintiff and putative class members in the process.

Moreover, there is no indication the stay will be short. The COVID-19 pandemic has slowed the pace of court proceedings nationwide and the *Barr* case is no exception to this, as the Supreme Court has postponed oral argument in *Barr*.[5] Accordingly, there is no guarantee that the Supreme Court will be able to expeditiously issue a decision on *Barr*, and the requested stay would deprive Plaintiff and the proposed class members of their right to an expeditious vindication of

---

[5] APRIL 2020 SESSION ARGUMENT CALENDAR,
https://www.supremecourt.gov/oral_arguments/calendars/MonthlyArgumentCalApril2020.html
(last accessed Apr. 15, 2020) (including *Barr* under the heading "ARGUMENTS POSTPONED").

their legal rights. *Sutor*, No. 1:19-cv-01602-LMB-JFA, ECF No. 20, at 2 ("Staying the case also delays plaintiff's potential recovery.")

Furthermore, unlike the ordinary delay inherent in litigation, Defendant's request for an extended, "open-ended stay will likely cause delay and prejudice to Plaintiffs' case" as a result of fading witness memories, document spoliation, and other irretrievable loss of evidence. *Molnar v. NCO Fin. Sys., Inc.*, 2015 WL 1906346, at *4 (S.D. Cal. April 20, 2015); *see also Pall Corp. v. Entergris, Inc.*, 2008 WL 11447997, at *1 (E.D.N.Y. Sept. 26, 2008) ("The delay may also make discovery more difficult once it does commence; the risks that evidence will be lost or that witnesses' / memories will fade can only grow with the stay."); *STMicroelectronics v. Credit Suisse Group*, 775 F. Supp. 2d 525, 545 (E.D.N.Y. 2011) ("Over time, employees leave, memories fade and documents disappear"); *Sutor*, No. 1:19-cv-01602-LMB-JFA, ECF No. 20, at 3 ("[A] prolonged stay can make discovery unnecessarily difficult for other reasons, as relevant employees leave and memories fade.").

In addition, the risks of harm are particularly acute in putative class actions such as this case, where the ability to reach class members diminishes over time. Forcing Plaintiff to wait an additional several months or longer to seek a determination as to whether a class should be certified (and then to notify any class that is certified) would have measurable harm on putative class members. Indeed, Rule 23 of the Federal Rules of Civil Procedure specifically notes that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A) (emphasis added). The lengthy stay sought by Defendant is thus contrary to Rule 23's insistence that class certification be timely decided.

Finally, Plaintiff and members of the proposed class would be damaged by a stay because it would delay this Court granting the injunctive relief sought in the Complaint, which is one of the primary forms of relief sought by Plaintiff to put a stop to Defendant's transmission of more unsolicited autodialed text messages to him and other class members in the future. Complaint (ECF No. 1) ¶ 25 ("This Class Action Complaint seeks injunctive relief and monetary damages"). Plaintiff's prayer for injunctive relief makes the requested stay especially inappropriate in this case. *See Lockyer v. Mirant*, 398 F.3d 1098, 1112 (9th Cir. 2005) (denying motion to stay where non-movant sought "injunctive relief against ongoing and future harm").

Accordingly, the prejudice to Plaintiff weighs against putting this litigation on ice pending a decision in *Barr*.

### C.     Defendant Will Not Suffer Hardship Or Inequity Absent The Requested Stay

Defendant argues "[i]f the case is not stayed pending a decision in [*Barr*] . . . Charter will have to invest substantial resources litigating this nationwide putative class action, despite the very real possibility that the Supreme Court . . . will render that investment unnecessary." Def.'s Br. at 10. This "hardship" is both non-existent insufficient to warrant staying the case.

"[T]he movant bears the burden of establishing its need for such a stay, and if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else, the movant must make out a clear case of hardship or inequity in being required to go forward." *Tyus*, 2020 WL 1083603, at *2; *Landis*, 299 U.S. at 255 (same). It is well established that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'" *Lockyer v. Mirant*, 398 F.3d 1098, 1112 (9th Cir. 2005); *see also Sutor*, No. 1:19-cv-01602-LMB- JFA, ECF No. 20, at 3 ("Although defendant argues that proceeding with discovery and motions practice will be costly, and may be irrelevant if the Supreme Court strikes down the entire TCPA,

the mere fact that this action will go forward, and that litigating it will cost money, is an insufficient reason to warrant a stay.") (internal quotations omitted); *Zemel*, 2018 WL 6242484, at *7 ("CSC Holdings' alleged hardship of conducting discovery and motion practice is tenuous, at best, because discovery and litigation will still be necessary in this action regardless of FCC's guidance").

In addition, as argued throughout this brief, there is not a "real possibility" that the Supreme Court will strike down the entire TCPA. *Midland Credit*, 2020 WL 1287732, at *4 ("[I]t appears unlikely that the Supreme Court would invalidate the entire automated-call restriction."); *Bakov* 1:15-cv-02980, ECF 290, at 4:18-20, ("Congress has written its preference for severability into the statutory text and, accordingly, the likelihood the entire TCPA will be invalidated is low"). The far more likely result is that, if the Supreme Court declares the 2015 Exemption to be unconstitutional, it will sever the 2015 Exemption from the TCPA and leave the remainder of the statute intact. Because this case does not concern the 2015 Exemption, Defendant suffers no harm by having to litigate sooner rather later a TCPA lawsuit it will inevitably have to face. Accordingly, Defendant will not be harmed by denying a stay.

**D.**    **A Stay Of The Litigation Pending A Decision In *Barr* Would Not Advance The Interests Of The Court**

Defendant argues "judicial economy [] also strongly militates in favor of a stay" pending *Barr*. Def.'s Br. at 11. This is incorrect. The *Sutor* court considered this exact issue in a TCPA case not involving the 2015 Exemption, just like the instant action. The *Sutor* court denied the motion to stay, holding that a stay would not promote judicial economy:

> [T]he primary issue before the Supreme Court in *Barr*, namely whether the government-debt exception to the TCPA is constitutional, is not applicable in this action. Accordingly, the only reason *Barr* would have any bearing on this case is if the Supreme Court both finds the government-debt exception unconstitutional, and decides, contrary to the holdings of the two court of appeals to

> consider this issue,[6] that the appropriate remedy is the extreme measure of striking down the entire statute. Staying this action for months based on this possibility is inefficient and does not promote judicial economy.

*Sutor*, No. 1:19-cv-01602-LMB-JFA, ECF No. 20, at 2; *see also Bakov* 1:15-cv-02980, ECF 290, at 5:14-17 ("Judicial economy is always a concern, but the Court finds that the very small likelihood of a fundamental shift in TCPA law does not outweigh everyone's interest, including the plaintiffs' and the Court's, in continuing apace."); *Midland Credit*, 2020 WL 1287732, at *4 ("Defendants have not sufficiently persuaded the Court that resources will be wasted on further discovery tasks."). In other words, there is only a remote possibility that the *Barr* decision impacts this case—which is a TCPA case that does not involve the 2015 Exemption—and it would not promote judicial resources to await this unlikely result. Thus, this factor weighs against granting a stay.

### E.  A Stay Will Not Promote The Interests Of Non-Parties

Defendant next argues "A stay would similarly promote the interests of non-parties that could be impacted by this litigation because it will (a) prevent discovery that would unnecessarily burden such parties and (b) ensure a uniform interpretation of the law." Def.'s Br. at 13. This is not correct. First, as noted above, the "harm" of conducting discovery and incurring other litigation expenses is an insufficient basis to grant a stay. *Sutor*, No. 1:19-cv-01602-LMB-JFA, ECF No. 20, at 3 ("Although defendant argues that proceeding with discovery and motions practice will be costly, and may be irrelevant if the Supreme Court strikes down the entire TCPA, the mere fact that this action will go forward, and that litigating it will cost money, is an insufficient reason to warrant a stay.") (internal quotations omitted); *Zemel*, 2018 WL 6242484, at *7 ("CSC Holdings'

---

[6] *See American Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 170-71 (4th Cir. 2019); *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1156-57 (9th Cir. 2019).

alleged hardship of conducting discovery and motion practice is tenuous, at best, because discovery and litigation will still be necessary in this action regardless of FCC's guidance").

Second, this case will not create disparate interpretation of the law because it does not concern the primary issue before the Supreme Court: whether the 2015 Exemption is constitutional. *Midland Credit*, 2020 WL 1287732, at *3 ("[T]he validity of the government-debt exception is the threshold issue that the Supreme Court must address and also find unconstitutional before it can assess if the government-debt exception is severable from the rest of the TCPA."). Because this case does not concern the 2015 Exemption, this case poses no risk to the uniform interpretation of the law. Accordingly, this factor does not weigh in favor of a stay.

**F.    A Stay Will Not Further The Public Interest**

Finally, Defendant argues "A stay would also promote the public interest because the efficient, fair, and uniform administration of the judicial system serves that interest." Def.'s Br. at 12. But as noted above, a stay of this case pending *Barr* will only harm judicial economy. *Sutor*, No. 1:19-cv-01602-LMB-JFA, ECF No. 20, at 2; *Bakov* 1:15-cv-02980, ECF 290, at 5:14-17; *Midland Credit*, 2020 WL 1287732, at *4.

Defendant also argues "the public has a strong interest in avoiding the enforcement of a statute that, as here, may violate the First Amendment." Def.'s Br. at 12-13. But the Supreme Court will only reach the constitutionality of the TCPA if the Court holds the 2015 Exemption unconstitutional. *Midland Credit*, 2020 WL 1287732, at *3 ("[T]he Supreme Court's decision *might* have an impact on the merits of Member Plaintiffs' claims if the Court *both* passes the threshold issue *and* then finds the government-debt exception is not severable.") (emphasis in original).  And as numerous courts have noted, it is unlikely the Supreme Court will find the entire TCPA unconstitutional. *Midland Credit*, 2020 WL 1287732, at *4 ("[I]t appears unlikely that the Supreme Court would invalidate the entire automated-call restriction."); *Bakov* 1:15-cv-02980,

ECF 290, at 4:18-20, ("Congress has written its preference for severability into the statutory text and, accordingly, the likelihood the entire TCPA will be invalidated is low"); *Sutor*, No. 1:19-cv-01602-LMB-JFA, ECF No. 20, at 2 (noting that for the Supreme Court to strike down the entire TCPA, it would have to decide "contrary to the holdings of the two courts of appeals to consider this issue"). Accordingly, the public's interest in the First Amendment is not implicated by this case because it is unlikely the entire TCPA will be deemed unconstitutional.

## III.   DEFENDANT'S CONTRARY CASES ARE UNPERSUASIVE

The Motion cites several decisions from district courts staying cases pending the Supreme Court's decision in *Barr*. One of these cases, *Perrong v. Liberty Power Corp, LLC*, No. 1:18-cv-00712-MN (D. Del.), is merely a docket entry staying the case pending *Barr* with no analysis. *Perrong*, No. 1:18-cv-00712-MN, ECF No. 66 (D. Del. Mar. 6, 2020). The other three— *Lindenbaum v. Realgy, LLC*, No. 1:19-cv-2862, ECF No. 16 (N.D. Ohio Mar. 19, 2020), *Seefeldt v. Entertainment Consulting Int'l, LLC*, 2020 WL 905844 (E.D. Mo. Feb. 25, 2020), and *Wright v. Exp Realty, LLC*, 2020 WL 1149906 (M.D. Fla. Feb. 7, 2020)—are inapposite and unpersuasive, and their reasoning should not be adopted by this Court.

First, the *Lindenbaum* court's opinion is unpersuasive. The *Lindenbaum* court simply granted the stay and made conclusory statements about the prejudice to plaintiffs, judicial economy, and other factors used to evaluate the necessity of a stay. *Lindenbaum*, No. 1:19-cv-2862, ECF No. 16 at 3-4.

As to *Seefeldt*, the *Seefeldt* court entered a stay for reasons largely having nothing to do with the constitutionality of the TCPA or the pendency of the appeal in *Barr*. Indeed, the *Seefeldt* court's decision to enter a stay rested primarily on the plaintiff's low likelihood of success in proving a violation of the statute, based on the Court's finding that the technology used to transmit the text messages at issue was unlikely to qualify as an ATDS pursuant to applicable Eighth Circuit

and Eastern District of Missouri legal authorities. *See Seefeldt*, 2020 WL 905844, at *3 ("[P]laintiff says it is defendants who have 'shown no likelihood of success on the merits.' But, as explained above, *Beal* patently suggests otherwise—defendants won summary judgment in their favor on facts substantially similar to this case. Similarly, plaintiff argues the public interest would be harmed because 'land line and cellular telephone lines were being abused' by defendants, which must be stopped. But *Beal* again suggests otherwise, finding the platforms used by Brew House (for the same years at issue, no less) 'are not an ATDS under the TCPA.'"). This Court, by contrast, must defer to the broad interpretation of the definition of ATDS set forth by the Second Circuit in *Duran v. La Boom Disco, Inc.*, 2020 WL 1682773 (2d Cir. Apr. 7, 2020). And Plaintiff's Complaint alleges facts that place Defendant's dialing technology squarely within *La Boom Disco*'s definition of ATDS. (*See*, *e.g.*, Compl. ¶¶ 17-20). Thus, *Seefeldt* is unpersuasive.

Finally, the decision in *Wright* is equally unpersuasive. *Wright* contains almost no legal analysis and fails to cite to, let alone apply, the pertinent factors set forth in the Supreme Court's decision in *Landis* or the Eleventh Circuit's equivalent to the five-factor test relied upon by courts in the Second Circuit. Instead, the decision in *Wright* relies on the Supreme Court's decision in *Ryan v. Gonzalez*, 568 U.S. 57 (2013). *Wright*, 2020 WL 1149906, at *1. *Ryan*, however, concerned the district court's "equitable power to stay proceedings when they determine that habeas petitioners are mentally incompetent." *Ryan*, 568 U.S. at 73. The *Wright* court also relied on *Clinton v. Jones*, 520 U.S. 681 (1997). *Wright*, 2020 WL 1149906, at *1. But *Clinton* is equally inapplicable, as the case concerned a request by President Clinton to stay civil litigation against him while in office in light of the "unacceptable burden on the President's time and energy" that would result absent a stay, "impair[ing] the effective performance of his office." *Clinton*, 520 U.S. at 702. This case, however, is a TCPA case (not a habeas corpus matter), the defendant is a text-

message marketer (not the President of the United States), and the litigation concerns Defendant's liability for sending text messages via an ATDS (as opposed to the Plaintiff's mental competence). Therefore, the *Wright* court unsurprisingly arrived at the wrong conclusion because it relied on the wrong legal authority and is unpersuasive as such.

Rather, the Court should adopt the persuasive reasoning of the courts in *Midland Credit*, *Bakov*, and *Sutor*, cited *supra*, in which the district courts denied motions to stay pending *Barr* (and in the process rejected the reasoning of the district courts in *Lindenbaum*, *Wright*, and *Seefeldt*, discussed above). *Bakov*, No. 1:15-cv-02980, ECF 290, at 4:24-5:3 ("Defendants have submitted supplemental authority demonstrating that some other courts have stayed their actions pending the Supreme Court decision, but this supplemental authority is not convincing.").

After properly weighing the appropriate factors for a motion to stay in a TCPA case, *Midland Credit*, *Bakov*, and *Sutor* all recognized that the extremely low chance that the Supreme Court will strike down the entire TCPA did not warrant a stay. *Midland Credit*, 2020 WL 1287732, at *4 ("[T]he Court finds the unlikelihood of the entire automated-call restriction being stricken suggests that a stay is inappropriate."); *Bakov*, No. 1:15-cv-02980, ECF 290, at 5:15 (finding a "very small likelihood of a fundamental shift in TCPA law"); *Sutor*, No. 1:19-cv-01602-LMB-JFA, ECF No. 20, at 2 ("Staying this action for months based on this possibility is inefficient and does not promote judicial economy."). All three decisions recognized that the primary issue before the Supreme Court was the constitutionality of the 2015 Exemption, not the entire TCPA. *Midland Credit*, 2020 WL 1287732, at *3 ("[T]he Supreme Court's decision *might* have an impact on the merits of Member Plaintiffs' claims if the Court *both* passes the threshold issue *and* then finds the government-debt exception is not severable."); *Bakov*, No. 1:15-cv-02980, ECF 290, at 5:3-4 ("The 2015 debt collection provision is narrow and not implicated in this case."); *Sutor*, No. 1:19-

cv-01602-LMB-JFA, ECF No. 20, at 2 ("[T]he primary issue before the Supreme Court in *Barr*, namely whether the government-debt exception to the TCPA is constitutional, is not applicable in this action."). And all three decisions found that the harm to plaintiffs, and even the harm to the courts themselves, outweighed any reasons for the stay. *Midland Credit*, 2020 WL 1287732, at *4 ("From the Court's perspective, staying this MDL would continue to consume more of the Court's resources and delay an already prolonged MDL."); *Bakov*, No. 1:15-cv-02980, ECF 290, at 5:15-17 (finding the remote possibility that the entire TCPA may be invalidated "does not outweigh everyone's interest, including the plaintiffs' and the Court's, in continuing apace."); *Sutor*, No. 1:19-cv-01602-LMB-JFA, ECF No. 20, at 3 ("[T]here is a significant risk that if the action is stayed for several months, plaintiff will be prejudiced.").

In short, this Court should follow the better-reason decisions in *Midland Credit*, *Bakov*, and *Sutor* and deny Defendant's motion to stay, rather than follow the unpersuasive and inapposite authority cited by Defendant.

## **CONCLUSION**

For the foregoing reasons, the Motion (ECF No. 31) should be denied in full.

Dated:  April 23, 2020

**BURSOR & FISHER, P.A**.

By:    */s/ Philip L. Fraietta*
       Philip L. Fraietta

Joseph I. Marchese*
Philip L. Fraietta (*pro hac vice*)
888 Seventh Avenue, Third Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com
      pfraietta@bursor.com

**HEDIN HALL LLP**
Frank S. Hedin*

David W. Hall*
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058
Email: fhedin@hedinhall.com
         dhall@hedinhall.com

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 S. Main Street, 3rd Floor
West Hartford, Connecticut 06110
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

*To Be Admitted Pro Hac Vice

*Counsel for Plaintiff and the Putative Class*

## **CERTIFICATE OF SERVICE**

I, Philip L. Fraietta, an attorney, hereby certify that on April 23, 2020, I served the above and foregoing Plaintiff's Opposition To Defendant's Motion To Stay Case on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF system.

*/s/ Philip L. Fraietta*