**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DANIEL REASE, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>      Defendant. | Case No. 3:20-cv-00150-RNC<br><br>Hon. Robert N. Chatigny |

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S REPLY**
**IN SUPPORT OF ITS MOTION TO STAY CASE**

**KABAT CHAPMAN & OZMER LLP**

Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300
(404) 400-7333 (fax)

**ROBINSON & COLE LLP**

Brian E. Moran
Connecticut Bar No. ct05058
bmoran@rc.com
Trevor L. Bradley
Connecticut Bar No. ct29993
tbradley@rc.com
1055 Washington Boulevard
Stamford, CT 06901
203-462-7500
203-462-7599 (fax)

*Counsel for Defendant Charter Communications, Inc.*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION............................................................................................................... | 1 |
| II. | ARGUMENT AND CITATION OF AUTHORITY......................................................... | 2 |
| | A.   *AAPC* Has Not Been Postponed Indefinitely, As Plaintiff Suggests ................. | 2 |
| | B.   Plaintiff Misstates the Issues Before the Supreme Court................................... | 3 |
| | C.   Plaintiff's Primary Argument About Severance Is Incorrect........................... | 4 |
| | D.   Plaintiff's Response Confirms the *Landis* Factors Strongly Favor a Stay ...................................................................................................................................... | 6 |
| | E.   Plaintiff's Authority Is Inapposite and the Vast Majority of Courts Have Granted Stays Pending *AAPC*................................................................... | 9 |
| III. | CONCLUSION ................................................................................................................ | 10 |

**I.     INTRODUCTION**

Plaintiff's Response confirms the Court should briefly stay this case pending the Supreme Court's imminent decision in *AAPC*, which will determine whether the TCPA's automated-call ban is an unconstitutional content-based restriction on speech (it is) for which severance is not the proper remedy (it is not). Rather than acknowledge the possibility that *AAPC* may end his lawsuit, Plaintiff asks the Court to decline the requested stay because: (a) argument in *AAPC* has supposedly been postponed indefinitely; (b) *AAPC* is irrelevant and the Supreme Court is unlikely to invalidate the TCPA provision governing Plaintiff's lawsuit; (c) a brief stay will prejudice Plaintiff and the uncertified class, but not Charter and third-parties who will bear the immense expense of litigating a nationwide class action; and (d) Charter's cited authority is allegedly inapposite. Plaintiff is wrong, many times over.

First, oral argument in *AAPC* has not been indefinitely postponed, as Plaintiff erroneously claims. The Supreme Court heard oral argument in *AAPC yesterday* and the Court is therefore poised to issue a decision by June, as it does in cases argued during the Spring.

Second, the briefing and oral argument confirm that *AAPC* is both relevant and potentially dispositive of Plaintiff's case. Not only did yesterday's oral argument show that it is a virtual certainty that the TCPA provision governing Plaintiff's lawsuit is unconstitutional; it confirmed the Supreme Court may very well strike that provision instead of curing it through severance. But even if the Court severs, as Plaintiff predicts, that would *still* end this case because Charter cannot be liable for calls Plaintiff allegedly received before the constitutional infirmities are cured through severance. In any event, the parties' speculation on this dispositive issue alone warrants a stay.

Third, Plaintiff's analysis of the *Landis* factors is wrong on many levels. As a court recently confirmed in staying an earlier-filed TCPA case against Charter (*Nakai v. Charter*

1

*Communications, Inc.*), the immense (and potentially unnecessary) expenses Charter will incur defending a nationwide class action during a pandemic is the very type of prejudice *Landis* stays are intended to prevent. Conversely, Plaintiff will suffer no real prejudice from a brief stay—particularly considering he does not suffer any ongoing harm. A stay will also prevent the Court from expending resources overseeing a class action lawsuit that may be moot in a matter of weeks.

Finally, Plaintiff's attempt to distinguish the numerous cases that have stayed TCPA class actions like his fall flat. In fact, Plaintiff's cited authority is inapposite, as those cases either included unaffected state law claims, were in advanced procedural stages, and/or were decided before the Supreme Court specially set the telephonic oral argument that occurred yesterday. Plaintiff's case, on the other hand, is in its infancy and involves only claims brought under the TCPA's automated-call ban, meaning the ruling in *AAPC* should end this case entirely.

For these and other reasons explained herein, the Court should briefly stay this case pending the Court's imminent ruling in *AAPC*.

## II.    ARGUMENT AND CITATION OF AUTHORITY

### A.    *AAPC* Has Not Been Postponed Indefinitely, As Plaintiff Suggests.

As a threshold matter, Plaintiff is wrong (at 14) that Charter's requested stay will be "open-ended" because *AAPC* was indefinitely postponed. In reality, the Supreme Court only delayed oral argument for a matter of days before specially scheduling telephonic argument for May 6 (yesterday).[1] Even Plaintiff's own citation (at n.3) makes clear that oral argument was **not** indefinitely postponed, rending a primary premise of his Response—and the primary source of his purported harm—unsound. *See* Doc. 39 at n. 3 (noting *AAPC* was "RESCHEDULED FOR ORAL

---

[1] *See* U.S. Supreme Court, Press Release, Apr., 13, 2020, https://www.supremecourt.gov/publicinfo/press/pressreleases/pr_04-13-20; *see also* Ex. A, Transcript, *Barr v. Am. Ass'n. of Political Consultants, Inc.*, No. 19-641 (Jan. 10, 2020) ("Transcript").

2

ARGUMENTS BY TELEPHONE CONFERENCE.") (emphasis original).

### B. Plaintiff Misstates the Issues Before the Supreme Court.

The second major premise of Plaintiff's Response (at 10–11)—that *AAPC* is irrelevant because the "real issue" is whether the government debt exception is constitutional, and this case does not involve that exception—is equally misguided.[2] To be clear, *AAPC* implicates **all** TCPA cases involving the automated-call ban because the respondent in *AAPC* "challenged the TCPA's restriction on automated calls" itself, arguing (correctly) that the government debt exception rendered the ban unconstitutional. *Br. of Respondents Am. Assoc. of Political Consultants, Inc. in Supp. of Cert.*, 2019 WL 6609436, *18 (Dec. 4, 2019). And the Supreme Court granted certiorari to address that exact argument—a fact confirmed by the Court and the parties during yesterday's oral arguments in *AAPC*, all of which confirmed the Court will almost certainly find the ban unconstitutional. *See* Transcript at 4–5 (Petitioner characterizing AAPC's argument as a "challenge to the underlying automated-call restriction"); *id.* at 12–13 ("I don't see how you can escape a content-based distinction[,]" thereby subjecting the ban to strict scrutiny) (Ginsberg, J.).

Indeed, **not even *AAPC*** involves debt-collection calls; it involves **political** calls that were impacted by the debt exception, which rendered the automated-call ban itself unconstitutional because the statute blatantly favors government speech (*i.e.*, the very type of favoritism the First Amendment is meant to protect against). As a court recently explained in a similar (and earlier-filed) case against Charter that also did not involve debt-collection calls: "[t]he possibility that the automated-call restriction will be invalidated . . . warrants a brief stay here that will promote

---

[2] Charter never argued that the Supreme Court will invalidate "the entire TCPA," as Plaintiff incorrectly claims (at 10). Rather, Charter only contends the Supreme Court will invalidate automated-call ban—the very section on which Plaintiff's lawsuit is based. That said, the Chief Justice suggested at oral argument that the entire statute could be on the chopping block. *See* Transcript at 8 ("when [the government debt exception is] combined with the rest of the statute, [it] makes the whole statute vulnerable . . . . why in that situation the whole statute shouldn't fall?") (Roberts, J.)

3

judicial economy." *Nakai v. Charter Commc'ns, Inc.*, 2:19-cv-08035, 2020 WL 1908949, at *6 (C.D. Cal. Apr. 15, 2020).

### C.    Plaintiff's Argument About Severance Is Incorrect.

Struggling with the reality that *AAPC* is not only relevant but potentially dispositive of his case, Plaintiff's final core argument against a stay is his prediction that while the Supreme Court may find the automated-call ban unconstitutional, it will sever the government debt exception from the ban, leaving his lawsuit intact. Plaintiff's argument fails for at least three reasons.

First, the fact there is an imminent, potentially case-determinative decision forthcoming from the Supreme Court alone merits a stay. That is why predicting the outcome of such a decision is not a factor this Court considers in deciding to grant a stay. *See, e.g.*, *Lacy v. Comcast Cable Commc'ns, LLC*, No. 3:19-CV-05007, 2020 WL 2041755, at *2 (W.D. Wash. Apr. 28, 2020) (staying TCPA case because "*AAPC* may provide useful guidance," regardless of the result); *Eric. B. Fromer Chiropractic, Inc. v. New York Life Ins. and Annuity Corp.*, No. 15-04767, 2015 WL 6579779, at *2 (C.D. Cal. Oct. 19, 2015) ("engag[ing] in that kind of speculation . . . . makes little sense because these issues are squarely before the Supreme Court."); *Kaye v. Merck & Co.*, No. 3:10-CV-1546, 2014 WL 2002447, at *1 (D. Conn. May 15, 2014) (Chatigny, J.) (noting partial stay of TCPA case was warranted even pending non-binding FCC guidance).

Second, Plaintiff's confidence (at 16–17) that there is no "real possibility" the Supreme Court will invalidate the automated-call ban ignores the fundamental question before the Court: whether "the proper remedy for ***any*** constitutional violation is to sever the exception from the remainder of the statute." *See* Question Presented Report. It is highly unlikely the Supreme Court phrased the question presented this way and granted certiorari in *AAPC* to simply affirm the Fourth and Ninth Circuit's analysis and severance remedy, given there is no Circuit split on the issue. *See*

U.S. Sup. Ct. Rule 10 ("A petition for a writ of certiorari will be granted only for compelling reasons . . . [and] is rarely granted when the asserted error consists of . . . the misapplication of a properly stated rule of law").

To that end, severance is not an appropriate remedy here because when a content-based restriction on speech violates the First Amendment, the proper remedy is to invalidate the restriction, not sever the speech-permitting exception. *See Reed v. Town of Gilbert*, 576 U.S. 155 (2015) (holding local ordinance was a content-based restriction on speech because of the existence of various exemptions and invalidating ordinance's restrictions themselves, rather than severing the exemptions); *see also* Transcript at 27 ("my colleagues have already noted the irony of a First Amendment challenge leading to the suppression of more speech as a remedy.") (Gorsuch, J). And contrary to Plaintiff's arguments (at 11), not even Congress can dictate whether severance is appropriate in the First Amendment context via a severability clause. *See United States v. Jackson*, 390 U.S. 570, 585, n. 27 (1968) ("the ultimate determination of severability will rarely turn on the presence or absence of such a clause"); *see also Lacy*, 2020 WL 2041755, at \*2 ("[W]hile circuit courts have [severed] based on the TCPA's severability clause, 47 U.S.C. § 608, it would be unwise to predict the Supreme Court's course of action with any certainty.").

Third, assuming the Supreme Court severs after finding the government debt exception unconstitutional, that would only validate the ban from the date of severance forward (*i.e.*, prospectively). Thus, even if the Supreme Court does exactly what Plaintiff predicts, ***that would still end this case***, as Charter could not be liable for messages Plaintiff allegedly received before any Supreme Court ruling that might "fix" the statute via severance. *See, e.g.*, *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017) (explaining defendant may attack his conviction "without regard to [how] the legislature might subsequently cure the [constitutional] infirmity");

5

*Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972) (similar); Br. Of Amicus Curiae Chamber of Commerce of the U.S., *Barr v. Am. Ass'n. of Political Consultants, Inc.*, No. 19-641, 2020 WL 1677248, at *30–31 (Jan. 10, 2020) (arguing same); *see also* Transcript at 31 ("I think the government-debt exception ***is almost certainly content-based***, at least for me. . . . ***you don't argue that it could satisfy strict scrutiny, correct***?") (Kavanaugh, J.) (emphasis added).

### D. Plaintiff's Response Confirms the *Landis* Factors Strongly Favor a Stay.

In light of the above, the *Landis* factors strongly weigh in favor of a stay and Plaintiff's arguments do not suggest otherwise. <u>First</u>, Plaintiff will not suffer prejudice from an indefinite stay pending *AAPC*, despite his conclusory assertions to the contrary.³ Initially, *AAPC* is not "completely irrelevant" to this case, as Plaintiff claims (at 6, 14). In fact, it may be dispositive of Plaintiff's entire lawsuit. *See Lacy*, 2020 WL 2041755, at *1 (deeming the automated-call ban unconstitutional "would be dispositive for [plaintiff's] claims"). As such, Plaintiff is simply wrong that waiting for the Supreme Court's decision in *AAPC* will be a prejudicial "delay for delay's sake." *See Boger v. Citrix Systems, Inc.*, No. 8:19-cv-01234-PX, 2020 WL 1939702, at *2 (D. Md. Apr. 22, 2020) ("[A]n indefinite stay would visit undue prejudice on the case. But that is not what this Court envisions regarding a stay to await the pending Supreme Court decision.").

Relatedly, Plaintiff's assertion (at 14) that "there is no indication a stay will be short" is demonstrably incorrect, undercutting his alleged harm. As noted above, oral argument was not indefinitely postponed—it occurred *yesterday*—and thus the Supreme Court will likely issue a decision by June. *See McGregory v. 21st Century Ins. & Fin. Serv., Inc.*, No. 1:15-CV-00098,

---

³ Plaintiff's misleadingly cites (at 13) *Stanley Works Israel Ltd. v. 500 Group, Inc.* for the proposition that even slight prejudice is grounds to deny a stay. 2018 WL 1960112, at *3 (D. Conn. Apr. 26, 2018). In reality, that case concerned a pending motion to dismiss, which is subject to an entirely different (and more rigorous) standard. *Id.* at *2 (considering "(1) the strength of the dispositive motion; (2) the breadth of the discovery sought; and (3) the prejudice a stay would have on the non-moving party.") (internal citations omitted).

2016 WL 11643678, at *3 (N.D. Miss. Feb. 2, 2016) (the Court's custom is to "issue all decisions in argued cases before the start of its summer recess in June"); *see also Lacy*, 2020 WL 2041755, at *2 (W.D. Wash. Apr. 28, 2020) ("despite the Coronavirus pandemic, the Court has gone ahead and scheduled a May telephonic oral argument in *AAPC*, suggesting that a stay would be brief.").

Plaintiff's concerns (at 15) about "fading memories" and "document spoliation" are equally unavailing. Instead, they are speculative, vague, and far from enough to establish harm. *See, e.g.*, *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014) ("Without more, however, these assertions [of fading memories and witnesses unavailability] are not sufficient to justify a conclusion of undue prejudice.") (reversing denial of stay); *see also Lindenbaum v. Realgy, LLC*, No. 1:19-cv-2862, 2020 WL 1908639, at *2 (N.D. Ohio Mar. 19, 2020*)* (rejecting same arguments made in granting stay pending *AAPC*).

Finally, that Plaintiff seeks injunctive relief on behalf of an uncertified class does not change that a stay is warranted. As an initial matter, Plaintiff's assertion is contradicted by the seminal *Landis* decision itself, where the entire claim was injunctive in nature. *See Landis v. North Am. Co.*, 299 U.S. 248, 254-255 (1936). In any event, this is not a case involving ongoing harm. Plaintiff is no longer receiving text messages and alleges only that Charter accidentally sent him a couple one-off order confirmation messages intended for a Charter customer—not marketing calls that are being blasted out to the public *en masse* on an ongoing basis. Doc. 1 at ¶¶ 10–13; *see Ramirez v. Trans Union, LLC*, No. 12-cv-00632-JSC, 2015 WL 6159942, at *2 (N.D. Cal. June 22, 2015) (granting *Landis* stay because the harm had ceased, "so there is no need to proceed with trial to obtain immediate injunctive relief"). Likewise, Plaintiff's argument about potential ongoing harm to class members is a red herring because no class has been certified. *See Lindenbaum*, 2020 WL 1908639, at *2 ("Although plaintiff argues that class members will be

7

prejudiced, there are currently no class members.").

Second, Plaintiff misunderstands the applicable *Landis* factors when he contends (at 16–17) that: (a) Charter will not be prejudiced by a stay; and (b) the Court will not waste its resources overseeing a potentially unconstitutional lawsuit. On the former point, Plaintiff's argument that the immense litigation expenses Charter will expend defending a nationwide class action does not constitute true "hardship" is simply incorrect.[4] The increasing majority of cases granting stays pending *AAPC* confirm that—especially considering he already served broad discovery requests on Charter, which the Court will ultimately have to address through motion practice. *See, e.g.*, *Lacy*, 2020 WL 2041755, at *2 ("[Defendant] could end up needlessly spending time and money to comply with [plaintiff's] broad discovery requests" if a stay pending *AAPC* was denied); *Nakai*, 2020 WL 1908949, at *6 (granting stay because "Charter would be required to spend additional resources defending [a putative class action] that may ultimately be rendered moot by . . . *AAPC*").

On the latter point, the Supreme Court's decision in *AAPC* will invalidate Plaintiff's claim, ***even if the Supreme Court rules exactly as Plaintiff predicts***, as explained above. Thus, the third factor—judicial economy—also weighs heavily in favor of a stay. *See, e.g.*, *Boger*, 2020 WL 1939702, at *2 ("A stay in these difficult circumstances [*i.e.*, during the COVID-19 pandemic] thus conserves precious judicial and case resources and avoids unnecessary expenditure of time and money on discovery for a cause of action that may ultimately be invalidated.").

Third, Plaintiff's arguments (at 18–20) for why the public and third parties will not benefit from a stay likewise fails. For one, the risk that third parties may incur potentially unnecessary litigation expenses defending an unconstitutional lawsuit during a pandemic **is** sufficient to justify

---

[4] Plaintiff also misstates the applicable *Landis* factor when he argues (at 7, 16) that Charter has not "clear[ly]" shown the Supreme Court will invalidate the automated-call ban. Plaintiff's own authority (at 16) establishes that Charter does not need to predict how the Court will rule; it need only articulate a clear "case of hardship. . . if required to go forward" in the absence of the Supreme Court's ruling, and it has. *Supra.* II.D.

8

a brief stay of this case. *See supra*. That is particularly true given that Plaintiff contemplates (at 15) "contacting class members" (whom Charter will then have to depose) during a pandemic where short-term discovery will be difficult and potentially dangerous. As to the public interest, Plaintiff ignores that the public does not benefit from the enforcement of a statute that the Court made clear at oral argument currently violates the First Amendment. *See Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (there exists "significant public interest" in upholding free speech principles); *see also* Transcript at 31 – 32 (noting the automated-call ban almost certainly cannot survive strict scrutiny and stating, "this for me at least [is] a case about severability."). Thus, all the *Landis* factors support a stay.

### E. Plaintiff's Authority Is Inapposite and the Vast Majority of Courts Have Granted Stays Pending *AAPC*.

And while Plaintiff cites a few cases where stays were denied, the vastly different postures and subject matters of those cases confirm the Court should stay *this* case. By way of example:

- *In re Midland Credit Mgmt., Inc. Tel. Consumer Prot. Act. Litig.*, Case No. 11-md-2286, 2020 WL 1287732 (S.D. Cal. Mar. 18, 2020) is a nearly decade-old MDL where only a few months of discovery remained. *Id.* at *3. Not only that, the court in *Midland* tailored its ruling to "**the unique characteristics of [that] MDL**." *Id.* at *5 (emphasis added).

- *Sutor v. Amerigroup Corporation*, No. 1:19-cv-01602, Doc. No. 20, (E.D. Va. Mar. 10, 2020): (a) turned on the fact that the plaintiff—unlike here—raised specific record preservation concerns;[5] (b) was decided **before** the Supreme Court specially scheduled telephonic oral argument for May 6; and (c) in any event, was wrongly decided because *AAPC* impacts all cases premised on the automated-call ban (*see supra* II.B.). Indeed, not even *AAPC* involved debt-collection calls. *Id.*

- *Bakov v. Consolidated World Travel*, No. 1:15-cv-02980, Doc. 290 (N.D. Ill. February 27, 2020): (a) involved a state law claim and thus could not be entirely resolved by a decision in *AAPC*; and (b) was in its "end stages, with all discovery and major substantive issues resolved."

---

[5] *Sutor v. Amerigroup Corporation*, No. 1:19-cv-01602-LMB-JFA, Dkt. No. 20, (E.D. Va. Mar. 10, 2020).

Plaintiff's case, conversely, is premised only on the automated-call ban, involves no state-law claims, and is in its preliminary stages. It is unsurprising, then, that the increasing majority of courts have stayed cases just like Plaintiff's pending the Supreme Court's forthcoming decision in *AAPC*—including a court in an earlier-filed case against Charter. *See, e.g.*, *Doyle v. Florida Health Solution, Corp.*, 1:19-cv-24013, Doc. 26 (S.D. Fla. Apr. 30, 2020) (granting motion to stay in ATDS case pending resolution of *AAPC*); *Lacy,* 2020 WL 2041755 at *2 ("Balancing these interests, this Court joins the other district courts that have briefly stayed TCPA cases pending the Supreme Court's decision in *AAPC*."); *Boger*, 2020 WL 1939702 ("a brief stay until the issuance of a significant, perhaps dispositive, Supreme Court decision promotes judicial economy and preserves litigation resources"); *Nakai*, 2020 WL 1908949, at *6, (similar); *Reuben Nathan v. Los Angeles Times Commc'ns, LLC*, 8:19-cv-02435-DOC-JDE, Dkt. No. 25 (March 17, 2020) (similar); *Strange v. Detroit Trading Services, LLC et al.*, 4:18-cv-13238-LVP-RSW, Dkt. No. 24 (Feb. 13, 2020) (granting stay after "considering the potentially dispositive effect of [*AAPC*], the judicial economy achieved by awaiting the Supreme Court's decision in [*AAPC*], the public welfare, and the relative hardships to the parties").

### III. CONCLUSION

For the reasons articulated above and in Charter's moving papers, the Court should grant a stay under the *Landis* factors. There is simply no more appropriate circumstance to grant a brief stay: the Supreme Court will imminently decide whether to invalidate the exact statutory provision on which this case turns, during a pandemic that renders short-term discovery difficult if not impossible. And on top of that, even the outcome predicted by Plaintiff would end this case. Charter respectfully requests that the Court grant its Motion.

10

Dated:  May 7, 2020.

        **KABAT CHAPMAN & OZMER LLP**

        */s/ Ryan D.  Watstein*
        Ryan D.  Watstein (*pro hac vice*)
        rwatstein@kcozlaw.com
        171 17th Street NW, Suite 1550
        Atlanta, Georgia 30363
        (404) 400-7300
        (404) 400-7333 (fax)
        *Counsel for Defendant Charter*
        *Communications, Inc.*

        **ROBINSON & COLE LLP**

        Brian E.  Moran
        Connecticut Bar No.  ct05058
        bmoran@rc.com
        Trevor L.  Bradley
        Connecticut Bar No.  ct29993
        tbradley@rc.com
        1055 Washington Boulevard
        Stamford, CT  06901
        203-462-7500
        203-462-7599 (fax)

## **CERTIFICATE OF SERVICE**

I certify that today I filed **DEFENDANT CHARTER COMMUNICATIONS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY CASE** using the Court's CM/ECF system, which will automatically send a notice of electronic filing to all counsel of record.

/s/ *Ryan D. Watstein*
Ryan D. Watstein (*pro hac vice*)