**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| DANIEL REASE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>Defendant. | Case No.: 3:20-cv-00150-RNC<br><br>Hon. Robert N. Chatigny |
|---|---|

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS AND BRIEF IN SUPPORT**

DATED: August 20, 2020

**KABAT CHAPMAN & OZMER LLP**

*/s/ Ryan D. Watstein*
Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300
(404) 400-7333 (fax)

**ROBINSON & COLE LLP**

Brian E. Moran
Connecticut Bar No. ct05058
bmoran@rc.com
Trevor L. Bradley
Connecticut Bar No. ct29993
tbradley@rc.com
1055 Washington Boulevard
Stamford, CT 06901
203-462-7500
203-462-7599 (fax)

*Counsel for Defendant Charter Communications, Inc.*

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................1

II. RELEVANT FACTS ..................................................................................2

III. RELEVANT LAW ......................................................................................3

A. Motion for Judgment on the Pleadings. ..................................................3

B. The Holding in *AAPC*. ...........................................................................4

IV. ARGUMENT .............................................................................................5

A. *AAPC* Deprives the Court of Subject Matter Jurisdiction over Plaintiff's Claims Because the Violation of an Unconstitutional Law Is Not a Justiciable Question.......................................................................................5

B. The Three-Justice Dicta in Footnote 12 of the *AAPC* Decision Does Not Warrant a Different Result. .....................................................................8

C. The Supreme Court's Recent Opinion in *Seila Law* Supports Dismissal. ............10

V. CONCLUSION ..........................................................................................13

## I. INTRODUCTION

"An act of congress repugnant to the constitution cannot become a law." *Marbury v. Madison*, 5 U.S. 137, 138 (1803). In this Telephone Consumer Protection Act ("TCPA") class action, Daniel Rease ("Plaintiff") asks the Court to cast aside this bedrock constitutional principle in seeking damages against Charter Communications, Inc. ("Charter") for allegedly violating the TCPA's "automated-call ban"—a ban that the Supreme Court just held was unconstitutional in *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) (hereinafter, "*AAPC*"). Specifically, the Supreme Court held that the TCPA's automated-call ban, upon which Plaintiff's case is entirely based, was an unconstitutional content-based restriction when combined with the government debt exception—a carveout that allowed only government debt collectors to violate the restriction. In other words, the automated-call ban has been unconstitutional, and thus entirely unenforceable, from the enactment of the government debt exception in 2015 until the Court severed it in *AAPC.* This inescapable conclusion, that Plaintiff is suing based on violations of an unconstitutional statute, is fatal to his entire action.[1]

It is true that the Supreme Court took the additional step in *AAPC* of preserving the TCPA as a whole by severing the government debt exception. But the fact that the Supreme Court cured the constitutional infirmity by severing the carve-out such that the automated-call ban can now be enforced *prospectively* does not change the impact of the ruling in this case: that Charter,

---

[1] Though beyond the scope of this Motion, Plaintiff's case is fatally flawed both on the merits and at class certification. As to the merits, and just by way of an example, Charter made no calls with an automatic telephone dialing system and had the consent of its customer who provided the number at issue to send the text messages. And even if that were not so, the wireless carrier exemption exempts the texts at issue, which were sent by a wireless carrier. And with regard to class certification, two separate courts recently denied class certification in similar "wrong number" cases against Charter's affiliates. *See Sliwa v. Bright House Networks*, 333 F.R.D. 255, 262 (M.D. Fla. 2019); *Hunter v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2019 WL 3812063, at * 1 (S.D.N.Y. Aug. 14, 2019). But the parties need not spend years litigating those issues, and the Court need not spend years policing and deciding them. That is because this case ends for a simple, threshold reason: the sole statutory provision under which Plaintiff sues was unconstitutional during the time the calls at issue occurred, thus depriving the Court of subject matter jurisdiction over the claims.

consistent with over two hundred years of constitutional jurisprudence, could not have violated a statutory provision that was unconstitutional at the time of the alleged violation.

An example illustrates this point. If, instead of government debt collectors, Congress passed a carve-out for the Donald Trump campaign that was later held to be unconstitutional, the disfavored speakers (any other speaker, including an opposing campaign) could not then be punished for making calls during the period of time for which the Trump campaign was given a free pass. That is to say, the disfavored speakers could not be punished for violating a flagrantly unconstitutional speech restriction. The same exact result follows here: Charter cannot be penalized for calls that allegedly violating the automated-call ban during the period of time the favored speakers—government debt collectors—were given a free pass to make calls. Thus, Plaintiff's action, which is premised on purported violations that occurred before July 6, 2020 (the date of the *AAPC* decision), is entirely barred and must be dismissed.[2]

## II. RELEVANT FACTS

On February 3, 2020, Plaintiff filed this putative class action, alleging that Charter sent him text messages using an automatic telephone dialing system ("ATDS") without his consent. Dkt. 1, ¶¶ 10-17. Plaintiff alleges that these were wrong number texts attempting to confirm a Spectrum Mobile customer's shipment. *Id.*, ¶ 14. Based on these alleged texts, Plaintiff asserts one claim for violations of the TCPA's automated-call ban provision of 47 U.S.C. § 227(b)(1)(A)(iii). *Id.*, ¶¶ 36-41. This provision makes it unlawful for any person to call a cellular phone without consent using an ATDS, with certain exceptions. *Id.*; 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff also asks the Court to certify one nationwide class for ATDS text

[2] Because the Supreme Court decided the constitutional challenge to the automated-call ban in *AAPC*, Federal Rule of Civil Procedure 5.1 does not apply to the instant filing and a notice of constitutional challenge is not required. *See* Fed. R. Civ. P. 5.1. If the Court determines otherwise, Charter will promptly file such a notice.

messages sent without consent. *Id.*, ¶ 21.

## III. RELEVANT LAW

### A. Motion for Judgment on the Pleadings.

"It is axiomatic that a lack of subject matter jurisdiction may be raised at any time." *Mulligan v. Am. Inst. of Certified Pub. Accountants Ins. Tr.*, No. 3:99-CV-1407-AWT, 2001 WL 777437, at *1 (D. Conn. June 26, 2001) (citing *Wight v. BankAmerica Corp.*, 219 F.3d 79, 90 (2d Cir. 2000)). "Although a motion to dismiss for lack of subject matter jurisdiction is normally raised pursuant to Rule 12(b)(1), such a motion may also be raised pursuant to Rule 12(c) [a]fter the pleadings are closed," and they are decided under the same standards. *Id.* ("[I]f a party raises an issue of subject matter jurisdiction on his motion for a judgment on the pleadings, the court will treat the motion as if it had been brought under Rule 12(b)(1).") (citing 5A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. and Proc.* § 1367 (1990)). Dismissal for lack of subject matter jurisdiction is proper when the district court lacks the statutory or constitutional power to adjudicate a claim. *Wiggins v. Justices of S. Ct. of N.Y., App. Div., Second Judicial Dep't*, 434 F. App'x 2, 3 (2d Cir. 2011) (cits. omitted). In resolving a motion to dismiss (and thus a judgment on the pleadings) for lack of subject matter jurisdiction, a district court may consider evidence outside the pleadings. *See, e.g.*, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The burden of establishing federal jurisdiction rests on the plaintiff. *Id.* ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.").

Additionally, the Constitution limits the federal judicial power to designated "cases" and "controversies." U.S. Const., Art. III, § 2. The Supreme Court has long held that "if the laws are unconstitutional and void, the [federal court has] no jurisdiction of the causes." *Ex parte Siebold*,

100 U.S. 371, 377 (1880); *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 724 (2016) (sentence under unconstitutional law is void because state was deprived of authority to impose it); *United States. v. Baucum*, 80 F.3d 539, 540-41 (D.C. Cir. 1996) ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)[.]").

**B. The Holding in *AAPC*.**

In January, the Supreme Court granted *certiorari* in *AAPC*, framing the issues as "[1] [w]hether the government-debt exception to the TCPA's automated-call restriction violates the First Amendment, and [2] whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute." Question Presented Report, *AAPC*, No. 19-631, https://www.supremecourt.gov/docket/docketfiles/html/qp/19-00631qp.pdf (last visited August 14, 2020). The Supreme Court did not grant certiorari to consider whether the statute was enforceable pre-severance; nor did the parties ever brief that issue. *Id.* Indeed, since *AAPC* was a direct challenge to the automated-call ban, there was no underlying litigation and, thus, no occasion for the Supreme Court to decide the impact of the decision on pending TCPA cases like this one. *See id*.

On July 6, 2020, the Supreme Court decided *AAPC*. The Court's Opinion was a deeply fractured plurality, but a majority of Justices still agreed that the automated-call ban, upon which Plaintiff's case is entirely based, was an unconstitutional content-based restriction when combined with the government debt exception. *AAPC*, 140 S. Ct. 2346 ("The initial First Amendment question is whether the robocall restriction, with the government-debt exception, is content-based. The answer is yes."). Specifically, the automated-call ban combined with the government debt exception "impermissibly favored debt-collection speech over political and other speech, in

violation of the First Amendment." *See id* at 2344. Because the restriction was content based, it was subject to strict scrutiny, which it failed to pass.[3] *Id*. Six justices agreed with this conclusion. *Id*. Rather than scrapping the entire statute, however, the Supreme Court opted to save the TCPA by severing the government debt exception, though only three Justices (Kavanaugh, Roberts, and Alito) joined in the plurality's rationale for doing so. *Id*. at 2352–54.

## IV. ARGUMENT

### A. *AAPC* Deprives the Court of Subject Matter Jurisdiction over Plaintiff's Claims Because the Violation of an Unconstitutional Law Is Not a Justiciable Question.

"'[A]n unconstitutional law is void, and is as no law.'" *Montgomery*, 136 S. Ct. at 731 (quoting *Siebold*, 100 U.S. at 376). A violation of such a law is "not merely erroneous, but is illegal and void, and . . . [bestows upon] the Circuit Court . . . no jurisdiction of the causes." *Siebold*, 100 U.S. at 376-377; *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 759-760 (1995) ("A court does not—in the nature of things it *can* not—give a 'remedy' for an unconstitutional statute, since an unconstitutional statute is not in itself a cognizable 'wrong.'") (emphasis in original and citing *Marbury*, 5 U.S. at 178) (Scalia, J. concurring); *McClure v. Middletown Hosp. Ass'n*, 603 F. Supp. 1365, 1368 (S.D. Ohio 1985) ("We accept the proposition that unconstitutional statutes are generally void *ab initio*[.]").

Here, Plaintiff's action is based on alleged text messages sent in violation of the automated-call ban prior to July 6, 2020, at a time during which the Supreme Court in *AAPC* determined this ban was unconstitutional (and prior to the Supreme Court's "cure" of the constitutional infirmity

---

[3] Notably, strict scrutiny is the same standard the Supreme Court would apply to viewpoint discrimination, meaning the analysis and result in *AAPC* would have been the same if the exception had favored a particular political party, race, or ethnic group. *See AAPC*, 140 S. Ct. at 2347 ("[T]he robocall restriction with the government-debt exception is content-based. Under the Court's precedents, a law that is content based is subject to strict scrutiny." (internal quotations omitted)).

through severance of the government debt exception). Accordingly, because Charter could not have violated an unconstitutional statute and this Court cannot provide a remedy for a violation of an unconstitutional statute, there is no justiciable federal question, compelling dismissal.

The necessity of this result is illustrated by numerous cases. Indeed, imposing liability for speech that allegedly violates an unconstitutional statute is irreconcilable with Supreme Court precedent and fundamental due-process and equal protection principles. In *Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972), the Supreme Court noted, in a constitutional challenge to a content-based speech restriction, that courts "must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted." In other words, the relevant inquiry is whether the offending statute was constitutional at the time the violation occurred, not whether it has subsequently been cured by judicial or legislative action. Thus, in this case, the automated-call ban must be assessed at the time Charter allegedly committed the violations, which was prior to July 6, 2020, at a time the ban illegally favored government debt collectors. *See Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017) (noting in a majority opinion that a "defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity"); *United States v. Stroke*, No. 1:14-CR-45S, 2017 WL 2643666, at *2 (W.D.N.Y. June 20, 2017) ("probable cause cannot rest on a statute that was unconstitutional at the time of an alleged incident").

Similarly, in *Montgomery*, the Supreme Court addressed whether a new constitutional ruling from 2012 interpreting the Eighth Amendment to ban mandatory life sentences for juvenile homicide offenders must be applied retroactively to a juvenile who had been sentenced to life without parole in 1963. *See* 136 S. Ct. at 723. The Supreme Court concluded the answer is yes: a

"penalty imposed pursuant to an unconstitutional law is no less void because the prisoner's sentence became final before the law was held unconstitutional. There is no grandfather clause that permits States to enforce punishments the Constitution forbids. To conclude otherwise would undercut the Constitution's substantive guarantees." *Id.* at 730 (citing *U.S. v. U.S. Coin and Currency*, 401 U.S. 715, 724 (1971) ("'No circumstances call more for the invocation of a rule of complete retroactivity' than when "'the conduct being penalized is constitutionally immune from punishment.'")); *see also Waldron v. United States*, 146 F.2d 145, 147-148 (1944) (vacating judgment against criminal defendant based on violation of unconstitutional statute, explaining "inspection of the record discloses clearly that the court was without jurisdiction to enter the judgment").

These decisions unanimously recognize the fundamental unfairness of imposing penalties for violations of a statute that was concededly unconstitutional—and thus "void"—when the alleged violations occurred. They also make obvious, intuitive sense. If the rule were otherwise, the political party in power could pass similar unconstitutional exceptions to favor its own preferred speech, knowing it could only be penalized on a prospective basis once a challenge reached the Supreme Court. To put this example in starker terms, if a Republican Congress added an exception to the TCPA permitting Republican campaigns to make calls that were prohibited for everyone else and the Supreme Court severed that exception, litigants could not (and would not) legitimately argue that a Democratic Political Action Committee could be penalized for violating the pre-severance statute but that a Republican campaign could only be penalized post-severance. This would be an untenable and outlandish result that is inconsistent with our democracy—and it is not the law. *See Baucum*, 80 F.3d at 540-41 ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since

there is no valid 'law of the United States' to enforce)[.]"). It follows here that Charter cannot be penalized for sending text messages pre-severance, in alleged violation of an unconstitutional provision, when the government debt collectors making calls were excused. Indeed, such a result would vitiate the majority holding of *AAPC* (that the automated call ban combined with the government debt exception is unconstitutional).

**B. The Three-Justice Dicta in Footnote 12 of the *AAPC* Decision Does Not Warrant a Different Result.**

Speaking for a three-Justice plurality, Justice Kavanaugh states in footnote 12:

> As the Government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. [citation omitted]. *On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.*

*AAPC*, 140 S. Ct. at 2355, n.12 (emphasis added). Though the footnote is admittedly vague, it does not change the conclusion that the Court lacks subject matter jurisdiction over the Plaintiff's claims.

This is true for several reasons. *First*, the footnote consists of pure obiter dicta,[4] which should be afforded little weight, particularly because it was only the opinion of three justices. Thus, it was correctly characterized by Justices Thomas and Gorsuch (both of whom criticized this dicta) as only a non-binding "suggestion." *See id*. at 2363. For that reason, it does not change the

[4] *Black's Law Dictionary* defines obiter ("something said in passing") dictum as a "comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not *precedential* (though it may be considered persuasive). 879 (7th ed. 2000) (emphasis added). Chief Justice Marshall characterized it in *Cohens v. Virginia*, 19 U.S. 264, 399, 5 L. Ed. 257 (1821) as dicta that "may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision." *See also Dallio v. Spitzer*, 343 F.3d 553, 562 (2d Cir. 2003) ("While 'general expressions' of law by the Supreme Court that go beyond the actual decision in the case may well merit respect, they do not constitute 'clearly established law, as determined by the Supreme Court . . . .'") (cits. omitted).

binding effect of the *holding* of the case, adopted by a *majority* of Justices: that the automated-call ban combined with the government-debt exception was unconstitutional pre-severance (*i.e.*, going back to 2015 when the debt exception was enacted). *See id*. at 2343 ("Six Members of the Court today conclude that Congress has impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment.").[5] And the result of *AAPC*'s binding holding is, as explained above, that the automated-call ban cannot be enforced against Charter in this case, based on over 200 years of prior Supreme Court precedent. *See supra* IV.A.

*Second*, though the footnote is admittedly ambiguous, based on the circumstances, statements in the footnote itself, and prior Supreme Court precedent, it is most reasonably interpreted as referring to only past *judgments*. In other words, the plurality did not mean *AAPC* to negate or undo liability against parties that has already been *adjudicated*.[6] This is consistent with prior Supreme Court precedent that recognizes "a distinction between the application of a change in the law that takes place while a case is on direct review on the one hand, and its effect on a final judgment under collateral attack, on the other hand." *See Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 710-711 (1974); *Harris v. Kuhlmann*, 346 F.3d 330, 341 n.5 (2d Cir. 2003) (explaining that new rules for conduct of criminal prosecutions apply retroactively to all cases pending on direct review or not yet final at the time the new rule is decided); *N.L.R.B. v. Coca-Cola Bottling Co. of Buffalo*, 55 F.3d 74, 77 (2d Cir. 1995) ("The 'law of the case' doctrine, unlike the rule of res judicata, authorizes departure from a prior ruling in the event of 'an

---

[5] Put another way, the holding of the case is binding precedent and the footnote is not. *See AAPC*, 140 S. Ct. at 2366 (shielding "only government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination [the Supreme Court says it is] seeking to eliminate") (Gorsuch, J concurring).

[6] *Black's Law Dictionary* defines liability as the "quality or state of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment . . . ." 739 (7th ed. 2000). Thus, liability implies a preexisting determination (*e.g.*, from a court of law) to hold a party responsible.

intervening change in the controlling law.'") (cits. omitted); *Hawkins v. LeFevre*, 758 F.2d 866, 877 n.14 (2d Cir. 1985) ("The Supreme Court has held that 'a change in law with be given effect while a case is on direct review.'"). This is also the only way to read the footnote consistent with *Seila Law,* in which the same three Justices who joined the plurality in *AAPC*—and just one week before *AAPC* decision—cast doubt on the viability of actions taken by the Consumer Financial Protection Bureau (the "CFPB") during the time its leadership structure was unconstitutional. *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2208-09 (2020), discussed in detail *infra,* in Section IV.C.

In short, coupled with the Supreme Court's long-standing precedent, its recent decision in *Seila Law*, and the fact the parties did not even brief the issue, the last sentence of the plurality's footnote 12 cannot reasonably be interpreted to allow courts in ongoing cases such as this one to penalize defendants under a statute that was unconstitutional at the time of the alleged conduct. Indeed, the Supreme Court is "a court of review, not of first view," and it "ordinarily will not decide questions not raised or litigated in the lower courts," certainly not in one sentence without any analysis, and certainly not when doing so would require overruling prior precedent. *See McLane Co., Inc. v. E.E.O.C.*, 137 S. Ct. 1159, 1170 (2017) (internal quotations omitted); *City of Springfield, Mass. v. Kibbe*, 480 U.S. 257, 259 (1987).

### C. The Supreme Court's Recent Opinion in *Seila Law* Supports Dismissal.

As noted above, the Supreme Court decided *Seila Law* a week before *AAPC,* and *Seila Law* strongly supports the conclusion that the automated-call ban cannot be enforced against Charter in this case. 140 S. Ct. at 2208-09. In *Seila Law,* a three-justice plurality comprised of Justices Roberts, Alito, and Kavanaugh (the same plurality as the severance portion of the *AAPC* decision) recognized the long-standing principle that unconstitutional laws are unenforceable during the time

they are unconstitutional, even if later cured prospectively through severance. *See id*. A majority of the Justices further concluded that the CFPB's leadership structure, consisting of a single director removable only for cause, was unconstitutional because it violates the separation of powers. *Id*. at 2204. To cure this constitutional infirmity, the three-justice plurality (Roberts, Alito, and Kavanaugh), in Part IV of the opinion, opted to sever the director's protection from removal by the President. *Id.* at 2207-08.

In so holding, this plurality acknowledged that actions taken under the CFPB's constitutionally infirm leadership structure (such as investigations, litigation, and even promulgation of regulations) may require dismissal/invalidation—*unless* subsequent ratification by a constitutionally sound CFPB has occurred. *See id*. at 2208 ("The parties dispute whether this alleged ratification in fact occurred and whether, if so, it is legally sufficient to cure the constitutional defect in the original demand . . . . A remand for the lower Courts to consider those questions in the first instance is therefore the appropriate course[.]"). Thus, the Supreme Court remanded to the lower court to determine "the lingering ratification issue." *Id.* In further evidence of the seriousness of the problem created by the Court's holding that the CFPB's leadership structure was unconstitutional for a period of time, the CFPB thereafter took action (the day after the *Seila Law* decision) to formally ratify actions taken from January 4, 2012, through June 30, 2020 in order to ensure they are not attacked on grounds of being void. *See CFPB Ratifies Prior Regulatory Actions*, CFPB, https://www.consumerfinance.gov/about-us/newsroom/cfpb-ratifies-prior-regulatory-actions/ (last visited August 14, 2020).

If the constitutionality of the statute posed no problems to the viability of acts taken by the CFPB while its structure was unconstitutional, then there would have been no need for the lower courts to determine the extent to which ratification occurred and no need for the CFPB to ratify its

own prior acts. Put another way, by remanding the ratification issue to the lower court, the Supreme Court (including the ***same*** three justices who severed the debt exemption in *AAPC*) recognized that, absent ratification, the acts taken by the CFPB may be deemed void unless they were ratified on a *prospective* basis.

The logic underlying the Supreme Court's application of the severance doctrine in *Seila Law* applies with equal force to the automated-call ban. Put differently, the Supreme Court's severance of the government debt exception cured the ban's infirmity on a prospective basis. But it did not (and could not) cure the infirmity with respect to calls made during the time the law was unconstitutional—at the time it impermissibly favored one group of speakers over another.

Further, the constitutional defect in *AAPC* was far more severe than in *Seila Law*, where the defect was procedural, thereby allowing the new CFPB leadership to ratify prior acts committed by the CFPB's then-unconstitutional leadership with no harm to the affected parties. In contrast, the nature of the constitutional defect in the TCPA was *substantive*, favoring one group of speakers over another with the disfavored speakers potentially on the hook for ruinous liability—hundreds of billions of dollars in statutory penalties that are akin to criminal penalties[7]—while the favored speakers were entirely absolved. Unlike the procedural defect in *Seila Law*, this substantive defect cannot be cured through ratification. Accordingly, consistent with the Court's logic in *Seila Law*, the Court cannot impose liability against Charter for allegedly violating the automated-call ban during the time it was constitutionally infirm. *See also Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760, 767 n. 2 (Mem) (D.C. Cir. 2020) (denial of petition for en banc

[7] *See, e.g.*, *Wakefield v. Visalus, Inc.*, No. 3:15-cv-1857-SI, Dkt. 377 (D. Or. Aug. 14, 2020) (holding $925,220,000.00 judgment did not violate due process); *McMillion, et al. v. Rash Curtis & Assoc.*, No. 4:16-CV-03396-YGR, Dkt. 430 (N.D. Cal. May 4, 2020) (judgment awarding class damages for TCPA violations in amount of $267,349,000).

review) ("judicial severance of one portion of an unconstitutional statute is, by necessity, only applicable prospectively") (O'Malley, J concurring).

## V. CONCLUSION

*AAPC* held that the TCPA's automated-call ban was an unconstitutional content-based restriction when combined with the government debt exception that was enacted in 2015 and in place until the Supreme Court severed it on July 6, 2020. 140 S. Ct. at 2346. The violations of the automated-call ban asserted by Plaintiff occurred during the time the ban was unconstitutional. Thus, the Court should dismiss the action because it lacks jurisdiction to enforce a void law against Charter. *See Marbury*, 5 U.S. at 180.

DATED: August 20, 2020.

**KABAT CHAPMAN & OZMER LLP**

*/s/ Ryan D. Watstein*
Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300
(404) 400-7333 (fax)

**ROBINSON & COLE LLP**

Brian E. Moran
Connecticut Bar No. ct05058
bmoran@rc.com
Trevor L. Bradley
Connecticut Bar No. ct29993
tbradley@rc.com
1055 Washington Boulevard
Stamford, CT 06901
203-462-7500
203-462-7599 (fax)

*Counsel for Defendant Charter Communications, Inc.*

**CERTIFICATE OF SERVICE**

I certify that today I electronically filed this **DEFENDANT CHARTER COMMUNICATION, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS AND BRIEF IN SUPPORT** with the Clerk of Court using the CM/ECF filing system, which will automatically send an electronic copy to all counsel of record.

Dated: August 20, 2020.

*/s/ Ryan D. Watstein*
Ryan D. Watstein (*pro hac vice*)