**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DANIEL REASE, individually and on behalf of all others similarly situated,<br><br>　　Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>　　Defendant. | Case No.: 3:20-cv-00150-RNC<br><br>Hon. Robert N. Chatigny |

**DEFENDANT'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a) AND BRIEF IN SUPPORT**

　　DATED: August 26, 2020　　　　　*/s/ Ryan D. Watstein*
　　　　　　　　　　　　　　　　　　　**KABAT CHAPMAN & OZMER LLP**
　　　　　　　　　　　　　　　　　　　Ryan D. Watstein (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　rwatstein@kcozlaw.com
　　　　　　　　　　　　　　　　　　　171 17th Street NW, Suite 1550
　　　　　　　　　　　　　　　　　　　Atlanta, Georgia 30363
　　　　　　　　　　　　　　　　　　　(404) 400-7300
　　　　　　　　　　　　　　　　　　　(404) 400-7333 (fax)

　　　　　　　　　　　　　　　　　　　**ROBINSON & COLE LLP**

　　　　　　　　　　　　　　　　　　　Brian E. Moran
　　　　　　　　　　　　　　　　　　　Connecticut Bar No. ct05058
　　　　　　　　　　　　　　　　　　　bmoran@rc.com
　　　　　　　　　　　　　　　　　　　Trevor L. Bradley
　　　　　　　　　　　　　　　　　　　Connecticut Bar No. ct29993
　　　　　　　　　　　　　　　　　　　tbradley@rc.com
　　　　　　　　　　　　　　　　　　　1055 Washington Boulevard
　　　　　　　　　　　　　　　　　　　Stamford, CT 06901
　　　　　　　　　　　　　　　　　　　203-462-7500
　　　　　　　　　　　　　　　　　　　203-462-7599 (fax)

　　　　　　　　　　　　　　　　　　　*Counsel for Defendant Charter*
　　　　　　　　　　　　　　　　　　　*Communications, Inc.*

Oral Argument Not Requested

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND AND RELEVANT PROCEDURAL HISTORY................................. 3

    A. Spectrum Mobile Offers Telecommunications Services in Various States and Contracts with Virginia-Based SkyCreek Corporation to Communicate with Subscribers. ........................................................................ 3

    B. Plaintiff Receives Text Messages Intended for a Florida Resident from SkyCreek to his Florida Cellular Phone Number. ................................................ 4

III. ARGUMENT .................................................................................................................... 6

    A. Legal Standard on a Motion to Transfer Venue........................................................ 6

    B. Personal Jurisdiction and Venue Were Proper in Florida At the Time of Filing, and Thus this Case Could have Been Brought There................................. 7

    C. All Relevant Factors Favor Transfer......................................................................... 7

        1. *Plaintiff's Choice of Forum Is Entitled to Little Deference*..................... 8

        2. *The Convenience of Parties and Witnesses Favor Transfer*.................... 9

        3. *Transfer Is Also Warranted Considering the Ability to Compel Attendance of Unwilling Witnesses*........................................................... 9

        4. *The Location of Relevant Documents and Relative Ease of Access to Sources of Proof Support Transfer.* ......................................................... 11

        5. *The Locus of Operative Facts Is in Florida*........................................... 12

        6. *The Relative Means of the Parties Also Support Transfer* .................... 12

        7. *Trial Efficacy and the Interests of Justice Underscore the Need to Transfer this Case.* ................................................................................. 13

IV. CONCLUSION............................................................................................................... 14

## I. INTRODUCTION

In this Telephone Consumer Protection Act ("TCPA") class action, Plaintiff asks this Connecticut Court to enter a nationwide class action judgment against Charter Communications, Inc. ("Charter") based on text messages he received and then complained about in Florida, from a Florida phone number, intended for a Florida-based subscriber of a legally distinct company, Spectrum Mobile, LLC ("Spectrum Mobile"), which is incorporated and headquartered outside Connecticut. The vendor that transmitted the messages is also located outside Connecticut, as is the Spectrum technology that triggered the messages and the servers where the messages are stored.[1] As such, this case has no meaningful connection to Connecticut and significant connections to Florida. Thus, should the Court decline to dismiss the case in response to Charter's concurrently filed motion to dismiss for lack of subject matter jurisdiction, it should exercise its discretion and transfer this case under 28 U.S.C. § 1404(a) to the Middle District of Florida. That is the location of the relevant Charter employees, key non-parties, and the vast majority of witnesses, and where the "harm" allegedly occurred. Transfer will streamline discovery, render trial manageable, and serve the interests of justice.[2]

To start, personal jurisdiction and venue would have been proper in the Middle District of Florida when this action was filed because this is where Plaintiff received the messages at issue and where the intended recipient of the messages resides. Thus, the threshold qualifications for

---

[1] It is not a mystery why Plaintiff would seek to avoid Eleventh Circuit (*i.e.*, Florida) TCPA law, which poses an existential threat to his case. *See Glasser v. Hilton Grand Vacations Co.*, LLC, 948 F.3d 1301, 1309 (11th Cir. 2020) (holding that, in order to qualify as ATDS, equipment must generate random or sequential numbers); *Salcedo v. Hanna*, 936 F.3d 1162, 1167 (11th Cir. 2019) (single unsolicited text message sent in violation of the TCPA does not confer Article III standing).

[2] As set forth in greater detail in Charter's Motion to Stay, filed concurrently herewith, should the Court decline to dismiss this case for lack of subject matter jurisdiction or transfer this case, it should stay it pending the Supreme Court's forthcoming consideration of the definition of an ATDS in *Facebook, Inc. v. Duguid*, No. 19-511 (cert. granted July 9, 2020) ("*Facebook*"). The definition of an ATDS is a critical issue that goes to the heart of Plaintiff's claims and may dispose the case entirely.

1

transfer under Section 1404(a) are satisfied.  In addition, all seven relevant convenience factors also strongly favor transfer.

*First*, Plaintiff's decision to file in Connecticut is entitled to minimal deference because Plaintiff lived in Florida when he brought this nationwide class action, received the messages at issue in Florida, and only filed in Connecticut against Charter (which did not even send the Spectrum Mobile messages at issue) to avoid Eleventh Circuit Law.

*Second*, litigating and trying this case in Connecticut will be inconvenient for the parties and witnesses.  Neither Plaintiff, relevant employees, nor key non-parties are in Connecticut.  Depositions and the exchange of class data must therefore take place outside of this forum.  Trial would also require many witnesses to travel from Florida (and elsewhere) to Connecticut.

*Third*, and relatedly, only the Middle District of Florida can compel many of the primary witnesses to attend depositions and trial and comply with document subpoenas.  Along the same lines, because many of the critical witnesses are in Florida, if this case proceeds in Connecticut, the fact finder would not have the benefit of live testimony at trial given the 100-mile rule.

*Fourth*, the relevant documents, sources of proof, and key witnesses are located outside of Connecticut (with many in Florida).

*Fifth*, because of Plaintiff's allegations describing a harm suffered in Florida, and the fact the vast majority of key witnesses and evidence are located in Florida, Connecticut is not the locus of operative fact.  Florida is.

*Sixth*, transfer is warranted considering the relative means of the parties.  Litigating and trying this case in Connecticut would cause Charter (and Spectrum Mobile) additional legal expense and cause substantial business disruption during a recession.  By contrast, litigating this

case in Florida would have little impact on Plaintiff—other than making the lawsuit *more* convenient for him, considering he is a resident and citizen of Florida.

*Seventh*, transfer promotes trial efficacy and is in the interests of justice. On the former point, Connecticut has no meaningful connection to this case and is not the litigation's "center of gravity." Thus, transfer would streamline this litigation, expedite discovery, and conserve the resources of the courts and the parties by allowing for a manageable trial. Further, the vendor that actually sent the text messages at issue in this case is not subject to personal jurisdiction in Connecticut, so Charter would have to institute separate proceedings in a different forum to address that vendor's indemnification obligations or adjudicate its potential liability; by contrast, were this case transferred to the Middle District of Florida, any such claims could be joined to this case and litigated in a single, consolidated action. Regarding the interests of justice, justice is not served by litigating in a forum that will require substantial air travel during a pandemic. Moreover, it would be unjust to allow Plaintiff to circumvent the law of the Eleventh Circuit (where all relevant actions pertaining to the case, including the alleged "harm," took place) in seeking a class action judgment.

For these reasons, should the Court decline to dismiss the case outright based on lack of subject matter jurisdiction, the Court should transfer this case to the Middle District of Florida.

## II.    BACKGROUND AND RELEVANT PROCEDURAL HISTORY

### A.    Spectrum Mobile Offers Telecommunications Services in Various States and Contracts with Virginia-Based SkyCreek Corporation to Communicate with Subscribers.

Charter performs certain business functions for its subsidiaries and affiliates (the "Spectrum Entities"), which in turn provide cable, internet, and telephone services in certain areas within forty-one states. Montsinger Decl. ¶ 3. One of the Spectrum Entities is Spectrum

3

Mobile. *Id*., ¶ 4. Spectrum Mobile is a Delaware limited liability company with its principal place of business in Missouri. *Id*. At all times relevant to this lawsuit, Spectrum Mobile provided residential mobile phone services in Florida, where Plaintiff resides. *Id*., ¶ 5. In providing its services to subscribers, the Spectrum Entities contract with vendors to provide various services. *Id*., ¶ 7. One such vendor is SkyCreek Corporation ("SkyCreek"), which provided Spectrum Mobile[3] with information-communication services used to send texts to Spectrum Mobile subscribers. *Id*., ¶¶ 8-9. SkyCreek is based in Northern Virginia and has no ties to or employees located in Connecticut. Wilburn Decl., ¶¶ 3-6.

      **B.**      **Plaintiff Receives Text Messages Intended for a Florida Resident from SkyCreek to his Florida Cellular Phone Number.**

On February 3, 2020, Plaintiff—a Florida resident—filed this putative class action, alleging Charter violated the TCPA by sending, "by itself or through an intermediary or intermediaries, multiple text messages" to Plaintiff's Florida cellular telephone number: (727) \*\*\*-7106 ("7106 Number").[4] *See* Dkt. 1, ¶¶ 10-13. Plaintiff further alleges that these text messages were sent using an "'automatic telephone dialing system' within the meaning of 47 U.S.C. § 227(b)(1)(A)," and without Plaintiff's prior express consent. *Id*., ¶¶17-20.

Plaintiff specifically identifies two text messages. Plaintiff allegedly received the first one on January 13, 2020 ("January 13 Message"):

> Spectrum Mobile: Thanks for your order. Your order total is $41.42. We'll update you when your mobile order ships.

*Id*., ¶ 13.

Plaintiff allegedly received the second on January 14, 2020 ("January 14 Message"):

---

[3]    Charter is not technically a correct party to this action as it did not provide the underlying services at issue itself, nor did it send the messages at issue or employ the relevant personnel. Charter will ultimately address that issue in a dispositive motion after transfer, should the case survive Charter's motion to dismiss.

[4]    Plaintiff's counsel confirmed Plaintiff's phone number.

4

> Thank you for your Spectrum Mobile order. Your order has shipped. Here is your tracking#: 151745984576.

*Id.*, ¶ 14. Regarding the harm caused by these "Spectrum Mobile" messages, Plaintiff alleges that his "cellular phone alerts him whenever he receives a text message" such that each text message "invaded Plaintiff's privacy and intruded upon his seclusion upon receipt." *Id.*, ¶ 16. Based on these allegations, among others, Plaintiff seeks to represent a class of similarly situated individuals from across the United States in seeking damages from Charter (not Spectrum Mobile, the entity identified in the messages). *Id.* ¶ 21.

Spectrum Mobile's records reflect that SkyCreek transmitted these two text messages on behalf of Spectrum Mobile. Montsinger Decl., ¶ 10. These records reflect that the text messages were intended for a Spectrum Mobile subscriber in Clearwater, Florida, whose cellular telephone number is identical to Plaintiff's except for one digit. *Id.*, ¶ 12. During a call with the intended recipient, a Spectrum Mobile representative based in Florida, from a call center located at 4145 S. Falkensburg Rd, Riverview, Florida, inadvertently mistyped the Subject Number into the Spectrum Mobile billing system, resulting in the 7106 Number becoming associated with the intended recipient's Spectrum Mobile account. *Id.*, ¶ 13. The Spectrum Mobile representative then read back the mistyped phone number to the Spectrum Mobile customer (the intended recipient), who confirmed (apparently by mistake) that the mistyped phone number was the best number at which to reach him. *Id.* It is on this basis—a mistyped digit for a Spectrum Mobile customer—that Plaintiff now asks this Connecticut Court to order Charter, which did not even send the messages at issue, to pay many millions of dollars of damages to a nationwide class.

Charter now moves to transfer this case to the Middle District of Florida, to the extent the Court determines it has subject matter jurisdiction over this dispute in response to Charter's concurrently filed motion for judgment on the pleadings.

5

## III.  ARGUMENT

### A.  Legal Standard on a Motion to Transfer Venue.

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  The objectives of such a transfer are "to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations omitted).

Courts employ a two-pronged analysis to determine whether to transfer under § 1404(a). First, a court must determine whether venue and jurisdiction were appropriate in the transferee court at the time of filing (*i.e.*, whether the action could have been brought there).  *See Wilson v. DirectBuy, Inc.*, 821 F. Supp. 2d 510, 515 (D. Conn. 2011).  Second, courts weigh nine relevant factors to evaluate whether transfer serves the "convenience of parties and witnesses" and the "interest of justice":

> (1) the plaintiff' choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* at 516 (citing *D.H. Blair & Co. v. Gottdiener*, 462 F. 3d 95, 106–07 (2d Cir. 2006)).[5]

---

[5]   In the context of cases brought under federal law, courts routinely disregard the "forum's familiarity with the governing law" because federal courts "are presumed to be equally familiar with federal law."  *See Wilson*, 821 F. Supp. 2d at 519 (citing *WorldCare Ltd. v. World Ins.*, 767 F. Supp. 2d 341, 366 n.49 (D. Conn. 2011)).  Charter therefore omits a detailed analysis of that factor below (*infra* III.C.) but notes that there has been substantial TCPA litigation within the Eleventh Circuit, and several recent significant Eleventh Circuit decisions have clarified key TCPA issues.  *See generally Glasser*, 948 F.3d 1301; *Salcedo*, 936 F.3d 1162.  Further, as noted above (*see supra* n.2), the Supreme Court is poised to address—and thus create "governing law" concerning—the definition of an ATDS in *Facebook*.  Accordingly, should the Court decline to transfer this matter, this factor militates toward staying further proceedings, as discussed more fully in Charter's concurrently-filed motion to stay.

### B. Personal Jurisdiction and Venue Were Proper in Florida At the Time of Filing, and Thus this Case Could have Been Brought There.

As a threshold matter, this case could have been brought in the Middle District of Florida. Spectrum Mobile is subject to specific personal jurisdiction in Florida because Plaintiff received the messages in Florida on a Florida-based cellular phone number (and Charter would be as well, assuming it sent the messages, which it did not). *See Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, 305 F. Supp. 3d 1342, 1348–49 (M.D. Fla. 2018) (personal jurisdiction satisfied where defendants allegedly sent TCPA-violative facsimile communication to Florida corporation with principal place of business in Florida); *Keim v. MidAtlantic, LLC*, 199 F. Supp. 3d 1362, 1368–70 (S.D. Fla. 2016) (personal jurisdiction satisfied where defendant allegedly sent TCPA-violative telephone communication into Florida and number at issue was associated with Florida). Further, Plaintiff acknowledges in the Complaint that "at all times mentioned" (thus, including when he received the messages) he was a resident of Florida and his number has a Florida area code (727).[6] Dkt. 1, ¶ 4; Montsinger Decl., ¶ 11. Accordingly, venue also is appropriate in the Middle District of Florida. *See* 28 U.S.C. § 1391(b)(2) (venue proper in "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"); *Brown v. Account Entral Tech., Inc.*, No. 13-62765, 2014 WL 11706429, at *2–3 (S.D. Fla. Mar. 28, 2014) (venue proper in district where plaintiff received calls). The first step of the two-pronged transfer analysis is therefore satisfied.

### C. All Relevant Factors Favor Transfer.

Likewise, all of the relevant considerations identified above favor transfer to the Middle District of Florida.

---

[6] Clearwater, Florida—where the intended recipient of the messages at issue resides—is also within the Middle District of Florida.

### *1.      Plaintiff's Choice of Forum Is Entitled to Little Deference.*

First, because Plaintiff brought a nationwide class action outside of his home forum and away from where the events underlying this lawsuit arose (Florida), the Court should afford little to no weight to Plaintiff's decision to bring suit in Connecticut. Though the plaintiff's chosen forum is ordinarily entitled to some deference, that deference is "diminished ***substantially*** where the forum is neither plaintiff's home district nor the place where the events or transactions underlying the action occurred." *See Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 96 (S.D.N.Y. 1995) (emphasis supplied). Further, where a Plaintiff's choice of forum appears to be "motivated by tactical advantage" as Plaintiff's choice is here (*see supra* n.1), the deference owed to that choice is further diminished. *See Hummingbird USA, Inc. v. Tex. Guaranteed Student Loan Corp.*, No. 06-Civ.-7672(LTS)(GWG), 2007 WL 163111, at *4 (S.D.N.Y. Jan. 22, 2007) (noting "[t]he Second Circuit considers deference on a 'sliding scale' basis, giving 'greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons,' like convenience, 'and diminishing deference' to a plaintiff's forum choice to the extent it was motivated by tactical advantage") (quoting *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001)). Finally, even less weight is given to Plaintiff's chosen forum given this is a nationwide putative class action. *See In re Warrick*, 70 F.3d 736, 741, n.7 (2d Cir. 1995); *Graham v. BMO Harris Bank, N.A.*, No. 3:13-cv-1460, 2014 WL 12748028, at *2 (D. Conn. May 14, 2014) ("[C]ourts within this Circuit have afforded less deference where a plaintiff seeks to bring an action on behalf of him or herself and a putative class."). Accordingly, the first factor favors transfer.

### *2.    The Convenience of Parties and Witnesses Favor Transfer.*

The second factor strongly favors transfer because litigating this case in Connecticut is significantly inconvenient for the parties and witnesses.  As to the parties, Plaintiff is located in Florida, as is the Spectrum Mobile representative who inadvertently entered the 7106 Number into Spectrum Mobile's system (as well as the call center at which she worked).  Dkt. 1, ¶ 4; Montsinger, Decl., ¶ 13.  Thus, it is far more convenient for the parties to litigate the case in Florida.  That is particularly true given the risks associated with air travel during the COVID-19 pandemic.  The same is true with respect to the convenience of the witnesses in this case, which is one of the most important factors.  *See, e.g.*, *Jones v. Walgreen*, 463 F. Supp. 2d 267, 274–76 (D. Conn. 2006) ("[C]onvenience of the witnesses is generally considered the most important of the factors a court considers.") (citations and punctuation omitted).  As noted above, the intended recipient of the text messages at issue who provided consent to receive communications in this case resides in Florida.  Montsinger Decl., ¶ 12.  Additionally, witnesses (like family, friends, and associates) to Plaintiff's purported damages—who will be critical to the question of whether Plaintiff suffered an injury sufficient to vest any court with Article III standing— are in Florida, where Plaintiff received the text messages at issue.  Dkt. 1,  ¶ 4 (noting Plaintiff was a "resident and citizen of Florida" when he received the messages at issue).  Attempting to force potential party and non-party witnesses to attend trial or other events in Connecticut would thus be inconvenient and disruptive.

### *3.    Transfer Is Also Warranted Considering the Ability to Compel Attendance of Unwilling Witnesses.*

Under the Federal Rules, a person may only be compelled to attend a trial, hearing, or deposition within 100 miles of their residence or place of employment.  *See* FED. R. CIV. P. 45(c).  Because the majority of non-party witnesses to this action reside in Florida, if the case is

not transferred, the fact finder will not have the benefit of live testimony from the witnesses most critical to the claims and defenses, such as the witnesses to any "harm" suffered by Plaintiff and the Spectrum Mobile subscriber at the heart of this lawsuit. This "powerfully counsels" in favor of transferring this case to Florida. *United Rentals, Inc. v. Pruett*, 296 F. Supp. 2d 220, 229 (D. Conn. 2003) ("Notably, all of the potential non-party witnesses who have been identified would be outside the subpoena power of this Court. . . .[t]his fact powerfully counsels the transfer of this case to a District able to secure the live testimony of these witnesses at trial."); *In re E. Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. 188, 194 (E.D.N.Y. 1994) (in granting motion to transfer, noting that depositions "are no substitute for live testimony.").

Further, the party that transmitted the January 13 and January 14 Messages—SkyCreek—is a Virginia-based company with no ties whatsoever to Connecticut. Wilburn Decl., ¶¶ 3-6. As such, SkyCreek is not subject to personal jurisdiction in this Court and Charter is currently not able to implead SkyCreek to litigate their culpability or assert any claims for indemnification, to the extent that becomes appropriate. This fact "weighs heavily" in favor of transfer to Florida, where all claims related to the allegations in Plaintiff's Complaint can be joined in a single action. *See Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 406 (S.D.N.Y. 2004) ("[T]he ability to implead a third-party in the proposed transferee forum and thereby resolve related claims in a single action weighs heavily in favor of transfer. Transfer under such circumstances substantially advances the interests of fairness, efficiency and judicial economy by preventing duplicative proceedings and thereby reducing the overall burden on the parties, non-party witnesses and the judicial system.") (citations omitted); *Halliwell v. Moran Towing & Transp. Co., Inc.*, No. 98 CIV. 6500(JSR), 1999 WL 258260, at *1 (S.D.N.Y. Apr. 29, 1999) ("The ability to implead a third party defendant in a proposed transferee forum is an important

consideration favoring transfer of venue, since the interests of fairness, efficiency and judicial economy support trying cases in forums where related claims can be joined.").

Accordingly, the third factor weighs heavily in favor of transfer to Florida. *See United Rentals, Inc. v. Pruett*, 296 F. Supp. 2d 220, 229 (D. Conn. 2003) ("Notably, all of the potential non-party witnesses who have been identified would be outside the subpoena power of this Court. . . .[t]his fact powerfully counsels the transfer of this case to a District able to secure the live testimony of these witnesses at trial."); *In re E. Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. 188, 194 (E.D.N.Y. 1994) (in granting motion to transfer, noting that depositions "are no substitute for live testimony.").

### 4. *The Location of Relevant Documents and Relative Ease of Access to Sources of Proof Support Transfer.*

Likewise, the relevant documents and sources of proof are largely in Florida and all outside of Connecticut. The intended recipient of the January 13 and January 14 Messages provided his express consent to receive such communications to a Spectrum Mobile representative in Florida and the 7106 Number was entered into Spectrum Mobile's system in Florida, at a Florida call center. Montsinger, Decl., ¶¶ 10-13. Further, Plaintiff received the text messages at issue in Florida and suffered his alleged "harm" there, meaning that any relevant documents in his or his friends' and family members' possession and control are located in that state. Dkt. 1, ¶ 4. Moreover, the Spectrum technology that interacts with SkyCreek to send the text messages and the servers where the messages are stored are located outside of Connecticut. Montsinger Decl., ¶ 9; Wilburn Decl., ¶ 6. In other words, the majority of records relevant to this litigation are in Florida, and none are in Connecticut. And more importantly, *access* to these sources of proof would undoubtedly be easiest in Florida because that would bring third-party

11

witnesses and document sources within the subpoena enforcement power of the trial court presiding over this case. Thus, the fourth factor weighs strongly in favor of transfer to Florida.

### 5. *The Locus of Operative Facts Is in Florida.*

The fifth factor also weighs in favor of transfer because Connecticut is not the locus of operative facts—Florida is. *See MAK Mktg., Inc. v. Kalapos*, 620 F. Supp. 2d 295, 310 (D. Conn. 2009) ("The locus of operative facts is an important factor to be considered in deciding where a case should be tried.") (citations omitted). To determine the locus of operative facts, courts look to where "the events from which the claim arises" occurred. *Verilux v. Ottlite Tech.*, No. 3:09–cv–00717, 2009 WL 2710222, at *5 (D. Conn. Aug. 20, 2009). In TCPA cases specifically, the locus of operative facts is often where the plaintiff receives a communication. *See, e.g.*, *Kissick v. Am. Residential Servs., LLC*, No. 2:19-CV-01460, 2019 WL 6434639, at *3 (C.D. Cal. July 18, 2019) (in transferring TCPA case, explaining that locus of operative fact includes where the communications were sent); *Sapan v. Dynamic Network Factory, Inc.*, No. 3:13-cv-1966, 2013 WL 12094829, at *3 (S.D. Cal. Nov. 25, 2013) (transferring TCPA case to the district where "the [phone call] was received").

Here, there is no question that the locus of operative facts is in Florida because Plaintiff admittedly received text messages to his *Florida* phone number while residing in *Florida*, those messages were intended for a *Florida* resident, and the 7106 Number was entered into Charter's system by an employee in *Florida*. Dkt. 1, ¶ 4; Montsinger Decl., ¶¶ 10-13. By contrast, the messages were neither sent from nor directed to Connecticut. *Id.*, ¶ 9; Wilburn Decl., ¶¶ 3-6.

### 6. *The Relative Means of the Parties Also Support Transfer.*

Weighing the relative means of the parties also strongly supports transfer of this case. If this case is not transferred, the relevant parties and witnesses will have to incur significant time

12

and expense—in both travel and business disruption—litigating this matter in Connecticut, far from where the events in question occurred during a pandemic that renders air travel dangerous for the foreseeable future. By contrast, Plaintiff will not experience any financial hardship from transfer. Rather, litigating this case in Florida would be *more convenient* for Plaintiff because he lives there. And even if that were not true, this factor would still favor transfer because Plaintiff chose to bring suit in a forum knowing non-party depositions would necessarily have to occur outside of Connecticut. *See, e.g.*, *NetSoc, LLC v. LinkedIn Corp.*, No. 1:18-cv-12215, 2020 WL 209864, at *4 (S.D.N.Y. Jan. 14, 2020) ("Plaintiff's convenience would not be affected if the action were transferred. Plaintiff is based in Texas [] and thus already chose to litigate in a forum [New York] that requires travel and increased expenses.").

### 7. *Trial Efficacy and the Interests of Justice Underscore the Need to Transfer this Case.*

Finally, transfer would serve trial efficacy and the interests of justice—for many reasons. First, because neither Plaintiff, relevant Spectrum Mobile employees, nor any of the key parties reside in this district, Connecticut lacks a meaningful connection to this case.[7] *See, e.g.*, *Farrior v. George Weston Bakeries Distribution, Inc.*, No. 2:08-cv-2705, 2009 WL 113774, at *8 (E.D.N.Y. Jan. 15, 2009) (granting transfer where plaintiff's case "has little or no connection to the operative facts"); *Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y.1991) ("The core determination under § 1404(a) is the center of gravity of the litigation. . . . [and] [c]ourts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district.").

Second, as mentioned above, transfer will streamline trial by permitting critical live

---

[7] The only discernible connection to Connecticut is the fact that Spectrum Mobile's affiliate, Charter, has a corporate office there—but even this connection is spurious because Charter did not send the "Spectrum Mobile" messages at issue.

13

witness testimony, expediting pre-trial discovery, and promoting judicial economy.  *See Sentegra, LLC v. ASUS Computer Int'l*, No. 1:15-CV-3768-GHW, 2016 WL 3093988, at *7 (S.D.N.Y. June 1, 2016) ("The Court's consideration of whether transfer is in the interest of justice is based on the totality of the circumstances, and relates primarily to issues of judicial economy[.]") (citing *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 407 (S.D.N.Y. 2005)); *Mobil Corp. v. S.E.C.*, 550 F. Supp. 67, 71 (S.D.N.Y. 1982) ("[P]reserving scarce judicial resources also weighs heavily in favor of this action's transfer[.]").  Indeed, transfer will make trial-related travel easier for both Plaintiff and Charter, and further bring essential witnesses within range of the trial court's subpoena enforcement power, thereby easing the burden on the judicial system.  *See supra* III.C.3.

Third, the unique dangers of the COVID-19 pandemic render Florida a safer venue to litigate this case, given the location of witnesses there.  That is especially true considering the prospect of a "second wave" during the heart of discovery in the Winter, and that air travel will remain dangerous at least until there is a widely-administered vaccine.

Fourth, it is neither equitable nor just to allow Plaintiff to attempt to rush a case premised on communications intended for a Florida resident that Plaintiff received and complained about in the Eleventh Circuit toward a judgment in a forum that has *no* connection to the facts of this case (particularly against the wrong defendant) simply because Plaintiff wishes to avoid the law of his home Circuit.  Thankfully, Section 1404(a) is available to rectify such forum shopping.

## IV. CONCLUSION

As explained in the concurrently-filed motion for judgment on the pleadings, the Court should dismiss this case outright for lack of subject matter jurisdiction.  If it does not do so, however, common sense and applicable legal authority dictate that this case should not be

14

litigated and tried in a forum where neither the parties, key witnesses, nor proof are located, simply because Plaintiff dislikes the law in his home district. As such, to the extent the Court denies Charter's motion for judgment on the pleadings, Charter respectfully requests the Court transfer this case to the Middle District of Florida, under 28 U.S.C. § 1404(a).

DATED: August 26, 2020

**KABAT CHAPMAN & OZMER LLP**

*/s/ Ryan D. Watstein*
Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300
(404) 400-7333 (fax)
*Counsel for Defendant Charter Communications, Inc.*

**ROBINSON & COLE LLP**

Brian E. Moran
Connecticut Bar No. ct05058
bmoran@rc.com
Trevor L. Bradley
Connecticut Bar No. ct29993
tbradley@rc.com
1055 Washington Boulevard
Stamford, CT 06901
203-462-7500
203-462-7599 (fax)

**CERTIFICATE OF SERVICE**

I certify that today I electronically filed this ***DEFENDANT'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)*** with the Clerk of Court using the CM/ECF filing system, which will automatically send an electronic copy to all counsel of record.

Dated: August 26, 2020.

*/s/ Ryan D. Watstein*
Ryan D. Watstein (*pro hac vice*)
