## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL REASE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>    Defendant. | Case No.: 3:20-cv-00150-RNC<br><br>Hon. Robert N. Chatigny |

### DEFENDANT'S MOTION TO STAY PENDING THE U.S. SUPREME COURT'S DECISION IN *DUGUID V. FACEBOOK* AND BRIEF IN SUPPORT

DATED: August 26, 2020

*/s/ Ryan D. Watstein*
**KABAT CHAPMAN & OZMER LLP**
Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300
(404) 400-7333 (fax)

**ROBINSON & COLE LLP**

Brian E. Moran
Connecticut Bar No. ct05058
bmoran@rc.com
Trevor L. Bradley
Connecticut Bar No. ct29993
tbradley@rc.com
1055 Washington Boulevard
Stamford, CT 06901
203-462-7500
203-462-7599 (fax)

*Counsel for Defendant Charter Communications, Inc.*

Oral Argument Not Requested

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1
II.   RELEVANT FACTS AND PROCEDURAL HISTORY .................................................. 2
III.  LEGAL ARGUMENT..................................................................................................... 4
      A.   The Definition of ATDS Is Unsettled Nationwide. ............................................... 4
      B.   The Supreme Court Will Imminently Define ATDS in *Facebook*.. ....................... 5
      C.   The *Facebook* Ruling Could Dispose of this Entire Case. ..................................... 6
      D.   If the Court denies Charter's Motion to Dismiss and Motion to Transfer
           Venue, then the Court Should Stay the Case Pending *Facebook*. .......................... 7
IV.   CONCLUSION............................................................................................................... 12

i

## I.  INTRODUCTION

As argued in Charter Communications, Inc.'s concurrently-filed motions, the Court should either grant judgment in favor of Charter for lack of subject matter jurisdiction (as argued in Charter's motion for judgment on the pleadings) or transfer the case to the Middle District of Florida because the case has no meaningful connection to Connecticut (as argued in Charter's motion to transfer venue).  If the Court disagrees with both of those motions, then the Court should stay this case because the Complaint hinges *entirely* on how to interpret the TCPA's definition of automatic telephone dialing system ("ATDS"), a question the Supreme Court will imminently decide in *Facebook, Inc. v. Duguid*, No. 19-511 ("*Facebook*").

Following the D.C. Circuit's seminal decision in *ACA International v. Federal Communications Commission* ("*ACA*"), 885 F.3d 687 (D.C. Cir. 2018)—which vacated the Federal Communications Commission's ("FCC") overbroad interpretation of ATDS—courts across the country have reached different conclusions on that question, leading to a Circuit split.  But clarity from the highest court is now imminent.  On July 9, 2020, the Supreme Court granted certiorari in *Facebook,* and is now set to answer what type of equipment qualifies as an ATDS, with the petitioner's opening brief due before Labor Day.  While it is uncertain what the Supreme Court will hold, the textualist court will likely follow the Third, Seventh, and Eleventh Circuits in ruling that the TCPA means what it says: for equipment to qualify as an "ATDS," it must employ a "random or sequential number generator."

If the Supreme Court follows this approach, this case will end.  That is because the calling system at issue did not employ a random or sequential number generator.  And even if the Supreme Court does not rule in Charter's favor, the ruling will directly affect this case, providing substantial guidance and clarity to the Court and the parties, streamlining fact and expert discovery,

1

eliminating the need for other proceedings (such as briefing and discovery disputes), and encouraging settlement discussions. As a result, a stay pending *Facebook*, like the previous stay pending *AAPC*, would not work to the injustice or hardship of any party and would instead conserve the resources of the Court, the parties, and third parties who will be inconvenienced by this litigation—precious resources during a recession and pandemic.

Accordingly, should the Court decline to grant Charter's motion for judgment on the pleadings or, alternatively, its motion to transfer venue, Charter respectfully requests the Court stay this case pending the Supreme Court's decision in *Facebook*.[1]

## II.   RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff commenced this putative TCPA class action on February 3, 2020, on the basis that Charter allegedly sent a few text messages to Plaintiff without his consent using an ATDS. Dkt. 1, ¶¶ 10-18. Plaintiff alleges further that Charter sent the messages using "hardware and software that had the capacity to store, produce, and dial random or sequential numbers and that received and stored telephone numbers and then dialed such numbers automatically." *Id*., ¶ 18. Plaintiff identifies two text messages he allegedly received on January 13 and 14, 2020, pertaining to a Spectrum Mobile shipment. *Id*., ¶¶ 13-14. But in reality, no text messages were sent using a dialing system that generates random or sequential numbers; indeed, the system used to send such messages categorically lacks such capacity. Montsinger Decl., ¶¶ 7-9. Based on these allegations, Plaintiff asserts one claim against Charter for violations of the TCPA. Dkt. 1, ¶¶ 36-41. Plaintiff also seeks to certify one nationwide class based on ATDS text messages. *Id*., ¶ 21.

---

[1] Because the concurrently-filed motion to dismiss seeks dismissal on the basis of subject matter jurisdiction, the Court should decide that threshold jurisdictional argument before deciding the motion to transfer venue or this motion to stay. *See Can v. United States*, 14 F.3d 160, 162 n.1 (2nd Cir. 1994) ("We appreciate that in most instances the question whether a court has subject-matter jurisdiction is, conventionally and properly, the first question a court is called on to consider.").

On March 19, 2020, Charter filed a motion to stay the case pending the forthcoming decision in *Barr v. American Association of Political Consultants, Inc.*, 140 S.Ct. 2335 (2020) ("*AAPC*") and two Second Circuit decisions addressing the definition of an ATDS, including *Duran v. La Boom Disco*, 955 F.3d 279 (2nd Cir. 2020). Dkt. 31. The Court granted this motion on May 22, 2020, reasoning that "it seems unlikely that the Court's analysis [in *AAPC*] of the TCPA will be entirely irrelevant to the proceedings here." *Id.*, 41.

On July 6, 2020, the Supreme Court issued its decision in *AAPC*, causing this Court's stay order to automatically lift. 140 S. Ct. 2335; Dkt. 41. However, *AAPC* is dispositive of the claims in the Complaint because it held that the TCPA's automated-call ban was unconstitutional during the period of time for which Charter is alleged to have violated it. On that basis, Charter, concurrently with this motion to stay, filed a motion for judgment on the pleadings. Charter also concurrently filed a motion to transfer venue, explaining that if the Court does not grant Charter's motion for judgment on the pleadings, it should transfer the case to the Middle District of Florida, where Plaintiff and other relevant witnesses reside.

Should the Court decline to enter judgment in favor of Charter or transfer venue, however, the Court should stay this case pending the Supreme Court's forthcoming decision in *Facebook*. In that case, on July 9, 2020, the Supreme Court granted *certiorari* to resolve the Circuit split on "[w]hether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" Question Presented Report, No. 19-511, *Facebook v. Duguid*, https://www.supremecourt.gov/docket/docketfiles/html/qp/19-00511qp.pdf (last visited August 25, 2020) ("Question Presented Report"); *see also* Ex. 1 (Facebook's Supplemental Brief in Support of Petition for Writ of Certiorari). As explained below, *Facebook* will likely end this case.

3

## III. LEGAL ARGUMENT

### A. The Definition of ATDS Is Unsettled Nationwide.

Among other things, the TCPA prohibits calling a cellular telephone with an ATDS without the called party's consent. 47 U.S.C. § 227.[2] An ATDS is defined as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1). The FCC purported to interpret this statutory definition in various orders. *ACA*, 885 F.3d at 693-94 (summarizing FCC's treatment of ATDS in its various orders). But in March 2018, the D.C. Circuit vacated the FCC's interpretations of what constitutes an ATDS as arbitrary, capricious, and overbroad. *Id*. at 701. This left a vacuum of authority and called into question pre-2018 cases addressing that issue, given that most of those cases were decided based on the now-vacated FCC guidance.

In that vacuum, courts across the country have reached inconsistent conclusions on what functionalities render a calling or messaging system an ATDS. *See, e.g.*, *Duran*, 955 F.3d at 281 n.5 (collecting circuit-level cases). The Second, Ninth, and Sixth Circuits have adopted a broad interpretation, straying from the statutory definition to create their own, and concluding that a system that can simply "make calls from stored lists" qualifies as an ATDS. *See id.* at 287; *Marks*

---

[2] The TCPA exempts calls made with the consent of the "called party." 47 U.S.C. § 227(b)(1)(A). Under the proper interpretation of "called party" (the intended recipient of a call), Spectrum Mobile (which sent the messages) had the called party's consent to make all the calls at issue here, given the number was provided by its customer. The FCC is currently revisiting the treatment of reassigned numbers and definition of "called party" in the reassigned number context following the ruling in *ACA*, in which the D.C. Circuit, acting as a Hobbs Act reviewing court, vacated the FCC's treatment of reassigned numbers as arbitrary and capricious. 885 F.3d at 706-09 (explaining that the FCC's approach to TCPA liability in the reassigned number context—i.e., strict liability except for a one call safe harbor—was arbitrary and capricious, and as a result, holding "we must set aside the Commission's treatment of reassigned numbers as a whole."); *Consumer and Governmental Affairs Bureau Seeks Comment on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA International Decision*, 83 FR 26284-01, 26285 (June 6, 2018) (FCC seeking input on whether the "called party" refers to the person the intended or actual recipient in the reassigned number context). Charter is not expressly moving for a stay pending a ruling from the FCC at this time, but the FCC's forthcoming ruling could also potentially dispose of (or substantially streamline) this entire action while it is stayed pending a ruling in *Facebook*, given Plaintiff's putative class purports to include reassigned numbers.

4

*v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051 (9th Cir. 2018) (expressly rejecting "a straightforward interpretation based on the plain language" of the TCPA); *Allan v. Penn. Higher Ed. Assis. Ag.*, --- F.3d ---, 2020 WL 4345341, at *9 (6th Cir. July 29, 2020). The Third, Seventh, and Eleventh Circuits have held otherwise, adopting the statutory definition of an ATDS, holding that equipment must employ a "random or sequential number generator" to qualify as an ATDS. *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 469 (7th Cir. 2020) (rejecting *Marks*'s interpretations of ATDS, which involved "a significant judicial rewrite" of the statute); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1311-12 (11th Cir. 2020) (Ninth Circuit's reading of the statute "looks more like surgery . . . than interpretation"); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) ("key" question is whether the equipment used "had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers").

      **B.**    **The Supreme Court Will Imminently Define ATDS in *Facebook*.**

This uncertainty will soon end, as the Supreme Court is set to rule on what constitutes an ATDS in *Facebook*. In *Facebook*, the lower court granted the defendant's motion to dismiss, holding that the plaintiff failed to meet his burden to properly plead that he received text messages from a device with "the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." *Duguid v. Facebook, Inc.*, No. 15-CV-00985-JST, 2016 WL 1169365, at *5-6 (N.D. Cal. Mar. 24, 2016). In doing so, the lower court focused on the plaintiff's allegations suggesting that "Facebook's login notification text messages [we]re targeted to specific phone numbers and [we]re triggered by attempts to log in to Facebook accounts associated with those phone numbers." *Id.* at *5. The Ninth Circuit reversed, holding that "an ATDS need not be able to use a random or sequential generator to store numbers—it suffices to

5

merely have the capacity to 'store numbers to be called' and 'to dial such numbers automatically.'" *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1151 (9th Cir. 2019) (reaffirming its decision in *Marks* that a system sending messages to a list of stored numbers is an ATDS). The defendant then appealed to the Supreme Court to resolve the Circuit split over the issue of whether "the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" Question Presented Report. Thus, in *Facebook*, the Supreme Court is set to review the proper definition of ATDS. And it is set to do so in short order, as the case is part of the Supreme Court's October 2020 Term, with the opening brief to be filed by September 4, 2020, and oral argument likely to be scheduled for the fall of 2020. *See* Order, *Facebook*, No. 19-511 (U.S. July 24, 2020) (opening brief due September 4, 2020).

### C. The *Facebook* Ruling Could Dispose of this Entire Case.

While it is not certain how the Supreme Court will interpret "ATDS," it is material to this case, will be binding, and will either resolve or fundamentally shape this litigation. For example, the textualist Supreme Court could rule in line with the Seventh, Third, and Eleventh Circuits and hold that an ATDS means exactly what the statute says: a system that employs a random or sequential number generator. If that occurs, the Second, Ninth Circuit, and Sixth rulings—that equipment is an ATDS if it simply stores numbers to be called and then calls them—will fall. If that happens, the calling system at issue here will not qualify as an ATDS because it categorically lacks the capacity to generate random or sequential numbers.[3] Montsinger Decl., ¶¶ 7-9. Instead, like the messages in *Facebook*, the system was used to contact specific individuals at specific

---

[3] Charter also denies liability under the Second Circuit's interpretation of ATDS, but that question would be far easier resolved if the Supreme Court adopts the Third, Seventh, and Eleventh Circuit's interpretation since the calling platform categorically lacks the capacity to dial numbers randomly or sequentially. *See* Montsinger Decl., ¶¶ 7-9.

6

numbers for specific business purposes. *Id.* Thus, the Supreme Court's forthcoming decision is likely to *entirely* dispose of this action. And even in the unlikely event it does not, it will materially shape and substantially streamline this case, including fact and expert discovery and related motion practice. Proceeding in the current unsettled legal landscape, before the Supreme Court weighs in, has real world consequences, as there is no statutory cap on damages under the TCPA, so it can and has led to ruinous, company-ending liability for defendants to the tune of many hundreds of millions of dollars (as well as crushing defense costs). *See*, *e.g.*, *Wakefield v. Visalus, Inc.*, No. 3:15-cv-1857-SI, Dkt. 377 (D. Or. Aug. 14, 2020) (declining to remit $925,220,000.00 judgment); *McMillion, et al. v. Rash Curtis & Assoc.*, No. 4:16-CV-03396-YGR (N.D. Cal. May 4, 2020) (judgment awarding class damages for TCPA violations in amount of $267,349,000.00).

### D. If the Court denies Charter's Motion to Dismiss and Motion to Transfer Venue, then the Court Should Stay the Case Pending *Facebook*.

Given the above, the Court should stay this case pending the Supreme Court's forthcoming ATDS decision. The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Thus, a district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In this Circuit, the "decision whether to stay an action calls on a district court's 'studied judgment,' requiring the court to examine 'the particular facts before it' and determine 'the extent to which . . . a stay would work a hardship, inequity, or injustice to a party, the public or the court.'" *Range v. 480-486 Broadway, LLC*, 810 F.3d 108, 113 (2d Cir. 2015) (quoting *Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83, 99 (2d Cir. 2012)). In making this determination, courts in this Circuit consider five factors:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private

7

>   interests of and burden on the defendants; (3) the interests of the courts; (4) the
>   interests of persons not parties to the civil litigation; and (5) the public interest.

*Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (cits. omitted); *see also* Dkt. 41 at 4.

Applying these factors under the *Landis* doctrine, courts within this Circuit, including this Court, routinely stay proceedings "when a higher court is close to settling an important issue of law bearing on the action." Dkt. 41 (granting stay in this case pending decision in *AAPC* because "it seems unlikely that the Court's analysis [in *AAPC*] of the TCPA will be entirely irrelevant to the proceedings here"); *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012); *In re Literary Works in Elec. Databases Copyright Litig.*, No. 00-cv-6049, 2001 WL 204212, at * 3 (S.D.N.Y. Mar. 1, 2001) (granting stay where forthcoming Supreme Court decision was "likely to have a significant, if not dispositive, impact"); *Jugmohan v. Zola*, No. 98-CV-1509, 2000 WL 222186, at *5 (S.D.N.Y. Feb. 25, 2000) (postponing case "pending an upcoming decision by the United States Supreme Court is a practice exercised by the Second Circuit in the interest of judicial economy"); *see also DiStasio v. Edible Arrangements, LLC*, No. 3:16-CV-538-DJS (D. Conn. Jan. 24, 2020) (staying action pending Second Circuit's ATDS ruling); *Acton v. Intellectual Capital Mgmt., Inc.*, No. 15-CV-4004, 2015 WL 9462110, at *2 (E.D.N.Y. Dec. 28, 2015) (staying TCPA case pending outcome of Supreme Court and D.C. Circuit appeals, including *ACA Int'l*); *Ruggieri v. Boehringer Ingelheim Pharm., Inc.*, No. 06-CV-1985, 2012 WL 1521850, at *1 (D. Conn. Feb. 24, 2012) (staying proceeding pending Supreme Court ruling that would "conclude this case").

Indeed, even in the few weeks since the Supreme Court granted certiorari in *Facebook* on July 9, many courts have already stayed actions pending a ruling in that case for this very reason. *See, e.g.*, *Jensen v. Roto-Rooter Services Co.*, No. C20-0223, Dkt. 27 (W. D. Wash. August 20, 2020) (staying case based on *Facebook*); *Meier v. Allied Interstate, LLC*, No. 20-55286, Dkt. 12

8

(9th Cir. Aug. 11, 2020) (same); *Bittner v. Subway Franchisee Advertising Fund Trust, Ltd.*, No. 3:20-cv-00522, Dkt. 27 (D. Conn. Aug. 11, 2020) (same); *Boger v. Citrix Sys., Inc.*, No. 8:19-CV-01234, Dkt. 33 (D. Md. Aug. 4, 2020); *Runyon v. Everquote, Inc.*, 1:20-cv-01206, Dkt. 20 (D. Colo. July 23, 2020) (same); *Blower v. Portfolio Recovery Assoc.*, No. 3:19-cv-2270, Dkt. 27 (S.D. Cal. July 23, 2020); *Beal v. Outfield Brew House, LLC*, No. 20-1961, Dkt Entry July 14, 2020 (8th Cir. July 14, 2020) (same); *Grome v. USAA Sav.* Bank, No. 4:19-cv-03080 (D. Neb. July 14, 2020) (same); *Hoffman v. Jelly Belly Candy Co.*, No. 2:19-CV-01935, Dkt. 22 (E.D. Cal. July 17, 2020) (same); *Young v. Bank of Am. N.A.*, No. 4:19-CV-03867, Dkt. 31 (N.D. Cal., July 15, 2020) (same); *May v. Whatsapp, Inc.*, No. 4:20-CV-659, Dkt. 20 (N.D. Cal. July 15, 2020) (same); *Rossano v. Fashion Mktg. and Merch. Grp., Inc.,* No. 2:19-CV-10523, Dkt. 31 (C.D. Cal. July 14, 2020) (same); *Sensibaugh v. EF Educ. First, Inc.*, No. 2:20-CV-01068, Dkt. 30 (C.D. Cal. July 14, 2020) (same).

There is no reason why this Court should not also similarly stay this action. The highest court in the land is close to settling an important and dispositive issue of law on which this case turns. Should that ruling establish that Charter's system is not an ATDS, Plaintiff's case will entirely fail. As such, all relevant factors strongly favor a brief stay.

As to the first *Landis* factor, courts consistently hold that there is no likelihood of damage or harm merely because the stay could cause a delay to the plaintiff in receiving money damages. *See, e.g.*, *Aerotel, Ltd. v. IDT Corp.*, No. 03-CV-6496-RJH-FM, 2003 WL 23100263, at *2 (S.D.N.Y. Dec. 30, 2003) (granting stay and holding no undue prejudice where "suit is largely one for damages"); *see also Compressor Eng'g Corp. v. Thomas*, No. 10-10059, 2016 WL 438963, at *6 (E.D. Mich. Feb. 3, 2016) (staying action based on Supreme Court's TCPA decision where plaintiff claimed to have suffered emotional distress as result of calls, noting "that a stay in this

9

action is not likely to prejudice or harm Plaintiff"). The same is true for passing, conclusory requests to generally enjoin violations of the TCPA. *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A*., 630 F. Supp. 2d 295, 307 (S.D.N.Y. 2009) (staying case notwithstanding request for injunctive relief). There is no ongoing harm in this matter, as the last text message Plaintiff identifies in the Complaint was sent on January 14, 2020. Dkt. 1, ¶ 14; *see*, *e.g.*, *Ramirez v. Trans Union, LLC*, No. 12-CV-00632, 2015 WL 6159942, at *2 (N.D. Cal. June 22, 2015) (granting stay because the harm had ceased, "so there is no need to . . . obtain immediate injunctive relief"). Further, there is nothing for the Court to enjoin here—this case stems from a call center agent accidentally typing an incorrect phone number digit while assisting a customer. *See* Montsinger Decl. in support of concurrently filed Motion to Transfer Venue, ¶¶ 12-13. For these reasons, a stay will not prejudice Plaintiff.

On the other hand, and as to the second and third *Landis* factors, not staying the case would work substantial prejudice on Charter, as well as this Court. If the case moves forward before a ruling in *Facebook*, Charter will have to invest substantial resources litigating this matter—and the Court will have to invest substantial judicial resources—based on the potentially (and most likely) wrong definition of ATDS, in the middle of a pandemic, despite the high possibility that the Supreme Court will render all such investment unnecessary. *See Lacy v. Comcast Cable Commc'ns, LLC*, No. 3:19-CV-05007-RBL, 2020 WL 2041755, at *2 (W.D. Wash. Apr. 28, 2020) (staying case pending Supreme Court's First Amendment TCPA decision to prevent the defendant from "needlessly spending time and money to comply with [] broad discovery requests"); *Boger v. Citrix Sys.*, *Inc.*, No. 8:19-CV-01234-PX, 2020 WL 1939702, at *2 (D. Md. Apr. 22, 2020) (stay pending Supreme Court's First Amendment TCPA decision to "conserve[] precious judicial and case resources and avoid[] unnecessary expenditure of time and money on discovery for a cause

10

of action that may ultimately be invalidated").[4] Plaintiff has already served Charter with massively overbroad discovery seeking class data for the past four years regarding every conceivable communication by every employee and affiliated entity of Charter. This will result in significant expense and discovery disputes that the Court will have to police. To this point, proceeding with this case before the forthcoming rulings would prejudice even Plaintiff because he would incur substantial expense and hassle in individual and class discovery that could end up being for naught. Put simply, incurring the significant costs of class and expert discovery before the law is settled is inequitable and will waste the resources of the parties and Court.

As to the fourth and fifth *Landis* factors, a stay would also promote the public interest because the public has a strong interest in the efficient, fair, and uniform administration of the judicial system, as well as the uniform interpretation of law. Further, a stay would promote the interests of non-parties by preventing discovery that would unnecessarily burden them, such as the nation's dozens of cellular carriers—which are often the recipient of burdensome mass-subpoenas in putative TCPA class actions. Charter would also depose putative class members to show that class certification is improper, further burdening non-parties (and non-parties likely want to avoid appearing for a deposition in the middle of a pandemic). *See Royal Park Inv. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 17-CV-5916-AJN, 2018 WL 3849840, at *3 (S.D.N.Y. Aug. 10, 2018) (staying action pending resolution of related case because "the public is also not served by any wasting of judicial resources"); *Nuccio v. Duve*, No. 7:13-CV-1556-MAD-TWD, 2015 WL

---

[4] *See also, e.g.*, *Nakai v. Charter Commc'ns, Inc.*, No. 19-CV-8035-GW-SSX, 2020 WL 1908949, at *6 (C.D. Cal. Apr. 15, 2020) (staying case pending Supreme Court's TCPA decision because the defendant would otherwise "be required to spend additional resources defending against this putative nationwide class action that may ultimately be rendered moot by the decision"); *Figueroa v. Carrington Mortg. Servs. LLC*, No. 8:15-CV-2414-T-24TGW, 2016 WL 718289, at *3 (M.D. Fla. Feb. 22, 2016) (staying TCPA case pending Supreme Court's decision in part to save "the parties from unnecessary discovery expenses"); *Salvatore v. Microbilt Corp.*, 4:14-cv-1848, 2015 WL 5008856, at *2 (M.D. Pa. Aug. 20, 2015) (staying TCPA pending Supreme Court decision because "the parties face potential hardship if the stay were denied and the parties were required to expend time and resources engaging in fact and expert discovery" while the decision remains pending).

1189617, at *5 (N.D.N.Y. Mar. 16, 2015) ("Staying this action [pending the outcome of a district court action involving similar issues] will serve the interest of the courts, non-parties, and the public by promoting the efficient use of judicial resources and 'minimiz[ing] the possibility of conflicts between different courts . . . .'"). This concern regarding burdening non-parties is especially acute in a putative class action, like this one, involving the data of Charter's subscribers, whose identities and records are protected from disclosure under the Cable Communications Privacy Act. *See* 47 U.S.C. § 551(c)(1) (subject to limited exceptions, "a cable operator shall not disclose personally identifiable information concerning any subscriber without the prior written or electronic consent of the subscriber"). A stay will also ensure a uniform interpretation of the law.

Thus, by "conserving judicial resources, a stay will serve not only the interest of the courts, but also the interests of the [p]arties, the nonparties, and the public in 'an orderly and efficient use of judicial resources.'" *Catskill*, 630 F. Supp. 2d at 306. Therefore, the balance of the equities strongly favors granting this motion and staying this action.

## IV.     CONCLUSION

For the foregoing reasons, Charter respectfully asks the Court to stay this case pending the decision in *Facebook* if the Court is not inclined to grant judgment in favor of Charter or transfer venue to the proper location (the Middle District of Florida).

DATED: August 26, 2020                **KABAT CHAPMAN & OZMER LLP**

*/s/ Ryan D. Watstein*
Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300
(404) 400-7333 (fax)
*Counsel for Defendant Charter Communications, Inc.*

12

**ROBINSON & COLE LLP**

Brian E. Moran
Connecticut Bar No. ct05058
bmoran@rc.com
Trevor L. Bradley
Connecticut Bar No. ct29993
tbradley@rc.com
1055 Washington Boulevard
Stamford, CT 06901
203-462-7500
203-462-7599 (fax)

## **CERTIFICATE OF SERVICE**

I certify that today I electronically filed this ***DEFENDANT'S MOTION TO STAY PENDING THE U.S. SUPREME COURT'S DECISION* DUGUID V. FACEBOOK *AND BRIEF IN SUPPORT*** with the Clerk of Court using the CM/ECF filing system, which will automatically send an electronic copy to all counsel of record.

Dated: August 26, 2020.

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Ryan D. Watstein*
　　　　　　　　　　　　　　　　　　　　　　　　Ryan D. Watstein (*pro hac vice*)