# Exhibit 1

No. 19-511

In the
# Supreme Court of the United States

FACEBOOK, INC.,

*Petitioner*,

v.

NOAH DUGUID, individually and on behalf of
himself and all others similarly situated,

*Respondent,*

and

UNITED STATES OF AMERICA,

*Respondent-Intervenor*

**On Petition for Writ of Certiorari to the
United States Court of Appeals
for the Ninth Circuit**

## SUPPLEMENTAL BRIEF FOR PETITIONER

ANDREW B. CLUBOK
ROMAN MARTINEZ
SUSAN E. ENGEL
SAMIR DEGER-SEN
GREGORY B.
 IN DEN BERKEN
LATHAM
 & WATKINS LLP
555 Eleventh Street, NW
 Suite 1000
Washington, DC 20004

PAUL D. CLEMENT
 *Counsel of Record*
DEVIN S. ANDERSON
KASDIN M. MITCHELL
LAUREN N. BEEBE
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
paul.clement@kirkland.com

*Counsel for Petitioner*

July 7, 2020

# TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................ii

SUPPLEMENTAL BRIEF ........................................ 1

I.    This Court's Resolution Of *AAPC* Confirms
      The Need To Resolve The Circuit Split On
      The Statutory ATDS Question............................ 2

II.   The Statutory ATDS Question Has Deeply
      Divided The Circuits, And The Circuit Split
      Has Only Grown More Entrenched ................... 3

CONCLUSION ...................................................... 11

ii

# TABLE OF AUTHORITIES

## Cases

*ACA Int'l v. FCC*,
　885 F.3d 687 (D.C. Cir. 2018) ................................... 4

*Barr v. Am. Ass'n of Political Consultants*,
　Slip Op. (U.S. July 6, 2020) ................................. 2, 3

*Dominguez ex rel. Himself v. Yahoo, Inc.*,
　894 F.3d 116 (3d Cir. 2018) .................................... 4

*Duran v. La Boom Disco, Inc.*,
　955 F.3d 279 (2d Cir. 2020) ................................. 8, 9

*Gadelhak v. AT&T Servs., Inc.*,
　950 F.3d 458 (7th Cir. 2020) .............................. 6, 8

*Glasser v. Hilton Grand Vacations Co.*,
　948 F.3d 1301 (11th Cir. 2020) ...................... 6, 7, 8

*Marks v. Crunch San Diego, LLC*,
　904 F.3d 1041 (9th Cir. 2018) .................... 4, 5, 7, 9

*N.L. by Lemos v. Credit One Bank, N.A.*,
　960 F.3d 1164 (9th Cir. 2020) ................................. 9

## Statute

47 U.S.C. §227(b)(1)(A) ............................................. 2

## Other Authorities

Wilson Barmeyer et al., *Nobody Knows What
　an Autodialer Is Under the Telephone
　Consumer Protection Act—And That's a
　Problem*, JDSupra (Nov. 6, 2019),
　https://bit.ly/3ilTkd6 ............................................. 10

*In re Call Authentication Trust Anchor*,
　F.C.C. Dkt. No. 20-42 (Mar. 31, 2020)
　(Separate Statement of Commissioner
　O'Rielly), https://bit.ly/2Z4W3ju ............................. 5

iii

FCC, *Public Notice: Consumer and Governmental Affairs Bureau Seeks Further Comment on Interpretation of the TCPA in light of the Ninth Circuit's* Marks v. Crunch San Diego, LLC *Decision* (Oct. 3, 2018), https://bit.ly/2Qso4KG ..................... 5

Randall Hack & Brian Hays, *Second Circuit Adds to the TCPA Chaos*, JDSupra (Apr. 27, 2020), https://bit.ly/3dOxf3m ................. 10

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ......................................................... 6, 7

Eric J. Troutman, La Boom *Goes the Dynamite: Second Circuit Holds TCPA's ATDS Definition Includes Devices that Can Call from Lists and Not Just Random-Fire Dialers*, Nat'l L. Rev. (Apr. 7, 2020), https://bit.ly/38qbN3t................................................. 9

*WebRecon Stats for May 2020*, WebRecon LLC, https://bit.ly/2YNOj5g (last visited July 7, 2020) ...................................... 10

## SUPPLEMENTAL BRIEF

On July 6, 2020, this Court issued its decision in *Barr v. American Association of Political Consultants* (*AAPC*). While the Court's decision in *AAPC* resolves the first question presented in this petition, it only confirms the need to resolve the circuit split over the second question: whether "the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" Pet.ii.

Indeed, the already compelling case for certiorari on that statutory question has strengthened markedly since the filing of this petition. In light of the Court's resolution of *AAPC*, Facebook will continue to face liability in the Ninth Circuit for the innocuous security messages at issue here, while the majority of circuits limit the statute to the kind of robocalling technology Congress actually targeted in the TCPA. And the courts of appeals are now more divided than ever on the question. Since this petition was filed, *three* more courts of appeals have weighed in and deepened the split, with the Seventh and Eleventh Circuits joining the Third and D.C. Circuits, and the Second Circuit joining the Ninth Circuit. These developments confirm that the courts of appeals are in irreconcilable conflict on an important and oft-litigated question that dictates whether the statute reaches specialized robocalling equipment or every modern smartphone. Billions of dollars in liability turn on the answer. The Court should grant certiorari on the second question presented and provide much-needed clarity on the scope of the TCPA's definition of an ATDS.

2

## I. This Court's Resolution Of *AAPC* Confirms The Need To Resolve The Circuit Split On The Statutory ATDS Question.

The Court's recent ruling in *AAPC* only strengthens the case for granting certiorari on the second question presented in Facebook's petition. In *AAPC*, this Court addressed whether Congress violated the First Amendment when in 2015 it created an exception to the TCPA's restriction on "robocalls to cell phones" for "robocalls that are made to collect debts owed to or guaranteed by the Federal Government." Slip Op. at *1 (U.S. July 6, 2020) (plurality op.). A majority of the Court concluded that in creating the government-debt-collection exception in 2015, Congress violated the First Amendment. *Id.* A different majority then concluded that "the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute." *Id.* at *2. This ruling resolves Facebook's first question presented.

The Court did not, however, address Facebook's second question—namely, what qualifies as a "robocall" in the first place or, in the parlance of the statute, a call made "using any automatic telephone dialing system," or "ATDS." 47 U.S.C. §227(b)(1)(A). Indeed, by severing the government-debt-collection exception and leaving in place the now-broadened prohibition on calls made using an ATDS, the Court has only heightened the importance of knowing what constitutes an ATDS and what separates a "robocall" from an ordinary call placed on a smartphone. Answering that question is critical. As the plurality

3

recognized, the TCPA's up-to-$1,500-per-violation
penalties are "tough" and "can add up quickly in a
class action." *AAPC*, Slip Op. at *4. While those
penalties are appropriate for true "robocalls,"
companies like Facebook face massive liability for the
kind of security alerts at issue here and other
messages that are nothing like the robocalls that
prompted congressional action back in 1991. Under
the decision below, there is no requirement that
messages that trigger statutory penalties and class-
action demands use robocalling technology at all.
Instead, messages as harmless as an alert that
someone has accessed an account from a new device
and technology as ubiquitous as a typical smartphone
can satisfy the Ninth Circuit's capacious definition of
an ATDS. The Court's severability ruling does
nothing to ameliorate that liability. Indeed, the
plurality specifically noted that its decision "does not
negate the liability of parties who made robocalls
covered by the robocall restriction." *See id.* at *22
n.12. Thus, the *AAPC* decision not only leaves the
second question presented in Facebook's petition
unresolved, but makes determining the scope of the
"robocalls covered by the robocall restriction" more
important than ever.

## II. The Statutory ATDS Question Has Deeply Divided The Circuits, And The Circuit Split Has Only Grown More Entrenched.

The conflict among the courts of appeals on the
scope of the TCPA's prohibition has deepened
substantially since the certiorari-stage filings, further
underscoring the need for this Court's review. As
detailed in the petition, the Third and D.C. Circuits

4

stand in acknowledged conflict with the Ninth Circuit over the meaning of the ATDS definition in the TCPA. The statute defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. §227(a)(1). Consistent with the plain statutory language, in *Dominguez ex rel. Himself v. Yahoo, Inc.*, the Third Circuit held that an ATDS device must have the capacity to "store or produce" numbers "using a random or sequential number generator" and the capacity to "dial[] those numbers"—simply having the capacity to store and dial numbers was not enough. 894 F.3d 116, 118, 121 (3d Cir. 2018). And the D.C. Circuit invalidated a line of FCC orders regarding the definition of an ATDS, reasoning that the "TCPA cannot reasonably be read to render every smartphone an ATDS subject to the Act's restrictions, such that every smartphone user violates federal law whenever she makes a call or sends a text message without advance consent." *ACA Int'l v. FCC*, 885 F.3d 687, 697 (D.C. Cir. 2018).

Meanwhile, the Ninth Circuit has adopted a much broader (and atextual) reading of the ATDS definition, by concluding "that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018); *accord* Pet.App.6, 8-9. In reaching that conclusion, the Ninth Circuit "decline[d] to follow" the Third Circuit's decision in *Dominguez*, and drew from the very FCC orders that the D.C. Circuit invalidated

5

in *ACA International*. *Marks*, 904 F.3d at 1051-52 & n.8. Even the FCC has acknowledged that the D.C. Circuit and Ninth Circuit opinions are irreconcilable. *See* FCC, *Public Notice: Consumer and Governmental Affairs Bureau Seeks Further Comment on Interpretation of the TCPA in light of the Ninth Circuit's* Marks v. Crunch San Diego, LLC *Decision* 2 (Oct. 3, 2018), https://bit.ly/2Qso4KG; *see also In re Call Authentication Trust Anchor*, F.C.C. Dkt. No. 20-42 (Mar. 31, 2020) (Separate Statement of Commissioner O'Rielly), https://bit.ly/2Z4W3ju (decrying the "harmful and backwards *Marks v. Crunch San Diego* decision," "[e]specially now that the 7th and 11th Circuits have explicitly rejected the approach in *Marks*").

By decoupling the statutory requirement that an ATDS must use "a random or sequential number generator" from the requirement that the device be able to store numbers and dial them, the Ninth Circuit dramatically expanded the reach of the statute in ways that Congress never intended. The court took a statute designed to target the specialized machinery of robocalling telemarketers and extended it to any telephone that can store and dial numbers. In the decision below, the Ninth Circuit did not shy away from the breadth of its ruling, acknowledging that its expansive conception of an ATDS could sweep in "ubiquitous devices and commonplace consumer communications," like the security alerts at issue here. Pet.App.7. The result is that calls that no one would describe as robocalls run the risk of up-to-$1,500-per-call statutory damages.

6

Since the petition, three additional courts of appeals have offered conflicting interpretations of the ATDS definition, further deepening the circuit conflict. The Seventh and Eleventh Circuits expressly joined the Third and D.C. Circuits and expressly rejected the Ninth Circuit's reasoning in *Marks*. *See Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1311 (11th Cir. 2020); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 466 (7th Cir. 2020). Both courts concluded that under the plain text of the statute, "using a random or sequential number generator" modifies both "store" as well as "produce," and the contrary interpretation would radically expand the statute to encompass any device with the capacity to store and dial numbers automatically, which is to say virtually every modern cellphone. *See Glasser*, 948 F.3d at 1306-09, 1311; *Gadelhak*, 950 F.3d at 464-66.

In *Glasser*, a divided Eleventh Circuit, in an majority opinion written by visiting Judge Sutton, "start[ed] with conventional rules of grammar and punctuation," including the series-qualifier canon, which provides that "[w]hen two conjoined verbs ('to store or produce') share a direct object ('telephone numbers to be called'), a modifier following that object ('using a random or sequential number generator') customarily modifies both verbs." 948 F.3d at 1306-07 (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 148 (2012)). The court then explained that "the sentence contains a comma separating the phrase 'to store or produce telephone numbers to be called' from the phrase 'using a random or sequential number generator,'" which further "indicates that the clause modifies both 'store'

7

and 'produce' and does not modify just the second verb." *Id.* at 1307 (citing Scalia & Garner at 150).

The Eleventh Circuit directly addressed the perceived "oddity of 'stor[ing]' telephone numbers using a number generator" that troubled the Ninth Circuit and caused that court to put a "gloss" on the statutory text. *Id.* (alteration in original); *see Marks*, 904 F.3d at 1050-52 & n.8. The Eleventh Circuit observed that this problem quickly "fades when one considers how automatic phone-dialing technology works and when one keeps in mind the goal of giving content to each word and phrase in the statute," along with "the fact that devices that randomly generated phone numbers and stored them existed at the time Congress passed the Act." *Glasser*, 948 F.3d at 1307. Ultimately, the Eleventh Circuit recognized that the "key clause" in the statutory definition was "'using a random or sequential number generator,'" and the court rejected a reading that would eliminate the operation of that clause while sweeping ubiquitous devices like smartphones within the statute's prohibitions. *Id.*

The Eleventh Circuit explained that the Ninth Circuit's approach creates serious statutory-interpretation "problems" and "looks more like 'surgery' … than interpretation." *Id.* at 1311. As *Glasser* put it, the Ninth Circuit's reading requires the court to "separate the statute's two verbs ('to store or produce'), place the verbs' shared object ('telephone numbers to be called') in between those verbs, then insert a copy of that shared object to the statute, this time after the now separate verb 'to produce' to make clear that 'using a random or sequential number

8

generator' modifies only 'to produce.'" *Id.* The
Eleventh Circuit understandably preferred a plain-
text interpretation to that statutory surgery. Judge
Martin dissented and would have followed the Ninth
Circuit's lead in *Marks*.

In *Gadelhak*, the Seventh Circuit followed the
Eleventh Circuit, concluding that the narrower
interpretation of the ATDS definition "is certainly the
most natural one based on sentence construction and
grammar." 950 F.3d at 464. Like the Eleventh
Circuit, the Seventh Circuit rejected the Ninth
Circuit's approach as "atextual" and "unpersuasive,"
amounting to "a significant judicial rewrite" that
"contort[s] the statutory text almost beyond
recognition." *Id.* at 466-67. The Seventh Circuit also
observed that the Ninth Circuit's "ungrammatical
interpretation" would "create liability for every text
message sent from an iPhone," resulting in a
"sweeping restriction on private consumer conduct
that is inconsistent with the statute's narrower focus."
*Id.* at 467.

Most recently, the Second Circuit weighed in and,
despite having the benefit of *Glasser* and *Gadelhak*
(not to mention the earlier Third and D.C. Circuit
decisions), opted to "follow" the Ninth Circuit's
approach. *Duran v. La Boom Disco, Inc.*, 955 F.3d 279,
281 n.5 (2d Cir. 2020); *see id.* at 283-86. The Second
Circuit acknowledged the "split" on "precisely this
question," with the Ninth Circuit interpreting the
definition broadly to cover all devices with the
capacity to store numbers and make calls, and the
"Seventh, Eleventh and Third Circuits hav[ing]
concluded otherwise." *Id.* at 281 n.5. While the

9

Second Circuit opted to "follow" the Ninth Circuit in interpreting "using a random or sequential number generator" to modify only "produce," and not "store," it tried to limit the scope of that holding by reading into the statute a separate requirement that the calls be placed "automatically" and without significant "human intervention." *See id.* at 287-90.  Those words are absent from the statutory text, and the Ninth Circuit expressly rejected this limitation as part of its test.  *See* Suppl.Reply.7-8 (citing *Marks*, 904 F.3d at 1052).  Even the Ninth Circuit has acknowledged that the circuits are hopelessly divided, especially in light of the Seventh and Eleventh Circuits' "forceful decisions disagreeing with *Marks*" and "the Second Circuit weigh[ing] in on the side of *Marks*." *N.L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1171 (9th Cir. 2020).

The Second Circuit candidly acknowledged that "several Courts of Appeals" have "reach[ed] different conclusions" concerning the scope of an ATDS, and that it was joining the minority position.  *Duran*, 955 F.3d at 281 n.5; *see also id.* at 283 n.15.  It also noted that the "definitional question" is of nationwide importance, as it "pervades TCPA litigation in [the Second] Circuit and others." *Id.* at 281.  Numerous commentators have recognized that the need for Supreme Court review is imperative in light of the recent and conflicting decisions of the Seventh, Eleventh, and Second Circuits.  *See* Eric J. Troutman, La Boom *Goes the Dynamite:  Second Circuit Holds TCPA's ATDS Definition Includes Devices that Can Call from Lists and Not Just Random-Fire Dialers*, Nat'l L. Rev. (Apr. 7, 2020), https://bit.ly/38qbN3t; Randall Hack & Brian Hays, *Second Circuit Adds to*

10

*the TCPA Chaos*, JDSupra (Apr. 27, 2020),
https://bit.ly/3dOxf3m; *see also* Wilson Barmeyer et
al., *Nobody Knows What an Autodialer Is Under the
Telephone Consumer Protection Act—And That's a
Problem*, JDSupra (Nov. 6, 2019),
https://bit.ly/3ilTkd6. The need for review is only
magnified by the ubiquity and stakes of TCPA filings,
which frequently involve a request for class
certification. *WebRecon Stats for May 2020*,
WebRecon LLC, https://bit.ly/2YNOj5g (last visited
July 7, 2020) (nearly 45% of TCPA complaints in May
2020 requested class-action treatment).

In sum, the Circuits are deeply divided on a
question that is central to literally billions of dollars of
ongoing litigation. There is no prospect that this split
will go away or diminish in importance. The Ninth
Circuit rejected the pioneering analysis of the Third
and D.C. Circuits. The Seventh and Eleventh Circuits
then just as clearly rejected the statutory "surgery"
employed by the Ninth Circuit. And now the Second
Circuit, with the full benefit of all those decisions,
decided to follow the Ninth Circuit. Companies with
nationwide operations cannot operate under this
patchwork of rules on a question as basic as whether
the ATDS that triggers liability under the statute
covers ubiquitous smartphones or only the specialized
technologies of robocallers or something in between.
Given the stakes and the entrenched circuit split, this
Court should grant review on the second question
presented here.

11

## CONCLUSION

For the foregoing reasons, along with those set forth in the petition and replies, the Court should grant the second question presented.

Respectfully submitted,

| | |
|---|---|
| ANDREW B. CLUBOK | PAUL D. CLEMENT |
| ROMAN MARTINEZ | *Counsel of Record* |
| SUSAN E. ENGEL | DEVIN S. ANDERSON |
| SAMIR DEGER-SEN | KASDIN M. MITCHELL |
| GREGORY B. | LAUREN N. BEEBE |
| IN DEN BERKEN | KIRKLAND & ELLIS LLP |
| LATHAM | 1301 Pennsylvania Ave., NW |
| & WATKINS LLP | Washington, DC 20004 |
| 555 Eleventh Street, NW | (202) 389-5000 |
| Suite 1000 | paul.clement@kirkland.com |
| Washington, DC 20004 | |

*Counsel for Petitioner*

July 7, 2020