**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DANIEL REASE, individually and on behalf
of all others similarly situated,

                        Plaintiff,

    v.

CHARTER COMMUNICATIONS, INC.,

                        Defendant.

Case No. 3:20-cv-00150-RNC

Hon. Robert N. Chatigny

<u>**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**</u>

Dated: September 16, 2020

**BURSOR & FISHER, P.A**.
Joseph I. Marchese*
Philip L. Fraietta (*pro hac vice*)
888 Seventh Avenue, Third Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  jmarchese@bursor.com
        pfraietta@bursor.com

**HEDIN HALL LLP**
Frank S. Hedin*
David W. Hall*
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058
Email: fhedin@hedinhall.com
       dhall@hedinhall.com

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 S. Main Street, 3rd Floor
West Hartford, Connecticut 06110
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

*To Be Admitted *Pro Hac Vice*

*Attorneys for Plaintiff*
*And The Putative Class*

**TABLE OF CONTENTS**

**PAGE(S)**

I.   INTRODUCTION .................................................................................................. 1

II.  APPLICABLE LAW .......................................................................................... 2

   A.  The Holding In *AAPC* ............................................................................... 2

   B.  Legal Standard For Motion For Judgment On The Pleadings ...................... 4

III. ARGUMENT ...................................................................................................... 5

   A.  *AAPC* Did Not Hold That The Narrow Government Debt Collector Exception
       Rendered The Entire Autodialer Ban Unconstitutional ................................ 5

   B.  Defendant's Reading Of *AAPC* Turns the Severability Doctrine On
       Its Head ....................................................................................................... 7

IV.  CONCLUSION.................................................................................................. 10

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Ayotte v. Planned Parenthood of Northern New England,*
546 U.S. 320 (2006) ........................................................................................... 7

*Barr v. American Ass'n of Political Consultants,*
140 S. Ct. 2335 (2020) ............................................................................... passim

*Chen-Oster v. Goldman, Sachs & Co.,*
114 F. Supp. 3d 110 (S.D.N.Y. 2015) ................................................................ 6

*Dorchy v. State of Kansas,*
264 U.S. 286 (1924) ........................................................................................ 2, 7

*Duran v. La Boom Disco, Inc.,*
955 F.3d 279 (2d Cir. 2020) .............................................................................. 1

*Frost v. Corporation Commission of Oklahoma,*
278 U.S. 515 (1929) ........................................................................................... 7

*Loeb v. Trustees of Columbia Township,*
179 U.S. 472 (1900) ........................................................................................ 2, 7

*Montgomery v. Louisiana,*
136. S. Ct. 718 (2016) ........................................................................................ 9

*National Federation of Independent Business v. Sebelius,*
567 U.S. 519 (2012) ........................................................................................... 8

*Seila Law LLC v. Consumer Financial Protection Bureau,*
140 S. Ct. 2183 (2020) .............................................................................. 2, 9, 10

*Seminole Tribe of Florida v. Florida,*
517 U.S. 44 (1996) ............................................................................................. 6

*Tiffany (NJ) Inc. v. eBay Inc.,*
600 F.3d 93 (2d Cir. 2010) ................................................................................ 6

*United States ex rel. Phipps v. Comprehensive Community Development Corp.,*
152 F. Supp. 2d 443 (S.D.N.Y. 2001) ............................................................... 5

*Waldron v. U.S.,*
146 F.2d 145 (6th Cir. 1944) ............................................................................. 9

*Young v. Bank of Boston Connecticut*,
   1996 WL 756504 (D. Conn. June 18, 1996) ................................................................................. 5

## OTHER AUTHORITIES

BLACK'S LAW DICTIONARY (11th Ed. 2019)..................................................................................... 5, 6

U.S. Constitution ............................................................................................................................... 4

Plaintiff Daniel Rease ("Plaintiff"), individually and on behalf of all others similarly situated, submits this response in opposition to Defendant Charter Communication, Inc.'s ("Charter" or "Defendant") Motion for Judgment on the pleadings, ECF No. 47 (the "Motion" or "Mtn.").

## I.    INTRODUCTION

At every stage of this case, Defendant's self-serving predictions have fallen flat.    First, Defendant argued the Second Circuit would "likely affirm the lower courts' grant of summary judgment by joining the emerging majority of courts across the country" in defining what constitutes an automated telephone dialing system ("ATDS") under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").   ECF No. 31 at 1.   The Second Circuit did the opposite, joining the Ninth Circuit (and now the Sixth Circuit, *i.e.* the current majority of courts) in holding "that an ATDS can, indeed, make calls from stored lists." *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 281 n.5 (2d Cir. 2020).   Then, Defendant argued that the government debt collector exception at issue in *Barr v. American Ass'n of Political Consultants*, 140 S. Ct. 2335 (2020) ("*AAPC*") could not be severed from the TCPA given the "general rule in the case of a constitutional violation."   ECF No. 31 at 2.   Again, the Supreme Court did the opposite, severing the narrow government debt collector exception from the TCPA.   *AAPC*, 140 S. Ct. at 2356 ("We cure that constitutional violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute.").

Now, Defendant completely misconstrues *AAPC* and puts forth another gambit:   that the narrow government debt collector exception rendered the entire autodialer ban "an unconstitutional content-based restriction" that was "unenforceable [] from the enactment of the government debt exception in 2015 until the Court severed it in *AAPC*."   Mtn. at 1.   In doing so, Defendant embarks on a course in revisionist history:   because *AAPC* did not strike down the autodialer ban as Defendant had hoped, but actually did the exact opposite by upholding the TCPA statute and making its intentions on that point crystal clear.   To argue otherwise is preposterously delusional.

1

First, the clear and purposeful holding of *AAPC* itself undermines Defendant's position.  The Supreme Court explicitly held that it's "**decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.**"  *AAPC*, 140 S. Ct. at 2355 n.12. (emphasis added).  And even if Defendant feigns to dismiss this passage as dicta—and it is not—there are myriad other examples in the opinion standing for the same principle.

Second, even if *AAPC* did not explicitly hold that the narrow government debt collector exception did not render the entire autodialer exception unconstitutional, Supreme Court precedent would lead to the same conclusion.  *See*, *e.g.*, *Dorchy v. State of Kansas*, 264 U.S. 286, 289-90 (1924) ("A statute bad in part is not necessarily void in its entirety."); *Loeb v. Trustees of Columbia Township*, 179 U.S. 472, 490 (1900) ("[O]ne section of a statute may be repugnant to the Constitution without rendering the whole act void.").  Indeed, both *AAPC* and *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020)—the latter of which Defendant perplexingly cites at length despite being supportive of Plaintiff's position—cite positively to this very authority.  *AAPC*, 140 S. Ct. at 2350 (citing *Dorchy* and *Loeb*); *Seila Law*, 140 S. Ct. at 2208 (same).

For the following reasons, the Motion should be denied in its entirety.

## II.    APPLICABLE LAW

### A.    The Holding In *AAPC*

In *AAPC*, the Supreme Court considered "[w]hether the government-debt exception to the TCPA's automated-call restriction violates the First Amendment, and whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute.  Question Presented Report, *AAPC*, No. 19-631, https://www.supremecourt.gov/docket/docketfiles/html/qp/19-00631qp.pdf.  As to the first question, which is not relevant to this case, the Supreme Court held that "the government-debt exception added an unconstitutional discriminatory exception to the robocall restriction."  *AAPC*, 140 S. Ct. at 2352.  The Supreme Court then analyzed "whether (i) to invalidate

the entire 1991 robocall restriction, as plaintiffs want, or (ii) to invalidate just the 2015 government-debt exception and sever it from the remainder of the statute, as the Government wants." *Id.* at 2349.

The Supreme Court began its decision by commending the popularity of the TCPA. *AAPC*, 140 S. Ct. at 2343 ("Americans passionately disagree about many things. But they are largely united in their disdain for robocalls … For nearly 30 years, the people's representatives in Congress have been fighting back.  As relevant here, the Telephone Consumer Protection Act of 1991 … generally prohibits robocalls to cell phones and home phones.").  The Supreme Court then noted that the TCPA is covered by the Communications Act's "express severability clause," such that "[i]f any provision of this chapter or the application thereof to any person or circumstance is held invalid, the remainder of the chapter and the application of such provision to other persons or circumstances shall not be affected thereby." *Id.* at 2352 (citing 47 U.S.C. § 608).  The Supreme Court also discussed its history of applying "severability principles in cases like this one, where Congress added an unconstitutional amendment to a prior law.  In those cases, the Court has treated the original, pre-amendment statute as the 'valid expression of the legislative intent.'" *Id.* at 2353 (citing *Frost v. Corporation Commission of Oklahoma*, 278 U.S. 515, 526-27 (1929)).  Indeed, the Court explained that "an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *AAPC*, 140 S. Ct. at 2353 (citing *Frost*, 278 U.S. at 526-527).

Applying these principles, seven members of the Supreme Court had no trouble severing the "relatively narrow" government debt collector exception from the TCPA and held that "severing the government-debt exception does not raise any other constitutional problems." *AAPC*, 140 S. Ct. at 2355.  Crucially, the opinion clarified that while political robocallers would not be held retroactively liable, the opinion did not disrupt the current autodialer ban for non-political entities:

> As the Government acknowledges, although our decision means the end
> of the government-debt exception, no one should be penalized or held
> liable for making robocalls to collect government debt after the effective
> date of the 2015 government-debt exception and before the entry of final

> judgment by the District Court on remand in this case, or such date that
> the lower courts determine is appropriate.  <u>On the other side of the
> ledger, our decision today does not negate the liability of parties who
> made robocalls covered by the robocall restriction.</u>

*AAPC*, 140 S. Ct. at 2355 n.12 (emphasis added, internal citations removed).[1]  Indeed, the decision

criticized Justice Gorsuch's partial concurrence, in which Justice Gorsuch, joined by Justice Thomas

would have struck down both the government debt collector exception and the autodialer ban in a

broader critique of the severability doctrine.  *Id.* at 2366.  Instead, the plurality opinion preferred a

more moderate approach:

> Justice Gorsuch's approach to this case would not solve the problem of
> harming strangers to this suit; it would just create a different and much
> bigger problem. His proposed remedy of injunctive relief, plus *stare
> decisis*, would in effect allow all robocalls to cell phones—
> notwithstanding Congress's decisive choice to prohibit most robocalls
> to cell phones. That is not a judicially modest approach but is more of a
> wolf in sheep's clothing. <u>That approach would disrespect the democratic
> process, through which the people's representatives have made crystal
> clear that robocalls must be restricted</u>.  Justice Gorsuch's remedy would
> end up harming a different and far larger set of strangers to this suit—
> the tens of millions of consumers who would be bombarded every day
> with nonstop robocalls notwithstanding Congress's clear prohibition of
> those robocalls.

*Id.* at 2356 (emphasis added).  In short, *AAPC* struck down the government debt collector

exception, and, consistent with severability principles and congressional mandates, easily

severed this narrow exception from the autodialer ban.

**B.    Legal Standard For Motion For Judgment On The Pleadings**

"A party may move to dismiss because of lack of subject matter jurisdiction at any time during

the course of an action."  *Young v. Bank of Boston Connecticut*, 1996 WL 756504, at *2 (D. Conn.

---

[1] Defendant believes this result would be "untenable and outlandish."  Mtn. at 7.  Not so.  There is
nothing wrong with stating an entity is not liable because their conduct was legal when they committed
it, but later determined to be illegal.  In fact, such a result is mandated by the Constitution. U.S. Const.
art. I, § 9, cl. 3 ("No Bill of Attainder or <u>ex post facto Law</u> shall be passed.") (emphasis added).
Similarly, punishing an entity whose conduct has always been illegal is perfectly permissible.

June 18, 1996).  "Although subject matter jurisdiction is usually challenged by way of a Rule 12(b)(1) motion to dismiss, it may also be raised on a Rule 12(c) motion for judgment on the pleadings." *United States ex rel. Phipps v. Comprehensive Community Development Corp.*, 152 F. Supp. 2d 443, 448 (S.D.N.Y. 2001).  "In considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *Id.* at 449 (citing *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).

III.    **ARGUMENT**

A.    ***AAPC* Did Not Hold That The Narrow Government Debt Collector Exception Rendered The Entire Autodialer Ban Unconstitutional**

Defendant's Motion is undermined by the *AAPC* opinion itself.  In *AAPC*, the Supreme Court explicitly held that it's "decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *AAPC*, 140 S. Ct. at 2355 n.12.  In other words *AAPC* did not retroactively render the autodialer provision of the TCPA unconstitutional.

Defendant's retort to this plainly fatal defect in its motion is to dismiss this footnote as "pure obiter dicta." Mtn. at 8.  This is absurd.  "Obiter dicta" is defined as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." DICTUM, BLACK'S LAW DICTIONARY (11th Ed. 2019).  The footnote here is instrumental to the holding because it establishes that government debt collectors will not be liable for calls they made while the exception was in place, even though the exception was unconstitutional.  Accepting Defendant's logic, would mean that statement should be ignored as well and debt collectors actually *are* liable for all calls made while the exception was in place.  This interpretation renders an illogical result.  Just as illogical and irrational as Defendant asking this Court to ignore the Supreme Court's second statement and do the exact opposite by finding the decision did negate liability of the robocalling parties.  The footnote clearly establishes that non-

government debt collectors, such as Defendant, are not off the hook for autodialed calls made while the exception was in place. Therefore, the footnote is not dicta because it establishes the liability of the parties involved in *AAPC*. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.)

Further, even if this footnote was dicta—and it is not—it is still persuasive. In the definition for "dictum," Black's Law Dictionary notes:

> As a dictum is by definition no part of the doctrine of the decision, and as the citing of it as a part of the doctrine is almost certain to bring upon a brief maker adverse comment, lawyers are accustomed to speak of a dictum rather slightingly, and sometimes they go so far as to intimate a belief that the pronouncing of a dictum is the doing of a wrong. <u>Yet it must not be forgotten that dicta are frequently, and indeed usually, correct</u>, and that to give an occasional illustration, or to say that the doctrine of the case would not apply to some case of an hypothetical nature, or to trace the history of a doctrine, even though it be conceded, as it must, that such passages are not essential to the deciding of the very case, is <u>often extremely useful to the profession</u>.

DICTUM, BLACK'S LAW DICTIONARY (citing WILLIAM M. LILE ET AL., BRIEF MAKING AND THE USE OF LAW BOOKS 307 (Roger W. Cooley & Charles Lesley Ames eds., 3d ed. 1914) (emphasis added)); *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 108 (2d Cir. 2010) (finding Supreme Court dicta to be persuasive authority); *Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110, 114 (S.D.N.Y. 2015) ("While the Supreme Court's observation was plainly dicta, a district court is well-advised to heed it.").

Finally, aside from the footnote, the *AAPC* opinion is full of language that undermines Defendant's argument. *See, e.g., AAPC*, 140 S. Ct. at 2353 ("The Court has long applied severability principles in cases like this one, where Congress added an unconstitutional amendment to a prior law. In those cases, the Court has treated the original, pre-amendment statute as the valid expression of the legislative intent." (internal quotations omitted)); *id.* ("[T]he Court in [*Frost v. Corporation*

*Commission of Oklahoma*, 278 U.S. 515 (1929)] explained that an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, <u>and for that reason has no effect on the original statute</u>." (emphasis added)); *id.* at 2355 ("The government-debt exception is a relatively narrow exception to the broad robocall restriction and severing the government-debt exception does not raise any other constitutional problems."). Thus, even aside from the footnote, *AAPC* clearly holds that the autodialer ban was not rendered unconstitutional because of the narrow government debt collector exception.

### B. Defendant's Reading Of *AAPC* Turns the Severability Doctrine On Its Head

Even if *AAPC* did not explicitly hold that the autodialer ban was not unconstitutional because of the government debt collector exception—and *AAPC* does explicitly hold this—Supreme Court precedent would warrant the same result. As the Supreme Court has held for over a century:

> Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem. We prefer, for example, to enjoin only the unconstitutional applications of a statute while leaving other applications in force, or to sever its problematic portions while leaving the remainder intact.

*Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 328-329 (2006) (internal citations omitted); *see also id.* at 329 ("[T]he 'normal rule' is that partial, rather than facial, invalidation is the required course, such that a statute may be declared invalid to the extent that it reaches too far, but otherwise left intact." (internal quotations omitted)); *Frost*, 515 U.S. at 526-27 ("Without an express repeal, a different Legislature undertook to create an exception, but, since that body sought to express its will by an amendment which, being unconstitutional, is a nullity and, therefore, powerless to work any change in the existing statute, that statute must stand as the only valid expression of the legislative intent."); *Dorchy v. State of Kansas*, 264 U.S. 286, 289-90 (1924) ("A statute bad in part is not necessarily void in its entirety."); *Loeb v. Trustees of Columbia Township*, 179 U.S. 472, 490 (1900) ("[O]ne section of a statute may be repugnant to the Constitution without

rendering the whole act void.").

*National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012) provides a useful comparison. In *Sebelius*, the Supreme Court held that a provision of the Affordable Care Act that permitted the Secretary of Health and Human Services to "withhold all further [Medicaid] payments … to the state if she determines that the State is out of compliance with any Medicaid requirement" was unconstitutional. *Sebelius*, 567 U.S. at 585 (emphasis and internal quotations removed). The Supreme Court cured this unconstitutional provision by severing it from the statute, rather than striking down the entire Affordable Care Act.[2]  *Id.* at 588 ("The remedy for that constitutional violation is to preclude the Federal Government from imposing such a sanction. That remedy does not require striking down other portions of the Affordable Care Act."). In so ruling, the Supreme Court did *not* hold that the Affordable Care Act was unconstitutional prior to severing this provision. In fact, the Supreme Court explicitly stated that "[t]oday's holding does not affect the continued application of § 1396c to the existing Medicaid program." *Id.* at 586.

So too here. In *AAPC*, the Supreme Court invalidated a narrow exception to the automated dialer ban for government debt collectors. *AAPC*, 140 S. Ct. at 2356 ("We hold that the 2015 government-debt exception added an unconstitutional exception to the law."). The Supreme Court "cure[d] that constitutional violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute." *Id.*; *see also id.* at 2355 ("The government-debt exception is a relatively narrow exception to the broad robocall restriction, and severing the government-debt exception does not raise any other constitutional problems."). As in *Sebelius*, the Supreme Court followed and did not hold that the narrow exception rendered the entire autodialer ban

---

[2] Like the TCPA, the Affordable Care Act has a severability clause. *Sebelius*, 567 U.S. at 586 ("The chapter of the United States Code that contains § 1396c includes a severability clause confirming that we need go no further."); *AAPC*, 140 S. Ct. at 2352 (noting the severability clause in the Communications Act of 1934, 47 U.S.C. § 608, "covers § 227 of Title 47, the provision with the robocall restriction and the government-debt exception.").

unconstitutional.  *Id.* ("In short, the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction.").

Defendant's cases are inapposite.  In *Montgomery v. Louisiana*, 136. S. Ct. 718 (2016), the Supreme Court held that the prohibition on sentencing juveniles to life without parole was "a new substantive rule that, under the Constitution, is retroactive in cases on state collateral review." *Montgomery*, 136 S. Ct. at 724.  But *Montgomery* was not a case like *AAPC* in which part of a statute was declared unconstitutional and the court then had to decide whether the remainder could independently remain valid.  Rather, *Montgomery* held that because an *entire* course of conduct—sentencing juveniles to life without parole—was unconstitutional, such sentences could be reviewed retroactively.

Similarly, in *Waldron v. U.S.*, 146 F.2d 145 (6th Cir. 1944), the conviction of a man sentenced under the Federal Firearms Act, 15 U.S.C. § 902(f), was vacated after the Supreme Court declared a significant presumption underlying the statute to be unconstitutional.  *Waldron*, 146 F.2d at 146 (vacating conviction where "it was held that Congress was without the power to create the presumption that a person had received a firearm in interstate or foreign commerce merely because of his possession of it and the fact that he had previously been convicted of a crime of violence").  Again, this decision was based on holding an entire statute (or a significant part of it) to be unconstitutional, rather than a narrow exception to a statute like in *AAPC*, and the conviction was therefore based on a void law.

*Seila Law LLC v. Consumer Financial Protection Bureau* ("*Seila Law*"), 140 S. Ct. 2183 (2020), despite being cited at length by Defendant, is in fact supportive of Plaintiff's position.  There, the Supreme Court held that "the [Consumer Financial Protection Bureau's] leadership by a single individual removable only for inefficiency, neglect, or malfeasance [*i.e.*, for cause] violates the separation of powers."  *Seila Law*, 140 S. Ct. at 2197.  However, the Supreme Court held the proper remedy was to sever the "for cause" provision. *Id.* at 2192 ("We go on to hold that the CFPB Director's

removal protection is severable from the other statutory provisions bearing on the CFPB's authority."). In doing so, the Supreme Court made clear that they were not dismantling the Consumer Financial Protection Bureau ("CFPB"), or holding that the Dodd-Frank Act—which created the CFPB and contained the "for cause" provision—was retroactively unconstitutional while the "for cause" provision was in place. *Id.* at 2209 ("The provisions of the Dodd-Frank Act bearing on the CFPB's structure and duties remain fully operative without the offending tenure restriction. Those provisions are capable of functioning independently, and there is nothing in the text or history of the Dodd-Frank Act that demonstrates Congress would have preferred *no* CFPB to a CFPB supervised by the President.") (emphasis in original).[3]

In short, when the Supreme Court severs a portion of a law and leaves the rest in place, it only declares the severed portion unconstitutional. It does *not* hold that the remainder of the law was unconstitutional while the severed portion was in place. When the Supreme Court has undone a prior act or conviction, it is because the *entire* law, and not a mere portion, was unconstitutional. Thus, when the Supreme Court struck down the narrow government debt collector exception in *AAPC*, it did not hold that the autodialer ban had been unconstitutional while the exception was in place. To ensure this decision was not interpreted otherwise, the Supreme Court explicitly clarified its "decision today does not negate the liability of parties who made robocalls covered by the robocall restriction."

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in full.

---

[3] Defendant argues that because the CFPB was required to re-ratify all of its prior decisions due to its unconstitutional structure, this somehow equates to *AAPC* holding that the autodialer ban was invalid while the narrow government debt collector exception was in place. Mtn. at 11-12. The two could not be more night and day. The CFPB was required to re-ratify its prior decisions because *all* of its prior decisions had been made by an unconstitutionally irremovable director. *AAPC*, by contrast, is akin to if all of the CFPB's decisions were made by a constitutionally removable director, except for a small few that were made by an unconstitutionally irremovable director. The decisions made by the latter would need to be re-ratified, but that would not disrupt the decisions made by the former. Nor would the unconstitutionally irremovable director render the entire CFPB unconstitutional.

Dated:  September 16, 2020

**BURSOR & FISHER, P.A**.

By:    _/s/ Philip L. Fraietta_
            Philip L. Fraietta

Joseph I. Marchese*
Philip L. Fraietta (*pro hac vice*)
888 Seventh Avenue, Third Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  jmarchese@bursor.com
       pfraietta@bursor.com

**HEDIN HALL LLP**
Frank S. Hedin*
David W. Hall*
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058
Email:  fhedin@hedinhall.com
      dhall@hedinhall.com

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 S. Main Street, 3rd Floor
West Hartford, Connecticut 06110
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

*To Be Admitted *Pro Hac Vice*

*Attorneys for Plaintiff*
*And The Putative Class*

11

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 16, 2020, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


                          */s/ Philip L. Fraietta*
                          Philip L. Fraietta