### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL REASE, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>  v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>          Defendant. | Case No. 3:20-cv-00150-RNC<br><br><br>Hon. Robert N. Chatigny |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER

Dated: September 16, 2020

**BURSOR & FISHER, P.A**.
Joseph I. Marchese*
Philip L. Fraietta (*pro hac vice*)
888 Seventh Avenue, Third Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile:   (212) 989-9163
Email:  jmarchese@bursor.com
    pfraietta@bursor.com

**HEDIN HALL LLP**
Frank S. Hedin*
David W. Hall*
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058
Email: fhedin@hedinhall.com
   dhall@hedinhall.com

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 S. Main Street, 3rd Floor
West Hartford, Connecticut 06110
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

*To Be Admitted Pro Hac Vice

*Attorneys for Plaintiff*
*And The Putative Class*

## TABLE OF CONTENTS

**PAGE(S)**

I.   INTRODUCTION ................................................................................................ 1

II.  LEGAL STANDARD ......................................................................................... 3

III. ARGUMENT ...................................................................................................... 4

    A.   All Relevant Factors Oppose Transfer ....................................................... 4

        1.   There Is No Compelling Reason To Override Plaintiff's Choice Of
Forum. .............................................................................................. 4

        2.   The Convenience Of Parties And Witnesses Disfavors Transfer ........... 4

        3.   The Location Of Relevant Documents And The Relative Access To Sources Of
Proof Opposes Transfer ..................................................................... 6

        4.   The Locus Of Operative Facts Weighs Against Transfer. ..................... 6

        5.   The Availability Of Process To Compel The Attendance Of Unwilling Witnesses
Disfavors Transfer. ........................................................................... 7

        6.   The Relative Means Of The Parties Opposes Transfer .......................... 7

        7.   The Interests Of Trial Efficacy And Justice Oppose Transfer ............... 8

IV.  CONCLUSION ................................................................................................... 9

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*AL and Po Corp. v. American Healthcare Capital, Inc.*,
  2015 WL 738694 (N.D. Ill. Feb. 19, 2015)...................................................................... 6

*Arrow Elecs. Inc. v. Ducommun Inc.*,
  724 F. Supp. 264 (S.D.N.Y. 1989)................................................................................... 5

*Connecticut v. Moody's Corp.*,
  664 F. Supp. 2d 196 (D. Conn. 2009) ............................................................................. 4

*Duran v. La Boom Disco, Inc.*,
  955 F.3d 279 (2d Cir. 2020)............................................................................................. 2

*EasyWeb Innovations, LLC v. Facebook, Inc.*,
  888 F. Supp. 2d 342 (S.D.N.Y. 2012) ............................................................................. 7

*Flood v. Carlson Restaurants Inc.*,
  94 F. Supp. 3d 572 (S.D.N.Y. 2015).......................................................................... 3, 7

*In re Collins & Aikman Corp. Sec. Litig.*,
  438 F.Supp.2d 392 (S.D.N.Y. 2006)................................................................................ 3

*In re Lehman Brothers Holdings Inc.*,
  594 B.R. 33 (Bankr. Ct. S.D.N.Y. 2018) ........................................................................ 5

*In re: United Collection Bureau, Inc., Telephone Consumer Protection Act (TCPA) Litig.*,
  273 F. Supp. 3d 1364 (J.P.M.L. 2017)............................................................................ 9

*Iragorri v. United Tech. Corp.*,
  274 F.3d 65 (2d Cir. 2001)............................................................................................... 4

*Kiss My Face Corp. v. Bunting*,
  2003 WL 22244587 (S.D.N.Y. Sept. 20, 2003) .............................................................. 5

*Lapushner v. Admedus Ltd.*,
  2020 WL 777332 (S.D.N.Y. Feb. 14, 2020) ................................................................... 6

*Melito v. Experian Marketing Solutions, Inc.*,
  923 F.3d 85 (2d Cir. 2019)............................................................................................... 5

*NBA Properties, Inc. v. Salvino, Inc.*,
  2000 WL 323257 (S.D.N.Y. Mar. 27, 2000) .................................................... 7

*Neil Bros. Ltd. v. World Wide Lines, Inc.*,
  425 F. Supp. 2d 325 (E.D.N.Y. 2006) ........................................................... 7

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
  599 F.3d 102 (2d Cir. 2010) .......................................................................... 4

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
  329 F.3d 64 (2d Cir. 2003) ............................................................................ 8

*Ramirez v. SupportBuddy Inc.*,
  2018 WL 2089362 (S.D.N.Y. May 4, 2018) .................................................. 3

*Travelers Property Cas. Co. of Am. v. Western Consol. Premium Properties, Inc.*,
  2008 WL 725118 (Conn. Sup. Ct. Feb. 21, 2008) ........................................ 5

**STATUTES**

28 U.S.C. § 1404 ................................................................................................... 3

47 U.S.C. § 227 ..................................................................................................... 1

**OTHER AUTHORITIES**

*Charter Communications, Inc., Income Statement*, YAHOO! FINANCE,
  https://finance.yahoo.com/quote/CHTR/ ....................................................... 8

UNITED STATES COVID-19 CASES AND DEATHS BY STATE,
  https://covid.cdc.gov/covid-data-tracker/#cases_totalcases ......................... 8

Plaintiff Daniel Rease ("Plaintiff"), individually and on behalf of all others similarly situated, submits this response in opposition to Defendant Charter Communication, Inc.'s ("Charter" or "Defendant") Motion to Transfer, ECF No. 48 (the "Motion" or "Mtn.").

## I.    **INTRODUCTION**

Over the previous four years, Charter transmitted, by itself or through an intermediary, multiple text messages to Plaintiff and to each member of the putative class.  Compl. ¶ 11.  Specifically, Charter transmitted multiple text messages to Plaintiff's cellular telephone number (727) ***-7106 ("7106 Number").  *Id.* ¶ 12.  These text messages were sent without Plaintiff's "express consent" and not during an emergency. *Id.* ¶ 10-11.  The first text message he received stated:

> Spectrum Mobile: Thanks for your order. Your order total is $41.42.
> We'll update you when your mobile order ships.

*Id.* ¶ 13.  Plaintiff responded via text message, explaining he never ordered anything from Spectrum Mobile.  *Id.* ¶ 14.  The following day, Plaintiff received another similar text message.  *Id.*  Each message came from a dedicated SMS short code leased by, owned by, or operated on behalf of Charter, and was sent using an automatic telephone dialing system ("ATDS") designed to transmit messages to consumers *en masse*.  *Id.* ¶¶ 15, 17. All putative class members received similar messages, also without consent.  *Id.* ¶¶ 10-11.

Consequently, Plaintiff brought a Class Action Complaint against Charter for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").  *Id.* ¶ 1.  The TCPA protects citizens from abusive and unwanted telecommunications, and prohibits making any telephone call "using any automatic telephone dialing system" or an "artificial or prerecorded voice" to "any telephone number assigned to … [a] cellular telephone service," absent an emergency purpose or the "express consent" of the party called. 47 U.S.C. § 227(b).

Charter has avoided litigating the merits of this case at all costs, instead beleaguering this Court with several ill-conceived and confounding motions.  So too here, where Charter asks the Court to

1

transfer the case over 1,000 miles away, to its preferred venue in the Middle District of Florida,[1] claiming that transfer serves the "convenience of the parties and witnesses" and is "in the interests of justice." This, despite the fact that Charter's *headquarters* is in this District. Charter's attempt to transfer this action away from its home district is without merit.

In the Motion, Charter describes the disparate entities involved in bringing about Plaintiff and his fellow class members' injury. Declaration of Philip Montsigner ("Montsinger Decl."), ECF No. 48-1, at ¶¶ 3-13. In total, Charter mentions seven states that may contain relevant information: Delaware, Virginia, Connecticut, Colorado, Missouri, North Carolina, and Florida. *Id.* These disparate states, aside from showing why Florida is an improper venue, distract from a crucial fact: Charter maintains ultimate authority over all entities and information at its Connecticut headquarters. *Id.* Indeed, Charter's Chief Technology Officer, Philip Montsigner, verifies that Charter maintains control over its "Spectrum Entities" from its Connecticut headquarters. *Id.* ¶ 3. Accordingly, the locus for this action is this District.[2] This, in addition to the deference given to Plaintiff's choice of forum and the convenience of Defendant litigating in its own backyard, is dispositive of Defendant's Motion.

Further, Defendant's concerns about evidence location are unwarranted in today's technologically connected world. Indeed, the Motion demonstrates how easy it is for Defendant to get evidence from other states. Moreover, not only are Defendant's unidentified out-of-state witnesses insufficient to meet Defendant's burden for convenience, any witness Defendant has identified has professed a willingness to testify. Finally, Defendant's concern about COVID-19 is unwarranted given

---

[1] Charter ironically accuses Plaintiff of "seek[ing] to avoid the Eleventh Circuit (*i.e.*, Florida) TCPA law, which poses an existential threat to his case." Mtn. at 1 n.1. Charter attempts to do exactly that by avoiding Second Circuit (*i.e.*, Connecticut) TCPA law, which poses an existential threat to its case. *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 281 n.5 (2d Cir. 2020) (holding "an ATDS can, indeed, make calls from stored lists."). In doing so, Charter seeks to both conduct significant business and base its headquarters in this District while not abiding by its laws. That is an untenable result.

[2] Perhaps recognizing the futility of its motion, Defendant has not moved to transfer the similar *Carlier v. Charter Communications Inc.*, Case No. 3:20-cv-266 (D. Conn.) matter currently pending before this Court.

the prevalence of video depositions and hearings that have arisen in the midst of the pandemic, and that Defendant wishes to transfer this action out of a state that has contained the pandemic and into a state that has not.  In short, every factor points in favor of keeping this action right where it is.

For the following reasons, Charter's Motion should be denied.

## II.    <u>LEGAL STANDARD</u>

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil actions to any other district or division where it might have been brought."  Courts employ a two-step inquiry to determine whether transfer is warranted. *In re Collins & Aikman Corp. Sec. Litig.*, 438 F.Supp.2d 392, 394 (S.D.N.Y. 2006).  First, courts determine whether the action sought to be transferred is one that might have been brought in the transferee court.  *Id.*  Second, courts apply several factors relating to convenience of transfer and interests of justice.  *Id.*  These factors include:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*Flood v. Carlson Restaurants Inc.*, 94 F. Supp. 3d 572, 576 (S.D.N.Y. 2015) (internal citations omitted).  "The plaintiff's choice of venue is 'entitled to substantial consideration.'"  *Ramirez v. SupportBuddy Inc.*, 2018 WL 2089362, at *6 (S.D.N.Y. May 4, 2018) (quoting *Warrick v. Gen. Elec. Co.*, 70 F.3d 736, 741 (2d Cir. 1995)).  "Indeed, 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'"  *Id.* (quoting *Lykes Bros. S.S. Co. v. Sugarman*, 272 F.2d 679, 681 (2d Cir. 1959)).

III.    **ARGUMENT**

  **A. All Relevant Factors Oppose Transfer**

The party seeking transfer (*i.e.*, Charter) bears the burden of establishing by clear and convincing evidence that transfer is appropriate. *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (upholding district court's application of the clear and convincing standard).  Charter has not come close to meeting its burden.

  *1.  There Is No Compelling Reason To Override Plaintiff's Choice Of Forum.*

Plaintiff's choice of forum is entitled to considerable deference.  *Connecticut v. Moody's Corp.*, 664 F. Supp. 2d 196, 198 (D. Conn. 2009) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 35 (1955) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.")).  Even if a plaintiff does not choose his or her home forum, a plaintiff's choice of forum is nevertheless entitled to deference if his or her choice was "motivated by legitimate reasons."  *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) ("A court must give greater deference to a plaintiff's choice of a non-home forum where that choice was motivated by legitimate reasons." (internal quotations omitted)).

Here, Plaintiff chose to sue Defendant in Defendant's home district - Connecticut.  Connecticut is the epicenter of Plaintiff's case, as it is where Defendant's corporate headquarters are located and where Charter makes all decisions followed by its subsidiaries.  Further, Plaintiff is pursuing a potential nationwide class-action lawsuit that could involve persons and entities nationwide.  The only common nexus between all of these parties is Charter's headquarters in Connecticut.

  *2.  The Convenience Of Parties And Witnesses Disfavors Transfer*

Charter perplexingly argues that it would be more convenient for it to litigate this case thousands of miles away in Florida instead of a few minutes away from its corporate headquarters in Connecticut.  This is laughably wrong.  Charter bears of the burden of providing a "detailed list of

probable witnesses who will be inconvenienced if required to testify in the current forum." *Kiss My Face Corp. v. Bunting*, 2003 WL 22244587, at *8-9 (S.D.N.Y. Sept. 20, 2003); *see also Arrow Elecs. Inc. v. Ducommun Inc.*, 724 F. Supp. 264, 267 n.1 (S.D.N.Y. 1989) (moving party must provide a "list of the witnesses inconvenienced by the current forum and must 'make a general statement of what their testimony will cover'"); *Travelers Property Cas. Co. of Am. v. Western Consol. Premium Properties, Inc.*, 2008 WL 725118, at *1 (Conn. Sup. Ct. Feb. 21, 2008) ("A party seeking to transfer a case for the convenience of witnesses must identify the key witnesses to be called and must make a general statement of what their testimony will cover."). Charter has provided no such list, nor can it because the majority of the critical witnesses are likely to be in Connecticut where Charter's headquarters is located and where corporate decisions, such as calling protocols, were made from.

Instead, Charter turns the question onto Plaintiff, stating that Plaintiff's "family, friends, and associates" will need to testify to establish Plaintiff's injury. Mtn. at 9. This is a red herring, as Charter's argument ignores the TCPA's statutory injury recognized in the Second Circuit. *Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85, 93 (2d Cir. 2019) (holding that text messages to TCPA plaintiff established injury without need of additional harm). These "witnesses" would therefore be irrelevant to Charter's defense.

Charter also claims that *one* Florida resident, an unnamed Spectrum Mobile employee who allegedly "inadvertently entered the 7106 Number into Spectrum Mobile's system," will be inconvenienced if the case is litigated in Connecticut. Mtn. at 9. But Defendant provides no evidence that this single witness would refuse to testify if this case is not transferred to Florida. *In re Lehman Brothers Holdings Inc.*, 594 B.R. 33, 90 (Bankr. Ct. S.D.N.Y. 2018) ("While the Court recognizes that travel to New York may be inconvenient for some witnesses, in the absence of proof that such witnesses would refuse to testify, the Court cannot determine that this consideration weighs in favor of transfer of venue."). Without such proof that a *single* witness would refuse to testify, and in

5

conjunction with the *many* witnesses who are likely located in Connecticut where Defendant's headquarters are, this factor also points in favor of keeping the case in Connecticut.

3. *The Location Of Relevant Documents And The Relative Access To Sources Of Proof Opposes Transfer*

Charter claims the weight of evidence is in Florida, and that access to this evidence "would undoubtedly be easiest in Florida." Mtn. at 11. Not so. First, in today's hyperconnected world, the location of relevant evidence as a factor has been rendered largely moot. *Lapushner v. Admedus Ltd.*, 2020 WL 777332, at *4 (S.D.N.Y. Feb. 14, 2020) ("In today's modern world of electronic documents, the location of relevant documents is a largely neutral factor."). Indeed, Defendant's Motion showcases that it can *easily* get whatever information from Florida or other states that it requires. Montsinger Decl. Ex. A (Florida records); Declaration of Mark Wilburn ("Wilburn Decl.") (declaration of Virginia employee). Further, Defendant's focus on Florida omits the fact that far more crucial information—including calling protocols, TCPA compliance handbooks, notes on corporate decisions, and communications with subsidiaries—is likely to be located in Connecticut where Defendant resides. Thus, this factor, while largely irrelevant, still points in favor of Connecticut.

4. *The Locus Of Operative Facts Weighs Against Transfer.*

In TCPA cases, both the place of injury *and* where the "decision-making that caused the purported injury occurred are material determinations toward establishing the locus of operative facts." *AL and Po Corp. v. American Healthcare Capital, Inc.*, 2015 WL 738694, at *3 (N.D. Ill. Feb. 19, 2015) (holding this factor neutral where defendant's employees reside in "New Jersey, New York, and Oklahoma" and "some decision-making occurred in those states"). Here, the decision-making that led to Plaintiff's injury undoubtably occurred predominately in Connecticut, but could also have occurred in part in Virginia and Missouri. Because the locus of operative facts is split among several states, this factor opposes transfer or is at worst neutral.

5. *The Availability Of Process To Compel The Attendance Of Unwilling Witnesses Disfavors Transfer.*

Defendant offers no evidence of unwilling witnesses that would require service of process to testify. *Flood*, 94 F.Supp.3d at 580 (holding this factor neutral where defendant did not provide evidence of any specific witness who might refuse to testify); *NBA Properties, Inc. v. Salvino, Inc.*, 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27, 2000) (denying transfer where "defendant fails to provide any affidavits from its witnesses stating that the witnesses will not voluntarily appear absent transfer"). Indeed, Defendant's Motion stands for the opposite. SkyCreek's CFO, Mark Wilburn, who resides in Virginia, states in his declaration that "if called and sworn as a witness, I could and would competently testify." Wilburn Decl. at ¶ 2. And even if SkyCreek's Virginia employees were unwilling to testify, a Florida court would be in no different a position than a Connecticut court. Defendant's unidentified Florida witnesses are insufficient to support transfer

6. *The Relative Means Of The Parties Opposes Transfer*

Charter has not demonstrated how litigating on its home turf would be less convenient than litigating in Florida. To begin, this factor is most relevant when the *moving party* seeks to avoid considerable expense through transfer, and the *non-moving party* enjoys the benefits and convenience of litigating in its backyard. *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 354-55 (S.D.N.Y. 2012) ("Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed."). But here the roles are reversed: Charter seeks transfer away from its home forum.

In any case, without documentation showing undue burden, Charter has failed to provide the necessary evidence. *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 331 (E.D.N.Y. 2006) ("A party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances.").

Nor can it, because litigating in its home state poses the most minimal burden on Charter.  And Charter has ample resources to procure whatever evidence it needs from other states.  *Charter Communications, Inc., Income Statement*, YAHOO! FINANCE, https://finance.yahoo.com/quote/CHTR/ (Charter produced $45.76 billion in revenue and $1.67 billion in earnings in 2019).  Defendant's "concern" for Plaintiff's expense is thoughtful, but contrived.  *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003) (observing that "litigants rarely are concerned with promoting their adversary's convenience at their own expense").  Plaintiff was fully aware of the expense of litigating the case here, where the action belongs.

       7.   *The Interests Of Trial Efficacy And Justice Oppose Transfer*

Transfer would greatly hinder prosecuting this case. There is evidence in several different states.  Therefore, Connecticut offers the best forum because Charter can most easily direct its many disparate entities and affiliates from its headquarters here. Furthermore, this Court is closest to Charter's chief decisions-makers.  Indeed, if Charter was genuinely interested in convenience, then it could have sought transfer to Missouri, where Spectrum Mobile's headquarters is located.  At least from Missouri, information about the Spectrum Mobile intermediaries could be gathered. But transferring to the Middle District of Florida, where none of the decision-makers work and none of the text message records exists, will make litigating more difficult.

Next, Charter's COVID-related concerns miss two key points.  First, COVID-related risks will persist regardless of venue.  At least as many people, if not more, would have to travel to Florida from Connecticut, Missouri, or Virginia, as would have to travel to Connecticut now.  This is on top of the fact that Florida has roughly *thirteen times* as many cases as Connecticut, and *seventeen times* as many cases in the last seven days.  UNITED STATES COVID-19 CASES AND DEATHS BY STATE, https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (Florida has 658,203 total cases and 17,225

cases in the last seven days, while Connecticut has 54,895 total cases and 1,530 cases in the last seven days).  Thus, the COVID-19 risks are significantly less palpable in Connecticut than in Florida.

Second, courts around the country are proficient in video conferencing.  Regardless of venue, it is likely that many depositions and quite possibly hearings (at the Court's option, of course) will be handled via video conference. Finally, the facts here are straightforward and thus inconvenience is unlikely in any venue.  *In re: United Collection Bureau, Inc., Telephone Consumer Protection Act (TCPA) Litig.*, 273 F. Supp. 3d 1364, 1364 (J.P.M.L. 2017) (observing that facts from TCPA cases involved automatic telephone dialing systems are "relatively straightforward" and "unlikely to be unusually burdensome or time-consuming").  Defendant wishes to complicate this simple case and avoid the law of the district where it maintains its headquarters.  28 U.S.C. § 1404(a) does not countenance such a result.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion should be denied.


Dated:  September 16, 2020                              **BURSOR & FISHER, P.A**.

                                                       By: ___*/s/ Philip L. Fraietta*_____
                                                            Philip L. Fraietta

                                                       Joseph I. Marchese*
                                                       Philip L. Fraietta (*pro hac vice*)
                                                       888 Seventh Avenue, Third Floor
                                                       New York, New York 10019
                                                       Telephone: (646) 837-7150
                                                       Facsimile: (212) 989-9163
                                                       Email:  jmarchese@bursor.com
                                                                pfraietta@bursor.com

                                                       **HEDIN HALL LLP**
                                                       Frank S. Hedin*
                                                       David W. Hall*
                                                       Four Embarcadero Center, Suite 1400
                                                       San Francisco, California 94104
                                                       Telephone: (415) 766-3534

Facsimile: (415) 402-0058
Email: fhedin@hedinhall.com
         dhall@hedinhall.com

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 S. Main Street, 3rd Floor
West Hartford, Connecticut 06110
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

*To Be Admitted Pro Hac Vice

*Attorneys for Plaintiff*
*And The Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 16, 2020, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Philip L. Fraietta*
Philip L. Fraietta
