## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL REASE, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br> v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>          Defendant. | Case No. 3:20-cv-00150-RNC<br><br><br>Hon. Robert N. Chatigny |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY

Dated: September 16, 2020

**BURSOR & FISHER, P.A**.
Joseph I. Marchese*
Philip L. Fraietta (*pro hac vice*)
888 Seventh Avenue, Third Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile:   (212) 989-9163
Email:  jmarchese@bursor.com
   pfraietta@bursor.com

**HEDIN HALL LLP**
Frank S. Hedin*
David W. Hall*
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058
Email: fhedin@hedinhall.com
   dhall@hedinhall.com

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 S. Main Street, 3rd Floor
West Hartford, Connecticut 06110
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

*To Be Admitted *Pro Hac Vice*

*Attorneys for Plaintiff*
*And The Putative Class*

## TABLE OF CONTENTS

**PAGE(S)**

I.   INTRODUCTION ................................................................................................. 1

II.  APPLICABLE LAW ............................................................................................ 3

    A.   The Definition Of An ATDS ................................................................. 3

    B.   Legal Standard On A Motion To Stay .................................................. 5

III. ARGUMENT ........................................................................................................ 6

    A.   The Requested Stay Would Be Immoderate And Is Requested For Improper Purposes. ............................................................................................ 6

    B.   The Reasoning Of The Ninth Circuit's Ruling As To The Definition Of An ATDS Is Sound And Is Unlikely To Be Narrowed By Supreme Court Review ........................... 8

    C.   The Supreme Court's Ruling in *Facebook* Will Not Have a Dispositive Effect on This Case Because the Parties Will Still Have to Conduct Discovery and Engage in Motion Practice. ............................................................................................ 10

    D.   The Hardship to Plaintiff Would Be Substantial And Thus Warrants a Denial of Charter's Motion to Stay. ................................................................. 10

    E.   Charter Will Not Suffer Harm As A Result Of Denial Of The Stay ............. 13

IV.  CONCLUSION .................................................................................................... 14

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Allan v. Pennsylvania Higher Educ. Assistance Agency*,
 968 F.3d 567 (6th Cir. 2020) ................................................................................ 4, 5, 9

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997) ...................................................................................................... 12

*Barr v. American Ass'n of Political Consultants, Inc*,
 140 S. Ct. 2335 (2020) ............................................................................................... 1, 8

*Birchmeier v. Caribbean Cruise Line, Inc.*,
 302 F.R.D. 240 (N.D. Ill. 2014) ................................................................................ 12

*Clinton v. Jones*,
 520 U.S. 681 (1997) ........................................................................................................ 6

*CMAX, Inc. v. Hall*,
 300 F.2d 265 (9th Cir. 1962) ...................................................................................... 10

*Duran v. La Boom Disco, Inc.*,
 955 F.3d 279 (2d Cir. 2020) .................................................................................. 3, 4, 9

*Edwards v. Oportun, Inc.*,
 193 F. Supp. 3d 1096 (N.D. Cal. 2016) .................................................................... 11

*Gissendaner v. Commissioner, Georgia Dep't of Corrections*,
 779 F.3d 1275 (11th Cir. 2015) ............................................................................... 7, 8

*Hines v. D'Artois*,
 531 F.2d 726 (5th Cir. 1976) ........................................................................................ 7

*Izor v. Abacus Data Systems, Inc.*,
 2019 WL 3555110 (N.D. Cal. Aug. 5, 2019) ........................................................... 11

*Landis v. North American Co.*,
 299 U.S. 248 (1936) .................................................................................... 5, 7, 10, 14

*Larson v. Harman Mgmt. Corp.*,
 2018 WL 6459964 (E.D. Cal. Dec. 10, 2018) ......................................................... 11

*Lathrop v. Uber Techs., Inc.*,
 2016 WL 97511 (N.D. Cal. Jan. 8, 2016) ........................................................... 11, 12

*Lockyer v Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005) ................................................................................ 6

*Marks v. Crunch San Diego, LLC*,
    904 F.3d 1041 (9th Cir. 2018) ........................................................................... 3, 4

*Montegna v. Ocwen Loan Servicing, LLC*,
    2017 WL 4680168 (S.D. Cal. Oct. 18, 2017) ....................................................... 13

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................................................ 6

*Pieterson v. Wells Fargo Bank, N.A.*,
    2018 WL 3241069 (N.D. Cal. July 2, 2018) ........................................................ 11

*Richardson v. Verde Energy USA, Inc.*,
    2016 WL 4478839 (E.D. Pa. Aug. 25, 2016) ....................................................... 12

*Smith v. JPMorgan Chase Bank, N.A.*,
    2020 WL 5033532 (C.D. Cal. Aug. 21, 2020) .............................................. passim

*Wedgeworth v. Fibreboard Corp.*,
    706 F.2d 541 (5th Cir. 1983) .................................................................................. 7

*Young v. Peraza*,
    2015 WL 4639736 (S.D. Fla. Aug. 4, 2015) ........................................................ 13

**STATUTES**
47 U.S.C. § 227.......................................................................................................... 3

Plaintiff Daniel Rease ("Plaintiff"), individually and on behalf of all others similarly situated, submits this response in opposition to Defendant Charter Communication, Inc.'s ("Charter" or "Defendant") Motion to Stay, ECF No. 49 (the "Motion" or "Mtn.").

## I.    <u>INTRODUCTION</u>

In *Barr v. American Ass'n of Political Consultants, Inc,* 140 S. Ct. 2335 (2020) ("*AAPC*"), the Supreme Court praised the purposes of the TCPA and eloquently captured our country's sentiment with regards to the extreme nuisance of automated communications, noting that "Americans passionately disagree about many things.  But they are largely united in their disdain for robocalls." *AAPC*, 140 S. Ct. at 2343.  The Supreme Court's plurality decision further noted that:

> [E]ven after 2015, Congress has retained a very broad restriction on robocalls. The pre-1991 statistics on robocalls show that a variety of organizations collectively made a huge number of robocalls. And there is no reason to think that the incentives for those organizations—and many others—to make robocalls has diminished in any way since 1991. The continuing robocall restriction proscribes *tens of millions* of would-be robocalls that would otherwise occur *every* day. Congress's continuing broad prohibition of robocalls amply demonstrates Congress's continuing interest in consumer privacy.

*Id.* at 2348 (emphasis in original)

This united distain for automated communications is caused by companies like Defendant who wantonly violate the TCPA by repeatedly robodialing consumers without consent.  In this case, Defendant sent autodialed debt collection text messages (which are recognized as telephone calls by applicable FCC regulations) to Plaintiff even though Plaintiff had no business relationship with Charter and never owed Defendant a dime.  Charter now asks the Court to accept the exceedingly improbable notion that the Supreme Court will contradict its ruling of just a couple months ago by interpreting Congress's intent regarding the TCPA in such a manner that all calls

made with modern list-based autodialers (aka "robodialers") will no longer be covered by the TCPA.  In other words, Charter is attempting to stay the case by pushing the theory that almost all autodialed calls previously covered by the TCPA, including all scam robocalls, will be legal in the future. Needless to say, that is exceedingly unlikely, especially given the Supreme Court's pronouncements in *Barr* regarding the Congressional intent to protect consumer privacy that underlies the TCPA.

Importantly, it should be noted that the Honorable Consuelo B. Marshall of the Easten District of California very recently authored a well-reasoned rejection of a stay identical to the one sought here.  *See Smith v. JPMorgan Chase Bank, N.A.*, 2020 WL 5033532 (C.D. Cal. Aug. 21, 2020).  In that decision, Judge Marshall noted that "[t]he stay requested by JPMC is indefinite, as it is purely speculative whether the United States Supreme Court will reach a decision in [*Facebook, Inc. v. Duguid*, 2020 WL 3865252, at *1 (U.S. July 9, 2020)] within a year." *Smith*, 2020 WL 5033532, at *2.  Furthermore, as  Judge Marshall recognized, "[d]elay 'inherently increases the risk that witness' memories will fade and evidence will become stale.'" *Id.* (*quoting Blue Cross and Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007).  In addition, Judge Marshall further recognized that "[b]eing required to defend a suit … does not constitute a 'clear case of hardship or inequity'" so as to justify a stay.  *Smith*, 2020 WL 5033532, at *2 (quoting *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007)).  Plaintiff respectfully suggests that the Court follow Judge Marshall's well-reasoned opinion and reject the stay requested here.

II.    **APPLICABLE LAW**

**A.  The Definition Of An ATDS**

An automated telephone dialing system ("ATDS") is defined as "equipment which has the capacity … to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."  47 U.S.C. § 227(a)(1).  "A split has recently emerged on [the definition of an ATDS], with several Courts of Appeals reaching different conclusions on whether an ATDS can pull numbers from a stored list when it automatically dials, or whether it must randomly or sequentially generate those numbers."  *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 281 n.5 (2d Cir. 2020).  In other words, the question is whether "using a random or sequential number generator" applies to both "store" and "produce," or only to "produce."

In *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018), the Ninth Circuit concluded that the definition of an ATDS "is not susceptible to a straightforward interpretation based on the plain language alone.  Rather, the statutory text is ambiguous on its face."  *Marks*, 904 F.3d at 1051.  Accordingly, the Ninth Circuit "looked at the context and the structure of the statutory scheme."  *Id.*  In doing so, the Ninth Circuit analyzed the same legislative history that the Supreme Court discussed in *AAPC*, finding:

> The structure and context of the TCPA as originally enacted indicate that Congress intended to regulate devices that make automatic calls. Although Congress focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers—a common technology at that time—language in the statute indicates that equipment that made automatic calls from lists of recipients was also covered by the TCPA.

*Id*.  After considering this legislative history and reading the definition in context, the Ninth Circuit concluded "that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with

the capacity to dial stored numbers automatically.  Accordingly, we read § 227(a)(1) to provide that the term automatic telephone dialing system means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers." *Id.* at 1052.

Importantly, *Marks* has now been joined in this holding by two other Circuit courts, the Second and Sixth Circuits.  In *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 287 (2d Cir. 2020) the Second Circuit made crystal clear that "an ATDS may call numbers from stored lists, such as those generated, initially, by humans."  Likewise, in *Allan v. Pennsylvania Higher Educ. Assistance Agency*, 968 F.3d 567, 574 (6th Cir. 2020), the Sixth Circuit stated it agreed "with the Second and Ninth Circuits that the structure and context of the autodialer ban support an interpretation of ATDS that would cover stored-number systems."

It is true that the Seventh and Eleventh Circuits have gone the other way.  *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301 (11th Cir. 2020).  But the more recent *Allan* decision criticized the Seventh and Eleventh Circuits' reading, even under a textualist lens.  *Allan* noted that the Seventh and Eleventh Circuits had put forth "a strained reading of 'store,'" and a reading that "also renders 'store' superfluous." *Allan*, 968 F.3d at 572-73.  Accordingly, *Allan* concluded that "this plain text reading of the autodialer definition is too labored and problematic to carry the day." *Id.* at 573.

*Allan* also dismissed the concerns of a broader reading of the definition of an ATDS as "really a parade of horribles." *Allan*, 968 F.3d at 579.  A broader definition would not encompass a cell phone because "the D.C. Circuit rejected the FCC's interpretation of 'capacity' as 'unreasonably, and impermissibly, expansive.'  Thus, the D.C. Circuit held that a device is an ATDS only if it actually is used in the way prescribed by statute.  That means that use of a cell

phone would be subject to a fine under the TCPA only if it *actually* is used as an ATDS." *Id.* at 578 (emphasis in original) (quoting *ACA Int'l v. Federal Communications Commission*, 885 F.3d 687, 700 (D.C. Cir. 2018)).  Thus, the *Allan* court easily dismissed the arguments of the now minority position.

Following the Sixth Circuit's *Allan* decision, there is no longer an even Circuit split regarding the meaning of an "automatic telephone dialing system" under the TCPA.  As the circuit courts currently stand, there is a 3-2 majority in favor of the *Marks* definition of an ATDS.  The majority position is logically sound.  Contrary to Defendant's mischaracterizations, the majority provision has not disposed of the plain text of the TCPA; it simply found it too ambiguous and unruly drafted to decide on alone.  Thus, the majority position analyzed the ATDS ban in context— the same context that formed the backbone of the Supreme Court's deicison in AAPC—and reached a sensible definition meant to effectuate Congress's intent and deter wrongdoers who would spam consumers with automated calls.

### B.  Legal Standard On A Motion To Stay

As a general matter, stays of the kind requested by Charter are significantly disfavored. *See Landis v. North American Co.*, 299 U.S. 248, 255 (1936) ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."). The moving party "must make a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* at 255. The Supreme Court cautioned that due to the "likelihood or danger or abuse … there is no power by a stay to compel an unwilling litigant to wait upon the outcome of a controversy to which he is a stranger." *Id.* at 256 (internal citation omitted).

Importantly, there is also a presumption that Charter's requested stay should be denied, a presumption that Charter has the burden of overcoming.  *See Lockyer v Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). "The proponent of a stay bears the burden of establishing its need." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009); *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

## III.   <u>ARGUMENT</u>

All of the following applicable factors weigh in favor of denying Charter's Motion in that: (a) the requested stay is immoderate, (b) the Supreme Court is very unlikely to narrow the definition of an ATDS so that all robocalls are legal, (c) the Supreme Court's ruling in *Facebook* will not have a dispositive effect on this case, (d) Plaintiff and especially the putative class will suffer prejudice if the case is stayed, and (e) Charter will not be harmed by allowing this case to proceed.

### A. The Requested Stay Would Be Immoderate And Is Requested For Improper Purposes.

As Judge Marshall correctly suggested in the *Smith* case, concerns about immoderacy of a stay based upon *Facebook* are paramount because "[t]he stay requested by [Charter] is indefinite, as it is purely speculative whether the United States Supreme Court will reach a decision in [*Facebook, Inc. v. Duguid*, 2020 WL 3865252, at *1 (U.S. July 9, 2020)] within a year." *Smith*, 2020 WL 5033532 at *2.  Here, not even Charter ventures to suggest a timeline for when *Facebook* might be decided.  Rather, it simply argues, without evidence, that the stay wll be "brief."  Mtn. at 3.  The stay requested here, which comes after a months-long prior stay requested for the same issue to be decided in a Second Circuit case, is simply a transparent attempt to delay the case and shirk its responsibilities and discovery obligations.

Charter's deliberate inattention to this immoderacy issue precludes the relief it seeks.  As the Supreme Court indicated in *Landis*, a stay is "immoderate and hence unlawful unless so framed

in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." *Landis,* 299 U.S. at 257. Before granting a stay pending the resolution of another case, "the Court must carefully consider the time reasonably expected for resolution of the other case in light of the principle that stay orders will be reversed when they are found to be immoderate or of an indefinite duration." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) (internal quotations omitted). "[W]hether or not a stay is 'immoderate' is a function of two variables – the scope of the stay, and the reasons cited for ordering it." *Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir. 1976) (wherein the Court denied a stay after finding that a stay in that matter, "in all probability will remain in effect at least eighteen months, and might last for as long as five years" and was therefore, "indefinite."). Concerning the stay requested here, it is particularly worth noting that immoderacy was the clear principal concern driving the denial of the identical requested stay in *Smith*.

This case, however, presents an even more compelling situation than *Smith* mandating denial of the requested stay. As Charter's motion acknowledges, this is not the first time in this case that it has sought a stay on the issue of what constitutes an ATDS. Rather, it sought a stay to await a decision on this issue by the Second Circuit in *Duran*. Now that Charter has an answer that it views as unfavorable in *Duran*, it presumes to ask for another stay in hopes that the Supreme Court will relieve it of the liability it faces in this case.

The law is clear, however, that the grant of certiorari by the Supreme Court in *Facebook* does not directly bear on the current state of the law under the TCPA. *See Gissendaner v. Commissioner, Georgia Dep't of Corrections*, 779 F.3d 1275, 1284 (11th Cir. 2015). In *Gissendaner*, the Eleventh Circuit specifically discussed the ramifications of a grant, holding, in relevant part, that:

> Grants of certiorari do not themselves change the law, [and] they must not be used by courts of this circuit as a basis for granting a stay of execution that would otherwise be denied. Our decision in *Schwab v. Secretary, Department of Corrections*, 507 F.3d 1297 (11th Cir. 2007) is the latest in a long line of cases refusing to assign precedential significance to grants of certiorari.

*Gissendaner*, 779 F.3d at 1284. Here, the Second Circuit's *Duran* decision presents controlling authority that can be followed as this case moves forward. The grant of certiorari in *Facebook* does nothing to change that.

Finally, Charter's own actions are diametrically inconsistent with it's feigned arguments for public interest and judicial economy. Rather, it one-sidedly seeks to stymie any action that Plaintiff might take to advance his interests or those of the class. Indeed, in the same breath that it requests a stay, it asks this Court to first consider disposing of this case via two very questionable motions, one for judgment on the pleadings and another seeking transfer of the case. This type of "heads I win, tails you lose" tactic is not one the Court should countenance. Charter has itself demonstrated the lack of true need for a stay in this case by asking the Court to decide these issues.

### B. The Reasoning Of The Ninth Circuit's Ruling As To The Definition Of An ATDS Is Sound And Is Unlikely To Be Narrowed By Supreme Court Review

As noted above, the Supreme Court's recent decision in *AAPC* gives a strong signal that the Ninth Circuit's interpretation of what constitutes an ATDS pursuant to the TCPA is likely to be upheld. Indeed, the Supreme Court begins their opinion commending the purpose of the TCPA. The Supreme Court proclaimed that Congress has intentionally "proscribe[d] *tens of millions* of would-be robocalls that would otherwise occur *every* day" because of a "continuing interest in consumer privacy." *See AAPC*, 140 S. Ct. at 2348. The Supreme Court thus seems exceptionally unlikely to curtail what it characterizes as "Congress's continuing broad prohibition of robocalls" by adopting an exceedingly narrow definition of what constitutes an ATDS. *Id*. Were it to do so,

it would effectively invite a tide of "*tens of millions*" of robocalls by leaving the practice of robocalling almost entirely unregulated.

Further, the Ninth Circuit's definition of an autodialer has recently received support in the Second and Sixth Circuits. *See Duran*, 955 F.3d at 281 n.5 ("The Ninth Circuit, which we follow here, concluded that an ATDS can, indeed, make calls from stored lists."); *Allan*, 968 F.3d at 574 ("[W]e agree with the Second and Ninth Circuits that the structure and context of the autodialer ban support an interpretation of ATDS that would cover stored-number systems."). In reaching these decisions, the Second and Sixth Circuits emphasized the same congressional intent that the Supreme Court recognized in *AAPC*. *Duran*, 955 F.3d at 286 ("The FCC has long suggested that the TCPA be interpreted broadly—in such a way that it covers systems which dial from stored lists—so that the statute's prohibitions maintain their general deterrent effect on telemarketers, even when telemarketers switch to newer non-random- or non-sequential-number-generating technology."); *Allan*, 968 F.3d at 577 ("It is clear from the legislative history that Congress intended to crack down on automated calls themselves—not just the technology making them possible at the time. The multiple debt-collection calls made to Wilson and Allan on a near-daily basis in this case certainly are the sort of harm contemplated at the time of enactment and, indeed, are the type of calls that "consumers appear to find most invasive."). The Second, Sixth, and Ninth Circuits now represent the majority position on the definition of an ATDS. The Supreme Court is almost certain to approve this majority approach, as this approach squares with what the Supreme Court determined in *AAPC* was Congress's intent in enacting the autodialer ban.

### C. The Supreme Court's Ruling in *Facebook* Will Not Have a Dispositive Effect on This Case Because the Parties Will Still Have to Conduct Discovery and Engage in Motion Practice.

While Charter argues that a stay is in the public's best interest, it ignores the reality that an indefinite delay will occur as a result of awaiting a decision in *Duguid*, which was only granted certiorari a matter of weeks ago and may not be heard until next year or later. Charter also ignores the fact that the parties in this matter will still need to complete discovery and engage in motion practice to resolve the ATDS issue irrespective of how the Supreme Court rules in *Duguid*. Discovery to examine the nature of Charter's autodialer will be necessary regardless of the outcome in *Duguid*. In other words, Charter's equipment and platform may still constitute an ATDS even if the Supreme Court rejects the Second, Sixth, and Ninth Circuits' definition of an autodialer. In short, the issue of Charter's ATDS equipment or platform is properly subject to discovery that will have to proceed no matter how the Supreme Court rules in *Duguid*.

### D. The Hardship to Plaintiff Would Be Substantial And Thus Warrants a Denial of Charter's Motion to Stay.

In determining whether to stay the action, the Court must balance the "possible damage [to Plaintiff] which may result from the granting of a stay," with "the hardship or inequity which [Defendant] may suffer in being required to go forward." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). If there is "even a fair possibility that the stay for which [Defendant] prays will work damage to someone else," then the movant must show a "clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. Importantly, as was mentioned in *Smith*, "[b]eing required to defend a suit [ ], does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Smith*, 2020 WL 5033532, at *2 (*quoting Dependable Highway Express*, 498 F.3d at 1066). Quite obviously, Charter has not made a compelling showing under the *Landis* standards.

Charter's arguments only become even less compelling when they are further examined. For example, Charter claims that "the Supreme Court is set to review the proper definition of ATDS … in short order," Mtn. at 6, apparently failing to recognize that the stay it requests is anything but short. Indeed, Judge Marshall recognized in *Smith* that the "[t]he stay requested … is indefinite, as it is purely speculative whether the United States Supreme Court will reach a decision in *Duguid* within a year." *Smith*, 2020 WL 5033532, at *2.

It should also be noted that Charter's request for a stay is presumptively inequitable because it is blatantly self-serving. Only Charter can benefit from the stay because, as noted above, the relevant standard in *Duran* is unfavorable to its position. And, perhaps most importantly, Charter will benefit if a stay is granted even if *Duguid* turns out unfavorably to it, as it will have successfully delayed any liability in this case for the better part of a year or more.

Moreover, Plaintiff, and more importantly, the putative class, will suffer prejudice if this case is stayed for the indefinite period that is requested. *See, e.g.*, *Izor v. Abacus Data Systems, Inc.*, 2019 WL 3555110, at *3 (N.D. Cal. Aug. 5, 2019) ("[T]he stay Defendant seeks runs a serious risk of being 'essentially indefinite, since there is no clear indication that any FCC action is on the horizon.'"); *Larson v. Harman Mgmt. Corp.*, 2018 WL 6459964, at *4 (E.D. Cal. Dec. 10, 2018) (rejecting a stay and explaining how a stay could "indefinitely delay resolution" of the case); *Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016) (finding an indefinite stay presents a "fair possibility of harm" to plaintiff); *Lathrop v. Uber Techs., Inc.*, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (concluding that plaintiffs in putative class action may "suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate"));

*Pieterson v. Wells Fargo Bank, N.A.*, 2018 WL 3241069, at *5 (N.D. Cal. July 2, 2018) (declining to stay case under inherent authority pending issuance of FCC order).

The case at bar targets Charter's outrageous business practice of texting consumers without consent and failing to have sound, responsible business pratices, in light of its cost cutting decision to use robodialers, that would avoid and prevent calling non-consenting parties. *See generally* Compl.  And while Plaintiff's individual injury may be relatively small, the class-wide injury is huge.  Significantly, "[t]he policy at the very core of the class action mechanism" is "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (*quoting Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997)). "A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Id.*  Undoubtedly many more calls will be made to non-consenting future class members if this case is held up indefinitely.

Furthermore, as was explained in *Richardson v. Verde Energy USA, Inc.*, 2016 WL 4478839 (E.D. Pa. Aug. 25, 2016):

> A significant delay with unknown limits would cause [class members] unnecessary prejudice.  Memories fade, records are lost or destroyed as time wears on, and employees get fired, are transferred, or quit.  On the other hand, the defendant would not be prejudiced if the stay is denied because it would experience no harm by engaging in discovery and motion practice.

*Richardson*, 2016 WL 4478839, at *2 (interal quotations omitted).  Here, Plaintiff would face severe evidentiary prejudice with an indefinite delay, as witnesses' memories may fade with the passage of time, documents and data may be lost as cellular telephone companies may not continue to hold the call records for the putative class as cellphone carriers do not maintain call records forever.  *See generally Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 252 (N.D. Ill.

2014); *see also Lathrop*, 2016 WL 97511 at *4 ("[p]laintiffs argue persuasively that they would suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate."); *Young v. Peraza*, 2015 WL 4639736, at *2 (S.D. Fla. Aug. 4, 2015) ("Were the Court to grant the Motion [to stay], Plaintiff would stand to suffer prejudice as the memories of eyewitnesses faded with the passage of time."); *Montegna v. Ocwen Loan Servicing, LLC*, 2017 WL 4680168, at *6 (S.D. Cal. Oct. 18, 2017) ("to require Plaintiff to remain in this indeterminate state of limbo is especially inequitable given that much of the relevant evidence Plaintiff will be interested in, such as call logs and dialer information, will be in the hands of third-parties and subject to unknown data retention policies").  In addition, there is the risk that employees of Charter may be fired, transferred, or quit, during the protracted delay.  On the other hand, there is no articulable prejudice to Charter whose obligation it is to maintain records of consent and the calls it made.

### E.  Charter Will Not Suffer Harm As A Result Of Denial Of The Stay

As Judge Marshall recognized in *Smith*,  "[b]eing required to defend a suit … does not constitute a 'clear case of hardship or inequity'" under *Landis* so as to justify a stay.  *Smith*, 2020 WL 5033532, at *2 (*quoting Dependable Highway Express*, 498 F.3d at 1066).  Moreover, while it purports to request a stay, Charter in fact seeks to contine litigation of matters it feels favor it, namely its motion for judgment on the pleadings and another seeking transfer of the case.  Mtn. at 3.  This shows there is no true need for a stay in this case, but rather that Charter seeks a one-sided advantage.

**IV.**    <u>**CONCLUSION**</u>

It is well established that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255.  Based upon the foregoing, Charter has fallen far short of this "rare circumstances" standard.  For these reasons, and the reasons discussed above, Plaintiff respectfully requests that Charter's Motion to Stay be denied.

Dated:  September 16, 2020                    **BURSOR & FISHER, P.A**.

By:     */s/ Philip L. Fraietta*
            Philip L. Fraietta

Joseph I. Marchese*
Philip L. Fraietta (*pro hac vice*)
888 Seventh Avenue, Third Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  jmarchese@bursor.com
            pfraietta@bursor.com

**HEDIN HALL LLP**
Frank S. Hedin*
David W. Hall*
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058
Email: fhedin@hedinhall.com
            dhall@hedinhall.com

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 S. Main Street, 3rd Floor
West Hartford, Connecticut 06110
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

*To Be Admitted *Pro Hac Vice*

14

*Attorneys for Plaintiff*
*And The Putative Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2020, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Philip L. Fraietta*
Philip L. Fraietta