## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL REASE, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No.: 3:20-cv-00150-RNC |
| v. | Hon. Robert N. Chatigny |
| CHARTER COMMUNICATIONS, INC., | |
| Defendant. | |

## DEFENDANT CHARTER COMMUNICATIONS, INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

DATED:       September 30, 2020

**KABAT CHAPMAN & OZMER LLP**

*/s/ Ryan D. Watstein*
Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300
(404) 400-7333 (fax)

**ROBINSON & COLE LLP**

Brian E. Moran
Connecticut Bar No. ct05058
bmoran@rc.com
Trevor L. Bradley
Connecticut Bar No. ct29993
tbradley@rc.com
1055 Washington Boulevard
Stamford, CT 06901
203-462-7500
203-462-7599 (fax)

*Counsel for Defendant Charter Communications, Inc.*

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ........................................................................................................1

II.    ARGUMENT ..............................................................................................................3

    A.    *AAPC* Explicitly Held The Speech Restriction With The Exception Was
           Unconstitutional From 2015 To July 6, 2020. .......................................................3

    B.    The Three-Justice Dicta In Footnote 12 Of *AAPC* Does Not Change The
           Holding That Non-Government Speakers Cannot Be Discriminated
           Against. ...................................................................................................................3

    C.    Plaintiff's Cherry-Picked Quotations Do Not Change The Conclusion That
           Charter Cannot Be Penalized For Violating A Speech Restriction That
           Was Unconstitutional At The Time Of The Alleged Violation ...............................6

    D.    Plaintiff's Authorities Pertaining To The Severability Doctrine Are
           Irrelevant and Actually Support Charter's Position. ..............................................8

    E.    Plaintiff's Misinterpretation Of *AAPC* Would Lead To Absurd Results,
           Which Plaintiff Fails to Address. ...........................................................................9

III.    CONCLUSION .........................................................................................................10

## I.    INTRODUCTION

Plaintiff's Response confirms this case must be dismissed for lack of subject matter jurisdiction because the Court cannot penalize Charter for allegedly violating a speech restriction during the time it unconstitutionally exempted government-preferred speech.  All of Plaintiff's arguments to the contrary do not survive even minimal scrutiny, and are based on a misunderstanding of the law, a misunderstanding of Charter's arguments, or both.[1]

In fact, just two days ago, Judge Martin L.C. Feldman of the Eastern District of Louisiana, the first judge to squarely address Charter's constitutional argument, rejected the same arguments Plaintiff raises here.  *See Creasy v. Charter Comms., Inc.*, No. 20-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020) (attached as Exhibit A).[2]  Specifically, Judge Feldman held that the Supreme Court's decision in *AAPC* deprives the federal courts of subject matter jurisdiction over alleged violations of the automated-call ban that took place during the time it contained the government-debt exception, just as Charter argues here.  *Id.* at *6.  As a result, he dismissed all claims arising out of that provision that occurred before July 6, 2020.  *Id.* at *8.  In doing so, he noted that this was the "constitutionally dictated result."  *Id.* at *6.

Judge Feldman deemed the result "constitutionally dictated" because, as Charter explained, *AAPC* explicitly held that the automated-call ban, combined with the government-debt exception, was an unconstitutional content-based restriction on free speech prior to the Supreme Court's "fix" in *AAPC*.  Because that speech restriction was unconstitutional at time Charter allegedly violated it (pre-severance), the Court lacks jurisdiction to penalize Charter under it.

---

[1]    Plaintiff (at 1) contends that Charter's "self-serving predictions" regarding *AAPC* and *Duran v. La Boom Disco*, 955 F.3d 279 (2nd Cir. 2020) "have fallen flat."  In reality, Charter's analysis of both cases was correct.  As the only court to rule on the question has held, *AAPC* is dispositive of Plaintiff's claims because they occurred during the time the speech restriction was unconstitutional.  And in *La Boom*, although the Second Circuit adopted the expansive interpretation of ATDS, this position is likely to be overruled in *Facebook, Inc. v. Duguid*, No. 19-511.  In fact, even the Department of Justice filed a brief in *Facebook* advocating for the literal interpretation adopted by the Eleventh and Seventh Circuits.  *See* Reply in Support of Motion to Stay, Section II.D.

[2]    In a pique of wild hyperbole, Plaintiff (at 1) refers to Charter's argument as "preposterously delusional."  Judge Feldman observed no such delusion in his 22-page order granting Charter's motion in *Creasy*.

In his opposition, Plaintiff does not (and cannot) challenge this essential premise. Rather, Plaintiff argues *AAPC* held only the debt exception was unconstitutional, not the robocall restriction that contained it. But that is false, as Justice Kavanaugh's express language makes clear. Moreover, Plaintiff's interpretation is a logical impossibility, as the First Amendment governs only restrictions on speech, not exceptions that permit more speech.

Against logic and precedent, Plaintiff relies on one sentence in a footnote to argue that the Court could not have held the speech restriction was unconstitutional. But as Judge Feldman held, this is clearly wrong because the footnote in question is dicta from three justices, which explains why it is in a footnote. And—if read as Plaintiff urges—it contradicts the *holding* of the case, which was adopted by six Justices: favoring certain government speech over other speech violates the First Amendment. Further, Plaintiff has no response to Charter's explanation of what the footnote actually means, which is that the Court's ruling is not intended to undo past *judgments*.

Plaintiff further argues that the Court saved the robocall restriction by severing the exception, citing law for the principle that invaliding one provision does not invalidate the entire statute. But Charter does not dispute this. Rather, Charter merely explained that severance is, by necessity, *prospective*. As such, the restriction, when combined with the exception, was invalid from 2015 to July 6, 2020, and, thus, cannot be enforced against Charter, under settled law. Plaintiff cites no authority to the contrary, nor does he distinguish Charter's binding authority.

Tellingly, Plaintiff also fails to dispute that his misinterpretation of *AAPC* would lead to absurd results. Plaintiff concedes this point by failing to address either of the hypotheticals Charter raised. Plaintiff also fails to address, and thus concedes, numerous other dispositive points, including: (1) the question at issue here was not raised or litigated in the lower courts, nor was it briefed or argued in *AAPC*, and thus the Court could not have possibly resolved it; and (2) a federal court has no jurisdiction to enforce an unconstitutional provision in ongoing litigation, and particularly not to impose liability in a discriminatory manner under the First Amendment.

This action is premised on purported violations of 47 U.S.C. § 227(b)(1)(A)(iii) that occurred before July 6, 2020, the date of *AAPC*. Because that provision was unconstitutional at

the time of the text messages at issue, Plaintiff's claims must be dismissed.  The only court to address this issue reached the exact same "constitutionally dictated" conclusion in a thoroughly-reasoned opinion, and this Court should do the same.

## II.    ARGUMENT

### A.    *AAPC* Explicitly Held The Speech Restriction With The Exception Was Unconstitutional From 2015 To July 6, 2020.

As explained in the moving papers, the Supreme Court explicitly held that:

> The initial First Amendment question is whether the ***robocall restriction***, with the government-debt exception, is content-based. The answer is yes. . . . [And] [t]he Government concedes that it cannot satisfy strict scrutiny to justify the government-debt exception. We agree.

*AAPC*, 140 S. Ct. at 2346 (emphasis added); 2347 ("In short, the ***robocall restriction*** with the government-debt exception is content-based.") (emphasis added).  As Judge Feldman put it,

> [T]he plurality in *AAPC* spelled out the technical holdings of the Court in explicit terms: (1) 'Six Members of the Court . . . conclude that Congress has impermissibly favored debt   collection speech over political and other speech, in violation of the First Amendment' …        That much is binding on all other courts.

*Creasy*, 2020 WL 5761117, at *4 (quoting *AAPC*,140 S. Ct. at 2343).  Further,

> [w]hile that holding affirmatively binds this Court … it is also inescapable as a logical matter.  Indeed, while the plaintiffs argue that the Court's severance of the *exception* has no bearing on the constitutionality of the *rule*, the exception and the rule are in fact inextricably intertwined for the purposes of any reasonable analysis.[3]

*Id*. at *5.  Therefore, there can be no doubt that *AAPC* expressly held that the speech restriction was unconstitutional when combined with the government-debt exception (so, prior to the Supreme Court's severing the exception in *AAPC* on July 6, 2020).

### B.    The Three-Justice Dicta In Footnote 12 Of *AAPC* Does Not Change The Holding That Non-Government Speakers Cannot Be Discriminated Against.

Plaintiff, nonetheless, confusingly argues (at 5-6), based on Footnote 12, that *AAPC* held only the debt exception was unconstitutional (but not the speech restriction).  In addition to

---

[3]    Moreover, the First Amendment bars laws "abridging the freedom of speech" (the restriction), not laws permitting speech (the exception).  U.S. Const. amend. I.

contradicting the plain language of the opinion, Plaintiff's interpretation is a logical and constitutional impossibility—the First Amendment bars laws "***abridging*** the freedom of speech" (the restriction), not laws permitting speech (the exception).  U.S. Const. amend. I (emphasis added).  The exception could not be unconstitutional standing alone because it does not abridge speech. *See Creasy*, 2020 WL 5761117, at *4.

With regard to footnote 12, the plurality states: "[o]n the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction."  *AAPC*, 140 S. Ct. at 2355, n.12.  As Charter explained (at 8-10), this footnote can only possibly refer to past *judgments*, meaning the plurality did not intend to undo liability against parties that has already been adjudicated.  *See, e.g.*, *Hawkins v. LeFevre*, 758 F.2d 866, 877 n.14. That is also the only way to read the footnote consistent with the *same three Justices'* opinion in *Seila Law*, other Supreme Court precedent, First Amendment principles, and logic.  *See* 140 S. Ct. at 2208–09.  Plaintiff offers no response to this, conceding footnote 12 has no bearing on the *holding* of *AAPC*, adopted by six Justices, which holding requires dismissal of this case.

Instead of responding to Charter's explanation of the footnote's only reasonable meaning, Plaintiff makes three defective arguments.  *First*, Plaintiff contends the footnote is not dicta because it is "instrumental to the holding because it establishes that government debt collectors will not be liable for calls they made while the exception was in place[.]"  This makes no sense because *AAPC* did not even involve government debt collectors and Court had no opportunity or reason to adjudicate their hypothetical liability.  In fact, *AAPC* did not involve a lawsuit for TCPA violations at all; it was a direct challenge brought by political parties who wanted to make calls regulated by the statute on a *prospective* basis.  140 S. Ct. at 2345.  The issue of how holding the automated call ban unconstitutional would impact *pending litigation* involving calls made while the ban was unconstitutional was not briefed, argued, or before the Court.  Thus, the footnote *must* be dicta because it "is unnecessary to the decision in the case," as Judge Feldman correctly held. *See Creasy*, 2020 WL 5761117, at *5 n.4 (noting the "footnote is merely persuasive, as opposed to mandatory, because it appears in an opinion commanding the votes of only three justices, and

because … it constitutes mere 'obiter dictum'".).[4]  *See also Cohens v. Virginia*, 19 U.S. 264, 399 (1821) (dicta does not "control the judgment in a subsequent suit when the very point is presented for decision").[5]  Indeed, this question could not have been decided by the Court because it is "a court of review, not of first view[]," and thus does not decide issues not addressed below.  *See McLane Co., Inc. v. E.E.O.C.*, 137 S. Ct. 1159, 1170 (2017) (internal quotations omitted).

*Second*, Plaintiff contends, even if the footnote were dicta, it is persuasive.  While it is true that Supreme Court dicta is highly persuasive when it appears in a majority opinion, here it does not.  And, even if it did, it would not be persuasive to the outcome of Charter's motion, because it can only be reasonably interpreted to apply to past *judgments*, an argument Plaintiff does not dispute.  But most importantly, and even if Charter's interpretation of the footnote were incorrect, the speech restriction is *still* unenforceable pre-severance, under established, binding law that the plurality did not intend to and *could not have* overturned in the last sentence of a footnote in a case where the question was not before it.  *See, e.g.*, *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017) (noting in majority opinion that a "defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity").  Indeed, as Charter explained, if liability could be imposed against one class of speakers during a time government-favored speakers were excused, this would vitiate the *majority* holding (that the call ban combined with the exception is unconstitutional) and lead to the dangerous consequences outlined at Section II.E., *supra*.

*Third*, Plaintiff (at 5) argues the footnote must be the holding of the case or it creates an "illogical result" in which "government debt collectors actually *are* liable for all calls made while the exception was in place."  This makes no sense.  As Charter explained, *AAPC*'s *holding* was

---

[4]        "[W]hen the Justices fail to converge on a single majority rationale for a decision, the only precedent that comes of such a decision is the position adopted by the narrowest concurrence . . . the plurality in *AAPC* spelled out the technical holdings of the Court in explicit terms: (1) Six members of the Court … conclude that Congress has impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment[.]" *Creasy*, 2020 WL 5761117, at *4 (internal quotations omitted).

[5]        *See* Plaintiff's response, p. 2, identifying the questions the Supreme Court considered in *AAPC*.

that the speech restriction was unconstitutional while the exception was in place. Thus, during that period, it is by definition unenforceable with regard to government debt collectors,[6] just as it is unenforceable with regard to Charter and other non-government speakers. This correct interpretation of *AAPC* effectuates the majority's intent to "cure the unequal treatment" afforded to government debt collectors by the exception." *See AAPC*, 140 S. Ct. at 2354.

### C.    Plaintiff's Cherry-Picked Quotations Do Not Change The Conclusion That Charter Cannot Be Penalized For Violating A Speech Restriction That Was Unconstitutional At The Time Of The Alleged Violation

Plaintiff (at 6-7), still refusing to engage with the express First Amendment holding in Part II of *AAPC*, also cherry-picks quotations from Part III, the *severance* portion, to argue again that only the exception was held unconstitutional. But, as noted, these quotations are from Part III, which addresses whether the infirmity can be remedied through severance prospectively, not Part II, which explains the First Amendment holding. Plaintiff conspicuously avoids discussing the holding of Part II because, as noted, it explicitly states that the **speech restriction** is unconstitutional with the debt exception. *AAPC*, 140 S. Ct. at 2346; *see Creasy*, 2020 WL 5761117, at *5 (reaching same conclusion).

Thus, because the alleged violations took place prior to July 6, 2020, judgment must be entered in favor of Charter. This result is dictated by the well-settled principle that a federal court has no jurisdiction to enforce an unconstitutional provision, and particularly not to impose liability in a discriminatory manner under the First Amendment. *See, e.g.*, *Ex parte Siebold*, 100 U.S. 371, 377 (1880); *Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972) (noting, in a constitutional challenge to a content-based speech restriction, that courts "must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted"); *see also Baucum v. United States*, 80 F.3d 539, 540-41 (D.C. Cir. 1996) ("[O]nce a statute has been

---

[6]    Purporting to absolve government debt collectors of any liability for calls that were legal since the exception was enacted in 2015 merely states the obvious; there is no other possible result because a court cannot impose liability for conduct that was expressly permitted by an exception in a federal statute in place when the conduct occurred. *See Collins v. Youngblood*, 497 U.S. 37, 41-42 (1990) (discussing *Ex Post Facto* clause of the U.S. Constitution). As such, Plaintiff has no viable argument that Charter's interpretation creates "illogical results."

declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations[.]").  Plaintiff does not distinguish or even address these controlling authorities, and that is dispositive.  *See Gustavia Home, LLC v. Hoyer*, 362 F. Supp.3d 71, 86 (E.D. N.Y. 2019) ("a party 'concedes through silence' arguments made by its opponent that it fails to address").

Although Plaintiff ignores most of Charter's authorities, he attempts to distinguish *Montgomery v. Louisiana*, 136 S. Ct. 718, 724 (2016), *Waldron v. United States*, 146 F.2d 145, 147-148 (1944), and *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2208–09 (2020).  Even a cursory reading of Plaintiff's descriptions of the cases confirms Plaintiff's attempt fails.  Charter cited *Montgomery* for the principle that a Court cannot enforce a law that has been rendered void.  136 S. Ct. at 724.  Plaintiff does not argue against this but states (at 9) that "*Montgomery* was not a case like *AAPC* in which part of a statute was declared unconstitutional and the court then had to decide whether the remainder could remain independently valid."  But Plaintiff misses the point, which is that "[a] conviction under an unconstitutional law 'is not merely erroneous, but is illegal and void[.]'" *Id*. at 730.  If the speech restriction was void at the time Charter allegedly violated it—and *AAPC* explicitly held it was—Charter cannot be penalized for the same exact conduct for which government-favored speakers were excused.  Plaintiff does not argue otherwise.

Similarly, Plaintiff claims (at 9) that *Waldron*, in which a defendant was convicted on the basis of an unconstitutional evidentiary presumption, is distinguishable because it was "based on holding an entire statute (or a significant part of it to be unconstitutional), rather than a narrow exception to a statute[.]"  146 F.2d at 146.  But *Waldron* makes no such distinction—it simply states that the "unconstitutional provisions of the statute" rendered the conviction void.  *Id*. at 147.

Finally, Plaintiff's attempt to distinguish *Seila Law* is also unavailing.  As Charter explained, *Seila Law*—a plurality opinion penned by the same three Justices as the plurality in *AAPC*—also recognized the long-standing principle that unconstitutional laws are unenforceable during the time they are unconstitutional, even if later cured prospectively through severance.  140 S. Ct. at 2208-09.  Plaintiff (at 9-10), with no analysis, contends that the fact that Supreme Court preserved the CFPB, instead of dismantling it entirely, supports Plaintiff' position.  But Charter

7

does not contend the entire TCPA was invalidated or that the Supreme Court has not *prospectively* preserved the statute. Rather, Charter contends the speech restriction, with the debt exception, was unconstitutional (and thus unenforceable) *pre-severance*, just as *Seila Law* acknowledged that actions taken under the CFPB's constitutionally infirm leadership structure may require dismissal *pre-severance* if not ratified (something that cannot be done here because this is a First Amendment case). *See id.* at 2208. In other words, and as Judge Feldman correctly put it, "the entirety of the pre-severance [automated call ban] is void because it itself was repugnant to the Constitution before the Supreme Court restored it to constitutional health in *AAPC*." *Creasy*, 2020 WL 5761117, at *5. Because Charter cannot be penalized for the alleged violations pre-severance, judgment must be entered in its favor.

### D.   Plaintiff's Authorities Pertaining To The Severability Doctrine Are Irrelevant and Actually Support Charter's Position.

Rather than address Charter's controlling authorities, Plaintiff cites cases for the general principle that, if one part of a statute is unconstitutional, the portion that is constitutional may still stand. *See Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 328-329 (2006) ("a statute may be declared invalid to the extent that it reaches too far, but otherwise left intact"); *Dorchy v. State of Kansas*, 264 U.S. 286, 289-90 (1924) ("A statute bad in part is not necessarily void in its entirety"); *Loeb v. Trustees of Columbia Township*, 179 U.S. 472, 490 (1900) (same). [7] But Charter *agrees* with Plaintiff that *AAPC*'s severing of the debt exception preserved the speech restriction such that it was not struck down prospectively. What Plaintiff misses is that the speech restriction, which *AAPC* explicitly held was unconstitutional in conjunction with the exception,

---

[7]    Plaintiff (at 3), without discussion, also cites *Frost v. Corp. Comm'n*, 278 U.S. 515, 525-528 (1929). In *Frost*, the Supreme Court held that an amendment, by itself, was invalid and severable from an earlier enacted law. *Id.* This is in stark contrast to *AAPC*, in which the Court held that a specific and long-standing *speech restriction* (47 U.S.C. § 227(b)(1)(A)(iii)) was rendered unconstitutional by the *addition of an exception*. *See Creasy*, 2020 WL 5761117, at *5 ("the exception and the rule are in fact inextricably intertwined . . . an exception cannot be unconstitutionally discriminatory without reference to the broader rule in which it appears"). In addition, unlike *AAPC*, *Frost* did not involve the only question before this Court: whether, as applied, a disfavored speaker can be penalized for allegedly violating a speech restriction held to be unconstitutional under the First Amendment where favored speakers are excused.

cannot be enforced *pre-severance* because an unconstitutional provision is void.  None of Plaintiff's cases challenge this "timeless principle."  *See Creasy*, 2020 WL 5761117, at *3.

Plaintiff next cites *Nat. Fed. of Independent Bus. v. Sebelius*, 567 U.S. 519 (2012) for the same principle, but *Sebelius* supports *Charter's* position, not Plaintiff's.  As Plaintiff acknowledges, the Court in *Sebelius* deemed unconstitutional a provision of the Affordable Care Act that permitted the Secretary of Health and Human Services to penalize States by "withhold[ing] all further [Medicaid] payments … to the state if she determines that the State is out of compliance with any Medicaid requirement."  567 U.S. at 585.  *Sebelius* supports Charter's argument because it holds that an unconstitutional provision of a law cannot be enforced if the enforcement would lead to an unconstitutional application of the law.  *See id.*  This is the *exact* point Charter makes:  it cannot be penalized for calls that occurred during the time the speech restriction favored government speakers in violation of the First Amendment—even though, post-severance, the constitutional violation has been remedied and the statute remains effective prospectively, just like in *Sebelius*.  *See id.* at 586 ("Today's holding does not affect the continued application of § 1396c to the existing Medicaid program.").

### E.    Plaintiff's Misinterpretation Of *AAPC* Would Lead To Absurd Results, Which Plaintiff Fails to Address.

As explained in Charter's motion, strict scrutiny applies equally to viewpoint discrimination, meaning the result in *AAPC* would have been the same if the exception had favored a particular party, race, or ethnic group.  *See* 140 S. Ct. at 2347 (explaining the challenge was "subject to strict scrutiny.").  This is critical to understanding why Charter cannot be penalized under the robocall restriction during a time favored speakers were excused.

In addition to the Trump campaign hypothetical posed in Charter's motion but ignored by Plaintiff, the following are examples of the outlandish results necessitated by Plaintiff's misinterpretation of *AAPC*:

- Congress could pass an exception permitting foreign-owned petroleum companies to make calls prohibited for disfavored American-owned green energy companies and everyone else.  After the Supreme Court severed it, the non-favored energy companies could still be

penalized for violating the pre-severance statute while the favored oil and gas companies were excused up until the point of the severance.

- Plaintiff could sue Charter and a government debt collector in the same suit, claiming they both annoyed and harassed her with collections calls, using the same dialing platform: Charter by making one call and the government collector by making a thousand. The thousand-call claim against the debt collector would fail but the one-call claim against Charter would be permitted.

These results, ***required*** if Plaintiff's argument is accepted, are not tenable, and they are not the law. Indeed, "[i]t is a fundamental precept of the First Amendment that the government cannot favor the rights of one private speaker over those of another." *Bible Believers v. Wayne County Mich.*, 805 F.3d 228, 247 (6th Cir. 2015). The First Amendment thus does not permit enforcement of 47 U.S.C. § 227(b)(1) (A)(iii) here. *See Ex parte Siebold*, 100 U.S. at 377; *Grayned*, 408 U.S. at 107 n.2; *Sessions*, 137 S. Ct. at 1699 n.24; *see also Montgomery*, 136 S. Ct. at 724; *Baucum*, 80 F.3d at 540–41; *Creasy*, 2020 WL 5761117, at *8.

## III.    CONCLUSION

Plaintiff cannot possibly contend that the U.S. Supreme Court, if faced with the exact question posed to this Court today, would reach the conclusion advocated by Plaintiff. This would mean the political party in power could pass unconstitutional exceptions to favor its own preferred speech, knowing it could only be penalized prospectively once a challenge reached the Supreme Court. Plaintiff concedes this outcome is untenable by failing to even attempt to address it or the other untenable results necessitated by his position—results directly at odds with long-standing First Amendment principles and the Court's rulings in *AAPC*, *Selia Law*, and the numerous other cases cited by Charter but ignored by Plaintiff. Plaintiff further concedes that Charter is correct by citing *Sebelius*, which supports the principle that an unconstitutional provision cannot be enforced if the application is unconstitutional. The Court should enforce the First Amendment and dismiss Plaintiff's claims, just as the only court to examine the question at issue in this case did in a thoroughly-reasoned opinion issued two days ago.

DATED:        September 30, 2020.

**KABAT CHAPMAN & OZMER LLP**

*/s/ Ryan D.  Watstein*
Ryan D.  Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300
(404) 400-7333 (fax)

**ROBINSON & COLE LLP**

Brian E.  Moran
Connecticut Bar No.  ct05058
bmoran@rc.com
Trevor L.  Bradley
Connecticut Bar No.  ct29993
tbradley@rc.com
1055 Washington Boulevard
Stamford, CT  06901
203-462-7500
203-462-7599 (fax)

*Counsel for Defendant Charter
Communications, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that today I electronically filed this **DEFENDANT CHARTER COMMUNICATIONS, INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AND BRIEF IN SUPPORT** with the Clerk of Court using the CM/ECF filing system, which will automatically send an electronic copy to all counsel of record.

Dated: September 30, 2020.

*/s/ Ryan D.  Watstein*
Ryan D.  Watstein (*pro hac vice*)