# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL REASE, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>  Defendant. | Case No.: 3:20-CV-00150-RNC<br><br>Hon. Robert N. Chatigny |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO STAY PENDING THE U.S. SUPREME COURT'S DECISION IN *DUGUID V. FACEBOOK*

DATED: September 30, 2020

*/s/ Ryan D. Watstein*
**KABAT CHAPMAN & OZMER LLP**
Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300
(404) 400-7333 (fax)

**ROBINSON & COLE LLP**

Brian E. Moran
Connecticut Bar No. ct05058
bmoran@rc.com
Trevor L. Bradley
Connecticut Bar No. ct29993
tbradley@rc.com
1055 Washington Boulevard
Stamford, Connecticut 06901
(203) 462-7500
(203) 462-7599 (fax)

*Counsel for Defendant Charter Communications, Inc.*

## TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. LEGAL ARGUMENT......................................................................................................2

    A. Plaintiff Fails to Rebut the *Landis* Factors Warranting a Stay, Ignoring the Burden on Courts, Non-Parties, and the Public. .........................2

    B. Plaintiff Will Not Suffer Prejudice from a Brief Stay........................................3

        1. The brief stay requested will not be "indefinite."................................3

        2. Plaintiff's conclusory spoliation concerns are unavailing. .................4

        3. Any risk of continuing harm is speculative at best. ............................6

    C. Charter Will Suffer Prejudice Absent a Stay......................................................6

    D. The *Facebook* Opinion Will Either End this Case or Eliminate or Streamline Class Discovery................................................................................8

    E. Plaintiff Ignores that Courts Across the Country Have Stayed TCPA Cases Pending Similar Rulings. .......................................................................10

III. CONCLUSION................................................................................................................10

**I.      INTRODUCTION**

Should the Court decline to dismiss Plaintiff's single ATDS claim for lack of subject matter jurisdiction—as the only district court to consider the issue has done—or to transfer venue to the Middle District of Florida, it should stay this case pending the Supreme Court's forthcoming ruling in *Facebook* because that decision will impact, if not eliminate, Plaintiff's entire action. Plaintiff cannot legitimately dispute that all *Landis* factors compel that conclusion, and he fails to even address the most important: prejudice to the Court, third parties, and the public interest. Instead, he spends much of his brief attempting to predict how the Supreme Court will rule. But the entire point of a stay is to avoid such speculation, particularly when the ruling is so close. And he resorts to inflated, hyperbolic attacks, ignoring that this is a case about an agent who accidentally typed an incorrect digit in a customer's number, resulting in a few text messages to the wrong person. All of Plaintiff's arguments—which this Court already implicitly rejected when granting Charter's initial request for a stay—fail.

For example, Plaintiff dramatically argues he will suffer prejudice as a result of an "indefinite" stay, pointing to a purported risk of lost evidence and need for a quick judgment to prevent continuing harm to an uncertified class. But, as Plaintiff's own authority confirms, a stay pending a Supreme Court opinion is definite and final by definition. And Plaintiff identifies no basis for his speculative belief that evidence will be lost, because there is none: Charter is subject to preservation obligations of which it is aware. Moreover, Plaintiff admits he has not received any messages in nearly half a year. And while he tries to point to purported, unknown injuries to the "class," there is no class yet, nor will there ever be, given the unique one-off facts of this case.

Plaintiff also argues that Charter will not be prejudiced by having to litigate on a class-wide basis, including conducting expert discovery, examining calling systems, and so on, despite significant uncertainty about the applicable legal standard. This argument too is wrong. Courts have recognized that defendants in putative class actions, like Charter here, face asymmetric discovery costs and burdens compared to plaintiffs. This is true to the tune of many hundreds of thousands of dollars. Here, those costs are likely entirely avoidable—and at least able to be

1

substantially mitigated following the Supreme Court's ruling—and a stay is thus appropriate.

Plaintiff further argues that discovery on Charter's dialing system will be required regardless of the Supreme Court's decision. But the unrebutted record evidence confirms the communications at issue were not random, mass marketing messages, but texts intended for a specific customer who provided the number to Charter. Thus, if the Supreme Court follows the reasoning of the Third, Seventh, and Eleventh Circuits and concludes that an ATDS must employ a random or sequential number generator, then Plaintiff will have no plausible basis to seek discovery on whether its dialing system is an ATDS. And setting that aside, Plaintiff is unlikely to pursue his sole ATDS claim if the Supreme Court adopts this interpretation, since his counsel knows that modern technology, like that at issue here, does not employ random or sequential number generators. That is why plaintiffs have stopped filing ATDS claims in the Seventh and Eleventh Circuits since those courts affirmed the as-written interpretation of ATDS. Additionally, regardless of the ruling in *Facebook*, it will shape discovery so that the parties can tailor their requests proportionately to the needs of the case.

As such, the Court should stay this case pending the *Facebook* decision.

## II.    LEGAL ARGUMENT

### A.    Plaintiff Fails to Rebut the *Landis* Factors Warranting a Stay, Ignoring the Burden on Courts, Non-Parties, and the Public.

Charter detailed in its Motion (at 9–14) that each *Landis* factor warrants staying this action pending the forthcoming *Facebook* ruling. Plaintiff outright fails to address Charter's arguments regarding three of the five *Landis* factors weighing the interests and burden on courts, non-parties, and the public—and the case law Charter cited in support—thus conceding that they strongly favor a stay. *See generally* Dkt. 52; *see also, e.g.*, *Cafasso v. Nappe*, No. 3:15-CV-920, 2017 WL 4167746, at *5 (D. Conn. Sept. 20, 2017) (party waives argument by failing to address it in opposition); *In re UBS AG Secs. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (same). This is unsurprising, as Plaintiff is admittedly trying to rush this case to judgment based on the unsettled definition of an ATDS that is squarely before the Supreme Court, in the middle

2

of a pandemic. But even under Plaintiff's discovery proposal, this case could not be resolved by the time the Supreme Court rules in *Facebook*. Plaintiff does not dispute it would be an immense waste of resources and unfair to this Court, Charter, and third parties to proceed before that ruling.

### B. Plaintiff Will Not Suffer Prejudice from a Brief Stay.

#### 1. *The brief stay requested will not be "indefinite."*

Plaintiff argues (at 11–13) that a stay is not appropriate here because "the stay requested is indefinite" and would cause an "immoderate" and "indefinite delay." To be clear, Charter's request for a stay is not indefinite—it is expressly limited to the date the Supreme Court issues its decision on what constitutes an ATDS in *Facebook*. Dkt. 49. Unsurprisingly, the cases Plaintiff cites for the contrary proposition (at 11–13) are all inapposite and actually *support* a stay. For example, in Plaintiff's primary case, the court focused on the fact that there were proposed "causes of action that do not put the use of an ATDS at issue," distinct from this case, where Plaintiff asserts one sole ATDS claim. *Compare Smith v. JPMorgan Chase Bank, N.A.*, No. 20-CV-01777-CBM-PJW, 2020 WL 5033532, at *1 (C.D. Cal. Aug. 21, 2020) (focusing on plaintiff's proposed amended complaint), *with* Dkt. 1. As *Smith* was also an individual (non-class) case, the court did not need to weigh the heavy burden of class discovery on the defendant in *Smith*. *Id.* And perhaps most importantly, the *Smith* court reviewed the requested stay based only on the Supreme Court's grant of the writ of cert in *Facebook*.[1] Since then, Facebook filed its opening brief and the Supreme

---

[1] The same is true of the other cases Plaintiff cites (at 11–13, 16–17) for this proposition, which simply do not apply to a request to stay a <u>TCPA class action proceeding on the basis of a sole ATDS claim</u> pending the <u>Supreme Court's final word</u> on the central and dispositive issue, after <u>oral argument is already scheduled</u>. *Gissendaner v. Commn'r, Ga. Dep't of Corrections*, 779 F.3d 1275, 1284 (11th Cir. 2015) (request for stay of execution based on grant of cert. in individual, non-TCPA criminal action); *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541 (5th Cir. 1983) (request for stay pending completion of bankruptcy in individual, non-TCPA action); *Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir. 1976) (request for stay pending EEOC charges that take eighteen months to five years in individual, non-TCPA action); *Izor v. Abacus Data Sys., Inc.*, No. 19-CV-01057-HSG, 2019 WL 3555110, at *3 (N.D. Cal. Aug. 5, 2019) (request for stay of ATDS and iDNC "claims" pending FCC guidance, not higher court ruling, in individual action); *Larson v. Harman Mgmt. Corp.*, No. 1:16-CV-00219 2018 WL 6459964, at *4 (E.D. Cal. Dec. 10, 2018) (request for stay pending FCC guidance, where FCC did "not indicate[] how it intends to proceed"); *Pieterson v. Wells Fargo Bank, N.A.*, No. 17-CV-02306-EDL, 2018 WL 3241069, at *5 (N.D. Cal. July 2, 2018) (request for stay of ATDS and PRV claims pending circuit and FCC guidance because FCC takes years to issue guidance and potential delay until final determination by Supreme Court); *Montegna v. Ocwen Loan Serv., LLC*, No. 17-CV-00939-AJB-BLM, 2017 WL 4680168, at *6 (S.D. Cal. Oct. 18, 2017) (request for stay of ATDS and PRV claims pending circuit, focusing on potential delay until final determination by Supreme Court, in individual action); *Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016) (no oral argument yet scheduled); *Lathrop v. Uber Techs., Inc.*,

Court set oral argument for December 8, 2020—such that a decision will issue within a few months. *See Facebook, Inc. v. Duguid*, No. 19-511 *available at* https://www.supremecourt.gov/docket/docketfiles/html/public/19-511.html; Lee Epstein, William M. Landes & Richard A. Posner, *The Best for Last: The Timing of U.S. Supreme Court Decisions*, 64 Duke L.J. 991, 993 & n.6 (2015) ("The Court usually issues its decision within three months of oral argument.") (footnotes omitted); *id.* n.6 (explaining 99% of decisions between 1946 and 2012 decided in same term in which case argued); *Harmon v. RDO Equip. Co.*, No. 18-CV-02602-JVS-KKX, 2019 WL 4238878, at *6, n.8 (C.D. Cal. Feb. 14, 2019).

Thus, the Court should reject Plaintiff's manufactured claims of indefiniteness and his inapposite authority and hold in line with the vast majority of courts that a brief stay is appropriate. *See, e.g.*, *Canady v. Bridgecrest Acceptance Corp.*, No. 19-CV-04738, 2020 WL 5249263, at *3 (D. Ariz. Sept. 3, 2020) (rejecting indefinite arguments and staying TCPA case pending *Facebook* because "a stay would only last until the Supreme Court issues a decision"); *Boger v. Citrix Sys., Inc.*, No. 8:19-CV-01234, 2020 WL 1939702, at *2 (D. Md. Apr. 22, 2020) ("[A]n indefinite stay would visit undue prejudice on the case. But that is not what this Court envisions regarding a stay to await the pending Supreme Court decision."); *McGregory v. 21st Century Ins. & Fin. Servs., Inc.*, No. 1:15-CV-00098, 2016 WL 11643678, at *3 (N.D. Miss. Feb. 2, 2016) (collecting cases and explaining the Supreme "Court will issue its opinion[] by the end of June[] 2016" after oral argument is set for the end of 2015, such that a stay pending the opinion "is by definition not indefinite").

### 2. *Plaintiff's conclusory spoliation concerns are unavailing.*

Plaintiff's argument (at 17–18) that a stay could prejudice him if evidence is "lost" is speculative and vague, as Plaintiff fails to identify any basis for his speculation that any specific document or witness poses an actual, appreciable risk of becoming lost or unavailable (because he cannot). As a threshold matter, this Court has already rejected Plaintiff's arguments on this point

---

No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (request for stay pending circuit decision where no oral argument yet scheduled and potential delay until final determination by Supreme Court).

when it granted Charter's prior request for a stay. Dkt. 39 at 15; Dkt. 41. Moreover, Plaintiff's generalized statement about witness memory and telephone carrier retention does not change this result, has no basis in fact, and is a red herring—as courts repeatedly recognize when rejecting this very argument. *See, e.g.*, *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014) ("[T]hese assertions [of fading memories and witnesses unavailability] are not sufficient to justify a conclusion of undue prejudice.") (reversing denial of stay); *Hansen v. Rock Holdings, Inc.*, No. 2:19-CV-00179-KJM-DMC, 2020 WL 3867652, at *4 (E.D. Cal. July 9, 2020) ("any risk of lost evidence [was] entirely speculative"); *Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, No. 8:11-CV-02467, 2013 WL 12304025, at *1 (D. Md. Jan. 2, 2013) (similar). Moreover, the cases Plaintiff cites (at 16–18) do not support his position, as they do not involve the TCPA, do not involve class discovery, do not involve a final Supreme Court decision, or are otherwise distinguishable. *See supra* n.1; *Richardson v. Verde Energy USA, Inc.*, 2016 WL 4478839 (E.D. Pa. Aug. 25, 2016) (declining to stay pending circuit decision, since the final decision rests with Supreme Court); *Young v. Peraza*, 2015 WL 4639736, at *2 (S.D. Fla. Aug. 4, 2015) (request for stay pending criminal proceedings with "unclear status" in individual, non-TCPA action); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 252 (N.D. Ill. 2014) (stay not at issue).

Finally, even if there was an actual (rather than speculative) risk of particular evidence becoming lost or destroyed (there is not), any such concern is allayed by Charter's preservation obligations. Charter is aware of those obligations—which operate throughout the case, stayed or not—as a large, sophisticated company with detailed preservation processes and an entire team dedicated to e-discovery issues. As such, in accordance with opinions from this district and across the nation, the Court should reject Plaintiff's manufactured concerns about evidence. *See, e.g.*, *Physicians Healthsource, Inc. v. Purdue Pharma L.P.*, No. 3:12-CV-1208-SRU, 2014 WL 518992, at *3 (D. Conn. Feb. 3, 2014) ("concerns about destruction or loss of evidence are unfounded given the defendants' express acknowledgment of their evidence-preservation obligations"); *Canady*, 2020 WL 5249263, at *4 (granting stay pending *Facebook* decision and rejecting argument that

5

evidence would be destroyed, lost, corrupted, or forgotten because defendant was "now 'aware of its obligations'"); *Hansen*, 2020 WL 3867652, at *4.[2]

### 3. *Any risk of continuing harm is speculative at best.*

Plaintiff's argument (at 16–18) that a stay is inappropriate because a rush to judgment is necessary to prevent harm is also unavailing. Plaintiff concedes the purported harm—which he admits (at 17) is "relatively small"—has ceased because he is no longer receiving messages. He also concedes there is no reason to believe they will ever recur, given this case stems from a few messages intended for a Charter customer after a call center agent accidentally typed an incorrect digit in a phone number. Dkts. 1, ¶¶ 10–18; 48-1, ¶ 13, 49, p. 12. And he does not dispute Charter's arguments (at 11–12) that a delay in receiving money damages is not undue prejudice.

Likewise, Plaintiff's argument (at 17) about potential harm to putative class members is smoke and mirrors because no class has been certified. *See, e.g.*, *Lindenbaum v. Realgy, LLC*, No. 1:19-CV-2862, 2020 WL 1908639, at *2 (N.D. Ohio Mar. 19, 2020) ("Although plaintiff argues that class members will be prejudiced, there are currently no class members."); *Rajagopalan v. Noteworld*, No. C11-5574, 2012 WL 2115482, at *4 (W.D. Wash. June 11, 2012) (no risk of harm to putative class where no class certified). Apparently aware of this, Plaintiff does not even outright argue that any alleged continuing injury to purported, uncertified class members could somehow preclude a stay. Nor could he possibly make such an argument. Otherwise, no class action could ever be stayed pending a higher court's opinion, which is contrary to this Court's decisions and the hundreds of decisions staying class actions pending higher court rulings, including the dozens of cases staying TCPA class actions pending *Facebook*—none of which Plaintiff disputed or even discussed in his Opposition. Dkt. 49 at 10–11; *infra* Section E. This Court should join those courts and reject Plaintiff's manufactured claims of continuing harm here.

### C.   Charter Will Suffer Prejudice Absent a Stay.

Contrary to Plaintiff's argument (at 7, 18), Charter will suffer substantial prejudice absent

---

[2] Plaintiff may also issue his own litigation hold letter to Charter's telephone carrier, the only third party Plaintiff identified in his Opposition, if he considers that necessary.

6

a stay. To begin, Plaintiff addresses none of the five cases Charter cites (at 12–13) showing that a stay is appropriate to prevent Charter from investing substantial resources litigating this matter before the Supreme Court issues its forthcoming, binding ruling that will clarify the central issue in Plaintiff's sole cause of action. Instead, Plaintiff cites (at 18) a single, inapposite case that is irrelevant for numerous reasons, including that it did not involve class discovery at all and involved proposed claims that would not be impacted by *Facebook*. *Supra* 3–4.

As courts within and outside of this district have held, "class actions involve the potential for hefty litigation expenses and an extensive use of judicial resources in the resolution of these claims. It is also generally understood that the costs can be particularly enormous for defendants." *Physicians Healthsource*, 2014 WL 413534, at *4 (internal quotation omitted); *see also Jensen v. Roto-Rooter Servs. Co.*, No. 2:20-CV-223-JCC (W.D. Wash. Aug. 20, 2020) (staying putative TCPA class action pending *Facebook* because defendants in putative TCPA class actions "bear asymmetric discovery burdens and costs associated with defending [themselves] against . . . purported class[] claims") (citing *Am. Bank v. City of Menasha*, 627 F.3d 266 (7th Cir. 2010)).[3] That is especially true here, where class discovery will be particularly burdensome and expensive because it will call for disclosure of hundreds of thousands if not millions of pages of customer information, which is subject to a detailed notice process under the Cable Privacy Act. The Supreme Court's ruling in *Facebook* could obviate much (if not all) of this class discovery, significantly reducing burden and expense, as it will either entirely eliminate Plaintiff's entire ATDS action or substantially streamline all the discovery related to it.[4]

---

[3] This coupled with the fact that Charter "would have to expend resources on discovery that may soon be rendered moot by the Supreme Court's decision in *Duguid*" make a brief stay appropriate here. *Id.; see also Davis v. Nationstar Mortg. LLC*, No. 15-CV-4944, 2016 WL 29071, *10 (E.D. Pa. 2016) (defendant prejudiced if forced to expend resources pending resolution of case that could determine court lacked jurisdiction).

[4] Plaintiff's argument (at 13) that Charter is "inconsistent" in requesting a stay and dismissal of this action for lack of personal jurisdiction is illogical. As explained in Charter's Motion for Judgment on the Pleadings, Plaintiff's claim cannot proceed given the Supreme Court's decision in *AAPC*, a threshold jurisdictional issue that must be resolved before proceeding in any venue. *See* Dkt. 47; *Can v. United States*, 14 F.3d 160, 162 n.1 (2d Cir. 1994). Only if the Court denies that motion would this Motion come into play.

### D. The *Facebook* Opinion Will Either End this Case or Eliminate or Streamline Class Discovery.

Plaintiff spends much of his brief (at 13–14) predicting that the Supreme Court will not adopt a "narrow definition of what constitutes an ATDS" and inaccurately represents (at 10) that there is a 2–3 leaning in favor of the Ninth Circuit's holding. This argument is meritless. First, that there is an imminent Supreme Court decision on a dispositive issue alone merits a stay. That is why predicting the outcome of such a decision is not one of the factors this Court considers in deciding whether to grant a stay; in fact, a stay is intended to *avoid* such speculation. *Eric. B. Fromer Chiropractic, Inc. v. New York Life Ins. and Annuity Corp.*, No. 15-04767, 2015 WL 6579779, at *2 (C.D. Cal. Oct. 19, 2015) ("[W]ere this court to engage in that kind of speculation, it might as well decide the issues and deny the stay. But . . . such an exercise makes little sense because these issues are squarely before the Supreme Court."); *see also, e.g.*, *Nakai v. Charter Commc'ns, Inc.*, No. CV 19-8035, 2020 WL 1908949, at *6 (C.D. Cal. Apr. 15, 2020) (holding that even "[t]he *possibility* that the automated-call restriction will be invalidated . . . warrants a brief stay [to] promote judicial economy") (emphasis added).

Second, as Charter outlines in its Motion (at 7, 8–9), there is an even circuit split and a Supreme Court that is likely to interpret the TCPA based on its plain text, making it more likely than not that the Court will adopt the statutory reading and holdings of the Third, Seventh, and Eleventh Circuit. Since Charter filed its Motion, this has become even more likely for two reasons: (1) the Department of Justice filed a brief endorsing that interpretation; and (2) the current Supreme Court nominee authored the Seventh Circuit's Opinion adopting the statutory definition. *See* Br. for the United States as Resp't Supporting Pet'r, *Facebook, Inc. v. Duguid*, No. 19-511 (Sept. 4, 2020); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 459 (7th Cir. 2020) (Barrett, J.).

Along these same lines, Plaintiff's claim (at 15) that "the parties in this matter will still need to complete discovery and engage in motion practice to resolve the ATDS issue irrespective of how the Supreme Court rules in *Duguid*" fails to justify denying a stay. First, Plaintiff is factually incorrect. Plaintiff does not dispute that a call center agent was trying to reach a specific

8

customer with the alleged communications and merely accidentally typed an incorrect digit, demonstrating the text messages were not randomly generated; nor does he dispute that the platform at issue does not have the capacity to generate random or sequential phone numbers. *See* Dkts. 48-1, ¶ 13; 49 at 12; 49-2, ¶ 9. If the Supreme Court sides with the Third, Seventh, and Eleventh Circuits on the definition of an ATDS and holds it means what the TCPA says—a system that employs a random or sequential number generator (rather than equipment that can "make calls from stored lists")—then Plaintiff will have no plausible ATDS claim against Charter to pursue discovery on any dialing systems. A declaration and production of the system manual will therefore likely end this issue, as the unrebutted evidence confirms the platform used to send communications at issue lacks the capacity to generate random or sequential phone numbers, or to generate any numbers itself. *See* Dkt. 49-2, ¶ 9. Indeed, modern companies (including Charter) do not use random or sequential number generators; nor do plaintiffs pursue ATDS cases in jurisdictions where random or sequential number generation is required. For this reason, ***there have been virtually no ATDS cases filed*** in the Seventh or Eleventh Circuits since those circuits adopted the statutory definition of ATDS—and plaintiffs routinely dismiss TCPA cases voluntarily in response to basic declarations rather than litigating a case they know to be doomed.

Moreover, it is not logistically feasible to conduct discovery before the Supreme Court clarifies the appropriate legal standard. Plaintiff's counsel knows this, as they have not opposed requests to stay discovery in other TCPA cases pending the Supreme Court's opinion in *Facebook*.[5] Tellingly, Plaintiff did not dispute Charter's argument (at 9) that, even if the Supreme Court's decision does not dispose of this action, it will materially shape and streamline this case, including fact and expert discovery and related motion practice (which will immediately proceed without a stay, as Plaintiff already issued overbroad class discovery that will likely result in discovery disputes). Indeed, even assuming the parties could complete fact discovery without knowing the definition of ATDS, expert discovery would be worthless—if not impossible—as

---

[5] *See, e.g.*, *May v. WhatsApp Inc.*, 4:20-CV-00659 (N.D. Cal. July 15, 2020) (stay pending *Facebook*); *James Meyers v. Facebook, Inc.,* No. 3:18-CV-00062 (N.D. Cal. July 20, 2020) (same).

9

experts could not offer helpful opinions on whether the technology at issue possesses features or capabilities that render it an ATDS, without knowing what the standard is. In sum, the parties, the Court, and dozens of third parties (such as putative class members) should not be forced to engage in discovery—particularly expensive class and expert discovery during a pandemic—based on the potentially wrong definition of ATDS when the Supreme Court is about to decide the issue.

### E. Plaintiff Ignores that Courts Across the Country Have Stayed TCPA Cases Pending Similar Rulings.

As Charter explained in its Motion (at 10–14), countless courts, including in this jurisdiction, have routinely stayed TCPA actions pending higher court rulings on the definition of ATDS, including pending a ruling in *Facebook*. In fact, since Charter filed this Motion, more courts followed suit, including the Eastern District of Louisiana, which stayed similar text message ATDS claims against Charter to "prevent a waste of judicial and party resources in the event that *Facebook* clearly dictates that the plaintiffs' remaining claims are without merit" and "limit and streamline discovery" if they do. *See*, *e.g.*, *Creasy v. Charter Comm'ns, Inc*., No. 2:20-CV-1199, 2020 WL 5761117, at *8 (E.D. La. Sept. 28, 2020) (staying ATDS claims pending *Facebook*); *Canady*, 2020 WL 5249263, at *3–4 (staying ATDS and other claims pending *Facebook*); *Veytia v. Portfolio Recovery*, No. 20-CV-0341, 2020 WL 5257881, at *2–4 (S.D. Cal. Sept. 3, 2020) (same). Plaintiff disputes ***none*** of the authority Charter cited and the only case he cites reviewing a request to stay pending *Facebook* is inapplicable. *Supra* at 3–4. As such, Plaintiff's statement (at 10) that stays like the one requested here are "significantly disfavored" is plainly wrong.

### III. CONCLUSION

Plaintiff's Opposition confirms the Supreme Court's ruling will clarify the definition of ATDS, materially and directly impacting this case. Plaintiff fails to adequately address any of the *Landis* factors, outright ignoring three, all of which warrant a stay. Thus, if Court denies its pending motion for judgment on the pleadings and motion to transfer, Charter respectfully asks this Court to stay this action pending the Supreme Court's ATDS decision.

| | |
|---|---|
| DATED: September 30, 2020 | **KABAT CHAPMAN & OZMER LLP** |
| | |
| | */s/ Ryan D. Watstein* |
| | Ryan D. Watstein (*pro hac vice*) |
| | rwatstein@kcozlaw.com |
| | 171 17th Street NW, Suite 1550 |
| | Atlanta, Georgia 30363 |
| | (404) 400-7300 |
| | (404) 400-7333 (fax) |
| | *Counsel for Defendant Charter Communications, Inc.* |

**ROBINSON & COLE LLP**

Brian E. Moran
Connecticut Bar No. ct05058
bmoran@rc.com
Trevor L. Bradley
Connecticut Bar No. ct29993
tbradley@rc.com
1055 Washington Boulevard
Stamford, Connecticut 06901
(203) 462-7500
(203) 462-7599 (fax)

## CERTIFICATE OF SERVICE

I certify that today I electronically filed this **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO STAY PENDING THE U.S. SUPREME COURT'S DECISION IN *DUGUID V. FACEBOOK*** with the Clerk of Court using the CM/ECF filing system, which will automatically send an electronic copy to all counsel of record.

Dated: September 30, 2020.

*/s/ Ryan D. Watstein*
Ryan D. Watstein (*pro hac vice*)