**EXHIBIT 1**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL REASE, individually and on behalf of all others similarly situated,<br><br>                   Plaintiff,<br><br>   v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>                   Defendant. | Case No. 3:20-cv-00150-RNC<br><br>Hon. Robert N. Chatigny |

**PLAINTIFF'S SUR-REPLY IN FURTHER OPPOSITION TO
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Dated: October 23, 2020

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
Philip L. Fraietta (*pro hac vice*)
888 Seventh Avenue, Third Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  jmarchese@bursor.com
         pfraietta@bursor.com

**HEDIN HALL LLP**
Frank S. Hedin*
David W. Hall*
1395 Brickell Avenue, Ste 1140
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 220-8801
Email:  fhedin@hedinhall.com
         dhall@hedinhall.com

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 S. Main Street, 3rd Floor
West Hartford, Connecticut 06110
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

*To Be Admitted Pro Hac Vice

*Attorneys for Plaintiff and the Putative Class*

Plaintiff Daniel Rease, individually and on behalf of all others similarly situated, submits this sur-reply in further opposition to the Motion for Judgment on the Pleadings, ECF No. 47 (the "Motion" or "Mot."), filed by Defendant Charter Communication, Inc. ("Charter" or "Defendant").

**ARGUMENT**

In its Motion, Defendant argued that the narrow government debt-collection exception rendered the entire autodialer prohibition "an unconstitutional content-based restriction" that was "unenforceable [] from the enactment of the government debt exception in 2015 until the Court severed it in [*Barr v. Am. Ass'n of Political Consultants, Inc*, 140 S. Ct. 2335 (2020) ("*AAPC*")]." (Mot. at 1.) In its reply in support of the Motion, Defendant for the first time cites to *Creasy v. Charter Comms., Inc.,* 2020 WL 5761117 (E.D. La. Sept. 28, 2020), a non-binding, interlocutory district court decision from the Eastern District of Louisiana that is not particularly persuasive. *Creasy*, 2020 WL 5761117, at *9 ("The Supreme Court's decision in AAPC cannot logically be read as anything other than a ruling that § 227(b)(1)(A)(iii) was unconstitutional in the form in which the Court received it. *That* version of the provision, which included the government-debt exception that the Court has now severed, was unconstitutional when Charter engaged in all but one of the allegedly illegal communications the plaintiffs complain of."). With all due respect to the *Creasy* court, *Creasy* was wrongly decided and its reasoning should not be adopted by the Court here.

"[I]n *[AAPC]*, a seven-member majority of the Court (including Justices Breyer, Ginsburg, Kagan, and Sotomayor, who concurred in the judgment with respect to severability) agreed that the government-debt exception to the Telephone Consumer Protection Act's robocall restriction … could be excised from the remainder of the statute." *United States v. Miselis*, 972 F.3d 518, 542 (4th Cir. 2020). And in the part of the opinion addressing severability—which, again, seven justices agreed with—the Court specifically held that "our decision does not negate the liability of parties who made

1

robocalls covered by the robocall restriction" between the exemption's effective date and the date of its severance. *AAPC*, 140 S. Ct. at 2355 n.12.

Contrary to the court's conclusion in *Creasy*, the Supreme Court's holding in *AAPC* concerning post-severance liability for pre-severance robocalls was not mere "dicta" but rather a clear holding of precedential import supported by a supermajority of the Court. *See id.* (unequivocally stating that "our decision does not negate the liability of parties who made robocalls covered by the robocall restriction") (emphasis added). This holding was necessary to resolve the appeal because had the Court's decision "negate[d] the liability of parties who made robocalls covered by the robocall restriction," among them the plaintiff-respondent in *AAPC*, the Supreme Court would have remanded the case back to the lower court with instructions that it be dismissed for lack of subject-matter jurisdiction (as Charter argues should occur here, *see* Mot. at 1) as opposed to affirming the Fourth Circuit's decision to remand the case back to the district court for "further proceedings," *Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159, 172 (4th Cir. 2019). Indeed, even Justice Gorsuch's dissent characterizes the statement as "a holding that shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law." *AAPC*, 140 S. Ct. at 2366 (emphasis added).

The response to Justice Gorsuch's dissent found within the judgment of the Court in *APPC* also clearly refutes the reasoning in *Creasy*. Specifically, this response stated that:

> Justice GORSUCH suggests that our decision provides "no relief" to plaintiffs. Post, at ——. We disagree. Plaintiffs want to be able to make political robocalls to cell phones, and they have not received that relief. But the First Amendment complaint at the heart of their suit was unequal treatment. Invalidating and severing the government-debt exception fully addresses that First Amendment injury. Justice GORSUCH further suggests that plaintiffs may lack standing to challenge the government-debt exception, because that exception merely favors others. *See ibid*. But the Court has squarely held that a plaintiff who suffers unequal treatment has standing to challenge a discriminatory exception that favors others. *See Heckler v. Mathews*, 465 U.S., at 737–740, 104 S.Ct. 1387 (a plaintiff who suffers unequal treatment has standing to seek

2

> "withdrawal of benefits from the favored class"); *see also Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville*, 508 U.S. 656, 666, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) ("The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit").

*AAPC*. 140 S. Ct. at 2355-56.  To put this in other words, in a case that alleges unequal treatment, such as occurred in *AAPC*, "[i]nvalidating and severing the [offending provision] fully addresses that First Amendment injury" because it confers the "withdrawal of benefits from the favored class."  Here, Charter goes so far as to ask the Court to effectively invalidate the TCPA for a span of several years because the government was a favored speaker, but ignores the fact that any constitutional injury it suffered was "fully address[ed]" by requiring the favored speaker (i.e., the government) to comply with the same law.  The immodest remedy sought by Charter would have the exact same downside cautioned against by the judgement of the Court in *AAPC* in response to Justice Gorsuch, namely that "it would disrespect the democratic process, through which the people's representatives have made crystal clear that robocalls must be restricted," and "end up harming a different and far larger set of strangers to this suit—the tens of millions of consumers who would be bombarded every day with nonstop robocalls notwithstanding Congress's clear prohibition of those robocalls." *Id.* at 2356.

Moreover, Justice Gorsuch's dissent garnered the support of only a single other justice (Justice Thomas).  Thus, even if the Supreme Court's pronouncement concerning post-severance liability for pre-severance robocalls is considered dicta, the fact remains that seven justices agree with it and only two disagree with it.  This Court should adopt the persuasive reasoning of the seven-member majority, not the rejected reasoning of the two-member dissenting minority.  *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("[W]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds."); *Strange on Behalf of Strange v. Islamic Republic of Iran, Interest Section*, 964 F.3d 1190 (D.C. Cir. 2020) ("[A]

dissenting Supreme Court opinion is not binding precedent because it does not tell us how a majority of the Court would decide the question." (internal quotations omitted)); *United States v. Ameline*, 409 F.3d 1073, 1083 n.5 (9th Cir. 2005) (noting "dissents, of course, are not precedential").

Finally, the recent decision of the U.S. Court of Appeals for the Fourth Circuit in *United States v. Miselis*, which is far more persuasive authority than *Creasy*, confirms that Charter may properly be held liable for violating the TCPA's surviving, post-severance robocall provisions prior to the exemption's severance. The court in *Miselis* severed and thus invalidated certain provisions of the Anti-Riot Act that it held were unconstitutionally overbroad (pertaining to speech that encouraged, promoted, or urged others to riot). *Miselis,* 972 F.3d at 543 ("noting that the offending language could be "easily dropped off from the rest of the clause in which it appears, much like the government-debt exception severed in [*AAPC*]"). Several defendants who had been convicted of violating the Anti-Riot Act's surviving provisions challenged their convictions on the grounds that, inter alia, the conduct giving rise to their convictions was committed prior to the severance of the overbroad provisions and thus at a time when the Act was facially overbroad under the First Amendment. The Fourth Circuit had little difficulty rejecting the argument, explaining in pertinent part:

> [H]ere … a few of the Anti-Riot Act's [provisions] happen to be overbroad and, thus, invalid … [B]ecause the record, as we explain, establishes conclusively that the defendants' substantive offense conduct falls under the statute's surviving [provisions], their convictions must stand.
>
> Before accepting the defendants' guilty pleas, the district court was required to "determine that there [was] a factual basis" for them, Fed. R. Crim. P. 11(b)(3), which it did by accepting the defendants' respective Statements of Offense. In those Statements, the defendants stipulated that the substantive offense conduct underlying their respective conspiracy convictions consists (beyond such overt acts as traveling to rallies through interstate commerce, conducting combat training, and buying supplies) of engaging "in violent confrontations," J.A. 227, which is to say "physical conflict," J.A. 232, with counter-protestors at each of the three rallies discussed above. Specifically, the defendants admitted to having each (as part of an assemblage of three or more) "personally committed multiple violent acts"—including but not limited

<blockquote>
to pushing, punching, kicking, choking, head-butting, and otherwise assaulting numerous individuals, and none of which "were in self-defense"—in Huntington Beach, Berkeley, and Charlottesville. J.A. 231, 236.

<u>Such substantive offense conduct qualifies manifestly as "commit[ting] any act of violence in furtherance of a riot" within the ordinary meaning of § 2101(a)(3), as well "participat[ing] in" and "carry[ing] on a riot" within the ordinary meaning of § 2101(a)(2)—three wholly conduct-oriented purposes left unscathed by our partial invalidation of the statute. By the same token, the defendants' offenses have manifestly nothing to do with speech tending to encourage, promote, or urge others to riot; mere advocacy of violence; or any other First Amendment activity; as the district court properly found.</u>
</blockquote>

*Miselis*, 972 F.3d at 547 (emphasis added).

This Court should reach the same conclusion as *Miselis*. Charter initiated robocalls to the Plaintiff's telephones using an ATDS—conduct which had "manifestly nothing to do with" the collection of government debt—in violation of the TCPA's robocall restrictions, which were left "wholly unscathed by [*AAPC*'s] partial invalidation of the statute." *See id.*

## CONCLUSION

For the foregoing reasons and those in Plaintiff's opposition brief, Defendant's Motion for Judgment on the Pleadings should be denied in full.

Dated: October 23, 2020

Respectfully submitted,

**BURSOR & FISHER, P.A**.

By:   */s/ Philip L. Fraietta*
         Philip L. Fraietta

Joseph I. Marchese*
Philip L. Fraietta (*pro hac vice*)
888 Seventh Avenue, Third Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  jmarchese@bursor.com
            pfraietta@bursor.com

**HEDIN HALL LLP**
Frank S. Hedin*
David W. Hall*
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: (415) 766-3534

5

        Facsimile: (415) 402-0058
        Email:  fhedin@hedinhall.com
                dhall@hedinhall.com

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 S. Main Street, 3rd Floor
West Hartford, Connecticut 06110
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

\**Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiff and the Putative Class*

## **CERTIFICATE OF SERVICE**

    I, Philip L. Fraietta, an attorney, hereby certify that on October 23, 2020, I served the above and foregoing Plaintiff's Sur-Reply in Opposition To Defendant's Motion For Judgment On The Pleadings on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF system.

                                                                                            */s/ Philip L. Fraietta*
                                                                                            Philip L. Fraietta