**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DANIEL REASE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>    Defendant. | Case No.: 3:20-cv-00150-RNC<br><br>Hon. Robert N. Chatigny |

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S RESPONSE TO PLAINTIFF'S SUR-REPLY AND IN SUPPORT OF CHARTER'S MOTION FOR JUDGMENT ON THE PLEADINGS**

DATED:    November 2, 2020

**KABAT CHAPMAN & OZMER LLP**

*/s/ Ryan D. Watstein*
Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300
(404) 400-7333 (fax)

**ROBINSON & COLE LLP**

Brian E. Moran
Connecticut Bar No. ct05058
bmoran@rc.com
Trevor L. Bradley
Connecticut Bar No. ct29993
tbradley@rc.com
1055 Washington Boulevard
Stamford, CT 06901
203-462-7500
203-462-7599 (fax)

*Counsel for Defendant Charter Communications, Inc.*

**TABLE OF CONTENTS**

I.  INTRODUCTION ...............................................................................................................1

II. ARGUMENT ......................................................................................................................2

    A.  **Plaintiff Mischaracterizes *AAPC*.** ...................................................................2

    B.  **The Fourth Circuit's Opinion In *United States v. Miselis* Is Inapposite.** ...........7

    C.  **Plaintiff Fails To Dispute, And Thus Concedes, Charter's Remaining Arguments.** .............................................................................................................8

III. CONCLUSION ...................................................................................................................9

**I.     INTRODUCTION**

Plaintiff's Sur-Reply to Defendant's Motion for Judgment on the Pleadings materially misstates the Supreme Court's *AAPC* decision, including the weight of the three-justice plurality opinion and the procedural posture of the case, by cherry-picking and truncating quotations without providing (or by mischaracterizing) the context in which the statements appear. Plaintiff also misconstrues inapposite, non-binding authority, while still failing to address numerous arguments and controlling authority in Charter's Motion and Reply. Plaintiff's arguments are unavailing, and the Court should reject each of them.

For instance, while seven justices concurred in the judgment that the government-debt exception could be severed, they did not all join the rationale for that judgment, as Plaintiff wrongly contends. Only two justices joined that section of the opinion, authored by Justice Kavanaugh, meaning that section represents the views of three of nine justices. Because only three justices expressed their assent to footnote 12—not seven—the footnote has no precedential authority, as Plaintiff falsely claims.

Further, contrary to Plaintiff's claim, footnote 12 was not part of the plurality's holding; it was dicta, entirely unnecessary and extraneous to the Court's holding. Plaintiff bases his argument otherwise on his mistaken belief that *AAPC* involved litigation regarding the enforceability of the automated-call ban pre-severance. But AAPC brought an affirmative challenge to the automated-call ban because its members wished to make calls *prospectively*; they were not facing suit for calls they made in the *past*, under the unconstitutional pre-*AAPC* version of the statute, like Charter is here. Accordingly, the Court's ruling did not deprive the *AAPC* district court of subject matter jurisdiction over that case, whereas it does so here.

Plaintiff is wrong again that *AAPC* "fully addressed" Charter's "constitutional injury" by conferring the "withdrawal of benefits from the favored class." While Plaintiff is correct that *AAPC* addressed the injury on a *prospective* basis, here, Plaintiff seeks to apply the pre-severance version of the automated-call ban to conduct that *already occurred* during a time that the provision unquestionably illegally discriminated based on the content of speech. Binding Supreme Court

1

authority forecloses Plaintiff's ability to do so and compels the conclusion that that Court lacks jurisdiction to enforce the automated-call ban in this case.

Finally, *United States v. Miselis* (the Fourth Circuit opinion Plaintiff cited for the first time in his Sur-Reply) is completely inapposite because it did not involve content discrimination. There, the court invalidated and severed overbroad portions of the Anti-Riot Act, while also holding that the defendants' convictions for acts of violence remained valid under the pre-severance statute, given they were not dependent on the overbroad provisions. This makes sense because, in the case of overbreadth, the offending provision does not impact the remainder of the statute. Not so in cases involving content discrimination, like this one. Here it is impossible to enforce the automated-call ban against Charter for conduct that occurred when government-debt collectors were exempt from that ban without perpetuating the *exact same* discrimination *AAPC* ruled constitutional. Under binding precedent, this is impermissible.

For these reasons, and as explained more fully below and in Charter's Motion and Reply, the Court should dismiss this action for want of subject matter jurisdiction over Plaintiff's claims, just like the only two courts to address the issue have done, after considering all the points Plaintiff has raised here.[1]  *See Creasy v. Charter Comms., Inc.*, --- F. Supp. 3d ----, No. 20-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020); *Lindenbaum v. Realgy*, No: 1:19-CV-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020).

## II.     ARGUMENT

### A.  Plaintiff Mischaracterizes *AAPC*.

Though filed under the guise of addressing *Creasy v. Charter Comms., Inc.*, ---F. Supp. 3d ----, No. 20-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020), Plaintiff fails to distinguish that case, because he cannot: it involves the exact same fact pattern as this case and the result should be exactly the same. Instead of actually discussing *Creasy* and attempting to challenge its reasoning, Plaintiff misconstrues, misquotes, and otherwise mischaracterizes *AAPC*.

---

[1]  The undersigned was lead counsel in *Creasy* and *Lindenbaum*. The plaintiffs there raised the points Plaintiff has raised here, in one form or another.

First, Plaintiff falsely claims (at 2–3) that seven justices "agreed with" the "part of the opinion addressing severability" and thus the language of footnote 12. But the plain language of the Court's syllabus in *AAPC* refutes this: "Justice KAVANAUGH, *joined by THE CHIEF JUSTICE and Justice ALITO*, concluded in Part III that the 2015 government-debt exception is severable from the 1991 robocall restriction." *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335, 2340 (2020) ("*AAPC*"). While four other justices came to the same conclusion regarding severability, they did not join—and thus did not endorse—the entirety of the three-justice plurality opinion on that issue, but rather opted only to concur in the ultimate judgment.[2] *See, e.g.*, *id.* at 2356 ("Justice SOTOMAYOR, *concurring in the judgment*"), 2357 ("Justice BREYER, with whom Justice GINSBURG and Justice KAGAN join, "*concurring in the judgment with respect to severability* . . ."). Accordingly, Plaintiff is simply wrong in claiming that "seven justices agreed with" the language in footnote 12. Both Judge Feldman in *Creasy* and Judge Gaughan in *Lindenbaum* recognized this. *See Lindenbaum*, 2020 WL 6361915, at *5 ("[F]ootnote 12 is contained in a plurality opinion endorsed by only three Justices. Therefore, the Court finds that footnote 12 constitutes non-binding *obitur dictum*."); *Creasy*, 2020 WL 5761117, at *2.

Further, contrary to Plaintiff's claim, footnote 12 was not part of the Court's holding (which explains why it is in a footnote). As Charter explained in its Motion (at 11), the *holding* of the case, adopted by a *majority* of Justices, is that the automated-call ban combined with the government-debt exception was unconstitutional pre-severance (*i.e.*, going back to 2015 when the debt exception was enacted). *See id.* at 2343 ("Six Members of the Court today conclude that Congress has impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment."). And as Charter showed in its Reply (at 6), the *Creasy* court

---

[2] "[W]hen the Justices fail to converge on a single majority rationale for a decision, the only precedent that comes of such a decision is the position adopted by the narrowest concurrence . . . the plurality in *AAPC* spelled out the technical holdings of the Court in explicit terms: (1) Six members of the Court … conclude that Congress has impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment[.]" *Creasy*, 2020 WL 5761117, at *4 (internal quotations omitted).

3

correctly recognized the footnote "is unnecessary to the decision in the case" and thus dicta. *See Creasy*, 2020 WL 5761117, at *5 n.4 (noting the "footnote is merely persuasive, as opposed to mandatory, because it appears in an opinion commanding the votes of only three justices, and because … it constitutes mere 'obiter dictum'".).[3]

Plaintiff's only argument to the contrary is based on the incorrect assumption (at 3) that the Supreme Court would have remanded *AAPC* to the trial court with instructions to dismiss for lack of subject matter jurisdiction if its opinion rendered the TCPA unconstitutional for the duration that the government-debt exception was part of the statute. This argument is based on a complete misunderstanding of the procedural posture of *AAPC*. As Charter explained in its Reply (at 6), *AAPC* "did not involve a lawsuit for TCPA violations at all; it was a direct challenge brought by political parties who wanted to make calls regulated by the statute on a *prospective* basis." (Citing 140 S. Ct. at 2345); *see also Lindenbaum*, 2020 WL 6361915 at *2 ("The plaintiffs in *AAPC* consisted of various organizations that participate in the political system and desired to make robocalls in support of their political issues.").

That Plaintiff does not acknowledge this posture in his Sur-Reply is telling and suggests Plaintiff did not merely overlook this significant fact but rather that Plaintiff's argument is willfully misleading. *See generally* Dkt. 62 at 3. In any event, the posture highlights a critical difference between this case and *AAPC*: whereas the political organizations in *AAPC* sought the right to make future calls, Plaintiff's claim here is based on alleged calls that have *already taken place*, at a time when the government-debt exception was *still part of the TCPA*. *See AAPC*, 140 S. Ct. at 2343–44. As the Chief Judge of the Northern District of Ohio recently put it when dismissing a similar TCPA action based on calls that took place pre-severance, Charter "***do[es] not seek the right to speak, having already done so. [It] seek[s] the right to be free from punishment for speaking during a time when an unconstitutional content-based restriction existed***." *Lindenbaum*, 2020

---

[3] *See also Cohens v. Virginia*, 19 U.S. 264, 399 (1821) (dicta does not "control the judgment in a subsequent suit when the very point is presented for decision").

WL 6361915, at *6 (emphasis added).  The Court should disregard Plaintiff's logically flawed "remand" argument.

Plaintiff also misquotes Justice Gorsuch's dissent (at 3) and falsely claims he characterized footnote 12 as "a holding."  To the contrary, in the very paragraph from which Plaintiff cherry-picked, Justice Gorsuch describes the footnote as a "suggest[ion]."  140 S. Ct. at 2366.  And Plaintiff's argument further disintegrates when the quoted language from Justice Gorsuch's dissent is read in context, as he wrote: "[A] holding that shields only government-debt collection callers from past liability under an admittedly unconstitutional law **_would_** wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate."  *Id.*  Justice Gorsuch's use of the word "would" (rather than, *e.g.*, will) implies his (correct) understanding that footnote 12 is not the Court's holding, but that if it *were* the holding, then it *would* "endors[e] the very same kind of content discrimination [the Court said it was] seeking to eliminate."  As explained above, it is *Plaintiff* who is advocating for a position that would result in the "content discrimination" to which Justice Gorsuch refers.

Plaintiff is also incorrect in arguing (at 4) that this case should proceed because *AAPC* "fully addressed" Charter's "constitutional injury" by conferring the "withdrawal of benefits from the favored class."  While Plaintiff is correct that *AAPC* fully addressed the "unequal treatment" injury on a *prospective* basis by severing the government-debt exception, Plaintiff ignores the fact that in this case, he is seeking to apply the *pre-severance* version of the automated-call ban to conduct that *already occurred* during a time that the provision unquestionably illegally discriminated based on the content of speech.  While that question was not posed in *AAPC*, the answer is dictated by binding Supreme Court precedent holding that a federal court may not enforce a speech restriction in a manner that violates the First Amendment, much less in a content-discriminatory manner.  *See, e.g.*, *Ex parte Siebold*, 100 U.S. 371, 377 (1880); *Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972) (noting, in a constitutional challenge to a content-based speech restriction, that courts "must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted"); *McIntyre v. Ohio Elections Comm'n*, 514 U.S.

5

334, 357 (1995) (reversing fine because election law violated First Amendment); *Bates v. State Bar of Arizona*, 433 U.S. 350, 384 (1977) (reversing attorney discipline because bar rule violated First Amendment); *The Florida Star v. B.J.F.*, 491 U.S. 524, 5321 (1989) (reversing damages award because "imposing damages" for constitutionally protected speech "violates the First Amendment"). For this reason, the *Lindenbaum* court correctly acknowledged that "severance of the content-based restriction does not offer a 'remedy' to correct *past* harm"—*i.e.*, severance does not remedy past harm. *Lindenbaum*, 2020 WL 6361915, at *4.

Allowing Plaintiff's claims to proceed based on alleged calls that occurred while the TCPA treated Charter unequally as compared to government-debt collectors would also be re-inflicting the very same "constitutional injury" that led to the Court's holding in *AAPC* on Charter. Such a result would also reinstate the "benefits [to] the favored class" by finding Charter could be liable for conduct that occurred during the time when the "favored class" was permitted to engage in the same conduct with impunity. In other words, because courts cannot retroactively apply the TCPA without the government-debt exception to the "favored class" (*i.e.*, government-debt collectors who placed calls pre-severance), the ***only*** way to prevent further "constitutional injury" is to treat the "unfavored class" (*i.e.*, Charter and any other parties who placed calls pre-severance) identically. *See Collins v. Youngblood*, 497 U.S. 37, 41–42 (1990) (discussing *Ex Post Facto* clause of the U.S. Constitution, which prohibits laws that purport to retroactively apply to conduct that was legal at the time it was engaged in); *Lindenbaum*, 2020 WL 6361915, at *12 ("[T]o treat [the TCPA] as void *ab initio* only as to certain parties would likely raise its own set of equal treatment concerns—the very concern raised by the *AAPC* dissent. The fact remains that at the time the robocalls at issue in this lawsuit were made, the statute could not be enforced as written. And, a later amendment to a statute cannot be retroactively applied."); *see also* Reply at n.6 (citing *Youngblood*).

Plaintiff further argues (at 4) that the relief sought by Charter "would have the exact same downside cautioned against by the judgment of the Court in *AAPC* in response to Justice Gorsuch." But this is a red herring. Justice Gorsuch proposed an injunction preventing the enforcement of

6

the TCPA against the plaintiffs in *AAPC*, who sought to make automated calls in the future. *AAPC*, 140 S. Ct. at 2365. The plurality in *AAPC* cautioned that such a result could lead to future harm to "tens of millions of consumers who would be bombarded every day with nonstop robocalls" by the plaintiffs in *AAPC*. *Id.* at 2356. By contrast, there is no risk of future harm here, as Charter is not taking the position that the statute cannot be enforced *prospectively* but merely asks the Court to refrain from unfairly penalizing it for alleged conduct for which government debt collectors would evade liability (and lawsuits). *See Lindenbaum*, 2020 WL 6361915, at *8 (noting in *AAPC* the Court "cured the unequal treatment concern by *preventing* parties from engaging in speech" in the future).

Accordingly, Plaintiff misconstrues *AAPC*, and the Court should hold that it lacks subject matter jurisdiction over Plaintiff's claims because the automated-call ban was an unconstitutional content-based restriction during the time Charter is alleged to have violated it, just like the only two courts to address the question have held.

### B. The Fourth Circuit's Opinion In *United States v. Miselis* Is Inapposite.

In a last-ditch effort to distract from this common-sense result and binding precedent, Plaintiff (at 5) cites an inapposite Fourth Circuit opinion, decided in August of this year (which Plaintiff thus could have cited in his initial opposition brief, *see* Dkt. 50, filed September 16, 2020): *United States v. Miselis*, 972 F.3d 518 (4th Cir. 2020). As Plaintiff points out, *Miselis* addressed a challenge to the Anti-Riot Act brought by criminal defendants who had pleaded guilty and been convicted of conspiracy to violate the Act. 972 F.3d at 541. After holding portions of the Act were unconstitutionally overbroad and invalidating those portions, the court was faced with deciding whether or not to vacate the defendants' convictions. *Id.* at 547. Because the court concluded that the "defendants' substantive offense conduct [fell] under the surviving" portions of the statute, the court declined to vacate their convictions. *Id.* (punctuation omitted).

The Fourth Circuit's reasoning in *Miselis* does not apply here, or in any other case concerning a statute that impermissibly discriminates based on the content of speech. As *Miselis* itself recognized, overbroad statutes that can be remedied by partial invalidation (like the Anti-

7

Riot Act in *Miselis*) consist of distinct provisions: an appropriately narrow portion of the statute, which remains lawful and valid before, during, and after the invalidation of the improperly overbroad portion, and the overbroad portion itself. *See Miselis*, 972 F.3d at 543. This is starkly different from a content-based provision that impermissibly favors some speech over other speech and thus unconstitutionally discriminates against *all* non-favored speech (and speakers) *until* the statute is remedied. Here, that means that Charter (and all other non-government-debt collectors) was unconstitutionally discriminated against for the entire period that the government-debt exception was in place. Since that exception was severed in *AAPC*, there is no longer any unlawful discrimination as to conduct occurring prospectively because all speakers—including government-debt collectors—are treated the same. However, applying the TCPA to conduct that occurred pre-severance—as Plaintiff attempts to do here—would illegally perpetuate the unconstitutional discrimination, as government-debt-collectors cannot be liable for conduct that occurred during this period whereas all other speakers can be. *See, e.g.*, *Ex parte Siebold*, 100 U.S. at 377; *Grayned*, 408 U.S. at 107 n.2; *Montgomery*, 136 S. Ct. at 724; *Baucum*, 80 F.3d at 540–41; *See Lindenbaum*, 2020 WL 6361915, at *7 ("It would be an odd result to say the least if the judiciary could accomplish by severance that which Congress could not accomplish by way of amendment."); *supra*, § II.A.

**C. Plaintiff Fails To Dispute, And Thus Concedes, Charter's Remaining Arguments.**

In addition to the several points and arguments discussed above, Plaintiff fails to address, and thus, concedes numerous other dispositive points that Charter made in its briefing. For example, Plaintiff concedes: (1) the Supreme Court does not decide questions not raised or litigated in the lower courts, particularly ones of great constitutional importance; (2) the question at issue in this case was not raised or litigated in the lower courts, nor was it briefed or argued in *AAPC*, and thus the Court could not have possibly resolved it; (3) Plaintiff's position is directly at odds with the position that the same three Justices took in *Seila Law* the week before they joined the plurality opinion in *AAPC*; (4) severance is necessarily a prospective remedy; and (5) absurd results would flow from the adoption of Plaintiff's flawed reasoning. *See Creasy*, 2020 WL

8

5761117, at *3 (principle of *void ab initio* "colors many doctrines, but as relevant here, it suggests that—in the vast run of scenarios—a speaker should not be punished for engaging in speech that was restricted in an unconstitutional fashion").

## III. CONCLUSION

Plaintiff's Sur-Reply fails to meaningfully distinguish *Creasy* in any way. Instead, Plaintiff misstates, misquotes, and otherwise mischaracterizes *AAPC* in multiple, demonstrably false ways. Additionally, Plaintiff cites a Fourth Circuit opinion that did not even involve content discrimination and is therefore completely inapposite to the question presented. Finally, Plaintiff still fails to address numerous arguments raised in Charter's Motion and Reply. For these reasons, and as explained in Charter's Motion and Reply, the Court should dismiss Plaintiff's claims for lack of subject matter jurisdiction, as the only two courts to have addressed this issue have done.

DATED:   November 2, 2020.

**KABAT CHAPMAN & OZMER LLP**

*/s/ Ryan D. Watstein*
Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300
(404) 400-7333 (fax)

**ROBINSON & COLE LLP**

Brian E. Moran
Connecticut Bar No. ct05058
bmoran@rc.com
Trevor L. Bradley
Connecticut Bar No. ct29993
tbradley@rc.com
1055 Washington Boulevard
Stamford, CT 06901
203-462-7500
203-462-7599 (fax)

*Counsel for Defendant Charter Communications, Inc.*

9

## CERTIFICATE OF SERVICE

I certify that today I electronically filed this **DEFENDANT CHARTER COMMUNICATIONS, INC.'S RESPONSE TO PLAINTIFF'S SUR-REPLY AND IN SUPPORT OF CHARTER'S MOTION FOR JUDGMENT ON THE PLEADINGS** with the Clerk of Court using the CM/ECF filing system, which will automatically send an electronic copy to all counsel of record.

Dated: November 2, 2020.

                                                     */s/ Ryan D. Watstein*
                                                     Ryan D. Watstein (*pro hac vice*)