UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL REASE, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>    v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>                    Defendant. | Case No. 3:20-cv-00150-RNC<br><br>Hon. Robert N. Chatigny |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S NOTICES OF SUPPLEMENTAL AUTHORITY (*Shen v. Tricolor California Auto Group, LLC* and *Trujillo v. Free Energy Savings, Company, LLC*)**

Defendant Charter Communications, Inc. ("Charter") hereby responds to Plaintiff's notices of supplemental authority in opposition to Charter's motion for judgment on the pleadings (Docs. 73 and 74). Plaintiff's notices direct the Court to orders denying motions to dismiss in *Shen v. Tricolor Auto Group LLC*, No. 2:20-cv-07419, Doc. 35 (C.D. Cal. Dec. 17, 2020) and *Trujillo v. Free Energy Savings Company, LLC*, No. 5:19-cv-02072, Doc. 76 (C.D. Cal. Dec. 21, 2020). In both cases, the Central District of California denied the defendants' motions to dismiss for lack of subject matter jurisdiction for pre-*AAPC* violations of the TCPA's automated-call ban (47 U.S.C. § 227(b)(1)(A)(iii)), which sought the same relief as Charter's pending motion in this case. As set forth below, the reasoning of both cases is flawed, creates more constitutional problems than it purports to solve, and should not be followed. Rather, this Court should follow the published, constitutionally sound opinions of three separate courts in *Creasy v. Charter Comms., Inc.*, --- F.3d ----, 2020 WL 5761117 (E.D. La. Sept. 28, 2020), *Lindenbaum v. Realgy, LLC*, --- F.3d ----, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020), and *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, JSM-PR, --- F.3d ----, 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020).

1

**I.** *Shen v. Tricolor Auto Group, LLC*.

In *Shen*, the two bases for the court's decision are demonstrably erroneous. The court first reasoned that *AAPC* only invalidated the government debt exception, but not the discriminatory speech restriction. This holding is fundamentally at odds with the text of *AAPC*, the text and logic of the First Amendment, and binding Supreme Court precedent. The court then described its conclusion as consistent with what several other courts have ruled on the same subject, but in reality, none of those decisions addressed the question raised in that case or this one.

*First*, in holding that *AAPC* invalidated only the government debt exception but not the speech restriction, *Shen* disregarded the binding holding of *AAPC*, that the **speech restriction** was constitutionally infirm **because of** the government debt exception. In articulating this holding, the Court specifically held "the **robocall restriction** with the government-debt exception is content-based" and did not survive strict scrutiny.[1] *See* 140 S. Ct. at 2347 (emphasis added); *Creasy*, 2020 WL 5761117, at *4 ("'Six Members of the Court . . . conclude that Congress has impermissibly favored debt collection speech over political and other speech, in violation of the First Amendment' . . . . That much is binding on all other courts.") (quoting *AAPC*, 140 S. Ct. at 2343). In addition, the holding in *Shen* that only the exception is unconstitutional defies logic and the text of the First Amendment, which bars laws "**abridging** the freedom of speech" (the restriction), not laws **permitting** speech (the exception). *See* U.S. Const. Amend. I; *see also Creasy*, 2020 WL 5761117 at *5 ("the exception and the rule are in fact inextricably intertwined for the purposes of any reasonable analysis"). Thus, the holding of *AAPC*, the text of the First Amendment, and prior

---

[1] *Shen* correctly pointed out that footnote 12 in the plurality opinion discussing severance is non-binding dicta. However, the court failed to identify the holding of the majority of justices in *AAPC*: The discriminatory speech restriction was unconstitutional. 140 S. Ct. at 2343 ("Six Members of the Court today conclude that Congress has impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment.") (Justices Kavanaugh, Roberts, Alito, Thomas, Gorsuch, and Sotomayor). *Shen* also correctly noted—and Charter does not dispute—that *AAPC* severed the debt exception and preserved the speech restriction *prospectively*. *Id*. at 2353. This has no impact on whether the restriction was enforceable when it contained the discriminatory exception. And it was not, under binding precedent.

binding Supreme Court precedent all compel the conclusion that the content discriminatory restriction could not be enforced during the time it was discriminatory, as Plaintiff seeks to do here, regardless of whether the infirmity was later prospectively cured through severance. *See Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972) (in vacating conviction, reasoning in binding majority opinion that content-based speech restriction could not be constitutionally applied to impose liability, even though the government subsequently deleted the exception that rendered the statute content-based); *see also Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017) (noting in binding majority opinion that a "defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity").

*Second*, *Shen*'s additional rationale for denying the motion—that it is consistent with the holdings of various other courts—is also mistaken.[2]  **None** of the cited decisions even address the relevant jurisdictional question raised in *Shen* or by Charter in this case: whether a court can enforce a speech restriction during the time it was unconstitutional.[3]  That Plaintiff in this case omitted from his briefing any citation of these decisions underscores their irrelevance. *See generally* Doc. 50; *cf. Burton v. Fundmerica, Inc.*, No. 8:19-CV-119, 2020 WL 4504303, at *1–2

---

[2]     *Shen* is not an example of judicial modesty, as it purports to be, because neither the defendant in *Shen* nor Charter here has ever advocated for a "take down" of the entire TCPA, as the court there seems to have erroneously believed.  Charter has merely pointed out that one sub-sub-sub section of the statute—the automated call ban—was unconstitutional (and thus unenforceable) from 2015 through July 6, 2020, during the time *that provision* discriminated on the basis of content in violation of the First Amendment.

[3]     The one arguable exception is *Abramson*, which Charter addressed in its earlier response to a notice of supplemental authority.  *See* Doc. 72.  As Charter explained, *Abramson* contains no independent reasoning of its own and instead relies on the same inapposite cases *Shen* relied on—which makes sense because *Shen* erroneously relied on *Abramson*.  Again, this circular reliance devoid of reasoning does not address the salient question: whether federal courts lack subject matter jurisdiction to enforce a speech restriction at the time it was unconstitutional.  *See* Doc. 72 at 1–2.  In fact, several of those cases did not even involve adversarial briefing at all.  The conclusion drawn by *Abramson* is thus not supported by the cases whose reasoning it "adopt[ed]," and it was error for *Shen* to rely upon *Abramson*.  No. 8:19-cv-02524, Dkt. 60, at 4 (M.D. Fla. Dec. 11, 2020).

(D. Neb. Aug. 5, 2020) (addressing unopposed motion for default judgment under TCPA); *Buchanan v. Sullivan*, No. 8:20-CV-301, 2020 WL 6381563, at *3 (D. Neb. Oct. 30, 2020) (denying motion to dismiss where defendant asserted lack of subject matter jurisdiction but "advance[d] no argument to support this claim"); *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1157 (9th Cir. 2019) (holding that government debt exception is severable without addressing jurisdictional question of enforcement of unconstitutional statute during time it was unconstitutional).[4] As Charter has explained, these cases are irrelevant, under binding precedent, because they do not address the question raised here. *See Phelps v. Wyeth, Inc.*, 938 F. Supp. 2d 1055, 1062 (D. Or. 2013) ("'[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents'") (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)).

## II.    *Trujillo v. Free Energy Savings Company, LLC.*

*Trujillo* suffers from the same above-described defects as *Shen*. In particular, *Trujillo*: (1) assumes (incorrectly) that *AAPC* held *only* "the government-debt exception introduced in the 2015 amendment violated the First Amendment," but not the underlying speech restriction; and (2) it purports to draw support from decisions that do not address the relevant jurisdictional question raised in *Trujillo* or by Charter in this case: whether a court can enforce a speech restriction during the time it was unconstitutional. *See, e.g.*, *Trujillo*, No. 5:19-cv-02072, Doc. 76, at *3-4; *Komaiko v. Baker Techs., Inc.*, No. 19-cv-03795, 2020 WL 5104041, at *2 (N.D. Cal. Aug. 11, 2020) (addressing motion to stay TCPA case with no discussion of subject matter jurisdiction); *Canady*

---

[4]    In *Gallion v. United States*, 772 F. App'x 604, 606 (Mem) (2019), decided after *Facebook*, the Ninth Circuit acknowledged it had not previously addressed the "retroactivity concerns" raised by severance of the speech restriction when it expressly declined to take up that question, reasoning that it had allegedly not been properly raised on appeal in that case. It then remanded that case back to the district court, where the case remains stayed pending decisions in both *Facebook, Inc. v. Noah Duguid*, No. 19-511 (S. Ct. July 9, 2020) and *Smith v. LoanMe, Inc.*, 43 Cal.App.5th 844 (Call. April 1, 2020). *See Gallion v. Charter Communications, Inc.*, No. 5:17-cv-01361-CAS-KKx, Order re Stipulation Regarding Extension of Stay (Doc. 70) (C.D. Cal. Oct. 21, 2020).

*v. Bridgecrest Acceptance Corp.*, No. CV-19-04738, 2020 WL 5249263, at *1 (D. Ariz. Sept. 3, 2020) (same).

*Trujillo* goes further than *Shen*, however, in carrying its erroneous reasoning to the illogical and constitutionally impossible conclusion that the government debt exception was void *ab initio*, meaning that it was a "'nullity' and 'void' when enacted, and for that reason ha[d] no effect on the original statute." *Trujillo*, No. 5:19-cv-02072, Doc. 76, at *6 (citing 1929 decision in *Frost v. Corp. of Comm'n of Okla.*, 278 U.S. 515, 526–27). One of the many problems with this logic is that it would necessarily mean that government debt collectors—which were shielded from liability by the 2015 amendment—can now be sued for violations of the automated-call ban during that period, ***even though there was a law passed by Congress saying they could not be***. But this premise—that, because the exception was void from the outset, even government debt collectors may be sued for calls between 2015 and 2020—cannot hold. The absurdity of that conclusion— which would result in numerous, more severe constitutional violations—confirms that the only possible result is what the published decisions of three separate courts in *Creasy*, *Lindenbaum*, and *Hussain* held: that courts cannot enforce the automated-call ban during the time it was unconstitutional (so, prior to *AAPC*, when it contained a discriminatory speech restriction). There is simply no version of the Constitution that would permit someone to be sued for conduct that was explicitly permitted by Congress at the time it occurred. And since binding Supreme Court authority establishes that someone cannot be penalized under a discriminatory speech restriction, the only possible result is that reached by *Creasy*, *Lindenbaum*, and *Hussain*.

Indeed, the Ex Post Facto Clause and Due Process Clause forbid even Congress—much less the courts—from retroactively permitting government debt collectors to be sued for conduct that Congress declared legal at the time; here, government debt collection calls during 2015 to 2020. *See Marks v. United States*, 430 U.S. 188, 191–92 (1977) ("[T]he principle on which the [Ex Post Facto] Clause is based [—] the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties [—] is fundamental to our concept of constitutional liberty … As such, that right is protected against ***judicial action*** by the Due Process

5

Clause of the Fifth Amendment." (emphasis added)); *Weaver v. Graham*, 450 U.S. 24, 29 (1981) (Ex Post Facto Clause not only ensures that individuals have "fair warning" about the effect of criminal statutes, but also "restricts governmental power by restraining arbitrary and potentially vindictive legislation"); *see also Glazner v. Glazner*, 347 F.3d 1212, 1225 (11th Cir. 2003) (Edmondson, J., dissenting) ("As such, the Due Process Clause of the Fifth Amendment prohibits the judiciary from punishing parties through ***judicial construction*** of a statute unless fair notice was given that the conduct was prohibited before the conduct took place." (emphasis added)).

Even the *Trujillo* court acknowledged this dilemma, but it failed to fully analyze it. *See* No. 5:19-cv-02072, Doc. 76, at *7 ("The Court acknowledges that the *Frost* framework possibly could present due process implications . . . ."). Unwilling to allow an incomplete analysis to impinge the Constitution, Chief Judge Gaughan in *Lindenbaum* reached the opposite conclusion from *Trujillo*, expressly recognizing it would be unconstitutional to punish government debt collectors by holding that that the 2015 amendment was void *ab initio*, noting "[i]t would be an odd result to say the least if the judiciary could accomplish by severance [e.g., retroactively creating liability for government debt collectors] that which Congress could not accomplish by way of amendment." *Lindenbaum*, 2020 WL 6361915, at *7.

In addition to reaching the erroneous void *ab initio* conclusion eschewed in *Lindenbaum*, *Trujillo* improperly relied on *Frost*, 278 U.S. at 526–27, which is irrelevant and distinguishable for numerous other reasons. *First*, the *AAPC* majority must have viewed *Frost* (which held the amendment to a law at issue in that case was a "nullity" from the outset that had no impact on the underlying law as a whole) as inapplicable. *Id.* at 526–27. Rather than follow *Frost* and expressly find the government *exception* was a mere nullity from the outset, the *AAPC* majority explicitly and narrowly held that a specific and long-standing *speech restriction* (47 U.S.C. § 227(b)(1)(A)(iii)) was unconstitutional. *See AAPC*, 140 S. Ct. at 2346 ("The initial First Amendment question is whether the robocall ***restriction***, with the government-debt exception, is

6

content-based. The answer is yes.") (emphasis added).[5] *Second*, and relatedly, *Frost* was not a First Amendment discriminatory treatment case, which involves unique concerns demonstrated by the several hypotheticals discussed in Charter's moving papers and unaddressed by Plaintiff. *See* Doc. 47, pp. 9–10. *Third*, the *plurality's* non-binding opinion in *AAPC* cites *Frost* only for the point that it is constitutionally permissible to sever the government exception without striking down the entire statute, not for the point espoused by the *Trujillo* court: that the speech restriction would still be enforceable prior to the Supreme Court's cure of the statute through severance. *See* 140 S. Ct. at 2353 ("The Court's precedents further support severing the 2015 government-debt exception."). In fact, the Supreme Court could not have cited it for that purpose because that would overrule prior Supreme Court precedent. *See, e.g.*, *Sessions*, 137 S. Ct. at 1699 n.24 (2017) (holding that a "defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity").

In sum, it is constitutionally impossible to solve the equal treatment problem in the robocall restriction during 2015 to 2020 by retroactively punishing government debt collectors for conduct explicitly permitted by Congress during that period, and *Frost* does not alter that conclusion. Thus, *Trujillo*'s rationale (that the exception, based on *Frost*, was void from the outset) is logically incoherent and would lead to absurd consequences. Namely, government debt collectors would be on the hook for trillions in damages for calls that were *expressly exempt* from the statute via the government debt exception. And if the government debt collectors are exempted—as they must be based on the Ex Post Facto Clause and Due Process—the Court cannot enforce the automated-call ban against non-government debt collectors without engaging in the same discrimination that caused the Supreme Court to declare that provision unconstitutional. *See AAPC*, 140 S. Ct. at 2366 (Gorsuch, J. concurring in part and dissenting in part) (in rejecting plurality's non-binding "suggestion," noting that "a holding that shields only government debt-collection callers from past

---

[5] Indeed, if the majority in *AAPC* had chosen to hold the exception was a void nullity from the outset, it would not have needed to employ the remedy of judicial severance to cure the robocall restriction's constitutional infirmity on a prospective basis.

liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we way we are seeking to eliminate.").

Consequently, the Court should decline to follow *Trujillo*[6] and align with the constitutionally sound opinions issued in *Creasy*, *Lindenbaum,* and *Hussain*, which hold, consistent with *AAPC*, the First Amendment, logic, and binding precedent, that the speech restriction was unenforceable at the time it contained the unconstitutional, discriminatory exception—for all parties.

Dated: December 30, 2020.

**KABAT CHAPMAN & OZMER LLP**

*/s/ Ryan D. Watstein*
Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300
(404) 400-7333 (fax)

Paul A. Grammatico (*pro hac vice*)
pgrammatico@kcozlaw.com
333 S. Grand Avenue, Suite 2225
Los Angeles, California 90071
(213) 493-3988
(404) 400-7333 (fax)

**ROBINSON & COLE LLP**

Brian E. Moran
Connecticut Bar No. ct05058
bmoran@rc.com
Trevor L. Bradley
Connecticut Bar No. ct29993

---

[6] In addition to the other reasons why the Court should decline to follow *Shen and Trujillo*, these cases appear to rely on an expectation of how the Ninth Circuit *might* rule on this issue. *See, e.g.*, *Trujillo*, No. 5:19-cv-02072, Doc. 76, at *7 (citing *Duguid v. Facebook, Inc.*, 926 F.3d at 1150). While these courts are wrong about whether the Ninth Circuit has addressed this issue (*see, supra,* footnote 4), that expectation should obviously not influence the Court's decision here, given the Second Circuit has not even arguably touched on it.

tbradley@rc.com
1055 Washington Boulevard
Stamford, CT  06901
203-462-7500
203-462-7599 (fax)

*Counsel for Defendant Charter Communications, Inc.*

**CERTIFICATE OF SERVICE**

I certify that today I filed ***DEFENDANT'S RESPONSE TO PLAINTIFF'S NOTICES OF SUPPLEMENTAL AUTHORITY (Shen v. Tricolor California Auto Group, LLC and Trujillo v. Free Energy Savings, Company, LLC)*** using the Court's CM/ECF system, which will automatically send a notice of electronic filing to all counsel of record.

DATED: December 30, 2020          */s/ Ryan D. Watstein*
                                  Ryan D. Watstein (*pro hac vice*)