UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL REASE, individually and on behalf of all others similarly situated,<br><br>                           Plaintiff,<br>    v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>                           Defendant. | Case No. 3:20-cv-00150-RNC<br><br>Hon. Robert N. Chatigny |

## **PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiff Daniel Rease respectfully submits this Notice of Supplemental Authority regarding the pending Motion for Judgment on the Pleadings. *See* ECF Nos. 47, 50, 57, 62, 66. Plaintiff brings to the Court's attention the following order entered on January 12, 2021 by Judge William B. Shubb in *Stoutt v. Travis Credit Union*, Case No. 2:20-cv-01280-WBS-AC, ECF No. 20 (E.D. Cal. Jan. 12, 2021). The *Stoutt* decision is attached hereto as Exhibit A. Specifically, the decision is relevant to the parties' respective arguments concerning the issue of subject matter jurisdiction in light of the Supreme Court's ruling in *Barr v. American Ass'n of Pol. Consultants, Inc.* ("*AAPC*"), 140 S. Ct. 2335 (2020).

Dated: January 13, 2021
                                          Respectfully submitted,

                                          By:    */s/ Philip L. Fraietta*
                                                    Philip L. Fraietta

                                          **BURSOR & FISHER, P.A**.
                                          Joseph I. Marchese*
                                          Philip L. Fraietta (*pro hac vice*)
                                          888 Seventh Avenue, Third Floor
                                          New York, New York 10019
                                          Telephone: (646) 837-7150
                                          Facsimile: (212) 989-9163
                                          Email:  jmarchese@bursor.com
                                            pfraietta@bursor.com

**HEDIN HALL LLP**
Frank S. Hedin*
David W. Hall*
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058
Email: fhedin@hedinhall.com
dhall@hedinhall.com

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 S. Main Street, 3rd Floor
West Hartford, Connecticut 06110
Telephone: (860) 955-9455
Facsimile: (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

*To Be Admitted *Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

  I, Philip L. Fraietta, an attorney, hereby certify that on January 13, 2021, I served the above and foregoing Plaintiff's Notice of Supplemental Authority on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF system.

                 */s/ Philip L. Fraietta*
                 Philip L. Fraietta

**EXHIBIT A**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SHAWNTEL STOUTT,<br><br>           Plaintiff,<br><br>  v.<br><br>TRAVIS CREDIT UNION,<br><br>           Defendant. | No. 2:20-cv-01280 WBS AC<br><br>ORDER RE DEFENDANT'S MOTION<br>FOR JUDGMENT ON THE PLEADINGS |

----oo0oo----

In this putative class action, plaintiff Shawntel Stoutt claims that defendant Travis Credit Union violated § 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act of 1991 ("TCPA"), which prohibits the use of an automatic telephone dialing system ("ATDS") to call cell phones. See 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff alleges that defendant used an ATDS to call her cell phone number at least 18 times between January 24, 2019, and February 26, 2020. (See Compl. ¶¶ 20-32 (Docket No. 1).) Defendant has filed a motion for judgment on the pleadings, arguing that the court lacks subject matter

1  jurisdiction over plaintiff's claim following the Supreme Court's
2  ruling in Barr v. American Ass'n of Political Consultants, Inc.,
3  140 S. Ct. 2335 (2020) (hereinafter AAPC).
4  I.   Legal Standard
5       A.   Judgment on the Pleadings
6            After the pleadings are closed, any party may move for
7  judgment on the pleadings pursuant to Federal Rule of Civil
8  Procedure 12(c).  A motion brought under Rule 12(c) is
9  "functionally identical" to one brought pursuant to Rule 12(b),
10 and "the same standard of review applicable to a Rule 12(b)
11 motion applies to its Rule 12(c) analog." Dworkin v. Hustler
12 Magazine Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).  "[I]f a
13 party raises an issue as to the court's subject matter
14 jurisdiction on a motion for a judgment on the pleadings, the
15 district judge will treat the motion as if it had been brought
16 under Rule 12(b)(1)." San Luis Unit Food Producers v. United
17 States, 772 F. Supp. 2d 1210, 1218 (E.D. Cal. 2011) (Wanger, J.)
18 (citing 5C Charles Alan Wright & Arthur R. Miller, Federal
19 Practice and Procedure § 1367 (3d ed. 2004); Rutenschroer v.
20 Starr Seigle Commc'ns, Inc., 484 F. Supp. 2d 1144, 1147–48 (D.
21 Haw. 2006)), aff'd, 709 F.3d 798 (9th Cir. 2013).
22      B.   Subject Matter Jurisdiction
23           Federal Rule of Civil Procedure 12(b)(1) provides for
24 dismissal of an action for "lack of jurisdiction over the subject
25 matter."  Federal courts are "courts of limited jurisdiction" and
26 "possess only that power authorized by Constitution and statute."
27 Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377
28 (1994).  "The Constitution limits Article III federal courts'

jurisdiction to deciding 'cases' and 'controversies.'" Oklevueha Native Am. Church of Haw., Inc. v. Holder, 676 F.3d 829, 835 (9th Cir. 2012) (quoting U.S. Const. art. III, § 2). The court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary." Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). The burden of establishing subject matter jurisdiction lies with the party asserting jurisdiction, and courts presume a lack of jurisdiction until the party proves otherwise. See Kokkonen, 511 U.S. at 377; Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010).

II. Discussion

Defendant argues that the court lacks subject matter jurisdiction over plaintiff's claim because it is premised on a statute that was unconstitutional and ineffective at the time of defendant's alleged phone calls. (See Def.'s Mot. for Judgment on the Pleadings ("Def.'s Mot.") at 5-10 (Docket No. 12).) Plaintiff responds that the TCPA was effective, at least as to defendant's activities, during the relevant period. (See Pl.'s Opp'n at 9-11 (Docket No. 17).)

Congress enacted the TCPA in 1991. AAPC, 140 S. Ct. at 2344. "In plain English, the TCPA prohibit[s] almost all robocalls to cell phones." Id. But in November 2015, Congress amended the TCPA to allow robocalls made to collect government debt (the "government debt exception"):

> **(b) Restrictions on use of automated telephone equipment**

3

>    **(1) Prohibitions**
>
>    It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
>
>    > (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--
>
>    \* \* \*
>
>    > > (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, <u>unless such call is made solely to collect a debt owed to or guaranteed by the United States</u>;

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

In AAPC, the Supreme Court addressed the constitutionality of the TCPA. See 140 S. Ct. at 2335. There, a group of political and nonprofit organizations sought a declaratory judgment that the government-debt exception unconstitutionally favored debt-collection speech over political and other speech in violation of the First Amendment. See id. at 2343. The case made its way to the Supreme Court, and in a fractured decision,[1] six Justices agreed that, in adding the

---

[1] Justice Kavanaugh announced the judgment of the Court in a plurality opinion, which Chief Justice Roberts and Justice Alito joined in whole, and which Justice Thomas joined in part. See AAPC, 140 S. Ct. at 2343-56. Justice Sotomayor concurred in the judgment. See id. at 2356-57. Justice Breyer, joined by Justices Ginsburg and Kagan, concurred in the judgment with respect to severability, but dissented as to the plurality's application of strict scrutiny to § 227(b)(1)(A)(iii)'s content-based distinction. See id. at 2357-63. Lastly, Justice Gorsuch issued an opinion in which he concurred in the judgment in part

government-debt exception to the statute in 2015, Congress had impermissibly favored debt-collection speech over political and other speech in violation of the First Amendment. See id. at 2343. Seven Justices agreed that the proper remedy for this constitutional infirmity was to invalidate and sever the government debt exception, leaving the rest of the TCPA intact. See id.

The issue here is whether the Supreme Court's decision in AAPC forecloses federal courts from asserting subject matter jurisdiction over alleged violations of the TCPA committed while the government-debt exception was affixed to the face of the statute--that is, between November 2015 and July 6, 2020. Defendant urges this court to interpret AAPC as an adjudication that the entirety of § 227(b)(1)(A)(iii) was unconstitutional and void until the Supreme Court severed the offending government-debt exception to preserve the rest of the law. See Creasy v. Charter Commc'ns, Inc., Civil Action No. 20-1199, 2020 WL 5761117, at *6 (E.D. La. Sep. 28, 2020); ("the entirety of the pre-severance version of § 227(b)(1)(A)(iii) is void because it itself was repugnant to the Constitution before the Supreme Court restored it to constitutional health in AAPC" (quoting Seila Law LLC v. CFPB, 140 S. Ct. 2183, 2208, (2020)).

Because federal courts lack jurisdiction over claims based upon unconstitutional statutes, see Ex Parte Siebold, 100 U.S. 371, 377 (1879) ("if the laws are unconstitutional and void, the Circuit Court acquired no jurisdiction of the causes"),

---

and dissented on yet other grounds, and which Justice Thomas joined in part. See id. at 2363–67.

5

1 defendant argues that this court lacks subject matter
2 jurisdiction even over claims based on alleged violations of the
3 TCPAs' general prohibition on robocalls that were committed while
4 the government-debt exception was appended to the law. (See
5 Def.'s Mot. at 3-4.)
6       Three out-of-circuit district courts have effectively
7 adopted defendant's argument, holding that AAPC divests federal
8 courts of jurisdiction over TCPA claims concerning robocalls made
9 between November 2015 and the date of AAPC's issuance, even when
10 those robocalls were not made for the purposes of collecting
11 government debt. See Creasy, 2020 WL 5761117; Lindenbaum v.
12 Realgy, LLC, No. 1:19 CV 2862, 2020 WL 6361915 (N.D. Ohio Oct.
13 29, 2020); Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.,
14 No. 5:20-cv-38-Oc-30PRL, 2020 WL 7346536 (M.D. Fla. Dec. 11,
15 2020).
16       On the other side of the ledger, the two district
17 courts in this circuit that have addressed the question have
18 effectively held the opposite--that the TCPA remains enforceable,
19 at least against non-government debt collectors, as to calls made
20 between November 2015 and July 6, 2020. See Shen v. Tricolor
21 Cal. Auto Grp., LLC, No. CV 20-7419 PA (AGRx), 2020 WL 7705888
22 (C.D. Cal. Dec. 17, 2020); Trujillo v. Free Energy Sav. Co., LLC,
23 No. 5:19-cv-0272-MCS-SP, 2020 U.S. Dist. LEXIS 239730 (C.D. Cal.
24 Dec. 21, 2020).
25       Several other district courts in this circuit have
26 assumed that the constitutionally inoffensive portion of the
27 statute remains viable as to these calls. See, e.g., Canady v.
28 Bridgecrest Acceptance Corp., No. CV-19-04738-PHX-DWL, 2020 WL

5249263, at *5 (D. Ariz. Sep. 3, 2020) ("Although [AAPC] struck down a part of the TCPA not at issue in this case, the bulk of the TCPA lives on."); Komaiko v. Baker Techs., Inc., No. 19-cv-03795-DMR, 2020 WL 5104041, at *5 (N.D. Cal. Aug. 11, 2020) ("[T]he [Supreme] Court severed the government-debt exception from the remainder of the statute, leaving the call restriction otherwise intact.  Because the government-debt exception is not at issue in this case, the decision in [AAPC] does not impact Plaintiffs' claims.").  One out-of-circuit district court, citing other courts' assumption that the statute remains enforceable, concluded that it had jurisdiction over such claims. Abramson v. Fed. Ins. Co., No. 8:10-cv-2523-T-60AAS, 2020 WL 7318953, at *3-4 (M.D. Fla. Dec. 11, 2020) (collecting cases).

Central to the parties' arguments is a footnote in Justice Kavanaugh's plurality opinion:

> As the Government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate.  On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.

AAPC, 140 S. Ct. at 2355 n.12 (citation omitted).

Because this footnote was only joined by Chief Justice Roberts and Justice Alito, it is non-binding dicta.  See id. at 2342.  However, this court agrees with the other district courts in this circuit that have addressed this issue that Justice Kavanaugh's statement is ultimately persuasive--in other words,

7

that AAPC "does not negate the liability of parties who made robocalls covered by the robocall restriction." See Shen, 2020 WL 7705888, at *4 ("Because Justices Sotomayor, Breyer, Ginsburg, and Kagan joined in the judgment on severability, they did not expressly join the portion of Justice Kavanaugh's opinion containing footnote 12. As such, Justice Kavanaugh's resolution of the issue may not be binding on this Court, but it is persuasive."); Trujillo, 2020 U.S. Dist. LEXIS 239730, at *6.

This conclusion follows from the fact that the Supreme Court specifically declined to strike down the TCPA's entire robocall ban, as requested by the AAPC plaintiffs. AAPC, 140 S. Ct. at 2343 ("the entire 1991 robocall restriction should not be invalidated" (emphasis added)). Instead, seven Justices concluded that "the 2015 government-debt exception must be invalidated and severed from the remainder of the statute." See id. at 2343. By severing and invalidating only the government-debt exception, "rather than razing whole statutes or Acts of Congress," the Court ensured that the TCPA's original robocall ban would remain in effect, including as to calls placed between 2015 and 2020. See id.

Contrary to defendant's assertions, judicial severance of a specific statutory provision does not act as a declaration that the entire statute was void and unenforceable up until the date of the court's opinion. One of the central premises underlying the Supreme Court's decision to sever the government-debt exception was that "the remainder of the law is capable of functioning independently and thus would be fully operative as law." AAPC, 140 S. Ct. at 2353.

8

1      Holding the entire robocall ban to be ineffective as to
2 calls made between 2015 and 2020 would improperly construe AAPC
3 as having invalidated the entirety of § 227(b)(1)(A)(iii), rather
4 than just the government-debt exception, and thus would undermine
5 the Court's central purpose in severing the statute.  See Shen,
6 2020 WL 7705888, at *4.  But see Creasy, 2020 WL 5761117, at *6
7 ("the entirety of the pre-severance version of
8 § 227(b)(1)(A)(iii) is void because it itself was repugnant to
9 the Constitution before the Supreme Court restored it to
10 constitutional health in AAPC").  Supreme Court precedent
11 dictates that, in cases like this, "where Congress added an
12 unconstitutional amendment to a prior law," the court must treat
13 "the original, pre-amendment statute as the 'valid expression of
14 legislative intent.'"  AAPC, 140 S. Ct. at 2353 (quoting Frost v.
15 Corp. Comm'n of Okla., 278 U.S. 515, 526-27 (1929)); see also
16 Eberle v. Michigan, 232 U.S. 700, 704-05 (1914) (holding that
17 amendments to general ban on liquor sales that exempted
18 manufacturers of homemade wine and cider were "mere nullities"
19 which could not affect the validity of the law as a whole through
20 their subsequent adoption).

21      Defendant cites to Grayned v. City of Rockford, 408
22 U.S. 104 (1972), to argue that "courts must consider the facial
23 constitutionality of the ordinance in effect when [the defendant]
24 was arrested and convicted." Grayned, 408 U.S. at 107 n.3.  In
25 Grayned, the Supreme Court reversed a conviction based on an
26 anti-picketing ordinance that the Court held violated the Equal
27 Protection clause of the Fourteenth Amendment.  See id., 408 U.S.
28 at 107 (citing Police Dep't of Chicago v. Mosley, 408 U.S. 92

1   (1972)).  Though the state legislature had amended the ordinance
2   after the defendant's conviction, the Court held that the
3   conviction must be vacated because the statute in place at the
4   time had made an impermissible distinction between labor
5   picketing and other types of peaceful picketing.  See id.
6         Defendant's reliance on Grayned is misplaced.  Because
7   the Court did not have occasion to sever the offending portion
8   from the remainder of the statute (as the state legislature had
9   already amended it), Grayned says nothing about how courts should
10  treat alleged violations of law that occurred during a period of
11  unconstitutionality resulting from addition of an
12  unconstitutional statutory exception that has since been severed
13  and invalidated.  See AAPC, 140 S. Ct. at 2353; United States v.
14  Jackson, 390 U.S. 570, 586 (1968) (holding that defendant could
15  still be prosecuted under 1932 Kidnapping Act, despite the fact
16  that a 1934 amendment adding the death penalty as an available
17  punishment in certain instances rendered the Act unconstitutional
18  for a period of time in which the defendant's violations
19  occurred).  In fact, defendant does not cite to a single case in
20  which a court has determined a statute to be ineffective, in
21  whole or in part, where the statute suffered a finite period of
22  constitutional infirmity bookended by periods of validity.[2]

---

[2]     Defendant further argues that enforcing
§ 227(b)(1)(A)(iii) as to calls made between 2015 and 2020 would
create ex post facto liability and due process issues for
government-debt collectors.  (Def.'s Reply at 8-9 (Docket No.
18).)  While the court acknowledges the potential due process
implications of enforcing the robocall ban against government-
debt collectors for calls made while the government-debt
exception was on the books, see Lindenbaum, 2020 WL 6361915, at
*7 (acknowledging due process concerns), the court need not--and

1          In short, defendant's view of severability has no
2    foundation in law.  Because the Supreme Court has invalidated and
3    severed the government-debt exception from the remainder of
4    § 227(b)(1)(A)(iii), the exception did not affect the remainder
5    of the statute and the statute remains enforceable, at least
6    against non-government debt collectors, as to calls made between
7    November 2015 and July 6, 2020.  See Frost, 278 U.S. at 526-27;
8    Eberle, 232 U.S. at 704-05.  The court may therefore adjudicate
9    plaintiff's TCPA claim against defendant concerning the calls
10   alleged in plaintiff's complaint.
11         IT IS THEREFORE ORDERED that defendant's Motion for
12   Judgment on the Pleadings (Docket No. 12) be, and the same hereby
13   is, DENIED.
14   Dated:  January 12, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

does not--decide in this Order whether government-debt collectors are subject to liability for calls made between 2015 and 2020. Defendant is not a government-debt collector.  The due process question should properly be resolved in a different case.