# Exhibit A



RYAN D. WATSTEIN
DIRECT DIAL: 404-400-7307
E-MAIL: rwatstein@kcozlaw.com

August 4, 2021

**VIA ELECTRONIC FILING**

Deborah S. Hunt
United States Court of Appeals for the Sixth Circuit
Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, Ohio 45202

    Re:    Case No. 20-4252, *Lindenbaum v. Realgy, LLC, et al.*
               Appellee's Consolidated Response to Appellant's Citation of Eleven Supplemental Authorities[1]

Dear Ms. Hunt,

      The wrongly decided cases Appellant cited (at DE 75) failed to apply—and often failed to even *cite*—controlling First Amendment content discrimination and severability precedent. Proper application of binding Supreme Court and Sixth Circuit authority mandates the following conclusions: (a) *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) ("*AAPC*") held that the "robocall restriction, with the government-debt exception" is unconstitutional because it violates the First Amendment to "favor[] debt-collection speech over … political speech" (*id.* at 2347, 2356); (b) *AAPC* only saved the restriction prospectively, meaning it was unenforceable—against anyone—at the time of Realgy's alleged speech (*see id*. at 2356); and (c) even if

---

[1]     Realgy is entitled to respond to each of Appellant's 11 authorities cited in her notice of July 26, 2021, under Federal Rule of Appellate Procedure 28(j). Rather than filing 11 350-word responses, Realgy submits this single consolidated response addressing the critical errors in the district court decisions.

August 4, 2021
Page 2

severance applied retroactively, that could not change the historical fact that Realgy is being treated differently than a government debt collector for engaging in constitutionally protected speech, which the Supreme Court said "violat[es] … the First Amendment" (*id*. at 2343). Additional detail on these points, which compel the conclusion the district court must be affirmed, is below.

1. ***AAPC* held the speech restriction with the exception was unconstitutional.** The Court must look, of course, to the Supreme Court's *AAPC* decision itself—not the question it certified—to determine what *AAPC* held unconstitutional, as only the decision itself is binding authority. And the plurality and the concurrences are clear that "the *robocall restriction*, *with the government-debt exception*" is an unconstitutional "content-based" restriction *because of* the unconstitutional exception. *See, e.g.*, 140 S. Ct. at 2346 (pl. op.) (emphasis added), 2367 ("I agree that [the robocall restriction with the exception] violates the First Amendment[.]") (Gorsuch, J., joined by Thomas, J. concurring, who also joined the plurality as to Part II). Sixth Circuit decisions, including by members of this panel, likewise recognize that an exception rendering a speech restriction content-based renders the restriction (*i.e.*, the *abridgment* of speech) unconstitutional, not the exception itself (which permits speech). *See, e.g.*, *L.D. Management Co. v. Gray*, 988 F.3d 836, 839 (6th Cir. 2021) ("What matters … is whether a regulation's *restrictions* are content based.") (emphasis added); *Bible Believers v. Wayne County, Mich.*, 805 F.3d 228, 248 (6th Cir. 2015) ("content-based *restrictions* on constitutionally protected speech are anathema to the First Amendment") (emphasis added). The district court that decided *AAPC* also recently recognized this on remand, repeatedly stating that the restriction, with the exception, was unconstitutional. *AAPC, Inc. v. Wilkinson*, __ F. Supp. 3d ___, No. 5:16-CV-252, 2021 WL 521306, at *1, 4 (E.D.N.C. Feb. 11, 2021). This, of course, only makes logical sense: *AAPC* would not have had to employ severance to prospectively salvage the restriction in Part III if it did not hold in Part II that the restriction combined with the exception was unconstitutional. Nor could an exception be analyzed in a vacuum, without reference to the main rule.[2]

---

[2] If a speech-permitting exception standing alone could be unconstitutional, then every content-discrimination case—all of which uniformly hold that unconstitutional exceptions create impermissible distinctions that *render the speech restriction* unconstitutional—has been wrongly decided, including all such decisions of the Supreme Court and Sixth Circuit.

August 4, 2021
Page 3

2. **_AAPC_'s severance must be prospective for two reasons, so the restriction was unconstitutional at the time of the alleged speech here.** This is necessarily true because the judiciary cannot do more via severance than the legislature (i) intended, or (ii) could do via a severability clause. As to Congress's intent, the Supreme Court made clear in _Landgraf v. USI Film Products_, 511 U.S. 244, 270 (1994) that a statute cannot be interpreted to have retroactive effect absent "'clear, strong, and imperative' language" so stating. _Accord Rivers v. Roadway Exp., Inc._, 511 U.S. 298, 313 (1994). Here, there is nothing in the TCPA or its severability clause suggesting Congress intended to impose retroactive liability on government debt collectors in the event the severability clause was triggered, as retroactive severance necessarily would. Indeed, the plain language of the statute confirms the opposite—Congress intended to _exempt_ government collectors from liability. Thus, consistent with _Landgraf_ and _Rivers_, _AAPC_'s severance, which is based on an interpretation of Congress's intent as expressed in the TCPA and its severability clause, must be prospective. This is also true for a second, independent reason: Regardless of Congress's intent, _Sessions v. Morales-Santana_, 137 S. Ct. 1678, 1701 (2017) held that severance can _only_ apply "prospectively" when there is a constitutional barrier to retroactive enforcement, as there was in _Morales-Santana_ and as there is here: ruinous liability that violates government debt collectors' due process rights.[3] As such, the restriction was unconstitutional and unenforceable against anyone pre-_AAPC_, and Realgy's speech did not fall within a "valid remedial interpretation," as Appellant claims (Reply at 10). _See Cunningham v. Matrix Fin. Svcs._, __ F. 3d ___, No. 4:19-cv-896, 2021 WL 1226618, at *6 n.9 (E.D. Tex. Mar. 31, 2021) ("If the effects of judicial severability [of a **_conduct-permitting_** provision] were to apply retroactively, the constitutional order would be in complete disarray. Congress—the creator of law—would face the steep presumption against retroactivity … while Article III tribunals would face no such obstacle," even though Article III tribunals' job in carrying out severance is to effect Congress's intent as constrained by the constitution).

3. **In any event, retroactive severance could not permit content discrimination that violates the First Amendment.** In First Amendment cases

---

[3] Tellingly, the government advocated for "prospective" severance in _Morales-Santana_, despite now claiming that severance must always apply retroactively, in contravention of binding Supreme Court precedent. _Id_.

August 4, 2021
Page 4

like this one, the historical fact that a restriction was content discriminatory at the time of the speech renders the restriction unenforceable during that period, regardless of subsequent severance, regardless of whether the defendant intentionally violated the discriminatory law, and regardless of whether the speech could be prohibited via a content-neutral regulation. *See Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972) (in reversing conviction of defendant who intentionally violated statute after warning, disclaiming relevance of subsequent severance because a court "[n]ecessarily[] must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted"); *Morales-Santana*, 137 S. Ct. at 1699 n.24 (reaffirming *Grayned* and confirming that subsequent *judicial* severance is irrelevant because it does not matter if the "legislature *likely would have cured* the infirmity by excising the exemption"— which is the test for judicial severance) (emphasis added); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (reversing fine against individual who intentionally violated election law after warning because law discriminated on basis of content); *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) (reinstating dismissal of charges for cross-burning because statute was content-discriminatory, though conduct at issue was otherwise proscribable). No party disputes that if this case were against two defendants—Realgy for allegedly making two calls and a government debt collector for making two calls on the same day—the government collector would have been immediately dismissed with prejudice because the government debt exception protected it. In fact, the government concedes that a government debt collector still could not be sued today for pre-*AAPC* robocall speech (because of the government debt exception).[4] These facts are dispositive because they confirm that Appellant asks this Court to impose the exact same content-discriminatory treatment that *AAPC* held violated the First Amendment. *See* 140 S. Ct. at 2354 ("Congress violated that First Amendment equal-treatment

---

[4] Applying the Supreme Court's controlling First Amendment precedent to decline enforcing the speech restriction during the time it discriminated based on content is the *only* way to avoid violating anyone's constitutional rights: (a) government debt collectors' due process rights and their right to be free from *ex post facto* laws; and (b) everyone else's First Amendment rights. Under Realgy's correct analysis, unlike Appellant's, there is no tension between anyone's constitutional rights—they are all protected.

August 4, 2021
Page 5

principle in this case by favoring debt-collection robocalls and discriminating against political and other robocalls.").[5]

In sum, the district court cases cited by Appellant failed to consider or properly analyze the Supreme Court's controlling precedents. This caused those district courts to reach a result that would ultimately give Article III tribunals more legislative power than Congress, violating separation of powers principles and upending the constitutional order. For the independent reasons set forth above, the Court should affirm the district court's decision. If this Court does not affirm, it will be the first circuit court—ever—to impose liability under a speech restriction that was unconstitutionally content-discriminatory at the time of the speech, much less in a way that Six Justices already held "violat[es] … the First Amendment." *AAPC*, 140 S. Ct. at 2343.

Sincerely,

/s/ *Ryan D. Watstein*

Ryan D. Watstein

---

[5] Tellingly, neither Appellant nor the wrongly decided district court cases cite a *single* First Amendment content-discrimination case. Instead, Appellant relies entirely on inapposite equal protection cases where there was no constitutional right to engage in the underlying conduct at issue (and one overbreadth case involving unprotected incitement speech). Contrast that with this First Amendment case, where the default rule is a constitutional right to speak, which can only be taken away in a constitutional, non-discriminatory manner.

## CERTIFICATE OF SERVICE

    I hereby certify that on August 4, 2021, I electronically filed the foregoing with the clerk of the court by using the CM/ECF System, which will automatically generate and send by email a Notice of Docket Activity to all registered attorneys participating in this case.

                              */s/ Ryan D. Watstein*
                              Ryan D. Watstein
                              COUNSEL FOR APPELLEE