**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DANIEL REASE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CHARTER COMMUNICATIONS, INC.,

Defendant.

Case No. 3:20-cv-00150-RNC

Hon. Robert N. Chatigny

**PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiff Daniel Rease respectfully submits this Notice of Supplemental Authority regarding the pending Motion for Judgment on the Pleadings. *See* ECF Nos. 47, 50, 57, 62, 66. Plaintiff brings the following cases to this Court's attention, as they relate to the parties' respective arguments concerning the issue of subject matter jurisdiction in light of the Supreme Court's ruling in *Barr v. American Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335 (2020):

A. *Van Connor v. One Life America, Inc.*, Case No. 6:19-cv-03283, ECF No. 162 (D.S.C. June 29, 2021) (Coggins, J.). The *Van Connor* decision is attached hereto as Exhibit A.

B. *Hossfeld v. American Financial Security Life Ins. Co.*, Case No. 0:19-cv-60597, ECF No. 195 (S.D. Fla. June 16, 2021) (Gayles, J.), *also available at* 2021 WL 2453114. The *Hossfeld* decision is attached hereto as Exhibit C.

C. *Lerner v. Amerifinancial Solutions, LLC*, Case No. 1:20cv-00965, ECF No. 64 (D. Md. May 5, 2021) (Russell III, J.), *also available at* 2021 WL 1785138. The *Lerner* decision is attached hereto as Exhibit C.

D. *Mey v. Medguard Alert, Inc.*, Case No. 5:19-cv-00315, ECF No. 88 (N.D.W. Va. Apr. 27, 2021) (Bailey, J.), *also available at* 2021 WL 1652945. The *Mey* decision is attached hereto as Exhibit D.

E. *Gunn v. Prospects DM, LLC*, Case No. 4:19-cv-03129 (E.D. Mo. Apr. 19, 2021) (Autrey, J.), *also available at* 2021 WL 1534234. The *Gunn* decision is attached hereto as Exhibit E.

F. *Moody v. Synchrony Bank*, Case No. 5:20-cv-00061, ECF No. 18 (M.D. Ga. Mar. 26, 2021) (Treadwell, J.), *also available at* 2021 WL 1153036. The *Moody* decision is attached hereto as Exhibit F.

G. *Whittaker v. WinRed Tech. Servs. LLC*, Case No. 3:20-cv-08150, ECF No. 38 (D. Ariz. Mar. 23, 2021) (Tuchi, J.), *also available at* 2021 WL 1102297. The *Whittaker* decision is attached hereto as Exhibit G.

Dated: August 20, 2021

Respectfully submitted,

By: *\/s/ Philip L. Fraietta*
Philip L. Fraietta

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
Philip L. Fraietta (*pro hac vice*)
888 Seventh Avenue, Third Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com
pfraietta@bursor.com

**HEDIN HALL LLP**
Frank S. Hedin*
David W. Hall*
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: (415) 766-3534

Facsimile: (415) 402-0058
Email: fhedin@hedinhall.com
dhall@hedinhall.com

**REARDON SCANLON LLP**
James J. Reardon, Jr.
45 S. Main Street, 3rd Floor
West Hartford, Connecticut 06110
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

*To Be Admitted *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I, Philip L. Fraietta, an attorney, hereby certify that on August 20, 2021, I served the above and foregoing Plaintiff's Notice of Supplemental Authority on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF system.

*/s/ Philip L. Fraietta*
Philip L. Fraietta

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

James Van Connor, individually and on behalf of a class of all persons and entities similarly situated,

Plaintiff,

v.

One Life America, Inc.; Independent Order of Foresters; Mark Adams; and Niche Market Insurers Agency, Inc.,

Defendants.

C/A No. 6:19-cv-03283-DCC

**OPINION AND ORDER**

This matter is before the Court on the three Motions to Dismiss filed by Defendants Independent Order of Foresters, One Life America, Inc., and Mark Adams (collectively, "the moving Defendants"). ECF Nos. 104, 106, 109. For the reasons that follow, the Motions are denied.

## BACKGROUND

Plaintiff brings this action pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which makes it unlawful for any person to make automated, artificial or prerecorded calls ("robocalls") to cell phones or residential phone lines. *Id.* §§ 227(b)(1)(A)(iii), 227(b)(1)(B). Plaintiff alleges that on July 23, 2019, Defendant Mark Adams called his cell phone with a pre-recorded message regarding Defendant Independent Order of Foresters' ("Foresters") insurance services. ECF No. 41 ¶¶ 28–37. Plaintiff further alleges that Defendant Foresters contracted with Defendant One Life America, Inc. ("One Life") to sell insurance on its behalf; that One Life partnered with

Defendant Niche Market Insurers Agency, Inc. ("Niche Market") to carry out its arrangement with Foresters; and that Niche did so by using Defendant Adams to make pre-recorded phone calls. *Id*. ¶¶ 15–16, 47–57.

Defendants Foresters, One Life, and Adams have filed substantively similar Motions to Dismiss on the basis that the robocall restriction, § 227(b)(1)(A), was unconstitutional and therefore invalid during the relevant time period. ECF Nos. 104, 106, 109. Plaintiff Van Connor ("Plaintiff") filed responses in opposition, and the moving Defendants filed replies. ECF Nos. 108, 112, 117, 118, 120. Pursuant to Federal Rule of Civil Procedure 5.1(c), the United States of America intervened and filed a brief in defense of the constitutionality of the challenged statute. ECF Nos. 140. The moving Defendants filed further replies. ECF Nos. 154, 155, 156. Defendants' Motions are now before the Court.

## APPLICABLE LAW

### *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

A party may move for dismissal based on lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). A defendant may challenge subject matter jurisdiction in one of two ways: (1) a facial attack, which asserts that the complaint "fails to allege sufficient facts to support subject matter jurisdiction," or (2) a factual attack, which "challenges the veracity of the facts underpinning subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192–93 (4th Cir. 2009). Where, as here, the defendant challenges jurisdiction based on the facts alleged in the complaint, the court "must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." *Id*. at 193.

***Motion for Judgment on the Pleadings***

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[A] motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)." *Deutsche Bank Nat'l Trust Co. v. IRS*, 361 F. App'x. 527, 529 (4th Cir. 2010) (citing *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009)). The key difference between a Rule 12(b)(6) motion and a Rule 12(c) motion is that on a 12(c) motion, the court "consider[s] the answer as well as the complaint" and "documents incorporated by reference in the pleadings." *Fitchett v. Cty. of Horry, S.C.*, C/A No. 4:10-cv-1648-TLW-TER, 2011 WL 4435756, at *3 (D.S.C. Aug. 10, 2011) (citations omitted).

Under the Rule 12(b)(6) standard, the court is obligated "to assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). To survive the motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the Court must accept the facts in the light most favorable to the nonmoving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id*.

## DISCUSSION

### *I. The Supreme Court's Holding in* AAPC

The TCPA, as originally enacted in 1991, "prohibited 'any call (other than a call made for emergency purposes or made with the prior express consent of the called party)

using any automatic telephone dialing system or an artificial or prerecorded voice' to 'any telephone number assigned to a . . . cellular telephone service[.]'" *Barr v. American Association of Political Consultants, Inc.* ("*AAPC*"), 140 S. Ct. 2335, 2344 (2020). It was amended in 2015 to exclude from the general restriction calls "made solely to collect a debt owed to or guaranteed by the United States." Bipartisan Budget Act of 2015, Pub. L. 114-74, 129 Stat. 588.

On July 6, 2020, the United States Supreme Court struck down the 2015 government-debt exception as unconstitutional and severed it from the remainder of the TCPA. *AAPC*, 140 S. Ct. at 2344. Justice Kavanaugh, joined by Chief Justice Roberts and Justice Alito, delivered the plurality opinion of the Court. In total, six Justices concurred in the finding that the government-debt exception violated the First Amendment by impermissibly favoring debt-collection speech over political and other speech. *Id*. at 2343. Seven Justices agreed that the 2015 government-debt exception was severable and that the entire 1991 robocall restriction should not be invalidated. *Id*.

***II. The Parties' Positions***

All parties to the present Motions agree that the TCPA was constitutional and effective prior to the 2015 amendment. They further agree that, from the date of the Supreme Court's ruling onward, robocallers are clearly liable under the un-severed provisions of the TCPA. They disagree, however, about the effect of the *AAPC* ruling in the interim. The moving Defendants' position is that the entirety of § 227(b)(1)(A) was unconstitutional and invalid during the period between November 2, 2015 (when the amendment was enacted) and July 6, 2020 (when the Supreme Court announced its

decision that the amendment was severable). Conversely, Plaintiff and Intervenor United States assert that the government-debt exception was simply void *ab initio* and that the unamended version of the statute remained continuously valid and in force. Under their view, robocallers who were not collecting government debt[1] remain liable for their prohibited actions from 2015 through 2020.

Because the single alleged robocall in this case was placed on July 23, 2019, and Plaintiff's only claim is based on § 227(b)(1)(A), the survival of the action in its entirety depends on the resolution of this question.

### ***III. Retroactive Effect of Severing the Government-Debt Exception***

As an initial matter, the moving Defendants' position is explicitly rejected by a footnote of the three-Justice plurality opinion in *AAPC*, which states:

> As the Government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. On the other side of the ledger, *our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction*.

140 S. Ct. at 2355 n.12 (emphasis added). None of the additional four Justices who concurred in the severability holding addressed this point. And the notion that parties who made robocalls covered by the restriction are liable for their conduct between 2015

[1] There is some question about whether, under Plaintiff's preferred construction, government-debt collectors are liable for robocalls made between 2015 and 2020. *See* Section III, *infra*. Because Defendants were not attempting to collect government debt, that question is not presently before the Court.

and 2020, regardless of when the Supreme Court issued its ruling, is consistent with the principle that "an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *Id*. at 2353 (citing *Frost v. Corp. Comm'n of Okla.*, 278 U.S. 515, 526–27 (1929)); *see also Rivers v. Roadway Express*, 511 U.S. 298, 313 n.12 (1994) (explaining that a Supreme Court decision does not change the meaning of a statute, but rather determines what it has "*always* meant"). It is also consistent with the general rule that parties may be liable for violating the unsevered portion of an unconstitutional statute, even if they did so prior to the date of judicial severance. *See United States v. Miselis*, 972 F.3d 518, 547–48 (4th Cir. 2020) (affirming defendants' convictions under the Anti-Riot Act after striking down other portions of the Act as unconstitutional).

However, as noted by Justice Gorsuch in his dissent and emphasized by the moving Defendants, the application of the above principle leads to an odd result: between 2015 and 2020, those who made robocalls to collect government debt are exempted from liability under the statute, while those who made robocalls for other purposes are not. On the face of it, at least, a holding to this effect "would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate." *AAPC*, 140 S. Ct. at 2366 (Gorsuch, J., dissenting) (internal citations omitted); *see also Trujillo v. Free Energy Sav. Co., LLC*, 2020 WL 8184336, at *3 (C.D. Cal. Dec. 21, 2020) ("The footnote presents a paradox."). And indeed, a minority of federal district courts have found that the government-debt exception and the unamended rule are "inextricably intertwined for the purposes of any reasonable analysis," such that it is unconstitutional to enforce the

unamended statute but not the exception during the interim period. *Creasy v. Charter Communs., Inc.*, 489 F. Supp. 499, 506 (E.D. La. 2020); *see also Cunningham v. Matrix Fin. Servs.*, ___ F. Supp. 3d ___, 2021 WL 1226618 (E.D. Tex. Mar. 31, 2021); *Lindenbaum v. Realgy*, 497 F. Supp. 3d 290, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020). These decisions, and the moving Defendants' arguments, raise difficult and compelling legal questions. Nevertheless, having considered the parties' briefing and the relevant law, the Court finds that the unamended TCPA remained effective against parties—like Defendants—who made covered robocalls between 2015 and 2020.

First, although the undersigned agrees that the on-point *AAPC* footnote is likely dictum, that dictum cannot be lightly dismissed. "[W]ith inferior courts, like ourselves . . . carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative." *Mey v. Medguard Alert, Inc.*, 2021 WL 1652945, at *4 (N.D.W. Va. Apr. 27, 2021) (quoting *Wynne v. Town of Great Falls*, 376 F.3d 292, 298 n.3 (4th Cir. 2004)).[2] This is particularly so because, at least as to the final line, the reasoning of the footnote is logically consistent with the severability analysis that was essential to the holding. If the unconstitutional 2015 amendment was "'a nullity' and 'void' when enacted," *AAPC*, 140 S. Ct. at 2353 (citing *Frost*, 278 U.S. at 526–27), then it stands to reason that the robocall restrictions of the original statute remained in effect thereafter.

[2] *See also Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) ("It would never occur to us to tell the Supreme Court that we would decide our cases based on our analysis of its decisions, not its own analysis of them if that analysis had been announced in a case where it was not essential to the result."); *United States v. Montero-Camargo*, 208 F.3d 1122, 1133 n.17 (9th Cir. 2000) ("Supreme Court dicta have a weight that is greater than ordinary judicial dicta as prophecy of what the court might hold; accordingly we do not blandly shrug them off because they were not a holding.").

The moving Defendants also urge that the footnote is contained in a plurality, rather than majority, opinion. But, as explained above, a total of four additional Justices concurred in the judgment with respect to severability and none indicated any disagreement with that aspect of the plurality's analysis. The Court therefore finds that footnote 12, though not strictly binding, is highly persuasive and instructive with respect to future rulings. With that said, the district court is not bound to follow its guidance if doing so would violate the Constitution or contravene the holding of *AAPC*.

But there is no constitutional infirmity in holding Defendants liable for the conduct alleged between 2015 and 2020. To begin with, Defendants' constitutional argument is premised not on the directly applicable line of footnote 12 ("our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction"), but on its interplay with an earlier statement that has no direct bearing on the present action ("no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception"). As another court remarked:

> [T]his Court need not—and does not—decide on this motion whether government-debt collectors are subject to liability for calls made between 2015 and 2020. Defendant is not a government-debt collector. The due process question properly should be resolved in a different case.

*Trujillo*, 2020 WL 8184336, at *4; *see also Miles v. Medicredit*, ___ F. Supp. 3d ___, 2021 WL 1060105, at *3 (E.D. Mo. Mar. 18, 2021) ("This Court need not address whether government debt collectors are subject to liability for calls made between 2015 and 2020. Medicredit is not a government-debt collector."). The question before the Court is whether

Defendants—who were not attempting to collect government debt—may be liable for their robocalls under a fully-constitutional, unamended TCPA. To hold them so is entirely consistent with the reasoning of *AAPC* (i.e., that the 2015 amendment was void *ab initio*) and the general rule with respect to severance.

In any case, even if the liability of government-debt collectors is properly considered in the present analysis, and even assuming that government-debt collectors are not liable for robocalls placed between 2015 and 2020,[3] the Court does not agree that the disparity in treatment would impose "the very same kind of content discrimination" that was rejected by a majority of Justices in *AAPC*. 140 S. Ct. at 2366 (Gorsuch, J., dissenting). Rather,

> to the extent Justice Kavanaugh proposed that government-debt collectors should not be retroactively liable, that principle would presumably be founded on concerns about fair notice and good-faith reliance on the TCPA's exception. It does not amount to a holding that their conduct was *actually* lawful during that time.

*Moody v. Synchrony Bank*, ___ F. Supp. 3d ___, 2021 WL 1153036, at * 6 (M.D. Ga. Mar. 26, 2021). To apply footnote 12 in its entirety would thus impose, not a content-based restriction on free speech, but a disparity in treatment based on the absence of fair notice

[3] At least one district court has found government-debt collectors liable despite the guidance of footnote 12. *See Franklin v. Navient, Inc.*, 2021 WL 1535575, at *2–3 (D. Del. Apr. 19, 2021) ("To follow the *AAPC* plurality, I would need to overhaul the law."). Another district court opined that the footnote "does not provide clear or binding guidance on the issue," but declined to decide the liability of government-debt collectors because it was not at issue. *Trujillo*, 2020 WL 8184336, at *5. Notably, neither court adopted the moving Defendants' preferred approach of absolving both kinds of robocallers from liability.

Because Defendants were not attempting to collect government debt, the undersigned follows the approach of the *Trujillo* court and declines to render any opinion on the liability of government-debt collectors.

to one category of defendants. This is a disparity different in kind and substance—if not in effect—from the one struck down in *AAPC*, and it does not mandate a contrary result to the one forecast in footnote 12.

Because the moving Defendants' arguments fall short of overcoming the highly persuasive on-point authority of the plurality's footnote, and because Plaintiff's position is consistent with the logic of *AAPC*'s majority holding and the law on severance, the Court finds that enforcement of the TCPA's robocall restriction against non-government-debt collectors between 2015 and 2020 does not violate the Constitution. In so finding, the Court joins with the vast majority of other federal district courts, both in this circuit and elsewhere, to have considered the issue.[4] Accordingly, Plaintiff has adequately established subject matter jurisdiction and his Complaint should not be dismissed on the pleadings.

[4] *See*, *e.g.*, *Lerner v. AmeriFinancial Sols., LLC*, 2021 WL 1785138 (D. Md. May 5, 2021); *Mey v. Medguard Alert, Inc.*, 2021 WL 1652945 (N.D.W. Va. Apr. 27, 2021); *Valdes v. Nationwide Real Estate Execs., Inc.*, 2021 WL 2134159 (C.D. Cal. Apr. 22, 2021); *Gunn v. Prospects DM, LLC*, 2021 WL 1534234 (E.D. Mo. Apr. 19, 2021); *Franklin v. Navient, Inc.*, 2021 WL 1535575 (D. Del. Apr. 19, 2021); *Hossfield v. Am. Fin. Sec. Life Ins. Co.*, ___ F. Supp. 3d ___, 2021 WL 1186526 (S.D. Fla. Mar. 29, 2021); *Moody v. Synchrony Bank*, ___ F. Supp. 3d ___, 2021 WL 1153036 (M.D. Ga. Mar. 26, 2021); *Whittaker v. WinRed Tech. Servs. LLC*, 2021 WL 1102297 (D. Ariz. Mar. 23, 2021); *Miles v. Medicredit*, ___ F. Supp. 3d ___, 2021 WL 1060105 (E.D. Mo. Mar. 18, 2021); *Massaro v. Beyond Meat, Inc.*, 2021 WL 948805 (S.D. Cal. Mar. 12, 2021); *DiStasio v. Edible Arrangements, LLC*, 2021 WL 1087499 (D. Conn. Feb. 1, 2021); *McCurley v. Royal Sea Cruises, Inc.*, 2021 WL 288164 (S.D. Cal. Jan. 28, 2021); *Less v. Quest Diagnostics Inc.*, ___ F. Supp. 3d ___, 2021 WL 266548 (N.D. Ohio Jan. 26, 2021); *Bonkuri v. Grand Caribbean Cruises, Inc.*, 2021 WL 612212 (S.D. Fla. Jan. 19, 2021); *Stoutt v. Travis Credit Union*, ___ F. Supp. 3d ___, 2021 WL 99636 (E.D. Cal. Jan. 12, 2021); *Rieker v. Nat'l Car Cure, LLC*, 2021 WL 210841 (N.D. Fla. Jan. 5, 2021); *Trujillo v. Free Energy Sav. Co., LLC*, 2020 WL 8184336 (C.D. Cal. Dec. 21, 2020); *Shen v. Tricolor California Auto Group, LLC*, 2020WL 7705888 (C.D. Cal. Dec. 17, 2020); *Abramson v. Fed. Ins. Co.*, 2020 WL 7318953 (M.D. Fla. Dec. 11, 2020).

**CONCLUSION**

For the reasons set forth above, Defendants' Motions to Dismiss [104, 106, 109] are **DENIED**.

IT IS SO ORDERED.

**s/ Donald C. Coggins, Jr.**
United States District Judge

June 29, 2021
Spartanburg, South Carolina

**EXHIBIT B**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 0:19-cv-60597-GAYLES/STRAUSS**

**ROBERT HOSSFELD, individually**
**and on behalf of others similarly situated**,

Plaintiff,

v.

**AMERICAN FINANCIAL SECURITY**
**LIFE INSURANCE COMPANY, et al.,**

Defendants.

______________________________________/

**AMENDED ORDER**

**THIS CAUSE** comes before the Court on Defendants' Joint Motion to Dismiss Plaintiff's Second Amended Class Action Complaint, ("Motion to Dismiss"), [ECF No. 153], and Supplemental Joint Motion to Dismiss Plaintiff's Second Amended Class Action Complaint for Lack of Subject Matter Jurisdiction ("Supplemental Motion to Dismiss"), [ECF No. 178], (collectively, the "Motions"). This Court has considered the Motions and the record and is otherwise advised. For the reasons that follow, Defendants' Supplemental Motion to Dismiss is denied and Defendants' Motion to Dismiss is granted in part and denied in part.

## I. BACKGROUND[1]

### A. Factual Allegations

This is a class action for violations of the Telephone Consumer Protection Act ("TCPA" or the "Act"), 47 U.S.C. § 227. The action derives from a telemarking scheme whereby insurance companies hired Defendant Health Insurance Innovations, Inc. n/k/a Benefytt Technologies, Inc.

[1] As the Court is proceeding on Motions to Dismiss, it takes Plaintiff's allegations in the Second Amended Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam).

("HII") to generate business. In turn, HII hired third-party telemarketers and licensed insurance agents to perform telemarketing on behalf of the insurance companies. Pursuant to the telemarketing scheme, Plaintiff received a series of unsolicited insurance sales calls from August 8, 2018 to August 29, 2019:

- On August 8, 2018, Plaintiff received a telemarketing call advertising health insurance. The call began with a prerecorded message which instructed Plaintiff to press a digit on his phone to proceed. While Plaintiff was connected with a representative, the agent refused to identify his employer and hung up on Plaintiff when Plaintiff continued to ask for identifying information. This call was made at the request of HII for the purpose of encouraging the sale of the products and services of one or more defendants: American Financial Security Life Insurance Company ("American Financial"), Federal Insurance Company ("Federal Insurance"), Med-Sense Guaranteed Association ("Med-Sense"), National Congress of Employers, Inc. ("NCE"), National Benefit Builders, Inc. ("NBBI"), Rx Helpline LLC ("Rx Helpline"), and Teladoc Health, Inc. ("Teladoc") (collectively, "Seller Defendants").

- On November 26, 2018, Plaintiff received a phone call to his cell phone advertising health insurance, which began with a prerecorded message instructing Plaintiff to press a digit to proceed. During a conversation with a live representative, Plaintiff was quoted $714.84/month for health insurance through the MultiPlan PPO network, underwritten by American Financial. The American Financial policy was to be administered by HII. HII paid for all or part of this call.

- On February 13, 2019, Plaintiff received a phone call to his cell phone advertising health insurance, which began with a prerecorded message instructing Plaintiff to press a digit to

proceed. During another conversation with a live representative, Plaintiff was quoted $398.03/month for health insurance through the AdvantHealth STM plan, underwritten by American Financial. The American Financial policy was to be administered by HII. HII paid for all or part of this call. As a supplement to the quote, HII sent Plaintiff an email with a pre-filled application for the "AdvantHealth STM plan through American Financial, NCE membership which was provided through or in conjunction with NBBI, accidental death and dismemberment coverage through Federal Insurance (for which Med-Sense is listed as the policyholder), membership in Med-Sense's discount program, Teladoc's '27/7 doctor visits by telephone' service, and RX Helpline." [ECF No. 140 ¶ 64].

- On March 5, 2019, Plaintiff received a missed call on his cell phone. Upon returning the call, Plaintiff was connected to a live representative who gave him a quote for health insurance coverage underwritten by American Financial.
- On May 22, 2019, Plaintiff received another call to his minor child's cell phone, for which Plaintiff is the subscriber, and spoke with a live representative. On this call, Plaintiff told the representative to never call his phone again.
- On August 14, 2019, Plaintiff received another missed call paid for, in part or in full, by HII. When Plaintiff called back, he was connected to a live representative after an initial prerecorded prompt promoting "affordable health insurance." On this call, Plaintiff told the representative he did not want to be contacted by phone, which the representative confirmed he "indicated on there."
- On August 29, 2019, Plaintiff received another missed call paid for, in part or in full, by HII. Plaintiff called back three times and was connected with a live representative on the third attempt. Plaintiff told the representative that he did not want to be contacted by phone.

Case 3:20-cv-01150-RNC Document 95 Filed 08/20/21 Page 21 of 85

The representative confirmed that she would mark his phone number as "DNC," meaning do not call.

**B. Procedural History**

On March 6, 2019, Plaintiff filed this class action lawsuit for violations of the TCPA.[2] [ECF No. 1]. The defendants moved to dismiss the action for failure to state a claim on May 1, 2019. [ECF No. 57]. On June 5, 2019, Plaintiff filed an Amended Complaint,[3] [ECF No. 77], which the defendants moved to dismiss, [ECF No. 117]. On March 11, 2020, the Court held a hearing on the defendants' Motion to Dismiss and dismissed the Amended Complaint without prejudice. [ECF No. 135].

On April 13, 2020, Plaintiff filed his Second Amended Class Action Complaint ("SAC") against HII and the Seller Defendants (collectively, "Defendants") alleging that Defendants caused phone calls to be made to the phone numbers registered to Plaintiff, and others, using an automatic telephone dialing system and prerecorded voice, in violation of the TCPA. [ECF No. 140]. Plaintiff brings two counts: Count I against all Defendants for initiating or causing to be initiated nonconsensual telephone calls using an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service, in violation of 47 U.S.C. § 227(b)(1)(A)(iii); and Count II against HII only for failure to maintain and adhere to internal do-not-call policies, in violation of 47 U.S.C. § 227(c)(5). *Id.* On June 8, 2020, Defendants filed their Motion to Dismiss for failure to state a claim. After the United States Supreme Court rendered its decision in *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335 (July 6, 2020), where the Court severed an unconstitutional

[2] Plaintiff first brought this action against the following defendants: American Financial Security Life Insurance Company; Federal Insurance Company; Health Insurance Innovations, Inc.; Supreme Health Group Inc.; Blake Fishman; Med-Sense Guaranteed Association; National Congress of Employers, Inc.; National Benefit Builders, Inc.; Health Advisors of America, Inc.; Michael Smith; and Zachary Cox.

[3] In the Amended Complaint, Plaintiffs removed Defendants Health Advisors of America, Inc.; Michael Smith; and Zachary Cox from the action, and added Defendants HealthPocket, Inc., d/b/a AgileHealthInsurance; Teladoc Health, Inc.; RX Helpline LLC; AXIS Insurance Company; and Association for Entrepreneurship USA.

provision of the TCPA, Defendants filed their Supplemental Motion to Dismiss, arguing that the Supreme Court's ruling destroys federal question jurisdiction.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure can be asserted on facial or factual grounds. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). In a facial challenge, a court is required only to determine if the plaintiff has "sufficiently alleged a basis for subject matter jurisdiction." *McElmurray v. Consol. Gov't*, 501 F.3d 1244, 1251 (11th Cir. 2007). Furthermore, "the court must consider the allegations in the plaintiff's complaint as true." *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).[4] By contrast, a factual attack "challenge[s] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered.'" *McElmurray*, 501 F.3d at 1251 (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). In a factual attack, "no presumptive truthfulness attaches to [a] plaintiff's allegations," *Lawrence*, 919 F.2d at 1529 (quotations omitted), and the plaintiff bears the burden to prove the facts sufficient to establish subject matter jurisdiction, *see OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

### B.    Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw

---

[4] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

## III. DISCUSSION

This action was brought pursuant to the TCPA. The TCPA was enacted in 1991 in response to an overwhelming number of consumer complaints of unwanted telemarketing calls, auto-dialed calls, and prerecorded calls. *Barr*, 140 S. Ct. at 2344. The Act prohibits a person from using an autodialer and/or a prerecorded voice to call any telephone number for telemarketing purposes, without proper consent. 47 U.S.C. § 227(b). These calls are often referred to as "robocalls." In November 2015, Congress amended the TCPA to carve out an exception permitting robocalls if made for the purpose of collecting a government debt. 47 U.S.C. § 227(b)(1)(A)(iii). In July 2020, the United States Supreme Court ruled that the government-debt exception impermissibly favored debt-collection speech over political and other speech in violation of the First Amendment. *Barr*, 140 S. Ct. at 2343. The Court found the exception was unconstitutional and severed it from the remainder of the statute. *Id.* at 2355.

**A. Supplemental Motion to Dismiss [ECF No. 178]**

Because Defendants brings a facial challenge, the Court examines whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction. In the SAC, Plaintiff asserts that federal question jurisdiction exists here as his claims are based on violations of the TCPA. Defendants argue that the Court lacks federal question jurisdiction, therefore subject matter jurisdiction, because the entire TCPA, as amended in 2015, was rendered invalid by *Barr*. According to Defendants, Plaintiff cannot assert claims based on conduct that occurred while the TCPA is invalid. *See Ex Parte Siebold*, 100 U.S. 371, 377 (1879) (holding a federal court lacks jurisdiction "if the laws are unconstitutional and void"). However, Defendant's contention defies ordinary rules of statutory severability and is contrary to a reasonable interpretation of the *Barr* opinion.

"Generally speaking, when confronting a constitutional flaw in a statute, [courts] try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 508 (2010) (quotations omitted). Before severing a statutory provision, the court must determine whether the remaining provisions are capable of functioning independently. *Id.* at 510. As the Supreme Court explained in *Barr*, the "robocall restriction [] function[ed] independently and fully operate[d] as a law for 20-plus years before the government-debt exception was added in 2015." *Barr*, 140 S. Ct. at 2353. Therefore, severing the government-debt exception does not destroy the pre-existing robocall restriction.

"An unconstitutional statutory amendment is a nullity and void when enacted, and for that reason has no effect on the original statute." *Trujillo v. Free Energy Savings Co., LLC*, No. 5:19-cv-02072-MCS-SP, 2020 WL 8184336, *4 (C.D. Cal. December 21, 2020) (quotations omitted). Thus, robocalls made between November 2015 and July 2020, not made for the purpose of

collecting a government debt, are enforceable under the TCPA. *See Barr*, 140 S. Ct. at 2355 fn. 12 ("[A]though our decision means the end of the government-debt exception . . . our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction."); *see also Rieker v. Nat'l Car Cure, LLC*, No. 3:20CV5901-TKW-HTC, 2021 WL 210841, at *1 (N.D. Fla. Jan. 5, 2021) ("[T]he robocall statute remains enforceable, at least against non-government-debt collectors, as to calls made between 2015 and [July] 2020."); *Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738-PHX-DWL, 2020 WL 5249263, at *2 (D. Ariz. Sept. 3, 2020) ("Although *Barr* struck down a part of the TCPA not at issue in this case, the bulk of the TCPA lives on."). Therefore, federal question jurisdiction is not destroyed. The Court has subject matter jurisdiction to proceed on Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

### B. Motion to Dismiss [ECF No. 153]

#### 1. Count I

Plaintiff alleges that the Defendants violated the Act by initiating or causing to be initiated unwanted calls, using an artificial or prerecorded voice, to telephone numbers registered to Plaintiff and others similarly situated. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff alleges that the Seller Defendants are liable under the Act for the calls during which their products or services were marketed, quoted, or sold. But for most of the Seller Defendants, Plaintiff specifically alleges liability for only the February 13, 2019 call. *See* [ECF No. 140 ¶ 179]. This one call is insufficient to establish Article III standing.

A plaintiff is conferred Article III standing to sue when three requirements are met: (1) the plaintiff must allege that he suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) that injury must be "fairly traceable to the challenged action of the

defendant"; (3) and it must be "likely ... that the injury will be redressed by a favorable decision." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1268 (11th Cir. 2019) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Eleventh Circuit law makes clear "*receipt of more than one* unwanted telemarketing call made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing." *Cordoba*, 942 F.3d at 1270 (emphasis added); *see also Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306 (11th Cir. 2020) (citing *Cordoba*, 942 F.3d at 1270 and *Salcedo v. Hanna*, 936 F.3d 1162, 1168 (11th Cir. 2019)). Because Plaintiff has not adequately alleged receipt of more than one unlawful call on behalf of Defendants Federal Insurance, Med-Sense, NCE, NBBI, Rx Helpline, and Teladoc, Plaintiff has no standing to bring a TCPA claim against them.[5] Accordingly, Count I must be dismissed against these defendants.

The SAC alleges that only Defendants HII and American Financial made more than one call to Plaintiff. Plaintiff claims HII is liable under the following theories: direct liability, actual authority, apparent authority, and ratification. Plaintiff claims American Financial is liable under the theory of actual authority and apparent agency.

Plaintiff has not sufficiently stated a claim for direct liability against HII because "[d]irect liability under the TCPA ... applies only to entities that 'initiate' the telemarketing calls." *Grant v. Regal Auto. Grp., Inc.*, No. 8:19-CV-363-T-23JSS, 2020 WL 8254283, at *7 (M.D. Fla. July 30, 2020), *report and recommendation adopted*, No. 8:19-CV-363-T-23JSS, 2020 WL 8224838 (M.D. Fla. Sept. 29, 2020). A person or entity "initiates" a telephone call when "it takes the steps necessary to physically place a telephone call." *Id.* (citing *In the Matter of the Joint Petition Filed*

[5] As the Court finds Plaintiff lacks standing to sue these defendants, the Court need not consider Defendants' argument that Plaintiff fails to adequately allege personal jurisdiction over Federal Insurance, Med-Sense, NCE, NBBI or Teladoc.

*by Dish Network, LLC, the U.S., & the States of Cal., Ill., N.C., & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules ("Dish Network")*, 28 F.C.C. Rcd. 6574, 6583 ¶26 (2013)). This "generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Becker v. Pro Custom Solar LLC*, No. 219CV535FTM29NPM, 2020 WL 474647, at *3 (M.D. Fla. Jan. 29, 2020) (citing *Dish Network*, 28 F.C.C. Rcd. at 6583). In the SAC, Plaintiff acknowledges that HII did not actually place any of the phone calls. Instead, HII controls a network of third-party telemarketers and insurance agent lead generators with whom it contracts to generate business for Seller Defendants and similar companies. As a result, HII cannot be directly liable for calls made by third parties.

However, HII may be held vicariously liable under federal common law agency principles, including actual agency, apparent authority, and ratification, for a TCPA violation by a third-party telemarketer. *Cabrera v. Gov't Emps. Ins. Co.*, 452 F. Supp. 3d 1305, 1316 (S.D. Fla. 2014) (citing *Dish Network*, 28 F.C.C. Rcd. at 6582-84). The ultimate determination of whether HII and American Financial had an agency relationship is for a trier of fact to decide. *Johnson v. Unique Vacations, Inc.*, 498 F. App'x 892, 894 fn. 3 (11th Cir. 2012) (citing *Villazon v. Prudential Health Care Plan, Inc.,* 843 So. 2d 842, 853 (Fla. 2003)). For purposes of a motion to dismiss, the Court must determine whether there is "a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Snyder v. iCard Gift Card, LLC*, No. 0:15-CV-61718-WPD, 2017 WL 10379592, at *3 (S.D. Fla. May 11, 2017). Therefore, Plaintiff must allege enough facts to show that HII and American Financial exercised substantial control over the third-party telemarketer agents' actions, ratified the agents' conduct,

or represented that the agents acted with authority from HII and American Financial. *See Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1377 (S.D. Fla. 2014).

Plaintiff sets forth the following allegations that give rise to an inference of an agency relationship between HII and the third-party telemarketer agents: HII authorized the third party telemarketers to call Plaintiff and others on the dates alleged; HII paid for all or part of the telemarketing calls; HII authorized its agents to use its name or trade names during telemarketing calls; HII controlled the telemarketing at issue by providing the telemarketing scripts, real-time insurance quotes, and other health-related products and services during the calls at issue; HII ratified these calls by emailing contracts and quotes for insurance to Plaintiff and others and by handling billing and other administrative services as to the products and services through these calls; and HII benefitted from the telemarketing by promoting products and services for its clients. [ECF No. 140 ¶¶ 125–30]. Plaintiff sets forth the following allegations that give rise to an inference of an agency relationship between American Financial and the third-party telemarketer agents: American Financial, through its agreements with HII, authorized the calls at issue; American Financial controlled the telemarketing at issue by providing the proprietary product and pricing information that the telemarketers used; American Financial reviewed and approved the scripts for the telemarketing calls made on its behalf; American Financial financially benefitted from the telemarketing; and American Financial ratified the telemarketing calls by continuing to provide proprietary product and pricing information resulting in sales from these calls, continuing to authorize the use of its trade name during these calls, and continuing to maintain its relationship with HII after being notified that these calls were illegal. [ECF No. 140 ¶¶ 131–135]. These allegations against HII and American Financial are sufficient to plead a cause of action based on

vicarious liability. Accordingly, the Motion to Dismiss Count I is denied as to Defendants HII and American Financial.

**2. Count II**

Plaintiff brings Count II against HII only for failure to maintain and honor a written internal DNC policy, in violation of 47 U.S.C. § 227(c)(5). Any person or entity initiating a telemarketing call must keep a written policy for maintaining a DNC list. 47 C.F.R. § 64.1200(d). If a consumer requests not to be called during a telemarketing call, this request must be honored by the telemarketer, the seller, and all other telemarketers that generate business for the seller. *Id.* The Eleventh Circuit has held that Article III standing to sue for failure to maintain and honor an internal DNC list arises from calls made in violation of the Act.

> We hold today only (1) that calls placed in violation of the Telephone Consumer Protection Act are injuries in fact under the framework explicated by the Supreme Court in *Lujan* and *Spokeo* and our own case law, but (2) that recipients of such calls who never asked the telemarketer to stop calling them do not have standing to sue over violations of the internal do-not-call list regulations because their injuries are not fairly traceable to the telemarketer's failure to maintain an internal do-not-call list.

*Cordoba*, 942 F.3d at 1276. According to the SAC, Plaintiff made his first request to not be called on May 22, 2019—after he initiated this lawsuit. *See* [ECF No. 140 ¶ 90]; [ECF No. 173 at 35]. The SAC does not allege that any calls made after May 22, 2019 violated the TCPA.[6] As alleged,

[6] In its Response in Opposition to the Motion to Dismiss, Plaintiff asks the Court to consider an exhibit not specifically referenced or attached to the SAC as evidence of earlier DNC requests. The Court cannot do so. As the Court proceeds on a motion to dismiss, its review is generally limited to the four corners of the SAC. *See Moreno v. Carnival Corp.*, 488 F. Supp. 3d 1233, 1236 (S.D. Fla. 2020). However, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal." *Brooks*, 116 F.3d at 1369; *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("In deciding whether a complaint states a claim upon which relief may be granted, we normally consider all documents that are attached to the complaint or incorporated into it by reference."). The reference to external documents must be specific. *See Gregory v. Miami-Dade Cty.*, 86 F. Supp. 3d 1333, 1338 (S.D. Fla. 2014) ("[T]he Second Amended Complaint does not make any specific reference to the attached police report. Therefore, the Court cannot consider the police report as part of the pleadings.").

calls made after May 22, 2019 were either unanswered or used live representatives. Accordingly, Plaintiff lacks standing to assert a claim based on HII's failure to maintain and honor an internal do-not-call list. *See Cordoba*, 942 F.3d at 1271 ("if an individual not on the National Do Not Call Registry was called by Telecel and never asked Telecel not to call them again, it doesn't make any difference that Telecel hadn't maintained an internal do-not-call list."). Therefore, Count II is dismissed.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendants' Supplemental Joint Motion to Dismiss Plaintiff's Second Amended Class Action Complaint for Lack of Subject Matter Jurisdiction, [ECF No. 178], is **DENIED.**
2. Defendants' Joint Motion to Dismiss Plaintiff's Second Amended Class Action Complaint, [ECF No. 153], is **GRANTED** in part and **DENIED** in part.
3. Count I is **DISMISSED without prejudice** only against Defendants Federal Insurance, Med-Sense, NCE, NBBI, Rx Helpline, and Teladoc.
4. Count II is **DISMISSED without prejudice**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 16th day of June, 2021.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ELLY LERNER, on behalf of himself and those similarly situated, | * | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | Civil Action No. GLR-20-965 |
| | * | |
| AMERIFINANCIAL SOLUTIONS, LLC, et al., | * | |
| Defendants. | * | |

***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants AmeriFinancial Solutions, LLC ("AmeriFinancial") and Valley Emergency Room Associates, P.A.'s ("Valley") Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 48). The Motion is ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will deny the Motion.

## I. BACKGROUND[1]

Plaintiff Elly Lerner brings this putative class action lawsuit against Defendants pursuant to the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 et seq. (First Am. Class Action Compl. ["Am. Compl."] ¶ 1, ECF No. 11). Lerner states that AmeriFinancial, on behalf of Valley, contacted his cellular telephone number on April 15, 2016, April 24, 2016, and May 12, 2016. (Id. ¶¶ 18–21). In these phone calls,

[1] Unless otherwise noted, the Court takes the following facts from Lerner's Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

AmeriFinancial left pre-recorded voicemail messages without Lerner's consent in violation of the TCPA. (Id. ¶¶ 18–19, 25).

On April 14, 2020, Lerner initiated this class action lawsuit against AmeriFinancial. (ECF No. 1). On June 4, 2020, Lerner filed an Amended Complaint to include Valley. (ECF No. 11). The Amended Complaint alleges that Defendants violated the TCPA. (Am. Compl. ¶¶ 41–48). Lerner seeks injunctive relief, statutory damages, attorneys' fees, and an order certifying this Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure. (Id. at 10). Defendants filed their Answers to the Amended Complaint on July 17, 2020, and July 28, 2020. (ECF Nos. 31, 38).

On December 1, 2020, Defendants filed a joint Motion to Dismiss for Lack of Subject Matter Jurisdiction. (ECF No. 48). On December 22, 2020, Lerner filed a Response in Opposition to the Motion to Dismiss. (ECF No. 51). On January 12, 2021, Defendants filed a Reply. (ECF No. 54). Lerner and Defendants have subsequently filed several Notices of Supplemental Authority. (ECF Nos. 55, 58–63).

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. A defendant challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject-matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" Hasley v. Ward Mfg., LLC, No. RDB-13-1607, 2014 WL 3368050, at *1 (D.Md. July 8, 2014) (alteration in original)

(quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)). When, as here, a defendant raises a facial challenge, the Court affords the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Kerns, 585 F.3d at 192 (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). As such, the Court takes the facts alleged in the Amended Complaint as true and will deny the motion if the Amended Complaint alleges sufficient facts to invoke subject-matter jurisdiction.

**B. Analysis**

Defendants contend that this Court lacks subject-matter jurisdiction over Lerner's lawsuit. (AmeriFinancial & Valley Br. Supp. Mot. Dismiss Pl.'s Compl. ["Defs.' Mot."] at 4–9, ECF No. 48-1). Defendants raise two main arguments in support of their position: (1) that the Supreme Court's decision in Barr v. American Ass'n of Political Consultants, Inc., 140 S.Ct. 2335 (2020), strips this Court of subject-matter jurisdiction to hear Lerner's claim, (Defs.' Mot. at 5–7); and (2) that other district courts who have considered motions to dismiss on identical issues have dismissed the plaintiffs' claims in those cases, (id. at 9). At bottom, the Court disagrees and will deny Defendants' Motion.

The TCPA, passed in 1991, generally bars robocalls to cellphones and home phones. See 47 U.S.C. § 227(b)(1)(A)(iii). On November 2, 2015, Congress amended the TCPA by adding an exception permitting robocalls made to collect government debt (the "government-debt exception"). See Bipartisan Budget Act of 2015, Pub. L. 114-74, 129 Stat. 584, Title III, § 301(a)(1) (2015). Under the updated 2015 version of the TCPA:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— . . .
>
>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, <u>unless such call is made solely to collect a debt owed to or guaranteed by the United States</u>[.]

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

On July 6, 2020, the Supreme Court considered the constitutionality of the government-debt exception. <u>See</u> <u>Barr v. Am. Ass'n of Pol. Consultants, Inc</u>, 140 S.Ct. 2335 (2020) [hereinafter "<u>AAPC</u>"]. The Supreme Court determined that the addition of the government-debt exception to the TCPA is an unconstitutional content-based restriction favoring speech made for the purpose of collecting government debt over other forms of speech, such as speech made for the purpose of collecting non-government debt. <u>Id.</u> at 2347. In keeping with precedent, instead of invalidating the statute in its entirety, the Supreme Court severed the government-debt exception from the TCPA. <u>Id.</u> at 2356 ("We hold that the 2015 government-debt exception added an unconstitutional exception to the law. We cure that constitutional violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute.").

Defendants argue that the Supreme Court's ruling regarding the unconstitutionality of the government-debt exception renders 47 U.S.C. § 227(b)(1)(A)(iii)—the section of the

TCPA upon which Lerner bases his claim—invalid from November 2, 2015, the date Congress amended the statute to include the government-debt exception, until July, 6 2020, the date the Supreme Court severed the government-debt exception from the TCPA (the "Unconstitutional Period"). (See Defs.' Mot. at 5–7). Defendants assert that because the alleged phone calls and voicemails Lerner received from AmeriFinancial occurred between April 15, 2016 and May 12, 2016—i.e., during the Unconstitutional Period—this Court lacks subject-matter jurisdiction to hear Lerner's claim. (Id.).

In AAPC, seven Justices agreed to sever the government-debt exception from the TCPA. See 140 S.Ct. at 2343. In writing the Supreme Court's plurality opinion, Justice Kavanaugh appeared to squarely address Defendants' argument:

> Although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.

Id. at 2355 n.12 (emphasis added). Lerner's case does not involve the collection of government debt; thus, according to Justice Kavanaugh, the severance of the government-debt exception to the TCPA does not negate Defendants' liability. See id.

Defendants argue that the quoted language from Justice Kavanaugh's opinion is dicta and this Court should not follow Justice Kavanaugh's guidance. (Defs.' AmeriFinancial & Valley Reply Pl.'s Opp'n Mot. Dismiss ["Reply"] at 3–4, ECF No. 54). The Court disagrees. "When a fragmented Court decides a case and no single rationale

explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" Marks v. United States, 430 U.S. 188, 193, (1977) (quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15 (1976)). As explained by another district court considering this issue:

> In this case, one single rationale explains the result joined by seven of the Justices: All seven agree that the 2015 amendment should be severed and the liability of parties making robocalls who were not collecting a government debt is not negated. In fact, three of those seven would not have held the 2015 amendment to be unconstitutional at all, and they certainly agreed Defendant could be held liable. Therefore, the Court finds Justice Kavanaugh's statement is not dicta and must be followed by this Court.

McCurley v. Royal Sea Cruises, Inc., No. 17-CV-00986-BAS-AGS, 2021 WL 288164, at *7 (S.D.Cal. Jan. 28, 2021). The Court finds this reasoning persuasive. Accordingly, the Court finds that it is bound by Justice Kavanaugh's opinion.

Even if Justice Kavanaugh's opinion were dicta, the Court would nonetheless reject Defendants' position. Defendants contend that several persuasive post-AAPC district court decisions support dismissing Lerner's claim. (Defs.' Mot. at 9). Including the cases referenced in Defendants' Reply (ECF No. 54) and Statement of Supplemental Authority (ECF No. 62), Defendants cite to four cases previously decided by various district courts: Creasy v. Charter Communications, Inc., 489 F.Supp.3d 499 (E.D.La. 2020); Lindenbaum v. Realgy, LLC, No. 1:19 CV 2862, --- F.Supp.3d ---, 2020 WL 6361915 (N.D.Ohio Oct.

29, 2020);[2] Cunningham v. Matrix Financial Services, LLC, No. 4:19-CV-896, 2021 WL 1226618 (E.D.Tex. Mar. 31, 2021); and Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc., No. 5:20-CV-38-OC-30PRL, 2020 WL 7346536 (M.D.Fla. Dec. 11, 2020)[3]. In these cases, the courts found that the Supreme Court's AAPC decision required dismissal of TCPA claims asserted against non-government defendants where the cause of action arose during the Unconstitutional Period.

The weight of the post-AAPC district court decisions analyzing this issue, however, augur against granting Defendants' Motion. See Moody v. Synchrony Bank, No. 5:20-CV-61 (MTT), --- F.Supp.3d ---, 2021 WL 1153036, at *6 (M.D.Ga. Mar. 26, 2021); Massaro v. Beyond Meat, Inc., No. 320CV00510AJBMSB, 2021 WL 948805 (S.D.Cal. Mar. 12, 2021); Miles v. Medicredit, Inc., No. 4:20-CV-01186 JAR, 2021 WL 1060105 (E.D.Mo. Mar. 18, 2021); Boisvert v. Carnival Corp., No. 8:20-CV-2076-30SPF, 2021 WL 1329079 (M.D.Fla. Mar. 12, 2021); Stephen v. Rite Aid Corp., No. CV 20-5601-MWF (PDX), 2021 WL 1255423 (C.D.Cal. Feb. 2, 2021); McCurley, 2021 WL 288164; Less v. Quest Diagnostics Inc., No. 3:20 CV 2546, 2021 WL 266548 (N.D.Ohio Jan. 26, 2021); Bonkuri v. Grand Caribbean Cruises, Inc., No. 0:20-CV-60638-WPD, 2021 WL 612212 (S.D.Fla. Jan. 19, 2021); Rieker v. Nat'l Car Cure, LLC, No. 3:20CV5901-TKW-HTC, 2021 WL

---

[2] This decision is currently on appeal before the United States Court of Appeals for the Sixth Circuit. See Lindenbaum v. Realgy, LLC, No. 20-4252 (6th Cir. Nov. 11, 2020).

[3] The judge who issued this decision later wrote an opinion reaching the opposite conclusion. See Boisvert v. Carnival Corp., No. 8:20-CV-2076-30SPF, 2021 WL 1329079, at *2 (M.D.Fla. Mar. 12, 2021) ("Upon further reflection, the Court departs from its earlier opinion because, since the Court's Order in Hussain, every court faced with this same issue has concluded that a plaintiff may continue to bring § 227(b) claims post-AAPC.").

210841 (N.D.Fla. Jan. 5, 2021); Trujillo v. Free Energy Sav. Co., LLC, No. 5:19-CV-02072-MCS-SP, 2020 WL 7768722 (C.D.Cal. Dec. 21, 2020); Shen v. Tricolor Cal. Auto Grp., LLC, No. CV 20-7419 PA (AGRX), 2020 WL 7705888 (C.D.Cal. Dec. 17, 2020); Abramson v. Fed. Ins. Co., No. 8:19-CV-2523-T-60AAS, 2020 WL 7318953 (M.D.Fla. Dec. 11, 2020). In each of these cases, the district courts denied motions to dismiss based on the same or similar argument to the one advanced by Defendants in this action.[4]

These decisions are also in accord with the lower courts to consider this issue prior to the AAPC decision. See, e.g., Duguid v. Facebook, 926 F.3d 1146 (9th Cir. 2019); Rosenberg v. LoanDepot.com LLC, 435 F.Supp.3d 308 (D.Mass. 2020); Perrong v. Liberty Power Corp., 411 F.Supp.3d 258 (D.Del. 2019); Smith v. Truman Rd. Dev., LLC, 414

[4] Following the AAPC decision, district courts in cases with slightly different procedural postures have similarly found that plaintiffs could advance TCPA claims against non-governmental defendants that accrued during the Unconstitutional Period. See, e.g., DiStasio v. Edible Arrangements, LLC, No. 3:16-CV-00538 (VLB), 2021 WL 1087499, at *4 (D.Conn. Feb. 1, 2021) (denying motion for judgment on the pleadings upon finding that the Supreme Court had "severed the unconstitutional government debt exception" and therefore declining to find that the TCPA "was unconstitutional at the time suit was filed"); Schmidt v. AmerAssist A/R Sols. Inc., No. CV-20-00230-PHX-DWL, 2020 WL 6135181, at *4 n.2 (D.Ariz. Oct. 19, 2020) (noting in the context of a motion for default judgment that plaintiff "has not alleged that her purported debt was owned or guaranteed by the government, so [AAPC] does not affect this case"); Lacy v. Comcast Cable Commc'ns, LLC, No. 3:19-CV-05007-RBL, 2020 WL 4698646, at *1 (W.D.Wash. Aug. 13, 2020) (lifting stay of TCPA case and finding that "while the Supreme Court invalidated the debt-collection exception, it severed the provision rather than striking down the TCPA's entire robocall restriction"); Komaiko v. Baker Techs., Inc., No. 19-CV-03795-DMR, 2020 WL 5104041, at *2 (N.D. Cal. Aug. 11, 2020) (lifting stay of TCPA case upon finding that "[b]ecause the government-debt exception is not at issue in this case, the decision in [AAPC] does not impact Plaintiffs' claims"); Burton v. Fundmerica, Inc., No. 8:19-CV-119, 2020 WL 4504303, at *1 n.2 (D.Neb. Aug. 5, 2020) (finding in the context of a motion for default judgment that although the government-debt exception was unconstitutional, "it was severable from the TCPA as a whole—so, the provision on which the plaintiff's claim relies survived").

F.Supp.3d 1205 (W.D.Mo. 2019); Katz v. Liberty Power Corp., LLC, No. 18-CV-10506-ADB, 2019 WL 4645524 (D.Mass. Sept. 24, 2019); Sliwa v. Bright House Networks, LLC, No. 216CV235FTM29MRM, 2018 WL 1531913 (M.D.Fla. Mar. 29, 2018).

Taken together, the district courts that have adopted Defendants' position are vastly outnumbered by those that have rejected it. While "no decision of a district court judge is technically binding on another district court judge, even within the same district . . . [o]pinions of other district judges are, however, 'persuasive authority entitled to substantial deference.'" Nat'l Union Fire Ins. Co. v. Allfirst Bank, 282 F.Supp.2d 339, 351 (D.Md. 2003) (quoting Bryant v. Smith, 165 B.R. 176, 180–181 (W.D.Va. 1994)). In this case, the sheer volume of district courts to reject the position taken by Defendants in this case is highly persuasive. Justice Kavanaugh's opinion—whether dicta or not—is similarly persuasive. As the United States District Court for the Southern District of California held:

> Even if the Court concluded that Justice Kavanaugh's footnote is dicta, this Court is nevertheless persuaded by this unambiguous announcement that the AAPC decision is not meant to disturb the entirety of the TPCA. Recognizing the preeminence of this nation's highest court, this Court cannot ignore such a clear statement, whether it be considered dicta or a holding.

Massaro, 2021 WL 948805, at *8 (citation omitted). Defendants have not presented sufficiently compelling arguments to overcome these persuasive authorities. Accordingly, the Court will decline to dismiss Lerner's claim for a lack of subject-matter jurisdiction.

## III. CONCLUSION

For the foregoing reasons, the Court will deny Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 48). A separate Order follows.

Entered this 5th day of May, 2021.

/s/
George L. Russell, III
United States District Judge

**EXHIBIT D**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**DIANA MEY,**

Plaintiff,

v.

**CIVIL ACTION NO. 5:19-CV-315**
Judge Bailey

**MEDGUARD ALERT, INC.,**
**SAFE HOME SECURITY, INC.,**
**LIFEWATCH, INC.** and **A HOLDING GROUP, LLC,**

Defendants.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS

Pending before this Court is Defendants' Motion to Dismiss the Second Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can be Granted [Doc. 73], filed March 11, 2021. Plaintiff filed a response [Doc. 80] to the Motion on March 25, 2021, and defendants filed a reply [Doc. 83] on March 31, 2021. Accordingly, the Motion is fully briefed and is ripe for decision. For the reasons that follow, the Court will deny the Motion.

## BACKGROUND

This case arises out of alleged violations of the Telephone Consumer Protection Act ("TCPA") and the West Virginia Consumer Credit and Protection Act ("WVCCPA"). According to the Second Amended Complaint, defendants conducted a common enterprise whereby they engaged telemarketers to make unsolicited calls to the plaintiff on telephone numbers listed on the Do Not Call Registry. [Doc. 67 at 3–5]. Plaintiff alleges she received

numerous unsolicited telemarketing calls from each defendant, including one on November 2, 2015, in which an agent represented he was calling on behalf of Lifewatch, numerous calls from the same number, a call on August 22, 2018, with a prerecorded voice message from "Sarah from Be Safe At Home," and one on August 20, 2019, where, after feigning interest in the product/services, plaintiff was transferred to a live agent who represented that she was affiliated with Five Diamond Home Security. [Doc. 67 at 6]. Plaintiff alleges that Medguard was doing business as "Be Safe at Home" and that a third-party individual received a similar call from "Be Safe at Home" before being charged by MedGuard. [Id.]. Further, plaintiff alleges that Safe Home Security was doing business as "Five Diamond Home Security," and that the agent indicated that the installer for Five Diamond Home Security would be Michael Blakeney, who is alleged to be a regional manager for Security Systems, Inc., a company doing business as Safe Home Security. [Id. at 7].

In their memorandum in support of their motion to dismiss, defendants argue, first, that in light of the decision in ***Barr v. Amer. Assn. Of Political Consultants, Inc.***, 140 S.Ct. 2335 (2020) ("***Barr***"), this Court lacks subject matter jurisdiction over the TCPA claims in this case. In that case, the Supreme Court found that a 2015 amendment to the TCPA which exempted calls seeking collection of debts to the Government was unconstitutional. Defendants argue that the statute was unconstitutional and void for a five-year period which includes the calls in this case. Defendants argue that footnote 12 of that opinion, which states that "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction," is but "pure obiter dicta that is 'unnecessary to the decision in the case' and thus is not binding." [Doc. 74 at 15] (citation omitted). Second, defendants argue that the WVCCPA claims should be dismissed for

failure to state a claim because the Second Amended Complaint fails to plead "an ascertainable loss, a causal connection or that [plaintiff] met the notice requirement," all of which defendants contend is required under W.Va. Code § 46A-6F-501. Third, the defendants argue that at least one of the alleged calls, which took place November 23, 2015, must be dismissed because it is outside the WVCCPA's two-year statute of limitations. Finally, defendants request that, if the Court does not dismiss the claims, the case should be stayed pending a decision in ***Facebook, Inc. v. Duguid***.

## LEGAL STANDARD

### Motion to Dismiss for Lack of Subject Matter Jurisdiction

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction. A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. ***Adams v. Bain***, 697 F.2d 1213, 1219 (4th Cir. 1982); ***Mims v. Kemp***, 516 F.2d 21 (4th Cir. 1975). Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction. No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See* ***Materson v. Stokes***, 166 F.R.D. 368, 371 (E.D. Va. 1996). Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. *See* Fed. R. Civ. P. 12(h)(3).

**Motion to Dismiss for Failure to State a Claim**

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570 (2007); *see also* ***Giarratano v. Johnson***, 521 F.3d 298, 302 (4th Cir. 2008) (applying the ***Twombly*** standard and emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. ***Edwards v. City of Goldsboro***, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. ***Anheuser-Busch, Inc. v. Schmoke***, 63 F.3d 1305, 1312 (4th Cir. 1995). In ***Twombly***, the Supreme Court, noted that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." ***Twombly***, 550 U.S. at 555, 570 (upholding the dismissal of a complaint where the plaintiffs did not "nudge[] their claims across the line from conceivable to plausible.").

This Court is well aware that "[m]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." ***Williams v. Branker***, 462 F. App'x 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into

one for summary judgment." ***Witthohn v. Fed. Ins. Co.***, 164 F. App'x 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. ***Id.*** at 396–97.

**ANALYSIS**

First, the Court turns to defendants' argument that the Court lacks jurisdiction over the TCPA claims. This Court recently dealt with the same arguments regarding the impact of ***Barr*** in ***Mey v. John Doe Defendant I et al***, Civ. A. No. 5:19-CV-237 [Doc. 126], (N.D. W.Va. April 23, 2021):

> Certain defendants contend that Count I of plaintiff's Second Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1), because this Court lacks subject matter jurisdiction, in that § 227(b)(1)(A) of the TCPA was unconstitutional during the time the calls on which plaintiff rests her claims were made.
>
> In ***Barr v. Amer. Assn. Of Political Consultants, Inc.***, 140 S.Ct. 2335 (2020) ("***Barr***"), the Supreme Court, in a fractured decision, held that the 2015 amendment to the TCPA exempting calls seeking collection of debts to the Government was unconstitutional.
>
> While the district courts are split on the issue of whether ***Barr*** has any effect on the liability of calls other than Government collection calls, the weight of authority appears to be to the effect that those calls and callers are unaffected by ***Barr***.
>
> In ***Barr***, "Justice Kavanaugh, joined by the Chief Justice and Justice

Alito, concluded in Parts I and II that this amendment was unconstitutional because it favored debt-collection speech over political or other speech in violation of the First Amendment. 140 S.Ct. at 2342–48. In Part III, these three Justices concluded that the 2015 amendment should be severed leaving the bulk of the TCPA intact. ***Id.*** at 2348–56. Justice Sotomayor, who concurred, would have based Parts I and II on a different ground (applying intermediate as opposed to strict scrutiny to the speech) but concurred in the conclusion and in Part III with respect to severability. ***Id.*** at 2356–57. Justices Breyer, Ginsburg and Kagan, who dissented in part, disagreed that the amendment violated the First Amendment, but ultimately concurred with Part III finding the amendment severable. Id. at 2357–63. Justices Gorsuch and Thomas agreed with Parts I and II that the amendment was unconstitutional but dissented on the issue of severability. ***Id.*** at 2363–67. Thus, '[s]ix Members of the Court ... conclude[d] that Congress ha[d] impermissibly favored debt-collection speech over political and other speech in violation of the First Amendment' and '[s]even Members of the Court conclude[d] that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute.' ***Id.*** at 2343." ***McCurley v. Royal Sea Cruises, Inc.***, 2021 WL 288164 (S.D. Cal. Jan. 28, 2021).

As the Court noted, "the general rule is that 'an unconstitutional statutory amendment "is a nullity" and "void" when enacted, and for that

reason has no effect on the original statute.' ***AAPC***, 140 S.Ct. at 2353 (quoting ***Frost v. Corp. Comm'n of Okla.***, 278 U.S. 515, 526–27 (1929)). If the government debt exception provision was void at its inception in 2015, it would have no effect on the pre-2015 text of the statute. Since there are no constitutional defects to the pre-2015 text, the statute's enforceability is unaffected by the amendment. The conduct at issue here was not impacted by the exception." ***Less v. Quest Diagnostics Inc.***, 2021 WL 266548, at *1 (N.D. Ohio Jan. 26, 2021) (Zouhary, J.).

In his decision, Justice Kavanaugh directly addressed the issue, stating:

> [A]lthough our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. . . . On the other side of the ledger, **our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.**

140 S.Ct. at 2355, n.12.

The cases which are relied upon by the defendants dismissed the above footnote as dicta. *See* ***Lindenbaum v. Realgy, LLC,*** 2020 WL

Case 3:20-cv-01150-RNC Document 95 Filed 01/20/21 Page 50 of 85

6361915 (N.D. Ohio Oct. 29, 2020), ***Creasy v. Charter Comm'ns Inc.***, 2020 WL 5761117 (E.D. La. Sept. 28, 2020) and ***Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.***, 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020).

As noted in ***McCurley***, *supra*:

> Even if it was only dicta, as argued by Defendant, the district court is not at liberty to completely ignore this pronouncement. *See, e.g.*, ***United States v. Montero-Camargo***, 208 F.3d 1122, 1133 n.17 (9th Cir. 2000) ("Supreme Court dicta have a weight that is greater than ordinary judicial dicta as prophecy of what the court might hold; accordingly we do not blandly shrug them off because they were not a holding.") (quotation omitted). The Eleventh Circuit articulately explained:
>
> > We have always believed that when the Founders penned Article III's reference to the judicial power being rested 'in one Supreme Court and in such inferior Courts' as Congress may establish, they used 'superior' and 'inferior' as contrasting adjectives, with us being on the short end of the contrast. It would never occur to use to tell the Supreme Court that we would decide our cases based on our analysis of its

> decisions, not its own analysis of them if that analysis had been announced in a case where it was not essential to the result.... [T]here is dicta, and then there is Supreme Court dicta.

***Schwab v. Crosby***, 451 F.3d 1308, 1325 (11th Cir. 2006) (citation omitted). The Eleventh Circuit cites numerous cases recognizing that "dicta from the Supreme Court is not something to be lightly cast aside." ***Id.***; *see, e.g.,* ***McCoy v. Mass. Ins. of Tech.***, 950 F.2d 13, 19 (1st Cir. 1991) ("We think that federal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when ... a dictum is of recent vintage and not enfeebled by any subsequent statement."); ***Official Comm. Of Unsecured Creditors of Cybergenics Corp. v. Chinery***, 330 F.3d 548, 561 (3rd Cir. 2003) (en banc) ("Although the Committee is doubtless correct that the Supreme Court's dicta are not binding on us, we do not view it lightly."); ***Wynne v. Town of Great Falls***, 376 F.3d 292, 298 n.3 (4th Cir. 2004) ("[W]ith inferior courts, like ourselves ... carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative."); ***United States v. Becton***, 632 F.2d 1294, 1296

n.3 (5th Cir. 1980) ("We are not bound by dicta, even of our own court.... Dicta of the Supreme Court are, of course, another matter.").

***McCurley***, 2021 WL 288164, at *3.

Most telling, in ***American Assoc. of Political Consultants, Inc. v. FCC***, 923 F.3d 159 (4th Cir. 2019), the decision which was affirmed by ***Barr***, the Court held:

> The Plaintiffs maintain in their appellate submissions that the constitutionally flawed debt-collection exemption invalidates the entirety of the automated call ban, rendering severance of the debt-collection exemption improper. The Government argues, however, that the controlling authorities require a severance of the exemption from the automated call ban.
>
> For several reasons, we agree with the Government on the severance issue. First and foremost, the explicit directives of the Supreme Court and Congress strongly support a severance of the debt-collection exemption from the automated call ban. Furthermore, the ban can operate effectively in the absence of the debt-collection exemption, which is clearly an outlier among the statutory exemptions.
>
> In circumstances such as these, the Supreme Court has recognized that severance is the preferred remedy. As the

Chief Justice explained in the Court's ***NFIB v. Sebelius*** decision, if Congress wants the balance of a statute to stand when one aspect is constitutionally flawed, a reviewing court "must leave the rest of the [statute] intact." *See* 567 U.S. 519, 587 (2012). By severing the flawed portion of a statute, the court can limit the impact of its ruling of constitutional infirmity. *See* ***Ayotte v. Planned Parenthood of N. New Eng.***, 546 U.S. 320, 328 (2006); ***United States v. Under Seal***, 819 F.3d 715, 721–22 (4th Cir. 2016) (recognizing that severance of a flawed portion of a statute prevents a court from nullifying too much of that enactment). The general rule is thus " 'that partial ... invalidation [of a statute] is the required course.' " *See* ***Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.***, 561 U.S. 477, 508 (2010) (quoting ***Brockett v. Spokane Arcades, Inc.***, 472 U.S. 491, 504 (1985)).

Complementing the Supreme Court's strong preference for a severance in these circumstances, Congress has explicitly mandated that, if a TCPA provision is determined to be constitutionally infirm, severance is the appropriate remedy. That is, Congress has directed that, if any part of the TCPA "is held invalid, the remainder ... shall not be affected." *See* 47 U.S.C. § 608. That severability provision eases our inquiry on

Case 3:20-cv-01558-JAM Document 95 Filed 04/28/2021 Page 54 of 85

the severance issue and creates "a presumption that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision." *See* ***Alaska Airlines***, 480 U.S. at 686 (citing ***INS v. Chadha***, 462 U.S. 919, 932 (1983)). As a result, severance of the debt-collection exemption from the balance of the automated call ban will comply with the explicit directive of Congress and with controlling Supreme Court precedent.

We are also satisfied that a severance of the debt-collection exemption will not undermine the automated call ban. For twenty-four years, from 1991 until 2015, the automated call ban was "fully operative." ***Free Enter. Fund***, 561 U.S. at 509 (citations and internal quotation marks omitted). As a result, the Plaintiffs simply cannot show that excising the debt-collection exemption will hamper the function of the ban. *See* ***Alaska Airlines***, 480 U.S. at 686 (explaining that only "strong evidence" overcomes presumption created by severability clause). In these circumstances, we agree with the Government and direct the severance of the debt-collection exemption from the balance of the automated call ban.

***Am. Ass'n of Pol. Consultants, Inc. v. Fed. Commc'ns Comm'n***, 923 F.3d 159, 171 (4th Cir. 2019), *aff'd sub nom.* ***Barr v. Am. Ass'n of Pol.***

***Consultants, Inc***, 140 S.Ct. 2335 (2020).

Those courts which have found the TCPA to be valid with regard to non-Government debt calls, even in light of ***Barr***, include ***McCurley***, *supra;* ***Less v. Quest Diagnostics Inc.***, 2021 WL 266548 (N.D. Ohio Jan. 26, 2021); ***Stoutt v. Travis Credit Union***, 2021 WL 99636 (E.D. Cal. Jan. 12, 2021); ***Rieker v. Nat'l. Car Cure, LLC***, 2021 WL 210841 (N.D. Fla. Jan. 5, 2021); ***Trujillo v. Free Energy Sav. Co., LLC***, 2020 WL 8184336 (C.D. Cal. Dec. 21, 2020); ***Shen v. Tricolor California Auto Group, LLC***, 2020 WL 7705888 (C.D. Cal. Dec. 17, 2020); ***Abramson v. Federal Ins. Co.***, 2020 WL 7318953 (M.D. Fla. Dec. 11, 2020), ***Buchanan v. Sullivan***, 2020 WL 6381563 (D. Neb. Oct. 30, 2020); ***Schmitt v. AmerAssist A/R Solutions Inc.***, 2020 WL 6135181 (D. Ariz. Oct. 19, 2020); ***Canady v. Bridgecrest Acceptance Corp.***, 2020 WL 5249263 (D. Ariz. Sept. 3, 2020); ***Komaiko v. Baker Techs., Inc.***, 2020 WL 5104041 (N.D. Cal. Aug. 11, 2020); and ***Burton v. Fundmerica, Inc.***, 2020 WL 4504303 (D. Neb. Aug. 5, 2020).

For all the reasons stated above, this Court finds that the TCPA, except for the 2015 amendment, remains and remained in full force and effect throughout its tenure.

***Mey v. John Doe Defendant I et al***, Civ. A. No. 5:19-CV-237 [Doc. 126 at 20–27], (N.D. W.Va. April 23, 2021) (Bailey, J.). This Court finds no reason to deviate from the above analysis.

Second, this Court finds that plaintiff has stated a claim under W.Va. Code

§ 46-6F-502, which does not require that plaintiff sustain an ascertainable loss of money or property or require that plaintiff provide a notice and right to cure. Defendants argue that these requirements, set forth in W.Va. Code § 46A-6-106(a), apply to plaintiff's claims brought under W.Va. Code § 46-6F-502 by virtue of a reference to the former in § 46A-6F-501(8). § 46A-6F-502(1) provides:

> (1) If a telemarketer violates the provisions of section five hundred one of this article, the consumer has a cause of action to recover actual damages and, **in addition, a right to recover from the violator a penalty in an amount**, to be determined by the court, of not less than one hundred dollars nor more than three thousand dollars. No action brought pursuant to the provisions of this subsection may be brought more than two years after the date upon which the violation occurred or the due date of the last scheduled payment of the agreement, whichever is later.

(Emphasis added). The above-emphasized text makes clear that the private cause of action created by this section does not require actual damages, in contrast to the private cause of action created by § 46A-6-106, where it is explicitly required. Nor does this Court find defendant's assertion that these sections are interrelated reason enough to graft the notice requirement of § 46A-6-106(c) onto § 46A-6F-502. The section referenced by defendants makes it an unfair or deceptive practice "[t]o engage in any 'unfair methods of competition and unfair or deceptive acts or practices' as specified in § 46A-6-102(f) of this code and made unlawful by the provisions of § 46A-6-102 of this code." W.Va. Code § 46A-6F-501. But this is only one of nine definitions set forth, the other eight of which do not reference article 6.

Third, as to the November 23, 2015, call, the parties agree that this call is outside the WVCCPA's statute of limitations. Plaintiff also concedes that she does not seek to recover under the WVCCPA for that call, but that "[c]ertain of the calls referenced in the Second Amended Complaint are actionable under the TCPA's 4-year limitations period and merely evidence the origins of subsequent calls that were made within the WVCCPA's 2-year limitations period." [Doc. 80 at 7]. As plaintiff is not seeking to recover under the WVCCPA for that call, the Court declines to decide the issue of whether Lifewatch failed to seasonably raise the statute of limitations as an affirmative defense.

Finally, defendants ask this Court to stay this case pending a decision in ***Facebook, Inc. v. Duguid***. The day after defendants filed their reply in support of their Motion, that case was decided. *See* ***Facebook, Inc. v. Duguid***, 141 S.Ct. 1163 (2021). Accordingly, insofar as the period of the stay would have already ended, defendants request for a stay is moot.

## CONCLUSION

Upon consideration of the above, Defendants' Motion to Dismiss the Second Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can be Granted **[Doc. 73]** is hereby **DENIED**.

It is so **ORDERED**.

**DATED**: April 27, 2021.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**

**EXHIBIT E**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM GUNN, Individually and on Behalf of All Others Similarly Situated, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:19CV3129 HEA |
| PROSPECTS DM, LLC, *et al.*, | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM, AND ORDER

This Telephone Consumer Protection Act, 47 U.S.C.§ 227 et seq. ("TCPA") matter is before the Court on the motion to dismiss for lack of subject matter jurisdiction or in the alternative motion to stay proceedings filed by Defendants ICOT Hearing Systems, LLC, and ICOT Holdings, LLC (collectively, "ICOT"), [Doc. No 38]. Plaintiff has responded, Defendant has replied, and Plaintiff has filed a sur-reply with leave of court. This motion is ripe for adjudication. For the reasons set forth below, Defendants' motion to dismiss is denied. The alternative motion to stay is denied as moot.

### Facts and Background

Plaintiff alleges that he received numerous unsolicited phone calls in St. Louis, Missouri, from Prospects DM ("PDM") on behalf of "Listen Clear," the trade name of Defendant ICOT Hearing Systems, LLC. In response to these calls,

he filed suit under the TCPA against both PDM and the entities associated with Listen Clear, ICOT. PDM has subsequently been dismissed.

Specifically, Plaintiff alleges Defendants violated § 227(b)(1)(A)(iii) of the TCPA by placing non-emergency telephone calls to consumers' cellular telephone numbers by using an automatic telephone dialing system ("ATDS") and an artificial or prerecorded voice, without their prior express consent. In Plaintiff's case, he alleges 150 calls were made to his personal telephone line beginning in March 2019 using an artificial or prerecorded voice without his prior express written consent.

Defendants move to dismiss pursuant to Rule 12(b)(1), arguing this Court lacks subject-matter jurisdiction over Plaintiff's claims because the TCPA provision at issue, § 227(b)(1)(A)(iii), was unconstitutional at the time it allegedly called Plaintiff, based upon the Supreme Court's recent decision in *Barr v. Am. Ass'n of Political Consultants, Inc*., 140 S. Ct. 2335 (2020) ("AAPC"). Alternatively, Defendants move to Stay pending a ruling in *Facebook, Inc. v Duguid*, 141 S. Ct. 1163, 1167 (2021).

**Standard of Review**

A Rule 12(b)(1) motion challenges the federal court's subject matter jurisdiction over a cause of action. In deciding a Rule 12(b)(1) motion, a district court is required to distinguish between a facial attack and a factual attack. *Croyle*

Case: 4:19-cv-03129-HEA Doc. #: 53 Filed: 04/19/21 Page: 3 of 7 PageID #: 476

*by & through Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018); *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (internal quotation marks and citation omitted). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a factual attack, the Court "may look outside the pleadings to affidavits or other documents." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018). This does not convert the Rule 12(b)(1) motion into one for summary judgment, however. *Id.* (citation omitted). Instead, the party invoking federal jurisdiction must prove jurisdictional facts by a preponderance of the evidence. *Id.* Further, Plaintiff bears the burden of proving jurisdiction exists. *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990); *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019) (citation omitted). Because Defendants challenge this Court's jurisdiction based on the allegations in the complaint, the Court accepts Plaintiff's allegations as true.

## Discussion

### Subject Matter Jurisdiction

In *AAPC*, the Supreme Court held that the "government-debt exception," which permitted robocalls "solely to collect a debt owed to or guaranteed by the United States" while leaving robocalls involving other types of content subject to

the TCPA's prohibitions, resulted in an unconstitutional content-based restriction on free speech. 140 S. Ct. at 2347. The Court did not invalidate the entire statute. Rather, it held that the invalid government-debt exception could be severed from the statute. *Id.* at 2356 ("We hold that the 2015 government-debt exception added an unconstitutional exception to the law. We cure that constitutional violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute.").[1]

In support of its motion to dismiss, Defendants argue that the government-debt exception made the entirety of § 227(b)(1)(A)(iii) unconstitutional and unenforceable from 2015, when the TCPA was amended to add the government-

[1] Justice Kavanaugh, joined by Chief Justice Roberts and Justice Alito, concluded in Parts I and II that this amendment was unconstitutional because it favored debt-collection speech over political or other speech in violation of the First Amendment. *McCurley v. Royal Sea Cruises*, Inc., No. 17-CV-00986-BAS-AGS, 2021 WL 288164, at *2 (S.D. Cal. Jan. 28, 2021) (citing *AAPC*, 140 S. Ct. at 2342-48). In Part III, these three Justices concluded that the 2015 amendment should be severed, leaving the bulk of the TCPA intact. *Id.* (citing *AAPC* at 2348-56). Justice Sotomayor, who concurred, would have based Parts I and II on a different ground (applying intermediate as opposed to strict scrutiny to the speech) but concurred in the conclusion and in Part III with respect to severability. *Id.* (citing *AAPC* at 2356–57). Justices Breyer, Ginsburg, and Kagan, who dissented in part, disagreed that the amendment violated the First Amendment, but ultimately concurred with Part III finding the amendment severable. *Id.* (citing *AAPC* at 2357-63). Justices Gorsuch and Thomas agreed with Parts I and II that the amendment was unconstitutional but dissented on the issue of severability. *Id.* (citing *AAPC* at 2363-67). Thus, six Justices agreed that, in adding the government-debt exception to the statute in 2015, Congress had impermissibly favored debt-collection speech over political and other speech in violation of the First Amendment and seven Justices agreed that the proper remedy for this constitutional infirmity was to invalidate and sever the government debt exception, leaving the rest of the *TCPA* intact. *Stoutt v. Travis Credit Union*, No. 2:20-CV-01280 WBS AC, 2021 WL 99636, at *2 (E.D. Cal. Jan. 12, 2021).

debt exception, to July 6, 2020, the date of the AAPC decision; and that because Plaintiff alleges the calls at issue were from March 2019 to November 2019, the TCPA was unenforceable at the time the calls were made and this Court lacks jurisdiction to enforce any alleged violations under the statute. Defendants rely on recent district court opinions following AAPC that conclude that courts lack subject-matter jurisdiction to hear claims brought under § 227(b)(1)(A)(iii) for telephone calls alleged to have taken place when the statute was unconstitutional and could not be enforced. See *Hussain v. Sullivan Buick-Cadillac-GMC Truck*, Inc., No. 5:20-CV-38-OC-30PRL, 2020 WL 7346536, *3 (M.D. Fla. Dec. 11, 2020) ("federal courts lack subject matter jurisdiction over alleged violations from enactment of the 2015 amendment to the July 6, 2020 decision in AAPC"); *Lindenbaum v. Realty, LLC*, No. 1:19 CV 2862, 2020 WL 6361915, *7 (N.D. Ohio Oct. 29, 2020) ("Because the statute at issue was unconstitutional at the time of the alleged violations, this Court lacks jurisdiction over this matter."); *Creasy v. Charter Commc'ns, Inc.*, No. CV 20-1199, 2020 WL 5761117, *2 (E.D. La. Sept. 28, 2020) ("That fact deprives the Court of jurisdiction over much of this action."). (Doc. No. 24 at 1, 5-6).

The Eighth Circuit has not yet addressed this issue. However, the clear majority of cases to consider this issue have allowed parties to continue to bring § 227(b) claims post-AAPC. See *Miles v. Medicredit, Inc.*, No. 4:20-CV-01186 JAR,

2021 WL 1060105, at *3 (E.D. Mo. Mar. 18, 2021); *McCurley*, 2021 WL 288164, at *1 (S.D. Cal. Jan. 28, 2021); *Less v. Quest Diagnostics Inc.*, No. 3:20 CV 2546, 2021 WL 266548, at *1 (N.D. Ohio Jan. 26, 2021); *Bonkuri v. Grand Caribbean Cruises, Inc.*, No. 0:20-CV-60638-WPD, 2021 WL 612212, at *1-3 (S.D. Fla. Jan. 19, 2021); *Stoutt*, 2021 WL 99636, at *5; *Trujillo v. Free Energy Savings, Co., LLC*, No. 5:19-cv-02072-MCS-SP, 2020 WL 8184336, at *5 (C.D. Cal. Dec. 21, 2020); *Shen v. Tricolor California Auto Grp.*, LLC, No. CV 20-7419 PA (AGRX), 2020 WL 7705888, at *5 (C.D. Cal. Dec. 17, 2020).; *Abramson v. Federal Insurance Company, Bay Area Health, LLC*, No. 8:19-cv-2523, 2020 WL 7318953 (M.D. Fla. Dec. 11, 2020); *Buchanan v. Sullivan*, No. 8:20-CV-301, 2020 WL 6381563, at *3 (D. Neb. Oct. 30, 2020); *Schmidt v. AmerAssist A/R Sols. Inc.*, No. CV-20-00230-PHX-DWL, 2020 WL 6135181, at *4 n.2 (D. Ariz. Oct. 19, 2020); *Lacy v. Comcast Cable Communications, LLC*, No. 3:19-cv-05007-RBL, 2020 WL 4698646, at *1 (W.D. Wash. Aug. 13, 2020); *Komaiko v. Baker Techs., Inc.*, No. 19-cv-03795-DMR, 2020 WL 5104041, at *2 (N.D. Cal. Aug. 11, 2020); *Burton v. Fundmerica, Inc.*, No. 8:19-CV-119, 2020 WL 4504303, at *1 n.2 (D. Neb. Aug. 5, 2020). The Court finds these decisions persuasive and agrees that Justice Kavanaugh's statement signals the intent of the Supreme Court and what it would hold in future cases and, as such, may not be dismissed by a district court. *McCurley*, 2021 WL 288164, at *3.

**Stay pending a ruling in *Facebook, Inc. v Duguid***

Defendants alternatively seek a stay of this matter pending the Supreme Court's ruling in *Facebook, Inc. v. Duguid.* This motion is denied as moot. The Supreme Court issued its Opinion in *Duguid* on April 1, 2021.

**Conclusion**

Based upon the foregoing analysis, the Court concludes that it has subject matter jurisdiction in this case. The decision in *Duguid* by the Supreme Court has rendered Defendants' alternative motion to stay moot.

Accordingly,

**IT IS HEREBY ORDERED** that the motion to dismiss for lack of subject matter jurisdiction, [Doc. No 38], is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' alternative motion to stay is **DENIED as moot**.

Dated this 19th day of April, 2021.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **DIANN L. MOODY,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:20-cv-61 (MTT)** |
| **SYNCHRONY BANK, *et al.*,** | ) | |
| **Defendants.** | ) | |

## ORDER

After an initial motion to dismiss and an amended complaint, Moody's only remaining claim is for alleged use of prerecorded voice calls in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Docs. 11; 12. Defendant Synchrony Bank moves to dismiss Plaintiff Diann L. Moody's amended complaint. Doc. 14. Synchrony argues only that "the Supreme Court has ruled that the TCPA was unconstitutional from November 2015 through June 2020." Doc. 14-1 at 5. But the Supreme Court has not ruled that. Rather, the Supreme Court ruled that an exception to the TCPA for government debt collectors was unconstitutional. *Barr v. Am. Ass'n of Pol. Consultants*, *Inc.*, 140 S. Ct. 2335, 2343 (2020) ("*AAPC*"). Moody's allegations do not involve the collection of government debt. Instead, Synchrony argues that even though *AAPC* held that the government-debt exception was severable from the rest of the TCPA, the *AAPC* decision still rendered the *entirety* of the TCPA invalid from 2015 to 2020.

To be clear, a three-Justice plurality of the Court in *AAPC* already rejected that interpretation of the Court's order, concluding that "our decision today does not negate the liability of parties [such as Synchrony] who made robocalls covered by the robocall restriction." *Id*. at 2355 n.12 (plurality opinion). Nor did a concurrence or dissent in *AAPC* embrace Synchrony's argument. As discussed below, it is a long chain of reasoning that leads from the *AAPC* decision to Synchrony's argument that the TCPA was invalid from 2015 to 2020.

That is why Synchrony's statement that "the Supreme Court has ruled that the TCPA was unconstitutional from November 2015 through June 2020" is misleading. Still, the Court attempts to follow Synchrony's long chain of reasoning, then explain why it is mistaken, below.

## I. STANDARD

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Rule12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted). But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation marks and citation omitted). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citations omitted).

## II.   DISCUSSION

The TCPA prohibits telephone calls made using an automatic telephone dialing system or a prerecorded voice. 47 U.S.C. § 227(b)(1)(A)(iii). In 2015, Congress amended that restriction to exempt calls "'made solely to collect a debt owed to or guaranteed by the United States.'" *AAPC*, 140 S. Ct. at 2344-45 (plurality opinion) (quoting 129 Stat. 588). Four political organizations that wished to make robocalls to cell phones sued, arguing the government-debt exception rendered the prohibition a content-based restriction on speech, in violation of the First Amendment. *Id*. at 2345. In a fractured decision, the Supreme Court held (1) that the government-debt exception violated the First Amendment, but (2) the exception was severable from the remainder of the statute.

Case 3:20-cv-00150-MCTT Document 58 Filed 08/20/21 Page 4 of 18

As noted, Synchrony argues that decision rendered the statute retroactively unconstitutional, as a whole, for the years between 2015 (when the statute was amended) and 2020 (when the Court decided *AAPC*). *See* Doc. 14-1 at 5-6. Synchrony gets there by proposing a novel theory of severability. According to Synchrony, when a court finds that a statutory scheme contains an invalid provision, but that provision is severable, two things happen. First, the statutory scheme is retroactively invalidated *in its entirety*. Second, the remaining, constitutional provisions *become* valid, but only prospectively. Doc. 14-1 at 14-15. The result is that the entire statute was a nullity before the court found it was severable, and the constitutionally valid provisions are valid only after the court decision.[1] Synchrony cites two district court orders that have reached the same conclusion. *Creasy v. Charter Commc'ns, Inc.*, 2020 WL 5761117 (E.D. La. Sept. 28, 2020); *Lindenbaum v. Realgy*, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020); *but see Abramson v. Fed. Ins. Co.*, 2020 WL 7318953, at *2 (M.D. Fla. Dec. 11, 2020) (noting that "the vast majority of cases this Court has reviewed conclude that parties may continue to bring claims under the portions of § 227(b) unaltered by *AAPC*" and listing cases).

---

[1] Which court, and which decision? It is unclear. If, under Synchrony's argument, *appellate* courts can "save" a statute and render it valid, strange disparities would result. For example, imagine if the Fourth Circuit holds in 2019 that a provision of a statute is unconstitutional but severable, and the Fifth Circuit in 2019 holds the same provision is valid. In 2021, the Supreme Court holds it is unconstitutional but severable. Under Synchrony's theory, the constitutionally valid provisions would be effective beginning in 2019 in the Fourth Circuit, but beginning in 2021 in the Fifth Circuit.

Or perhaps Synchrony would argue that Supreme Court decisions alone can end the period when the entirety of the statute is invalid. If so, is the relevant date the day when the decision issues, or when final judgment is entered? And what happens, in the example above, if the Court denies certiorari? Those hypothetical examples illustrate some of the problems with Synchrony's novel theory.

The Eleventh Circuit has not ruled on this issue, nor, apparently, has any other Circuit.[2] The first of the district court orders Synchrony cites, *Creasy*, recognized that its application of the severability doctrine was a novel one. *Creasy*, 2020 WL 5761117, at *5. *Creasy* applied what might be called a doctrine of "limited severability"[3]: the idea that one unconstitutional provision renders the whole statute invalid, that severance saves the constitutional provisions going forward, but severance does not save the statute retroactively (meaning, before the court's decision). Again, the *Creasy* court acknowledged this is not how severability usually works.[4]

Synchrony does not recognize that. Instead, Synchrony presumes that, as a general matter, "the cure of severance does not apply retroactively." Doc. 14-1 at 14. Synchrony cites and discusses at length another Supreme Court case, *Seila Law*, that addressed severability in the context of an unconstitutional provision of the Dodd-Frank

---

[2] The Sixth Circuit, where the plaintiff's appeal of *Lindenbaum* is pending, may be the first. The novelty of the decision has apparently provoked interest: thirty-four states and the District of Columbia have filed amicus briefs for the appellants, and the United States has intervened on behalf of the appellants.

[3] Although the court in *Creasy* did not give its severability doctrine a label, the Court believes a label is helpful, and that one seems as good as any.

[4] "The interpretive character of severability holdings . . . means that they cannot be understood as if they *changed* the law in the manner of a legislative amendment. . . . [a severability decision] is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction. Were it otherwise . . . severability decisions would entail quintessentially legislative work. which is exactly what the Supreme Court has said they do *not* entail." *Lester v. United States*, 921 F.3d 1306, 1315 (11th Cir. 2019) (quotation marks and citations omitted) (statement of Pryor, J., respecting the denial of rehearing en banc); *see also Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313 (1994) ("[W]hen this Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law. In statutory cases the Court has no authority to depart from the congressional command setting the effective date of a law that it has enacted."); John Harrison, *Severability, Remedies, and Constitutional Adjudication*, 83 Geo. Wash. L. Rev. 56, 87 (2014) ("Constitutional invalidity of federal statutes thus is produced by the Constitution itself, not by the order of a court").

Unlike in *Creasy*, the court in *Lindenbaum* assumed severance does not apply retroactively. And in contrast to the view of severability as a question of statutory interpretation, noted above, the *Lindenbaum* court concluded that judicial "[s]everance of the government-debt exception restored the statute to its pre-amendment constitutional standing." *Lindenbaum v. Realgy, LLC*, 2020 WL 6361915, at *4 (N.D. Ohio Oct. 29, 2020). Thus *Lindenbaum* treated severance as a judicial act that changes the law.

Act. But *Seila Law* actually refutes Synchrony's argument. *Seila Law* clearly applied the usual rule: that when a court finds an unconstitutional provision is severable, the remaining, constitutional provisions are valid, both prospectively and retroactively.

The court in *Creasy* agreed that that is the general rule. However, it argued that an exception applies when the constitutional defect is content-based discrimination in violation of the First Amendment. The court in *Creasy* interpreted *Seila Law* the same way the Court does—as applying severance both prospectively and retroactively. However, the *Creasy* court distinguished *Seila Law*, finding that "[p]recisely the opposite is the case [for the TCPA]." *Creasy*, 2020 WL 5761117, at *5. Synchrony cites *Creasy* because it reached the same result—that is, comprehensive invalidation of the TCPA's robocall restriction from 2015 to 2020—but the court's reasoning was different. Synchrony argues that comprehensive invalidation is simply how severance works; *Creasy* acknowledges that is not how it usually works, but argues that the TCPA presents a special case.

The Court need only address Synchrony's argument, which, again, is clearly refuted by *Seila Law*. However, because Synchrony cites *Creasy* and one other district case that relies on *Creasy*, the Court also addresses the reasoning of those cases.

**A. Synchrony provides no support for limited severability**

Synchrony extensively discusses a Supreme Court case—*Seila Law, LLC v. CFPB*, 140 S. Ct. 2183, 2208-09 (2020)—as a "particularly instructive" illustration of its argument. Doc. 14-1 at 12. But *Seila Law* refutes Synchrony's argument. To see why, some detail is necessary.

Seila Law, LLC, was "a California-based law firm that provide[d] debt-related legal services to clients." *Seila Law*, 140 S. Ct. at 2194. In 2017, the Consumer Financial Protection Bureau (CFPB) issued a civil investigative demand (CID) to Seila. Seila refused to comply, and the CFPB sued in federal court to enforce the CID. As a defense, Seila claimed that the CFPB's structure—specifically, its being headed by a single Director, with broad powers, who was removable only for cause—violated the Constitution. *Id*. at 2194-95. The district court and court of appeals rejected Seila's argument, but the Supreme Court reversed, finding the CFPB Director's removal protections were unconstitutional.

The Government argued that the CID was nonetheless enforceable because, although it was issued by a Director with removal protections, it had later been ratified by an Acting Director, who did not have the same removal protections. *Id*. at 2208. That raised a factual issue to be resolved on remand. *Id*. Seila further argued, however, that remand would be futile because the removal protections were not severable from the rest of the provisions of the Dodd-Frank Act creating the CFPB. As such, Seila argued, the CFPB as a whole was unconstitutional, so it did not matter whether an Acting Director had ratified the CID or not—it was unenforceable either way.

The Court rejected that argument, finding the removal protections were severable, so there was no need to strike down the whole CFPB. Accordingly, the Court remanded to address the Government's argument that the CID, "though initially issued by a Director unconstitutionally insulated from removal, can still be enforced on remand because it *has since been ratified* by an Acting Director accountable to the President." *Id*. (emphasis added).

Synchrony claims that the decision in *Seila Law* invalidated the entirety of the CFPB, retroactively, for several years. It argues the "ratification" the Court referred to was some future act that the "post-severance" [5] (meaning post-*Seila Law*) CFPB might take to fix the actions of the 'pre-severance' CFPB, which was wholly unconstitutional. Doc. 14-1 at 13.

That misses two critical points. First, the remand was to determine whether the CID "*has since been ratified*." That language referred to a specific alleged action of a past Acting Director, not to the potential action of some future, "post-severance" CFPB. Thus, the Court held the Acting Director's prior action, if it actually occurred, was valid. That is flatly inconsistent with Synchrony's argument that the 'pre-severance' CFPB was wholly unconstitutional.

Second, the Court in *Seila Law* explicitly made that point. Seila argued remand would be futile because all past actions of the CFPB were necessarily unconstitutional. But the Court rejected that argument. *Seila Law*, 140 S. Ct. at 2208. The reason is that the test for validity of the CID was not, as Synchrony contends, whether it was ratified after the Court's decision. The test of validity was whether the CID was authorized by a director removable at will.

For those reasons, *Seila Law* clearly employed the severability doctrine in the traditional way: finding that the unconstitutional provisions of a law are (and were) invalid, and the constitutional provisions, if severable, are (and were) valid. Under that approach, of course, Moody's TCPA claims remain cognizable because they are based

[5] The Court retains this in quotes because the term is Synchrony's. 'Pre-severance' is not a term Synchrony uses, but the Court finds the term is helpful only for the sake of exploring Synchrony's line of reasoning. Thus it is in single quotes.

on a valid provision of the TCPA that the Court explicitly held was severable from the provision found invalid in *AAPC*. *Seila Law*, far from supporting Synchrony's argument, confirms that its motion should be denied.[6]

**B. First Amendment concerns provide no reason to apply limited severability in this case**

Even if Synchrony is wrong about how severability usually works, perhaps *AAPC* was an exception. That appears to have been the court's position in *Creasy v. Charter Communications, Inc.*, 2020 WL 5761117 (E.D. La. Sept. 28, 2020), when it granted in part and denied in part a motion to dismiss arguing that *AAPC* invalidated the TCPA.

*Creasy*'s exception was based on First Amendment concerns expressed by Justice Gorsuch in his partial dissent. He disagreed with the plaintiffs over the appropriate remedy. The plaintiffs in *AAPC* were political organizations that sought a declaratory judgment invalidating the TCPA's restrictions on robocalls as violative of the First Amendment. *AAPC*, 140 S. Ct. at 2345. The plaintiffs argued that the TCPA's exception for government-debt collectors was a content-based restriction on speech.

The Court agreed, but rather than "leveling the plaintiff 'up' to the status others enjoy"—that is, allowing the plaintiffs to make robocalls, too; the Court 'leveled down' government-debt collectors so that they, too, were prohibited from making robocalls. *Id*. at 2365 (Gorsuch, J., concurring in part and dissenting in part). "Applying traditional

[6] To take one more example, in *Marbury v. Madison*, 5 U.S. 137 (1803), the Supreme Court held that part of the Judiciary Act of 1789 was unconstitutional. The Court severed the unconstitutional provision; if it had not severed it, "the entire Judiciary Act of 1789 would be invalid as a consequence of *Marbury v. Madison*." *AAPC*, 130 S.Ct. 2351. But according to Synchrony's argument here, *Marbury* retroactively invalidated the Judiciary Act, which, among other provisions, set the number of Justices and gave the Supreme Court original jurisdiction over actions between states. Followed to its logical conclusion, therefore, Synchrony's argument may well invalidate all Supreme Court decisions (or perhaps all federal courts' decisions) from 1789 to 1803. But the Court did not seem to believe it was doing that in *Marbury*, and decisions from that period are regularly cited as precedent. *See, e.g.*, *Carmell v. Texas*, 529 U.S. 513, 521 (2000) (discussing *Calder v. Bull*, 1 L.Ed. 648 (1798)).

severability principles, seven Members of the Court conclude[d] that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute." *Id*. at 2343 (plurality opinion).

Justice Gorsuch, joined by Justice Thomas, dissented, arguing the appropriate remedy was 'levelling up' and enjoining the enforcement of the TCPA against the plaintiffs. Justice Gorsuch observed that the Court's invalidation of the government-debt exception failed to protect the plaintiffs' First Amendment rights, but instead simply restricted the speech of government-debt collectors, too. *Id*. at 2366 (Gorsuch, J., concurring in part and dissenting in part) ("somehow, in the name of vindicating the First Amendment, our remedial course today leads to the unlikely result that . . . more speech will be banned."). To address that concern, Justice Kavanaugh suggested that government-debt collectors who had violated the TCPA's robocall prohibition might not be punished for that speech. *Id*. at 2355 n.12 (plurality opinion). In response, Justice Gorsuch argued that shielding "*only* government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate." *Id*. at 2366 (Gorsuch, J., concurring in part and dissenting in part).

The court in *Creasy* concluded that the risk of content discrimination identified by Justice Gorsuch rendered the law invalid at the time the government-debt exception was in place. *Creasy*, 2020 WL 5761117, at *2. The court concluded that

> Congress's 2015 enactment of the government-debt exception rendered § 227(b)(1)(A)(iii) an unconstitutional content-based restriction on speech. In the years *preceding* Congress's addition of the exception, § 227(b)(1)(A)(iii) did not discriminate on the content of robocalls, and was, as the Supreme

> Court has observed, a constitutional time-place-manner restriction on speech. Likewise, now that *AAPC* has done away with the offending exception, § 227(b)(1)(A)(iii) figures to remain good law in the years to come. However, in the years in which § 227(b)(1)(A)(iii) permitted robocalls of one category of content (government-debt collection) while prohibiting robocalls of all other categories of content, the *entirety* of the provision was, indeed, unconstitutional.

*Id*. The Court finds that conclusion unpersuasive, for four reasons.

First, the 2015 amendment did not render the entire robocall provision unconstitutional. Rather, the government-debt exception was void. "[A] unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *AAPC*, 140 S. Ct. at 2353 (plurality opinion) (quoting *Frost v. Corporation Comm'n of Okla*., 278 U.S. 515, 526-527 (1929)). The Court's decision found the amendment was invalid when enacted, such that both government-debt collectors and other robocallers were subject to the TCPA. As a technical matter, therefore, the robocall restriction reached both government-debt collectors and other parties, like Synchrony.

Second, Justice Kavanaugh's "suggest[ion] that the ban on government-debt collection calls announced today might be applied only prospectively" does not change that. *Id*. at 2366 (Gorsuch, J., dissenting in part). First, that "suggestion" was only that—a suggestion—and did not, by itself, create the differential treatment that the *Creasy* decision sought to remedy.[7] Second, to the extent Justice Kavanaugh proposed that government-debt collectors should not be retroactively liable, that principle would presumably be founded on concerns about fair notice and good-faith reliance on the

---

[7] Neither Synchrony nor the defendants in *Creasy* were government debt collectors. Moreover, the Court is not aware of any precedent deciding that issue, nor any district court resolving that issue. Accordingly, any preferential treatment for government debt collectors between 2015 and 2020 created by the *AAPC* decision is, for now at least, hypothetical.

TCPA's exception. It does not amount to a holding that their conduct was *actually* lawful during that time. Thus there is no need to invalidate the whole statute to remedy a perceived disparity between government collectors and other robocallers, nor has the Court seen any cases applying such a drastic remedy in other contexts. [8]

Third, none of the opinions in *AAPC* even hinted that the TCPA's robocall restriction should be wholly invalid between 2015 and 2020, but valid in part after the Court's decision. Again, the Court 'levelled down', and Justice Gorsuch advocated 'levelling up', but only *Creasy* advocated levelling up for 2015 to 2020, but levelling down thereafter.

Fourth, *Creasy*'s holding requires a novel severability doctrine. As noted, *Creasy* found that traditional severability did not apply:

> This is *not* a situation where "one section of a [provision]" being "repugnant to the Constitution" does not "render[ ] the whole [provision] void." *See Seila Law LLC v. CFPB*, —— U.S. ——, 140 S. Ct. 2183, 2208, 207 L.Ed.2d 494 (2020) (plurality opinion). Precisely the opposite is the case here: the *entirety* of the pre-severance version of § 227(b)(1)(A)(iii) *is* void because it *itself* was repugnant to the Constitution before the Supreme Court restored it to constitutional health in AAPC.

*Creasy*, 2020 WL 5761117, at *5 (emphasis added) (citation omitted). Nonetheless, a seven-Justice majority of the Court clearly held in *AAPC* that the government-debt

[8] To the contrary, at least one court rejected that approach in the analogous context of Equal Protection. In *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1688 (2017), Morales-Santana faced removal proceedings. He argued he derived citizenship from his father, Morales. Because his father had not been physically present in the United States for five years, an immigration judge ruled, he could not pass on citizenship to Morales-Santana. *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1688 (2017). At the time, 8 U.S.C. § 1401 contained an exception to the five-year physical-presence requirement for unwed mothers, who only had to be physically present in the United States for one year to pass their citizenship on to children born abroad. *Id*. at 1687. On appeal, Morales-Santana argued that that gender-based classification violated his Equal Protection rights. The Supreme Court agreed and concluded the proper remedy was to eliminate the exception and extend the five-year requirement to unwed mothers, too. *Id*. at 1701. The Court ruled that requirement would only apply to unwed mothers prospectively. *Id*. On remand, the Second Circuit affirmed the immigration judge, holding the five-year requirement still applied, retroactively, to Morales-Santana. *Morales-Santana v. Sessions*, 706 F. App'x 40, 41 (2d Cir. 2017).

exception was severable.  Caught between its extension of Justice Gorsuch's dissent (which rejected a severance remedy) and the Court's holding that the statute was severable, the *Creasy* court landed on the fence and created limited severability.  But that approach was unaccompanied by citations to any other examples, in First Amendment or other cases, applying severance that way.

In sum, AAPC does not support Synchrony's position that severance is generally non-retroactive; *Seila Law* refutes that position; and the Court finds unpersuasive the *Creasy* order's conclusion that the TCPA warrants a departure from traditional severability doctrine.  Rather, this is an unexceptional case where the usual rules apply—or, at least, Synchrony's brief and supporting authorities have not convinced the Court otherwise.

## III.  CONCLUSION

For those reasons, Synchrony's motion to dismiss (Doc. 14) is **DENIED**.

**SO ORDERED**, this 26th day of March, 2021.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

**EXHIBIT G**

**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Brenda Whittaker,<br>Plaintiff,<br>v.<br>WinRed Technical Services LLC, *et al.*,<br>Defendants. | No. CV-20-08150-PCT-JJT<br>**ORDER** |

At issue is Defendant National Republican Senatorial Committee's ("NRSC") Motion to Dismiss under Rule 12(b)(6) or to Stay Proceedings (Doc. 13, MTD), to which Plaintiff Brenda Whittaker filed a Response (Doc. 19, Resp.) and NRSC filed a Reply (Doc. 20, Reply). The Court granted NRSC's request to file Supplemental Briefing in this matter (Doc. 23, Supp.), to which Plaintiff filed a Supplemental Response (Doc. 24, Supp. Resp.). The Court also granted NRSC's request to file a Second Supplemental Briefing (Doc. 27, 2d Supp.), to which Plaintiff filed a Second Supplemental Response (Doc. 28, 2d Supp. Resp.). Additionally, Plaintiff filed nine Notices of Supplemental Authority. (Docs. 29–37.) The Court has reviewed the parties' briefs and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court will grant in part and deny in part NRSC's Motion.

## I. BACKGROUND

On June 23, 2020, Plaintiff filed a Complaint bringing a putative class action against NRSC under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.

§ 227(b)(1)(A)(iii). Plaintiff states that in April 2020, she received seven unsolicited text messages from NRSC. (Doc. 1, Compl. ¶¶ 14, 16.) In the Complaint, Plaintiff alleges that this communication violated the TCPA because NRSC intentionally sent the text messages using an automatic telephone dialing system ("ATDS") without her consent. (Compl. ¶¶ 12, 18–19.) NRSC now moves to dismiss the TCPA cause of action for failure to state a claim, and in the alternative, requests that the Court stay this case pending the Supreme Court's review of the Ninth Circuit Court of Appeal's decision in *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). (MTD at 2.)

## II.  LEGAL STANDARD

When analyzing a complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**III. ANALYSIS**

NRSC first argues that Plaintiff failed to state a claim because a provision of the TCPA was unconstitutional during the time Plaintiff alleges to have received text messages from NRSC. (MTD at 6.) Plaintiff, however, argues that the invalidation of the provision to the Act does not render the entire TCPA unconstitutional, and therefore, NRSC is still liable for its actions. (Resp. at 3.) As an alternative to its request for dismissal, NRSC asks the Court to stay this case pending the Supreme Court's decision in *Facebook* and its interpretation of an ATDS. In response, Plaintiff contends it is unnecessary and inefficient to stay this case and delay discovery because the outcome of *Facebook* is not dispositive of her claim. (Resp. at 8–10.)

In 1991, Congress enacted the TCPA establishing that it is "unlawful for any person within the United States . . . to make any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227 (a)(1). In 2015, Congress amended this statute to permit the government to use an ATDS to collect debts. Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a)(1)(A), 129 Stat. 584, 588 (amending 47 U.S.C. § 227(b)(1)(A)(iii)). There has been a fair amount of controversy since the enactment of this amendment.

Indeed, the Supreme Court subsequently examined the government-debt exception to consider whether it was unconstitutional. *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335 (2020) ("*AAPC*"). In a plurality decision, the Supreme Court held that it "must invalidate the 2015 government-debt exception and sever it from the remainder of the statute."[1] *Id.* at 2349. But the Supreme Court only addressed the prospective effect of the

[1] Six Justices opined that the TCPA government-debt exception violated the First

severed statute and did not address a defendant's retrospective liability for past robocalls made while the unconstitutional government-debt exception was affixed to the face of the statute, between enactment in 2015 and severance in 2020. NRSC urges this Court to interpret *AAPC* as finding the entirety of § 227(b)(1)(A)(iii) unconstitutional between the enactment of the amendment and *AAPC* and thus excuse it from retrospective liability. The Court declines to adopt that interpretation at this time.

Instead, the Court agrees with the vast majority of district courts that have denied motions to dismiss grounded in issues similar to the one at hand. *See, e.g.*, *Trujillo v. Free Energy Sav. Co.*, 2020 WL8184336 (C.D. Cal. Dec. 21, 2020); *Shen v. Tricolor Cal. Auto Grp., LLC*, 2020 WL 7705888 (C.D. Cal. Dec. 17, 2020); *Abramson v. Fed. Ins. Co.*, 2020 WL 7318953, at *3–4 (M.D. Fla. Dec. 11, 2020) (citing to a collection of cases that have concluded that "parties may continue to bring claims under the portions of § 227(b) unaltered by *AAPC*"). One district court has even departed from its earlier decision to grant a motion to dismiss on this issue. (Doc. 37 (*citing Boisvert v. Carnival Co.*, No. 8:20-cv-2076-30SPF (M.D. Fla. Dec. 11, 2020) ("Upon further reflection, the Court departs from its earlier opinion because, since the Court's Order in *Hussain*, every court faced with this same issue has concluded that a plaintiff may continue to bring § 227(b) claims post-AAPC.")).) Although NRSC supports its Motion with two out-of-circuit decisions that have granted dismissal, those holdings are not persuasive. The Court will therefore deny NRSC's motion to dismiss for failure to state a claim.

Alternatively, NRSC seeks to stay this case pending the Supreme Court's decision in *Facebook, Inc. v. Duguid*. This Court has the inherent authority to manage its cases to ensure their orderly and efficient disposition. *Sherman v. United States*, 801 F.2d 1133, 1135 (9th Cir. 1986). This includes discretion to stay a case if it serves the interest of judicial economy and does not substantially prejudice a party. Here, Plaintiff contests NRSC's request for a stay of the proceedings; however, because the *Facebook* decision is

---

Amendment, and seven Justices opined that the amendment should be severed from the remainder of the statute.

likely imminent, the Court does not find that a brief stay will substantially prejudice Plaintiff. *See Canady v. Bridgecrest Acceptance Corp., No*. CV-19-04738-PHX-DWL, 2020 WL 5249263, at *2 (D. Ariz. Sept. 3, 2020) (granting stay pending *Facebook* decision because the risks of harm to the plaintiff do not "outweigh the interest of efficiency and judicial economy that will be served by delaying further litigation of this action").

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendant National Republican Senatorial Committee's Motion to Dismiss under Rule 12(b)(6) or to Stay Proceedings (Doc. 13). The Court declines to dismiss this case but grants Defendant's request to stay these proceedings pending the Supreme Court's resolution of *Facebook, Inc. v. Duguid*, No. 19-511.

**IT IS FURTHER ORDERED** that the parties shall file a joint Notice of Decision within 10 days of publication of the Supreme Court's decision in *Facebook, Inc. v. Duguid*.

Dated this 23rd day of March, 2021.

Honorable John J. Tuchi
United States District Judge