UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL REASE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>    Defendant. | Case No.: 3:20-cv-00150-RNC<br><br>Hon. Robert N. Chatigny |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY CITING *LINDENBAUM V. REALGY, LLC* (DOC. 97)**

Defendant Charter Communications, Inc. ("Charter") hereby responds to Plaintiff's notice of supplemental authority opposing Charter's motion for judgment on the pleadings, citing *Lindenbaum v. Realgy, LLC*, No. 20-4252, 2021 WL 4097320 (6th Cir. Sept. 9, 2021). *See* Doc. 97.

*Lindenbaum* was wrongly decided, and the Court should not follow it. Most notably, the Sixth Circuit erred in holding that when the Supreme Court severs a provision of a statute, that severance *always* operates retroactively, such that courts must engage in the legal fiction that the severed provision (and any constitutional harm it perpetrated) never existed. Both parts of that conclusion are false, as long-standing First Amendment precedent and recent Supreme Court cases confirm. As to the first premise, recent Supreme Court precedent makes clear that the test for whether severance applies retroactively or prospectively requires determining whether retroactive application would violate the constitution. Said differently, severance ***must*** apply "*prospectively*" (to quote Justice Ginsburg's binding majority decision) when applying it retroactively would violate the constitutional rights of the litigants ***or*** others. *See Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1701 (2017). *Sessions*, therefore, disproves *Lindenbaum*'s premise that "severance … would have to be a legislative act in order to operate only prospectively."

1

And as to the second premise of *Lindenbaum*, even where severance operates retroactively, courts cannot ignore the real-world fact that an unconstitutional provision existed prior to severance and inflicted real-world harm. In such cases, the remedy must be tailored to that harm, as several Supreme Court cases from the last two terms make clear. Here, that means not enforcing the speech restriction against Charter, since any other result would mean that two speakers were treated differently for the same speech in violation of the core holding of *Barr v. American Association of Political Consultants, Inc.* ("*AAPC*"). 140 S. Ct. 2335 (2020).

At bottom, *Lindenbaum* is the first instance in which a Circuit Court has *ever* imposed liability under a discriminatory speech restriction, without later being reversed by the Supreme Court. The Court should therefore decline to follow *Lindenbaum* (which will be imminently appealed to the Supreme Court) and grant Charter's motion.

I.    *The Opinion in Lindenbaum and Its Fundamental Errors.*

In *Lindenbaum*, the Sixth Circuit addressed the effect the Supreme Court's decision in *AAPC* has on pending litigation under the speech restriction at issue in the instant case: 47 U.S.C. § 227(b)(1)(A)(iii) (the "Restriction"). More specifically, whether a speech Restriction that was declared content-discriminatory in *AAPC* because it contained an exception that favored government debt collection speech over other speech can nonetheless be enforced to punish speech that occurred during the time the Restriction was discriminatory. The Sixth Circuit in *Lindenbaum* answered that question with a "yes," despite the unequal treatment and speech favoritism such enforcement perpetuates.

The Sixth Circuit's ruling misinterpreted *AAPC* and mischaracterized defendant's arguments. *First*, the panel claimed that appellee and *amici* (which included the ACLU, the Chamber of Commerce, and notable legal scholars such as Erwin Chemerinsky) argued that "severability is a remedy that fixes an unconstitutional statute, such that it can *only* apply prospectively." *Lindenbaum*, 2021 WL 4097320 at *1 (emphasis added). But that is wrong; appellee and *amici* contended only that the Supreme Court's severance <u>in *AAPC*</u> must apply prospectively given the holding in *AAPC*, the relief sought in that case (which was only

prospective), and the constitutional violations that would occur by applying severance retroactively. As to the latter point, appellee explained that severance must generally be prospective in the rare case where a court severs a provision that *permits* conduct (as was the case in *AAPC*) because retroactively removing a *conduct-permitting* provision that people relied on would raise serious Due Process and *Ex Post Facto* concerns. Those concerns are not present in the more common case of severing a provision that simply *prohibits* conduct, as most statutory provisions do. In fact, not even the district court held that severance is always, by its nature, prospective. *Compare Lindenbaum v. Realgy, LLC*, 497 F. Supp. 3d 290, 294 (N.D. Ohio 2020) ("the [District] Court agrees with defendant that severance *of the government-debt exception* applies only prospectively") (emphasis added), *with Lindenbaum*, 2021 WL 4097320 at *2 ("It reasoned that severability is a remedy that operates *only* prospectively") (emphasis added).

Based on these errors, the panel reversed the district court's decision. It reasoned that courts can only say what the law has always been; thus, severance *always* "applies retroactively." *Lindenbaum*, 2021 WL 4097320 at *2-3. And because severance applies retroactively, the Restriction (with the amendment) did not legally exist. Thus, the panel reached the legally fictive conclusion that there was no real content discrimination at the time of the speech at issue— ignoring that a content discriminatory Restriction *did* exist and *did* govern speakers' lives and the lawsuits that were filed (or not filed) against them for their speech during that time. *Id*. at *3.

The Sixth Circuit acknowledged that treating the Restriction as if it did not exist would subject government debt-collectors to liability for exempt speech in violation of the *Ex Post Facto* clause and Due Process. *Id.* But to get around this problem, it reached two other conclusions. Though it asserted (incorrectly, as explained below) that the issue was not before it, the panel first speculated that the fair notice doctrine—a doctrine that prohibits the government from punishing people without sufficient notice of the illegal conduct—may shield government debt collectors from liability. *Id.* Second, it concluded that imposing liability against a defendant for its speech but exempting government debt-collectors for theirs does not violate the First Amendment, despite the unequal treatment such a rule would create. *Id.* In reaching the latter conclusion, the panel

3

reasoned that although favoring government speakers over others was the exact same disparate treatment the Supreme Court in *AAPC* found unconstitutional¸ creating disparate treatment via the fair notice doctrine does not create First Amendment concerns.  *Id.*  According to the panel, fair notice is always speech neutral—ignoring that the only way to tell whether to apply the fair notice doctrine is to first evaluate the content of the speech at issue (whether it is government debt collection speech or something else).  *Id.* at *3.  Tellingly, the Sixth Circuit cites **no** authority for this proposition or its conclusion that an illegally discriminatory speech regime can be reimposed through the back door in this manner.  *Id.*

## II.     *Lindenbaum Was Wrongly Decided.*

*Lindenbaum* was misguided from the start and its sweeping legal pronouncements are inconsistent with *binding* Supreme Court authority on severance and the First Amendment.  Its reasoning should, therefore, be disregarded.

### A.     Recent Supreme Court precedent proves severance is not always retroactive where, as here, retroactivity would violate others' constitutional rights.

The panel's core premise that severance always applies restrictively is incorrect and contradicted by recent Supreme Court precedent.  In *Sessions*, for example, the Court held that the test for retroactive severance requires determining whether retroactive application would violate the constitutional rights of others (there, depriving other citizens of vested citizenship).  *See* 137 S. Ct. 1678, 1701 (2017).  If constitutional rights would be violated by applying severance retroactively, then severance **must** operate prospectively.  *Id.* (holding that "as the Government suggests, [the severed version of the statute] should apply, ***prospectively***") (emphasis added).[1]  That makes sense because any other conclusion would give courts power to do more by severance than the legislature could do by severability clause, given the legislature is obviously barred from drafting and enforcing an unconstitutional severability clause, and the severability clause is where the court gets its power to sever in the first instance.  And here, as in *Lindenbaum*, applying

---

[1]     Contrary to its prior position in *Sessions*, the government argued the exact opposite in *Lindenbaum*: that severance can only operate retroactively.  *See generally* Br. of United States as Intervenor-Appellant, No. 20-4252, 2021 WL 743343.

4

severance retroactively and treating the Restriction (with the amendment) as if it did not exist would violate the constitutional rights of government debt collectors, who would be subject to ruinous liability in violation of their due process and *Ex Post Facto* rights for relying on a ***conduct-permitting*** exception.

As noted above, the Sixth Circuit attempts to avoid these constitutional concerns by: (a) asserting that whether government debt collectors have a fair notice defense was not before the panel because debt collectors were not party to the litigation; (b) speculating that the fair notice doctrine might exempt favored speakers (government debt collectors); and (c) opining, in dicta, that the application of the doctrine poses no First Amendment problem because fair notice is always speech neutral. The panel's reasoning is untenable and causes more constitutional problems than it solves. To start, whether the fair notice defense—a doctrine provides that the government generally cannot impose punishment under a prohibition if it gives insufficient notice of that prohibition—was available to government debt collectors was squarely before the panel *Lindenbaum*. As explained above, the Supreme Court has mandated that courts consider the constitutional rights of others in deciding whether to apply severance retroactively. And even if that were not so, the panel completely missed that the constitutional rights of others (government debt collectors) are directly relevant to a defendant's (Realgy) constitutional rights in an ***unequal treatment*** case, where courts ***must*** analyze disparate treatment to determine if a constitutional violation has occurred and, if so, what the appropriate remedy is. In other words, would Realgy (or Charter) and a government debt collector be treated the same if they were both sued for the same speech at the same time? If the answer is no, then Realgy's (and Charter's) First Amendment rights to equal treatment are being violated.

The Sixth Circuit's holding that fair notice is always speech neutral because it, by itself, has nothing to do with speech ignores that fair notice is never applied in a vacuum. *Lindenbaum*, 2021 WL 4097320 at *3. Rather, fair notice operates *in conjunction with* an underlying prohibition. Thus, when the underlying prohibition is a speech restriction, the application of fair notice necessarily turns on the content of the speech at issue. And here, application of the doctrine

5

hinges on whether the speech concerned government debt collection or something else—specifically, if the speech was about government debt collection, then the fair notice doctrine would prohibit prosecution during the time the government debt exception was in effect.

The Sixth Circuit's sweeping legal pronouncement therefore misses the point. Fair notice can implicate (and violate) the First Amendment if the ***accompanying prohibition*** concerns speech and the doctrine's application leads to speech favoritism. Here, the favoritism resulting from application of the fair notice doctrine plainly violates the First Amendment because it permits government debt collectors' speech but punishes others for theirs. By *Lindenbaum*'s reasoning, if Plaintiff had sued Charter and a government debt collector in this suit for speech that occurred pre-severance, the debt collector would have been immediately dismissed with prejudice, while Charter would have been subject to years of litigation and, potentially, crushing liability for the same speech. *AAPC* held this ***exact*** type of unequal treatment was unconstitutional under the First amendment. *See Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020) ("Six Members of the Court today conclude that Congress has impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment."). And if Congress is not permitted to impose this type of discrimination by statute, then the judiciary certainly is not entitled to do so through a judicial backdoor.

Tellingly, the panel's analysis on this point cites ***zero*** authority to the contrary. Nor could it have. The Supreme Court has held that the First Amendment ***precludes*** courts from restricting speech via judicial ruling only where there are no less speech restrictive alternatives available to meet a compelling government interest. *See Nebraska Press Ass'n*, 427 U.S. 539, 571 (1976) (Powell, J., concurring) (reversing gag order entered to protect criminal defendant's right to impartial jury). There is one glaring alternative that is less speech-restrictive and protects everyone's constitutional rights, here: declining to enforce the Restriction while it contained a discriminatory exception.

6

**B.     Severance of a conduct permitting exception must apply prospectively given legislative intent, and the Sixth Circuit's holding otherwise allows courts to do more via severance than Congress *ever* could—imposing liability retroactively even if doing so violates constitutional rights.**

Though the Sixth Circuit acknowledged that legislative intent is the "hallmark" of whether the judiciary may sever, it overlooked why that means *AAPC*'s severance of the government debt exception *must* apply prospectively. *Lindenbaum*, 2021 WL 4097320 at *2. For one, the Supreme Court in *Landgraf v. USI Film Products* held that a statute cannot impose liability retroactively absent "'clear, strong, and imperative' language" from Congress. *See* 511 U.S. 244, 270 (1994); *see also Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313 (1994). ***No such language exists in the TCPA's severability clause.*** Thus, *Landraf* and *Rivers* compel the conclusion that Congress did not intend severance to permit retroactive liability.

The panel in *Lindenbaum*, however, sidesteps *Landraf* and the fact that its ruling would impose retroactively liability by arguing *Landgraf* does not apply because the case's presumption against retroactive liability only constrains *legislative* exactments—not *judicial* interpretations.[2] This point evidences the panel's fundamental misunderstanding of how severance works and where the judiciary's power to sever comes from in the first instance. When the judiciary employs severance, it does so based on its interpretation of legislative intent. If the Sixth Circuit's understanding of severance were accurate, courts could accomplish ***far more*** via severance than Congress ever could—imposing retroactive liability, post-severance, regardless of its unconstitutional effect. *See Cunningham v. Matrix Fin. Svcs.*, __ F. 3d ___, No. 4:19-cv-896, 2021 WL 1226618, at *6 n.9 (E.D. Tex. Mar. 31, 2021) ("If the effects of judicial severability [of a conduct-permitting provision] were to apply retroactively, the constitutional order would be in complete disarray. Congress—the creator of law—would face the steep presumption against retroactivity . . . while Article III tribunals would face no such obstacle," even though Article III

---

[2]    The Sixth Circuit cites, *inter alia*, footnote 24 from *Sessions* for the proposition that the prohibition against retroactive liability only constrains judicial enactments. This is a fundamental misreading of *Sessions*. There, Justice Ginsburg included footnote 24 in her discussion of ***judicial*** severance in order to explain that such severance is guided by legislative intent. *Sessions*, 137 S. Ct. 1698-99.

7

tribunals' job in carrying out severance is to effect Congress's intent as constrained by the constitution); *see also See Marks v. United States*, 430 U.S. 188, 191–92 (1977) (freedom from *ex post facto* liability is "protected against judicial action by the Due Process Clause of the Fifth Amendment."). That would blatantly violate separation of powers principles; thus, the panel's understanding of severance cannot be right.

    **C.    All the above aside, the Sixth Circuit's ruling overlooks that the Supreme Court has *unanimously* declined to impose liability under a speech Restriction that was, as a historical fact, unconstitutional at the time of the speech.**

But even if all the above were not true, the Sixth Circuit's ruling ignores controlling Supreme Court First Amendment content-discrimination precedent. That authority is ***unanimous*** and makes clear that—regardless of whether a defendant violated the discriminatory law, whether the speech restriction was cured via legislative or judicial severance, and whether the restriction was a legal nullity that did not technically exist—liability cannot be imposed under a speech restriction that was, as a historical fact, unconstitutionally content-based at the time of the speech. *See Grayned*, 408 U.S. at 107 n.2 (in reversing conviction of defendant who intentionally violated statute after warning, disclaiming relevance of subsequent severance and existence of severability clause in relevant statute because a court "[n]ecessarily[] must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted"); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (reversing fine against individual who intentionally violated election law after warning because law discriminated on basis of content); *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) (reinstating dismissal of charges for cross-burning because statute was content-discriminatory, regardless of fact that conduct could be prosecuted under another statute that was not content-discriminatory).

In other words, whether judicial or legislative severance is possible is an ***entirely separate issue*** from whether an individual can be held liable under a statute that was content-discriminatory as a historical fact at the time of the speech—the latter of which constitutes a real constitutional harm. The Supreme Court made that point clear in *Sessions*, where it expressly explained that a defendant penalized under an impermissible law can attack that historical wrong without regard

8

for how the legislature (or courts, *supra* note 2) "might subsequently cure the infirmity":

> [A] defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity. In *Grayned v. City of Rockford*, 408 U.S. 104 (1972), for example, the defendant participated in a civil rights demonstration in front of a school. Convicted of violating a local 'antipicketing' ordinance that exempted 'peaceful picketing of any school involved in a labor dispute,' he successfully challenged his conviction on equal protection grounds. *Id*., at 107, 92 S.Ct. 229 … It was irrelevant to the Court's decision whether the legislature likely would have cured the constitutional infirmity by excising the labor-dispute exemption. In fact, the legislature had done just that subsequent to the defendant's conviction . . . Necessarily, the Court observed, 'we must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted.'

*Sessions*, 137 S. Ct. at 1699 n.24. And just this past term, the Supreme Court again reaffirmed that "it is still possible for an unconstitutional provision [which did not technically exist] to inflict compensable harm." *See Collins v. Yellen*, 141 S. Ct. 1761, 1789 (2021) (after severing unconstitutional provision, remanding for lower court to address remedy and rejecting legal fiction that unconstitutional law never actually existed); *see also United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1987 (2021) (remedy for constitutional harm that occurred pre-severance must be "tailored" to the constitutional harms); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2196 (2020) (holding person subject to unconstitutional agency's power suffers from "here-and-now" injury despite subsequent severance of unconstitutional provision and remanding for consideration of "whether … [post-severance] ratification in fact occurred and whether, if so, it is legally sufficient to cure the constitutional defect").

At bottom, *Lindenbaum* is wrongly decided, and it is the first time a Circuit Court has ***ever*** imposed liability under a discriminatory speech restriction (without being reversed by the Supreme Court). It also endorses the creation of a discriminatory speech regime whereby Congress could enact an exception to the TCPA—or another statute—for a particular political party (or race) and then enforce that restriction against disfavored speakers until the Supreme Court cures the law via severance. All the while, the favored speakers would be exempt because they lacked fair notice

that their conduct was equally prohibited. This evil is laid bare by the necessary results of *Lindenbaum*'s analysis. Consider:

- A consumer sues three defendants for calls in 2019: (1) a credit union for making one payment-reminder call per month to each of its 100,000 customers about private debt; (2) a vaccine manufacturer for making the same number of calls to notify people of free vaccines; and (3) a bank for making a thousand harassing calls per day to collect a government-backed student loan from the same customers. If *Lindenbaum* is right, the bank would face no liability, but the credit union and vaccine manufacturer would face between $2.4 and $7.2 billion in liability.

- Washington D.C. amends its time, place, and manner protesting restrictions to permit pro-life protests during restricted hours. Two protesters, one pro-life and one pro-choice, are arrested under the amendment for protesting outside the White House after 11 pm. If *Lindenbaum* is correct, the pro-choice protester's conviction must stand, even if the Supreme Court finds the exception unconstitutional and severs it from the statute. The pro-life protester, on the other hand, is entirely immune from liability (even after "retroactive severance," in light of the fair notice doctrine).

This is the *exact* type of content-discrimination and unequal treatment a majority of the Supreme Court in *AAPC* held violated the First amendment. *See AAPC*, 140 S. Ct. at 2343, 2346-47.

## II.  *Conclusion.*

*Lindenbaum* was wrongly decided for all the reasons stated above, and the Court should disregard its reasoning in evaluating Charter's motion for judgment on the pleadings. Instead, the Court should follow binding First Amendment precedent and hold that the Restriction cannot be enforced during the time it contained an unconstitutionally discriminatory exception.

Dated: September 28, 2021

**KABAT CHAPMAN & OZMER LLP**

*/s/ Ryan D.  Watstein*
Ryan D. Watstein (*pro hac vice*)
rwatstein@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300

(404) 400-7333 (fax)

Paul A. Grammatico (*pro hac vice*)
pgrammatico@kcozlaw.com
333 S. Grand Avenue, Suite 2225
Los Angeles, California 90071
(213) 493-3988
(404) 400-7333 (fax)

**ROBINSON & COLE LLP**

Brian E. Moran
Connecticut Bar No. ct05058
bmoran@rc.com
Trevor L. Bradley
Connecticut Bar No. ct29993
tbradley@rc.com
1055 Washington Boulevard
Stamford, CT 06901
203-462-7500
203-462-7599 (fax)

*Counsel for Defendant Charter Communications, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that today I filed the foregoing using the Court's CM/ECF system, which will automatically send a notice of electronic filing to all counsel of record.

DATED: September 28, 2021          */s/ Ryan D. Watstein*
                                   Ryan D. Watstein (*pro hac vice*)