# Exhibit A

No. 21-866

# In the Supreme Court of the United States

―――――

REALGY, LLC, PETITIONER

*v.*

ROBERTA LINDENBAUM, ET AL.

―――――

*ON PETITION FOR A WRIT OF CERTIORARI*
*TO THE UNITED STATES COURT OF APPEALS*
*FOR THE SIXTH CIRCUIT*

―――――

**BRIEF FOR THE UNITED STATES IN OPPOSITION**

―――――

ELIZABETH B. PRELOGAR
   *Solicitor General*
    *Counsel of Record*
BRIAN M. BOYNTON
   *Acting Assistant Attorney*
    *General*
MARK B. STERN
MICHAEL S. RAAB
LINDSEY POWELL
   *Attorneys*

   *Department of Justice*
   *Washington, D.C. 20530-0001*
   *SupremeCtBriefs@usdoj.gov*
   *(202) 514-2217*

## QUESTIONS PRESENTED

The Telephone Consumer Protection Act of 1991 (TCPA), Pub. L. No. 102-243, 105 Stat. 2394, restricts the making of robocalls to cell phones and residential telephone lines.  47 U.S.C. 227(b)(1)(A)(iii) and (B).  In 2015, Congress amended those restrictions to create an exception for calls made solely to collect a debt owed to or guaranteed by the United States.  *Ibid.*  In *Barr* v. *American Ass'n of Political Consultants*, 140 S. Ct. 2335 (2020), this Court held that the 2015 government-debt exception is unconstitutional and severable from the remainder of the statute.  The questions presented are as follows:

1.  Whether petitioner may be held liable under the TCPA for making robocalls unrelated to the collection of government-backed debts during the period from 2015 to 2020.

2.  Whether the court of appeals erred in denying petitioner's motion under 28 U.S.C. 455(a), which sought the recusal of a member of the court of appeals panel on the ground that the judge has relatives who are partners at a law firm that represents parties in other TCPA litigation.

(I)

**ADDITIONAL RELATED PROCEEDING**

United States District Court (N.D. Ohio):

*Lindenbaum* v. *Realgy, LLC*, No. 19-cv-2862 (Oct. 29, 2020)

(II)

# TABLE OF CONTENTS

Page

Opinions below ............................................................. 1
Jurisdiction ................................................................... 1
Statement ...................................................................... 1
Argument ....................................................................... 8
Conclusion .................................................................. 18

# TABLE OF AUTHORITIES

Cases:

*American Ass'n of Political Consultants, Inc.* v.
   *FCC*, 923 F.3d 159 (4th Cir. 2019), aff'd *sub nom.*
   *Barr* v. *American Ass'n of Political Consultants,*
   *Inc.*, 140 S. Ct. 2335 (2020) ................................... 5

*Barr* v. *American Ass'n of Political Consultants,*
   *Inc.*, 140 S. Ct. 2335 (2020) ....................................... *passim*

*BellSouth Corp., In re*, 334 F.3d 941
   (11th Cir. 2003) ................................................... 17

*Collins* v. *Yellen*, 141 S. Ct. 1761 (2020) ................... 9, 10, 16

*Duguid* v. *Facebook, Inc.*,
   926 F.3d 1146 (9th Cir. 2019),
   rev'd on other grounds, 141 S. Ct. 1163 (2021) ................. 5

*Eberle* v. *Michigan*, 232 U.S. 700 (1914) ...................... 10, 11

*Erie R.R.* v. *Tompkins*, 304 U.S. 64 (1938) ........................ 13

*Frost* v. *Corporation Comm'n*, 278 U.S. 515 (1929) ........... 10

*Grayned* v. *City of Rockford*, 408 U.S. 104 (1972) ........ 13, 14

*Intercollegiate Broad. Sys.* v. *Copyright Royalty Bd.*,
   684 F.3d 1332 (D.C. Cir. 2012), cert. denied,
   569 U.S. 1004 (2013) ................................................ 15, 16

*Landgraf* v. *USI Film Prods.*,
   511 U.S. 244 (1994) ................................................ 11

*Marbury* v. *Madison*,
   5 U.S. (1 Cranch) 137 (1803) ................................... 9

(III)

IV

Cases—Continued:                                    Page

    *McIntyre* v. *Ohio Elections Comm'n*,
    514 U.S. 334 (1995)............................................ 13

    *Potashnick* v. *Port City Constr. Co.*, 609 F.2d 1101
    (5th Cir.), cert. denied, 449 U.S. 820 (1980) ..... 18

    *R. A. V.* v. *City of St. Paul*, 505 U.S. 377 (1992) ............... 13

    *Rivers* v. *Roadway Express, Inc.*,
    511 U.S. 298 (1994)........................................ 7, 10

    *Schacht* v. *United States*, 398 U.S. 58 (1970)............... 14, 15

    *Sessions* v. *Morales-Santana*,
    137 S. Ct. 1678 (2017) ...................................... 14

    *United States* v. *Jackson*, 390 U.S. 570 (1968) .................. 11

Constitution and statutes:

    U.S. Const.:
        Art. II, § 2, Cl. 2 (Appointments Clause)..................... 15
        Amend. I.................................................................. 12, 15

    Bipartisan Budget Act of 2015,
    Pub. L. No. 114-74, 129 Stat. 584 ........................................ 3

    Tit. III, 129 Stat. 588:
        § 301(a)(1)(A), 129 Stat. 588........................................ 3
        § 301(a)(1)(B), 129 Stat. 588........................................ 3

    Cable Communications Policy Act of 1984,
    Pub. L. No. 98-549, § 6(a), 98 Stat. 2804............................ 3

    Communications Act of 1934, ch. 652,
    48 Stat. 1064 (47 U.S.C. 151 *et seq.*)................................... 2

    Tit. II, 48 Stat. 1070 (47 U.S.C. 201 *et seq.*) .................. 2

    Tit. VI, 48 Stat. 1101:
        § 608, 48 Stat. 1105 (47 U.S.C. 608)............................ 3

    Telephone Consumer Protection Act of 1991,
    Pub. L. No. 102-243, 105 Stat. 2394:
        § 2(1), 105 Stat. 2394 .................................................. 1, 2
        § 2(3), 105 Stat. 2394 ...................................................... 2

V

Statutes—Continued:                                          Page

§ 2(10), 105 Stat. 2394 ...................................................... 2
§ 3(a), 105 Stat. 2395 ...................................................... 2
§ 3(a), 105 Stat. 2395-2396 ......................................... 2, 11
§ 3(a), 105 Stat. 2396 ...................................................... 3
§ 3(a), 105 Stat. 2396-2397 ........................................... 3
47 U.S.C. 227(b)(1)(A)(iii) ......................................... 2, 3
47 U.S.C. 227(b)(1)(B) ................................................... 3
47 U.S.C. 227(b)(3) ......................................................... 3
28 U.S.C. 455(a) ...................................................... 6, 16
28 U.S.C. 455(b)(5)(ii) .............................................. 17, 18
28 U.S.C. 455(b)(5)(iii) ................................................ 18

Miscellaneous:

H.R. Rep. No. 633, 101st Cong., 2d Sess. (1990) ................. 2
S. Rep. No. 178, 102d Cong., 1st Sess. (1991) ...................... 2

# In the Supreme Court of the United States

———

No. 21-866

REALGY, LLC, PETITIONER

*v.*

ROBERTA LINDENBAUM, ET AL.

———

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT*

———

**BRIEF FOR THE UNITED STATES IN OPPOSITION**

———

### OPINIONS BELOW

The opinion of the court of appeals (Pet. App. 117a-126a) is reported at 13 F.4th 524. The order of the court of appeals denying petitioner's motion for recusal (Pet. App. 111a-113a) is unreported. The opinion of the district court (Pet. App. 1a-17a) is reported at 497 F. Supp. 3d 290.

### JURISDICTION

The judgment of the court of appeals was entered on September 9, 2021. The petition for a writ of certiorari was filed on December 8, 2021. The jurisdiction of this Court is invoked under 28 U.S.C. 1254(1).

### STATEMENT

1. a. By the 1990s, "use of the telephone to market goods and services" had become "pervasive." Telephone Consumer Protection Act of 1991 (TCPA), Pub. L. No.

(1)

2

102-243, § 2(1), 105 Stat. 2394. "More than 300,000 so-licitors [were] call[ing] more than 18,000,000 Americans every day." § 2(3), 105 Stat. 2394. In making those calls, a growing number of telemarketers were using equipment that could "automatically dial a telephone number and deliver to the called party an artificial or prerecorded voice message." S. Rep. No. 178, 102d Cong., 1st Sess. 2 (1991); see H.R. Rep. No. 633, 101st Cong., 2d Sess. 3 (1990) (House Report) (describing the use of "automatic dialing systems" by "a growing number of telemarketers"). For telemarketers, the use of such equipment was a cost-effective way to call more consum-ers. House Report 3; see TCPA § 2(1), 105 Stat. 2394 (describing "the increased use of cost-effective telemar-keting techniques"). But many who received such calls found them "to be a nuisance and an invasion of pri-vacy," "regardless of the content or the initiator of the message." TCPA § 2(10), 105 Stat. 2394.

To address those complaints, Congress enacted the TCPA as a new section of Title II of the Communications Act of 1934, ch. 652, 48 Stat. 1064 (47 U.S.C. 151 *et seq.*). The TCPA imposes various "restrictions on the use of automated telephone equipment." § 3(a), 105 Stat. 2395 (capitalization and emphasis omitted). One restriction— referred to here as the "cell-phone restriction"—prohibits "any person within the United States" from "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a * * * cellular telephone service." 47 U.S.C. 227(b)(1)(A)(iii); see TCPA § 3(a), 105 Stat. 2395-2396. Another restriction—referred to here as the "residential-line restriction"—generally prohibits "any

3

person within the United States" from "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes." 47 U.S.C. 227(b)(1)(B); see TCPA § 3(a), 105 Stat. 2396. The TCPA authorizes private plaintiffs to sue to enjoin violations of those restrictions, and to recover up to $1500 or three times their actual monetary losses for each violation. 47 U.S.C. 227(b)(3); see TCPA § 3(a), 105 Stat. 2396-2397.

In 2015, Congress enacted the Bipartisan Budget Act, Pub. L. No. 114-74, 129 Stat. 584. The Act added to the cell-phone restriction an exception for calls "made solely to collect a debt owed to or guaranteed by the United States." Tit. III, § 301(a)(1)(A), 129 Stat. 588; see 47 U.S.C. 227(b)(1)(A)(iii). The Act likewise added to the residential-line restriction an exception for calls "made solely pursuant to the collection of a debt owed to or guaranteed by the United States." Tit. III, § 301(a)(1)(B), 129 Stat. 588; see 47 U.S.C. 227(b)(1)(B).

The Communications Act of 1934, of which the TCPA is a part, contains a severability provision that states: "If any provision of this Act or the application thereof to any person or circumstance is held invalid, the remainder of the Act and the application of such provision to other persons or circumstances shall not be affected thereby." § 608, 48 Stat. 1105 (47 U.S.C. 608); see Cable Communications Policy Act of 1984, Pub. L. No. 98-549, § 6(a), 98 Stat. 2804 (renumbering former Section 608 of the Communications Act of 1934 as Section 708).

b. In *Barr* v. *American Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) (*AAPC*), this Court addressed the constitutionality of the government-debt

4

exception to the TCPA's cell-phone restriction. *AAPC* was a declaratory-judgment action against the government brought by political organizations that wished to make political "robocalls" to cell phones. *Id.* at 2345 (plurality opinion). Although no single opinion commanded a majority, "[s]ix Members of the Court" "conclude[d] that Congress ha[d] impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *Id.* at 2343; see *id.* at 2356-2357 (Sotomayor, J., concurring in the judgment); *id.* at 2363-2364 (Gorsuch, J., concurring in the judgment in part and dissenting in part). "Applying traditional severability principles, seven Members of the Court conclude[d] that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute." *Id.* at 2343 (plurality opinion); see *id.* at 2357 (Sotomayor, J., concurring in the judgment); *id.* at 2362-2363 (Breyer, J., concurring in the judgment with respect to severability and dissenting in part).

In a footnote, the plurality opinion stated that, "although [the Court's] decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate." *AAPC*, 140 S. Ct. at 2355 n.12. "On the other side of the ledger," the plurality continued, "[the Court's] decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *Ibid.*

5

2. Petitioner is an energy company that supplies electricity and natural gas to consumers in Ohio. Compl. ¶ 7. In December 2019, respondent brought suit against petitioner, alleging that she had received a prerecorded call to her cell phone advertising petitioner's energy services, without her consent, in violation of the TCPA's cell-phone restriction. Compl. ¶¶ 25-31. Respondent later amended her complaint to allege that she received a similar prerecorded call to her residential telephone line, without her consent, in violation of the TCPA's residential-line restriction. First Am. Compl. ¶¶ 32-37. The prerecorded calls were allegedly made in November 2019 and March 2020, see *id.* ¶¶ 28, 32, after two courts of appeals had held the government-debt exception unconstitutional and severable from the rest of the statute, see *Duguid* v. *Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019), rev'd on other grounds, 141 S. Ct. 1163 (2021); *American Ass'n of Political Consultants, Inc.* v. *FCC*, 923 F.3d 159 (4th Cir. 2019), aff'd *sub nom. Barr* v. *American Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020), but before this Court's decision in *AAPC*. Respondent sought damages and injunctive relief on behalf of putative nationwide classes of similarly situated persons. First Am. Compl. ¶¶ 41-42, 64, 73-88; *id.* at 21-22.

After this Court's decision in *AAPC*, the district court granted petitioner's motion to dismiss the amended complaint. Pet. App. 1a-17a. The court understood this Court's decision in *AAPC* as severing the government-debt exception "only prospectively." *Id.* at 6a. The district court thus concluded that "the statute at issue was unconstitutional at the time of the alleged violations," which had occurred before this Court's decision. *Id.* at 16a. The district court held that petitioner could not be

6

"punish[ed]" for calls made "during a time when an un-
constitutional content-based restriction existed." *Id.* at
12a.

3. Respondent appealed, and the United States in-
tervened to defend the constitutionality of the TCPA.
See C.A. Doc. 34 (Feb. 19, 2021). After a panel of the
court of appeals heard oral argument, petitioner filed a
motion under 28 U.S.C. 455(a), seeking the recusal of
Judge Stranch, a member of the panel. Pet. App. 18a-
29a. Petitioner asserted that Judge Stranch's "impar-
tiality might reasonably be questioned" because her
"husband and son are partners (and her daughter is an
attorney) in a law firm—Branstetter Stranch—that
currently represents plaintiffs, including within the
Sixth Circuit, seeking to impose class-action liability"
under the TCPA's cell-phone restriction. *Id.* at 19a.

Respondent opposed the motion. C.A. Doc. 79 (Aug.
27, 2021). Respondent argued that Judge Stranch had
no connection to any party or counsel in this case, *id.* at
4-7, and that the Branstetter, Stranch & Jennings law
firm had "no pending" case that would "be affected by a
decision in this appeal," *id.* at 8 (emphasis omitted). Re-
spondent also argued that petitioner's motion was un-
timely because petitioner had "learned the panel of
judges" weeks before oral argument but had delayed
seeking recusal until "after Judge Stranch actively par-
ticipated in oral argument." *Id.* at 11, 13.

The court of appeals denied petitioner's motion. Pet.
App. 111a-113a. The court determined that "a reasona-
ble, objective person would not question Judge Stranch's
impartiality based on the facts alleged." *Id.* at 113a. The
court found that none of Judge Stranch's relatives had
a connection to this case, was "listed as party or counsel
to any pending cases to which [petitioner] points," was

7

"listed on the law firm's website as attorneys actively
soliciting robocall cases," or "will receive direct finan-
cial benefit from this court's ruling." *Id.* at 112a-113a.
Having determined that petitioner had not met its bur-
den to justify disqualification, *id.* at 112a, the court "de-
cline[d] to address the timeliness of the motion," *id.* at
113a.

4. The court of appeals reversed the grant of peti-
tioner's motion to dismiss. Pet. App. 117a-126a.

The court of appeals determined that petitioner may
be held liable for violating the TCPA's cell-phone and
residential-line restrictions during the period from 2015
to 2020. Pet. App. 121a. The court explained that, in
"'say[ing] what the law is,'" a court first "disregard[s]
unconstitutional enactments" and then "determine[s]
what (if anything) the statute means in their absence—
what is now called 'severability' analysis." *Id.* at 122a
(citation omitted). The court emphasized that "those
steps are all part of explaining what the statute 'has
meant continuously since the date when it became law.'"
*Ibid.* (quoting *Rivers* v. *Roadway Express, Inc.*, 511
U.S. 298, 313 n.12 (1994)). The court thus rejected peti-
tioner's view that this Court's decision in *AAPC* had
severed the government-debt exception only going for-
ward. *Id.* at 121a. The court of appeals instead under-
stood the *AAPC* decision to have "recognized * * * that
the Constitution had 'automatically displaced' the gov-
ernment debt-collector exception from the start" and
"then interpreted what the statute has always meant in
its absence." *Id.* at 125a (brackets and citation omitted).

Petitioner contended that, if it "can be held liable for
the period from 2015 to 2020," the resulting disparity
between government-debt collectors and other robo-
callers "would recreate the same First Amendment

8

violation the Court recognized in *AAPC*." Pet. App. 121a. In rejecting that argument, the court of appeals assumed, without deciding, that government-debt collectors would "have a due-process defense to liability" for any violations of the TCPA's robocall restrictions they had committed during that period "because they did not have fair notice of their actions' unlawfulness." *Id.* at 125a. The court explained, however, that "the centuries-old rule that the government cannot subject someone to punishment without fair notice is not tied to speech," but rather "turns on whether [a debt collector] reasonably believed that the statute expressly permitted its conduct." *Id.* at 126a. The court therefore held that, even if government-debt collectors would have a "fair-notice defense" for any TCPA violations that may have occurred during the period from 2015 to 2020, the availability of that defense would "not create a First Amendment problem." *Ibid.*

### ARGUMENT

In *Barr* v. *American Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) (*AAPC*), this Court held that the 2015 government-debt exception is unconstitutional and severable from the rest of the TCPA. That decision left the statute's longstanding robocall restrictions in place. Petitioner contends (Pet. 16-26) that it may not be held liable under the TCPA for making robocalls unrelated to the collection of government-backed debts during the period from 2015 to 2020. Petitioner also contends (Pet. 26-28) that Judge Stranch should have recused herself from this case because her relatives are partners in a law firm that handles TCPA litigation. The court of appeals correctly rejected those arguments, and its rulings do not conflict with any decision

9

of this Court or another court of appeals. Further review is not warranted.

1. Petitioner contends (Pet. 16-26) that it cannot be held liable for violating the TCPA's cell-phone and residential-line restrictions during the period from 2015 to 2020. That argument lacks merit and does not warrant this Court's review.

a. In *AAPC*, the plurality opinion addressed the question whether a person could be held liable for violating the TCPA's cell-phone restriction during the period from 2015 to 2020. The plurality concluded that the Court's decision did "not negate the liability of parties who made robocalls covered by [that] restriction" during that period. 140 S. Ct. at 2355 n.12. That conclusion follows logically from the Court's holdings in *AAPC*.

This Court has observed that "the Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment." *Collins* v. *Yellen*, 141 S. Ct. 1761, 1788-1789 (2020); see *AAPC*, 140 S. Ct. at 2351 n.8 (plurality opinion) (explaining that "'a legislative act contrary to the constitution is not law' at all") (quoting *Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)). Thus, when the Court in *AAPC* held unconstitutional the government-debt exception to the TCPA's cell-phone restriction, that holding meant not only that the exception was unconstitutional in 2020, but that the exception had been unconstitutional since its enactment in 2015. See 140 S. Ct. at 2348 (plurality opinion) (concluding that "the 2015 government-debt exception created an unconstitutional exception to the 1991 robocall restriction").

Likewise, when the Court in *AAPC* held that "traditional severability principles" required severing the government-debt exception "from the remainder of the

10

statute," 140 S. Ct. at 2343 (plurality opinion), that holding meant that established principles required severance of the exception as of the date of its enactment. "[A]n unconstitutional statutory amendment 'is a nullity' and 'void' when enacted." *Id.* at 2353 (quoting *Frost* v. *Corporation Comm'n*, 278 U.S. 515, 526-527 (1929)). And "a court conducting severability analysis is interpreting what, if anything, the statute has meant from the start in the absence of the always-impermissible provision." Pet. App. 123a; cf. *Rivers* v. *Roadway Express, Inc.*, 511 U.S. 298, 313 n.12 (1994) ("[W]hen th[e] Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law."). Because the government-debt exception "never really [became] part of the body of governing law," *Collins*, 141 S. Ct. at 1788, petitioner may be held liable under the TCPA for any violations of the robocall restrictions that it committed during the period from 2015 to 2020.

That conclusion finds support in decisions that the *AAPC* plurality invoked in finding the government-debt exception to be severable. In *Eberle* v. *Michigan*, 232 U.S. 700 (1914), for example, the Court held that "'discriminatory wine-and-cider amendments' added in 1899 and 1903 were severable from the underlying 1889 state law generally prohibiting the manufacture of alcohol." *AAPC*, 140 S. Ct. at 2353 (plurality opinion) (quoting *Eberle*, 232 U.S. at 704). The Court then upheld the defendants' convictions for violating the 1889 law during the period after the addition of the amendments but before the Court's decision. The Court explained that the "validity" of the 1889 law "could not be impaired by the subsequent adoption of what were in form amendments,

11

but, in legal effect, were mere nullities." *Eberle*, 232 U.S. at 705; see *id.* at 706.

Likewise in *United States* v. *Jackson*, 390 U.S. 570 (1968), the Court held that "a death penalty provision" added in 1934 was severable from the underlying Federal Kidnaping Act, enacted in 1932. *AAPC*, 140 S. Ct. at 2353 (plurality opinion). The Court then held that the defendants could "be prosecuted for violating the Act" during the period after the addition of the death-penalty provision but before the Court's decision. *Jackson*, 390 U.S. at 591. The Court explained that "the infirmity of the death penalty clause does not require the total frustration of Congress' basic purpose—that of making interstate kidnaping a federal crime." *Ibid.* Just as the Court's decisions in *Eberle* and *Jackson* did not negate the defendants' liability in those cases, so too the Court's decision in *AAPC* "does not negate [petitioner's] liability" for allegedly violating the TCPA's robocall restrictions during the period from 2015 to 2020. 140 S. Ct. at 2355 n.12 (plurality opinion).

b. Petitioner's counterarguments lack merit. Relying on *Landgraf* v. *USI Film Products*, 511 U.S. 244 (1994), petitioner contends that a statute should not be construed to "impose liability retroactively absent '"clear, strong, and imperative" language' from Congress." Pet. 18 (quoting *Landgraf*, 511 U.S. at 270). But that canon of statutory construction has no application here. Congress enacted the TCPA's cell-phone and residential-line restrictions in 1991. See TCPA § 3(a), 105 Stat. 2395-2396. "Congress's addition of the government-debt exception in 2015" did not cast doubt on the validity of those restrictions, *AAPC*, 140 S. Ct. at 2348 (plurality opinion), and petitioner allegedly violated the restrictions in late 2019 and early 2020, see First Am. Compl. ¶¶ 28, 32.

12

There is nothing retroactive about the application of the TCPA's 1991 restrictions to petitioner's alleged conduct.

The plurality in *AAPC* was correct to recognize that "no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate." 140 S. Ct. at 2355 n.12. But that is not because the *AAPC* Court's severance of the government-debt exception had only prospective effect. Rather, it is because considerations of "fair notice" stand as an "independent constitutional barrier[]" to application of the TCPA's 1991 restrictions to government-debt-collection calls made during the period that the plurality identified. *Id.* at 2354 (plurality opinion).

Contrary to petitioner's contention (Pet. 23), giving effect to fair-notice principles does not recreate any First Amendment violation. The current rationale for treating government-debt-collection calls differently than other robocalls made during the relevant period does not reflect any judgment about the relative worth of the two sets of calls. Rather, it reflects the fact that callers like petitioner, but not callers seeking to collect government-backed debts, had fair notice throughout that period that the TCPA's restrictions applied to their own robocalls. See Pet. App. 126a ("[T]he centuries-old rule that the government cannot subject someone to punishment without fair notice is not tied to speech.").

Considerations of fair notice thus provide a valid content-neutral justification for the differential treatment of government-debt-collection calls that were made during the period from 2015 to 2020. See Pet. App. 126a (concluding that "applying the speech-neutral

13

fair-notice defense in the speech context does not transform it into a speech restriction"). The court of appeals' holding is consistent with established severability principles, and with the stated views of six Members of the *AAPC* Court. The three-Justice plurality explicitly anticipated and approved the temporary differential treatment to which petitioner objects: The plurality stated both that "no one should be penalized or held liable for making robocalls to collect government debts" during the relevant period, and that the Court's decision would "not negate the liability of parties who made robocalls covered by the robocall restriction." *AAPC*, 140 S. Ct. at 2355 n.12. And the three dissenting Justices would have held that the government-debt exception did not create an unconstitutional disparity in the first place. See *id.* at 2362-2363 (Breyer, J., concurring in the judgment with respect to severability and dissenting in part).

c. Petitioner's reliance (Pet. 24-26) on this Court's decisions in *McIntyre* v. *Ohio Elections Commission*, 514 U.S. 334 (1995), *R. A. V.* v. *City of St. Paul*, 505 U.S. 377 (1992), and *Grayned* v. *City of Rockford*, 408 U.S. 104 (1972), is misplaced. In each of those decisions, the Court held that a provision of a state or municipal law impermissibly discriminated based on content. See *McIntyre*, 514 U.S. at 357; *R. A. V.*, 505 U.S. at 395-396; *Grayned*, 408 U.S. at 107. But none of those decisions addressed the state-law question whether the provision could be severed from the rest of the statute. See *AAPC*, 140 S. Ct. at 2353 n.11 (explaining that, after this Court's decision in *Erie R.R.* v. *Tompkins*, 304 U.S. 64 (1938), "severability of state laws can potentially pose different questions than severability of federal laws").

In *Grayned*, for example, the Court noted that the City had subsequently amended the ordinance in question

14

to delete the discriminatory provision.  408 U.S. at 107 n.2.  The Court made that observation, however, not as part of any severability analysis, but rather in the course of addressing whether the ordinance as originally enacted was constitutional.  The Court thus explained that it "must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted"—not the facial constitutionality of the ordinance as subsequently amended.  *Ibid.*; see *Sessions* v. *Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017) (quoting the same in dictum).  Unlike in *Eberle* and *Jackson*, see pp. 10-11, *supra*, the discriminatory exemption at issue in *Grayned* appears to have been enacted concurrently with the statute's general prohibition, and the Court did not address any issue of severability.  In *AAPC*, by contrast, seven Members of the Court found the government-debt exception to be severable, see p. 4, *supra*, and the plurality stressed the Court's longstanding practice of severing amendments that had introduced a constitutional infirmity while leaving the original laws in place, see 140 S. Ct. at 2353.

Petitioner's reliance (Pet. 24) on *Schacht* v. *United States*, 398 U.S. 58 (1970), is likewise misplaced.  The defendant in *Schacht* had been convicted of violating a federal statute that prohibited wearing a United States Army uniform without authorization.  *Id.* at 59.  Schacht argued that he had "wor[n] the army uniform as an 'actor' in a 'theatrical production,'" and he invoked a separate federal statute that authorized wearing the uniform as part of a "'theatrical or motion-picture production.'"  *Id.* at 60 (citation omitted).  The final clause of that separate statute, however, restricted the authorization to "those dramatic portrayals that do not 'tend to discredit' the military."  *Id.* at 62; see *id*. at 60.  The Court held that

15

the final clause violated the First Amendment and "must be stricken" from the statute. *Id.* at 63. The Court then reversed Schacht's conviction on the ground that his conduct otherwise fell within the scope of the authorization. *Id.* at 61-62, 65.

The Court in *Schacht* thus did not sever the unconstitutional clause only going forward. Rather, the Court applied the remainder of the statute—without the unconstitutional clause—to the defendant's conduct, which predated the Court's decision. The practical effect of that approach was to place Schacht himself in the same position as persons who engaged in similar conduct after the Court's decision, who could invoke the "theatrical production" defense without the "discredit the military" limitation. Petitioner, by contrast, seeks to avoid TCPA liability for alleged acts that would clearly give rise to liability if performed today.

d. Petitioner does not identify any decision of another court of appeals that has addressed whether a person may be held liable under the TCPA for making robocalls unrelated to the collection of government-backed debts during the period from 2015 to 2020. Petitioner contends (Pet. 22) that the decision below conflicts with the D.C. Circuit's decision in *Intercollegiate Broadcasting Systems* v. *Copyright Royalty Board*, 684 F.3d 1332 (2012), cert. denied, 569 U.S. 1004 (2013). That case involved a challenge to a Copyright Royalty Board (Board) determination setting royalty rates for the webcasting of certain digitally recorded music. *Id.* at 1334-1335. The D.C. Circuit held that the structure of the Board violated the Appointments Clause. *Id.* at 1340. The court further held that "invalidating and severing the restrictions" on the ability of the Librarian of Congress to remove judges from the Board "eliminate[d]

16

the Appointments Clause violation." *Ibid.* "Because the Board's structure was unconstitutional at the time it issued its determination," the court vacated the challenged determination and remanded for further proceedings. *Id.* at 1342.

Petitioner asserts (Pet. 16) that, contrary to the D.C. Circuit's decision in *Intercollegiate Broadcasting*, the decision below held that severance "always" "erases all * * * constitutional harm." But the court below did not endorse any such categorical rule. Nor did it take issue with the general principle that an "unconstitutional provision" may still "inflict compensable harm," even though it "is never really part of the body of governing law." *Collins*, 141 S. Ct. at 1788-1789. Rather, the court of appeals held only that, given this Court's severance of the government-debt exception from the rest of the TCPA, petitioner may be held liable for any violations of the statute's robocall restrictions that it is ultimately shown to have committed during the period from 2015 to 2020.

2. Petitioner also contends (Pet. 26-28) that the court of appeals erred in denying petitioner's motion for Judge Stranch's recusal. That argument likewise lacks merit and does not warrant this Court's review.

a. Section 455(a) requires a federal judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. 455(a). After the court of appeals heard oral argument in this case, petitioner moved for Judge Stranch's recusal, asserting that her "impartiality might reasonably be questioned" because her "husband and son are partners (and her daughter is an attorney) in a law firm" that handles TCPA litigation, including a case within the Sixth Circuit. Pet. App. 19a.

17

Even assuming that petitioner's motion was timely, see Pet. App. 113a (declining "to address the timeliness of the motion"), the court of appeals was correct to deny it, *id.* at 111a-113a. Petitioner asserts (Pet. 27) that Judge Stranch "would benefit directly from reversal of the district court's order" dismissing respondent's amended complaint. But the court of appeals determined that the facts did not support that assertion. Pet. App. 112a-113a. Specifically, the court found that none of Judge Stranch's relatives was a party or counsel to a party in this case, was "listed as party or counsel to any pending cases to which [petitioner] points," was "listed on the law firm's website as attorneys actively soliciting robocall cases," or "will receive direct financial benefit from this court's ruling." *Ibid.*

Given those facts, the court of appeals correctly held that petitioner had not met its burden of demonstrating that a "reasonable, objective observer" would question Judge Stranch's impartiality. Pet. App. 112a. Indeed, petitioner acknowledged below that "it would be 'inappropriate' for a judge to recuse" merely because "the judge's relatives work at a firm that does legal work in the same subject area as the suit before the judge." *Ibid.* (citation omitted). Yet, as the court observed, petitioner "does not offer any sufficient reason not to apply that same general principle here." *Ibid.*

b. Contrary to petitioner's contention (Pet. 28), the court of appeals' denial of the recusal motion does not conflict with any decision of another court of appeals. In *In re BellSouth Corp.*, 334 F.3d 941 (2003), the Eleventh Circuit stated that, under 28 U.S.C. 455(b)(5)(ii), a judge "should be disqualified when a person within the third degree of relationship is acting as a lawyer in the proceeding." 334 F.3d at 955. But "Judge Stranch's

18

relatives have no connection to" this proceeding, Pet. App. 112a, and petitioner did not rely on Section 455(b)(5)(ii) in moving for Judge Stranch's recusal, *id.* at 19a.

In *Potashnick* v. *Port City Construction Co.*, 609 F.2d 1101, cert. denied, 449 U.S. 820 (1980), the Fifth Circuit held that 28 U.S.C. 455(b)(5)(iii) required a judge's recusal where the judge's father was a partner in a law firm that represented one of the parties in the proceeding. 609 F.2d at 1104, 1112-1113. But Branstetter, Stranch & Jennings does not represent any party in this proceeding, Pet. App. 112a, and petitioner did not rely on Section 455(b)(5)(iii) in moving for Judge Stranch's recusal, *id.* at 19a. Petitioner's assertion of a circuit conflict therefore lacks merit.

### CONCLUSION

The petition for a writ of certiorari should be denied.

Respectfully submitted.

ELIZABETH B. PRELOGAR
*Solicitor General*
BRIAN M. BOYNTON
*Acting Assistant Attorney
General*
MARK B. STERN
MICHAEL S. RAAB
LINDSEY POWELL
*Attorneys*

FEBRUARY 2022