# Exhibit B

No. 21-866

IN THE

# Supreme Court of the United States

———

REALGY, LLC,

*Petitioner,*

v.

ROBERTA LINDENBAUM, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*Respondent,*

and

UNITED STATES OF AMERICA,

*Respondent-Intervenor.*

———

**On Petition for Writ of Certiorari to the United States Court of Appeals for the Sixth Circuit**

———

**REPLY BRIEF FOR PETITIONER**

———

| | |
|---|---|
| PAUL A. GRAMMATICO | RYAN D. WATSTEIN |
| KABAT CHAPMAN & |   *Counsel of Record* |
|   OZMER LLP | MATTHEW A. KEILSON |
| 333 S. Grand Ave., | KABAT CHAPMAN & |
| Suite 2225 |   OZMER LLP |
| Los Angeles, CA  90071 | 171 17th St. NW, Suite 1550 |
| (213) 493-3988 | Atlanta, GA  30363 |
| pgrammatico@kcozlaw.com | (404) 400-7307 |
| | rwatstein@kcozlaw.com |
| | mkeilson@kcozlaw.com |

*Counsel for Petitioner*

February 22, 2022

WILSON-EPES PRINTING CO., INC.   –   (202) 789-0096   –   WASHINGTON, D.C. 20002

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................ ii

I. The Government Confirms Review Is Warranted to Close the Constitutional Loophole *Lindenbaum* Opened and to Ensure Compliance with First Amendment and Severance Jurisprudence ......... 2

   A. *Lindenbaum* Opens a Constitutional Loophole .............................................. 2

   B. Severance of the Conduct-Permitting Government Exception Cannot Be Retroactive .......................................... 3

   C. Retroactive Severance Would Not Cure the Constitutional Harm Or Render Enforceable Content-Discriminatory Speech Restrictions. .. 5

   D. Fair Notice Is Not a Content-Neutral Solution ............................................... 7

II. Review Is Warranted to Clarify the Circumstances Under Which Judges Are Required to Recuse Where They Stand to Personally Benefit ..................................... 8

III. This Case Presents an Ideal Vehicle to Address Two Exceptionally Important Questions .................................................. 11

IV. Conclusion ............................................... 13

ii
# TABLE OF AUTHORITIES

CASES                                                                Page(s)

*Ayotte v. Planned Parenthood of N. New England*,
   546 U.S. 320 (2006).................................. 3

*Barr v. AAPC*,
   140 S. Ct. 2335 (2020)............................*passim*

*Collins v. Yellen*,
   141 S. Ct. 1761 (2021).............................. 5

*Cunningham v. Matrix Fin. Svcs.*,
   531 F. Supp. 3d 1164 (E.D. Tex. 2021)..... 5

*Elrod v. No Tax 4 Nash*,
   No. 3:20-cv-00617, Dkt. 48,
   (M.D. Ten. Apr. 19, 2021)......................... 9

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972).................................. 6, 7

*Head v. Citibank, N.A.*,
   No. 3:18-cv-08189, Dkt. 148
   (D. Ariz. Jan. 28, 2022)............................. 3

*In re BellSouth Corp.*,
   334 F.3d 941 (11th Cir. 2003).................... 11

*Intercollegiate Broadcasting System v. Copyright Royalty Board*,
   684 F.3d 1332 (D.C. Cir. 2012)................. 7

*Langraf v. USI Firm Products*,
   511 U.S. 244 (1991) ................................. 4

*Lindenbaum v. Realgy,*
   497 F.Supp.3d 290 (2020)................... 2, 3, 7, 10

iii

## TABLE OF AUTHORITIES—Continued

Page(s)

*Parker v. Connors Steel Co.*,
  855 F.2d 1510 (11th Cir. 1988)................. 10-11

*Sessions v. Morales-Santana*,
  137 S. Ct. 1678 (2017)................................ 4, 5, 6

*Skeete v. Republic Schs. Nashville*,
  No. 3:16-cv-00043, Dkt. 105
  (M.D. Tenn. Jan. 26, 2018)....................... 10

*Trujillo v. Free Energy Sav. Co., LLC*,
  No. 5:19-cv-02072, 2020 WL 8184336
  (C.D. Cal. Dec. 21, 2020).......................... 7

*Union Carbide Corp. v. U.S. Cutting
  Serv., Inc.*,
  782 F.2d 710 (7th Cir. 1986)..................... 10

*United States v. Arthrex, Inc.*,
  141 S. Ct. 1970 (2021).............................. 5, 6

### CONSTITUTION

U.S. Const. art. I, § 9, cl. 3 .......................... 4

U.S. Const. amend. I .................................. 1, 6

### STATUTES

28 U.S.C. § 455(a)........................................ 8, 11

28 U.S.C. § 455(b)(4).................................... 11

47 U.S.C. § 501 ........................................... 4

iv
## TABLE OF AUTHORITIES—Continued

COURT FILINGS                                    Page(s)

Amicus Br. Supp. Appellee, *Lindenbaum v. Realgy, et al.*, 2021 WL 1163982 (6th Cir. Mar. 18, 2021) ..........................................   3

OTHER AUTHORITIES

Branstetter Stranch Attorneys, https://www.bsjfirm.com/our-attorneys/ (last visited Feb. 21, 2022) .....................................   9-10

James V. Grimaldi et al., *131 Judges Broke the Law By Hearing Cases Where They Had a Financial Interest*, WALL ST. J. (Sept. 28, 2021), https://www.wsj.com/articles/131-federal-judges-broke-the-law-by-hearing-cases-where-they-had-a-financial-interest-11632834421 ......................   12

U.S. Supreme Court, 2021 Year End Report on the Federal Judiciary (https://www.supremecourt.gov/publicinfo/year-end/2021year-endreport.pdf) (last visited Feb. 19, 2022) ................................................. 1, 2, 12

## REPLY BRIEF

If this case were about any other type of speech, the government would not be advocating that a speech restriction could exempt preferred speakers but impose crushing liability on all others—the exact favoritism this Court held violates the First Amendment. Had *AAPC* severed an illegal speech exception for the party in power, for instance, no one would contend that penalties against other political speakers for pre-severance speech could stand.

The government does not address the absurdities that necessarily follow from its position, or the unprecedented roadmap for legislative abuse that its logic creates. Nor does it address that if the Sixth Circuit's decision stands, it will be the first time this Court has ever blessed a penalty levied under an unconstitutionally discriminatory speech restriction. This Court has reviewed—and reversed—*every* other such case. The First Amendment question deserves review.

Review is also needed to clarify that severance must be prospective when legislative intent and constitutional barriers to retroactivity so dictate—a position the *government* previously advocated—and that it is constitutionally impermissible to re-create the exact discrimination a majority in *AAPC* held violated the First Amendment via another doctrine.

Equally important is the second question, which asks whether a judge must recuse where her ruling would benefit her and her family in a far more direct way than presiding over a case in which she owns a party's stock. In his year-end report, Chief Justice Roberts clarified that a judge must recuse in any matter where "the judge knows of a personal financial

2

interest, no matter how small."[1]  If that is true, then Judge Branstetter Stranch should have been nowhere near this case because Branstetter Stranch—a firm her husband and son own—is pursuing contingency fee robocall litigation in the Sixth Circuit that could have been eliminated by Judge Stranch's ruling.  Her refusal to step aside, to quote the Chief Justice, "impairs the public's confidence in the independence of the courts."  U.S. Supreme Court, *supra* note 1.  And this Court is Petitioner's only remedy for her disregard of the recusal statute—as the government concedes—since circuit judges self-evaluate recusal.

To uphold the public's faith in the judiciary, remedy the harm perpetuated by admittedly unconstitutional unequal treatment, and close the Sixth Circuit's constitutional loophole, the Court should grant the petition in full.

**I. The Government Confirms Review Is Warranted to Close the Constitutional Loophole *Lindenbaum* Opened and to Ensure Compliance with First Amendment and Severance Jurisprudence.**

**A. *Lindenbaum* Opens a Constitutional Loophole.**

The government ignores, and thus concedes, the necessary consequence of *Lindenbaum*'s faulty logic: it creates a constitutional loophole that permits legislatures to pass discriminatory exceptions to any number of speech restrictions—favoring religions, political parties, and races.  Under *Lindenbaum*, the disfavored

---

[1] U.S. Supreme Court, 2021 Year End Report on the Federal Judiciary (https://www.supremecourt.gov/publicinfo/year-end/2021year-endreport.pdf) (last visited February 19, 2022).

3

parties can be prosecuted for their pre-severance speech while the favored parties are immune, although such disparate treatment is admittedly unconstitutional under *Barr v. AAPC*, 140 S. Ct. 2335, 2346 (2020). This "peculiar" result—in the words of the ACLU and preeminent constitutional scholars—creates a roadmap for legislative abuse that could be used in the most abhorrent of ways. Amicus Br. Supp. Appellee, *Lindenbaum v. Realgy, et al.*, 2021 WL 1163982 (6th Cir. Mar. 18, 2021).

This loophole is already being exploited. Private debt collectors are currently subject to bankrupting strict liability under the robocall restriction for *accidental*, pre-severance wrong-number calls intended for consenting customers. *See, e.g.*, *Head v. Citibank, N.A.*, No. 3:18-cv-08189, Dkt. 148 (D. Ariz. Jan. 28, 2022) (over a *billion* dollars in exposure). Meanwhile, government favored speakers are exempt for the same speech—even where they *intentionally* called without consent.

The injustice the *Lindenbaum* loophole perpetuates is reason alone to grant the petition.

### B. Severance of the Conduct-Permitting Government Exception Cannot Be Retroactive.

Proper application of the law closes this loophole. To start, the government misunderstands how severance operates for the *conduct-permitting* exception at issue (where severance creates past liability rather than removes it). As noted, the judiciary's power to sever is informed by two factors: (1) legislative intent; (2) subject to constitutional constraints. *See, e.g.*, *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 330 (2006) ("touchstone" of severability "is

4

legislative intent"). Both compel the conclusion that *AAPC*'s severance must be prospective.

First, *Langraf v. USI Firm Products* explains that the judiciary cannot presume statutory penalties apply retroactively without "clear, strong, and imperative" language from Congress. *See* 511 U.S. 244 (1991) (cleaned up). The government concedes no such language exists in the TCPA or the Telecommunications Act's severability clause. Courts must therefore presume that Congress did not intend to impose retroactive liability on government collectors by retroactively severing the exception if it was deemed unconstitutional. And this presumption makes sense: Congress *specifically exempted* government speakers, so it is illogical to assume Congress silently endorsed a form of severance that would bankrupt or jail those speakers for following the law.

Second, constitutional considerations would have prohibited Congress from imposing retroactive liability. Imagine Congress foresaw *AAPC*'s result and passed this severability clause: "If the Supreme Court finds the government debt exception unconstitutional, it shall be removed retroactively, subjecting exempted debt collectors to criminal penalties and liability for pre-severance speech." That severability provision would be unconstitutional. Due Process and the *Ex Post Facto* clause forbid retroactively subjecting conduct that Congress exempted to criminal and bankrupting civil liability. *See* U.S. Const. Art. I, § 9, cl. 3; 47 U.S.C. § 501 (imposing criminal liability).

The government's position is thus untenable. And it cannot be reconciled with the *opposite* position the government adopted in *Sessions v. Morales-Santana*, or the Court's holding in that case. 137 S. Ct. 1678, 1701 (2017) ("[A]s the Government suggests, [severance]

5

should apply, ***prospectively***") (emphasis added). There, the Court explained that severance cannot operate retroactively where there are constitutional barriers, such as violating others' constitutional rights. *Id.* at 1701. Treating the government exception as a legal fiction that did not exist does just that: creating *ex post facto* liability for speakers who relied on the exception.

The government's interpretation would also give courts more power through judicial severance than Congress would have in drafting the severability clause—where the judiciary's power to sever comes from. Such logic turns the separation of powers on its head, another fact that the government ignores. *See Cunningham v. Matrix Fin. Svcs.*, 531 F. Supp. 3d 1164, 1174 n.9 (E.D. Tex. 2021).

### C. Retroactive Severance Would Not Cure the Constitutional Harm Or Render Enforceable Content-Discriminatory Speech Restrictions.

Even if it were academically correct that judicial severance is always retroactive, regardless of Congressional intent or constitutional barriers, that would not erase the harm wrought by the government debt exception. The government concedes that, at the time of the speech here, the exception existed and would have resulted in dismissal of claims against government collectors, had they been sued alongside Petitioner. It also acknowledges (at 16) that historical disparate treatment created by unconstitutional statutes can "inflict compensable harm," though they are never truly law. *See Collins v. Yellen*, 141 S. Ct. 1761, 1788–89 (2021). But the government's analysis begs the next question: how do we remedy the past disparate treatment

6

experienced by non-exempt speakers? *See United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1987 (2021); *id*. at 1799 ("In the world we inhabit, where individuals are burdened by unconstitutional [and technically void] executive action, they are 'entitled to relief.'") (Gorsuch, J., concurring in part).

The government (and the Sixth Circuit) fail to undertake that inquiry because it yields an unpopular answer: not penalizing anyone under the robocall restriction for speech that occurred when it contained the illegal exception. In other words, we return to the baseline, First Amendment default: permitting speech.

Any other conclusion recreates the favoritism a *majority* of this Court held violated the First Amendment. It also conflicts with other precedent and creates a circuit split. Liability cannot be imposed under unconstitutional speech restrictions, regardless of subsequent cure via severance. *See, e.g.*, *Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972) (unanimous).

The government attempts (at 14) to distinguish *Grayned* because it conducted no severability analysis. But the government does not dispute that there was a severability clause in the ordinance there, or that the legislature later removed the exception. *Id.* at 106. *Grayned* was thus the rare case in which this Court knew what the legislature would have wanted if the exception was unconstitutional: severance. This Court still reversed the conviction, noting the unconstitutionality of the statute "in effect when [the defendant] was arrested" was all that mattered. 408 U.S. at 107 n.2. The government does not dispute that *Grayned* would have severed and upheld the conviction if the government's view of severance were correct. Nor does the government dispute that *Sessions* reaffirmed *Grayned* recently. *Sessions*, 137 S. Ct. at 1699 n.24.

7

And contrary to the government's assertion (at 16), *Lindenbaum* conflicts directly with *Intercollegiate Broadcasting System v. Copyright Royalty Board,* where the court remanded for consideration of the appropriate remedy for past harm perpetrated by a now-severed provision. 684 F.3d 1332 (D.C. Cir. 2012). The Sixth Circuit, by contrast, adopted a fictive severance analysis, pretending the government debt exception never existed and refusing to consider remedies for past harm.

### D. Fair Notice Is Not a Content-Neutral Solution.

The government's contention (at 12) that fair notice solves the problems that inhere in its position is wrong.

Preliminarily, *AAPC* did not address fair notice or resolve the question presented, as the government contends (at 9). Whether liability can be imposed while the robocall restriction was discriminatory was not briefed or argued in *AAPC*. And the plurality could not have decided this issue in a citationless, two-sentence footnote that, if interpreted as the government urges—exempting government speech but punishing "other speech"—would undo *AAPC*'s *majority* holding and overrule *Grayned*. *See AAPC*, 140 S. Ct. at 2343; *see also Trujillo v. Free Energy Sav. Co., LLC*, No. 5:19-cv-02072, 2020 WL 8184336, at *3 (C.D. Cal. Dec. 21, 2020) ("The footnote presents a paradox, [leaving] unexplained how these outcomes may coexist.").

Nor does the footnote permit the government to divine (at 13) what it believes this Court would have held had it addressed the different question presented. The government ignores that the only two Justices to touch this issue *explicitly* rejected the government's position. *AAPC*, 140 S. Ct. at 2365 ("shield[ing] only

8

government debt collection calls from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we [the majority] say we are seeking to eliminate") (Gorsuch, J., joined by Thomas, J., concurring in part and dissenting in part).

That aside, fair notice does not cure historical unequal treatment and cannot now cure the equal treatment problem created by absolving government debt collectors because it is not a content-neutral justification for their "differential" (and preferential) treatment. The problem with that argument is fundamental: The only way to tell whether fair notice applies is to first examine the content of speech (*i.e.,* whether it concerns government debts or something else). That inquiry is "as content-based as it gets." *AAPC*, 140 S. Ct. at 2346. Thus, all paths lead to only one result: neither government-favored nor other speakers can be prosecuted under the restriction for 2015–20 speech.

## II. Review Is Warranted to Clarify the Circumstances Under Which Judges Are Required to Recuse Where They Stand to Personally Benefit.

On recusal, the government omits the most salient facts and misapplies the applicable standard, which *requires* recusal where a judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Contrary to the government's mischaracterization, Petitioner has not argued that recusal is mandatory because Judge Stranch has "relatives" involved in this or other cases involving a specific statute. It is instead based on the following, which the government ignores but does not dispute:

9

- Judge Stranch's husband and son own a law firm named Branstetter Stranch & Jennings, PLLC. Judge Stranch's father founded the firm and she spent her entire private career there. Her daughter is also a lawyer there.
- Branstetter Stranch is a small plaintiff-side firm in the Sixth Circuit, where Judge Stranch's decisions are binding. Branstetter Stranch is prosecuting (and soliciting for) class actions under the specific statutory sub-section Petitioner argued cannot be enforced.
- Those cases have resulted in substantial payouts to Branstetter Stranch. And Branstetter Stranch funds those cases with its own money, meaning it loses money each time a case is dismissed.
- Had Judge Stranch affirmed, contingency fee class action litigation brought by Branstetter Stranch under that sub-section could have been partially or entirely extinguished, resulting in an immediate financial loss to Judge Stranch *and* her closest family members. *See Elrod v. No Tax 4 Nash*, No. 3:20-cv-00617, Dkt. 48, (M.D. Ten. Apr. 19, 2021) (Branstetter Stranch appointed as class counsel for robocall class).

Ignoring this, the government—which did not oppose recusal below—contends the Stranches are not involved personally in TCPA litigation and Judge Stranch derived no "direct" financial benefit from her ruling. That is the incorrect standard and the government's points are factually wrong.

Per its website, Branstetter Stranch has 12 partners, meaning the Stranches presumably have more than 20% ownership in the firm. Branstetter Stranch Attorneys, https://www.bsjfirm.com/our-attorneys/

10

(last visited Feb. 21, 2022). Plaintiffs-side TCPA litigation is but one of a handful of their practice areas, with a specific website page promoting million-dollar wins. In one of these advertised cases within the Sixth Circuit, Judge Stranch's son sought almost a million dollars in fees. *Skeete v. Republic Schs. Nashville*, No. 3:16-cv-00043, Dkt. 105 (M.D. Tenn. Jan. 26, 2018). Branstetter Stranch had a similar case pending in the Sixth Circuit at the time of Judge Stranch's ruling in *Lindenbaum*. Affirming the district court could have directly prevented a similar fee award there, depriving Judge Stranch and her spouse from their share of the fees.

There is no question that a judge *must* recuse where her husband owns a few dollars of a party's stock. *See Union Carbide Corp. v. U.S. Cutting Serv., Inc.*, 782 F.2d 710, 714 (7th Cir. 1986). Can a judge then decide a case where the financial impact of a ruling would be more significant and immediate to her spouse, son, and herself?

If a judge's husband, for instance, owned 20% of the shares in a company with a substantial investment that could be wiped out by the judge's ruling—say, a development project in litigation over zoning—it would be inconceivable for the judge to remain on the case. But that is *exactly* what Judge Stranch did because her family's law firm has invested significantly in contingency fee litigation involving the robocall restriction.

These facts would cause any "lay observer" to reasonably question Judge Stranch's impartiality. Her affirmative refusal to do so after this concern was brought to her attention is the height of judicial arrogance and threatens irreparable damage to the public's trust in the courts. *See Parker v. Connors*

11

*Steel Co.*, 855 F.2d 1510, 1524 & n.12 (11th Cir. 1988) (emphasizing "lay observer" test). And even if there were an argument that recusal were unnecessary under 28 U.S.C. § 455(a), it would still be required by § 455(b)(4), which mandates it where a judge "or [her] spouse has . . . any other interest that could be substantially affected by the outcome of the proceeding."

Judge Stranch's refusal to recuse thus conflicts with other circuits' application of the relevant standard, despite the government's contrary view (at 17). *E.g.*, *In re BellSouth Corp.*, 334 F.3d 941, 944 (11th Cir. 2003) ("a relative within the proscribed proximity [that] stands to benefit financially as a partner in a participating firm—even if the relative is not himself involved—is sufficient to require recusal.").

Review is required to ensure to the public that Chief Justice Robert's call for a renewed commitment to recusal obligations is heeded.

### III. This Case Presents an Ideal Vehicle to Address Two Exceptionally Important Questions.

Whether *AAPC* permits a ruling that "shields only government debt collectors from past liability under an admittedly unconstitutional law" is an exceptionally important question for free speech. *See* 140 S. Ct. at 2366 (Gorsuch, J., joined by Thomas, J., concurring in part and dissenting in part). This is why the ACLU and notable constitutional scholars supported Petitioner. They recognized the dangers posed by enforcement of discriminatory speech restrictions and the gaping constitutional loophole created by the government's position, despite their personal dislike of "robocalls."

12

And this case presents a unique opportunity for the Court to address a second critical issue. As the Chief Justice recently stated:

> We are duty-bound to strive for 100% compliance because public trust is essential, not incidental, to our function. Individually, judges must be scrupulously attentive to both the letter and spirit of our rules [to avoid] impair[ing] the public's confidence in the independence of the courts.[2]

Petitioner's case is far worse than incidental ownership of stock that is unlikely to be affected by a ruling, though that issue piqued the media's attention recently.[3] Here, a judge *knowingly refused* recusal where her ruling would have a far more immediate impact on her own bank account and the coffers of a law firm created—and still managed—by her family.

Because recusal motions are rarely brought for fear of retribution, and even more rarely appealed, the Court is unlikely to get another opportunity to address this issue of "essential" importance. And if the Court intends to follow through on Chief Justice Roberts' exhortation to strive for "100% compliance," this case could not be more timely.

---

[2] U.S. Supreme Court, *supra* note 1.

[3] *See* James V. Grimaldi et al., *131 Judges Broke the Law By Hearing Cases Where They Had a Financial Interest*, WALL ST. J. (Sept. 28, 2021), https://www.wsj.com/articles/131-federal-judges-broke-the-law-by-hearing-cases-where-they-had-a-financial-interest-11632834421.

13

**IV. Conclusion.**

The Court should grant the petition in full.

Respectfully submitted,

| | |
|---|---|
| PAUL A. GRAMMATICO | RYAN D. WATSTEIN |
| KABAT CHAPMAN & | *Counsel of Record* |
|   OZMER LLP | MATTHEW A. KEILSON |
| 333 S. Grand Ave., | KABAT CHAPMAN & |
| Suite 2225 |   OZMER LLP |
| Los Angeles, CA 90071 | 171 17th St. NW, Suite 1550 |
| (213) 493-3988 | Atlanta, GA 30363 |
| pgrammatico@kcozlaw.com | (404) 400-7307 |
| | rwatstein@kcozlaw.com |
| | mkeilson@kcozlaw.com |

*Counsel for Petitioner*

February 22, 2022